No. _____

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

## IN RE CACI INTERNATIONAL INC, CACI, INC. – FEDERAL, AND CACI N.V., *Petitioners*

On Petition for Writ of Mandamus from the United States District Court for the Eastern District of Virginia at No. 05-CV-00427

---

## PETITION FOR A WRIT OF MANDAMUS

---

J. William Koegel, Jr.
John F. O'Connor
Frank H. Griffin, IV
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036
Tel.:  (202) 429-3000
Fax:  (202) 429-3902

*Counsel for Petitioners*

# TABLE OF CONTENTS

I.   RELIEF SOUGHT: A WRIT DIRECTING THE DISTRICT
     COURT TO VACATE THE UNLAWFUL JUNE 3, 2005,
     TRANSFER ORDER ................................................................    1

II.  THE ISSUES PRESENTED: WHETHER THE DISTRICT COURT'S
     TRANSFER OF THIS ACTION PURSUANT TO 28 U.S.C. § 1404(A)
     IMMEDIATELY AFTER RECEIVING THE CASE PURSUANT TO
     A § 1404(A) TRANSFER CONSTITUTED AN ABUSE OF JUDICIAL
     POWER WHERE THE COURT MADE NO FINDING THAT THE
     CASE ORIGINALLY COULD HAVE BEEN BROUGHT IN THE
     TRANSFEREE DISTRICT AND DISREGARDED CASE LAW
     RESTRICTING THE COURT'S POWER TO TRANSFER THE CASE
     FOR A SECOND TIME ................................................................    1

III. PROCEDURAL BACKGROUND ...............................................    3

     A.    Plaintiffs' Allegations ...................................................    3

     B.    The CACI Defendants' Motion to Transfer Venue ....................    4

     C.    Judge Rhoades' Order Transferring This Action to the Eastern
           District of Virginia .......................................................    7

     D.    Plaintiffs' Motion for a *Second* Transfer of This Action ...............    8

IV.  ARGUMENT

     A.    The Standard for a Petition for a Writ of Mandamus ...................    12

     B.    The District Court Committed Clear Error in Failing to Require a
           Showing That This Action Could Have Been Brought in the
           District of Columbia .......................................................    14

     C.    The District Court Abused Its Judicial Power By Immediately
           Reversing, Without Changed Circumstances or Explanation, the
           Considered Opinion of a Coordinate Court That Transfer to the
           Eastern District of Virginia Was Appropriate ...........................    24

V.   CONCLUSION ...................................................................    27

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER
## ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION

Only one form need be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of individual parties as well as corporate parties. Disclosures are required from amicus curiae only if amicus is a corporation. Counsel has a continuing duty to update this information. Please file an original and three copies of this form.

No. _____    Caption:  In re CACI International Inc _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

CACI International Inc _____    who is    Petitioner _____ ,
    (name of party/amicus)         (appellant/appellee/amicus)

makes the following disclosure:

1.    Is party/amicus a publicly held corporation or other publicly held entity?
      [x]   YES         [ ]   NO

2.    Does party/amicus have any parent corporations?
      [ ]   YES         [x ]   NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
      [ ]   YES         [X]   NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
      [x]   YES         [ ]   NO
      If yes, identify entity and nature of interest:  Titan Corporation

5.    Is party a trade association?
      [ ]   YES         [x]   NO
      If yes, identify all members of the association, their parent corporations, and any publicly held companies that own 10% or more of a member's stock:

6.    If case arises out of a bankruptcy proceeding, identify any trustee and the members of any creditors' committee:

_____         9 June 2005
    (signature)                             (date)

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER
## ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION

Only one form need be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of individual parties as well as corporate parties. Disclosures are required from amicus curiae only if amicus is a corporation. Counsel has a continuing duty to update this information. Please file an original and three copies of this form.

No. _____     Caption: In re CACI International Inc

Pursuant to FRAP 26.1 and Local Rule 26.1,

CACI, Inc.-Federal _____ who is Petitioner _____,
(name of party/amicus)          (appellant/appellee/amicus)

makes the following disclosure:

1.   Is party/amicus a publicly held corporation or other publicly held entity?
     [ ]   YES            [X]   NO

2.   Does party/amicus have any parent corporations?
     [X]   YES            [ ]   NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:   CACI International Inc

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
     [X]   YES            [ ]   NO
     If yes, identify all such owners:   CACI International Inc

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
     [X]   YES            [ ]   NO
     If yes, identify entity and nature of interest:  Titan Corporation

5.   Is party a trade association?
     [ ]   YES            [x]   NO
     If yes, identify all members of the association, their parent corporations, and any publicly held companies that own 10% or more of a member's stock:

6.   If case arises out of a bankruptcy proceeding, identify any trustee and the members of any creditors' committee:

_____          7 June 2005
(signature)                      (date)

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION

Only one form need be completed for a party even if the party is represented by more than one attorney. Disclosures must be filed on behalf of individual parties as well as corporate parties. Disclosures are required from amicus curiae only if amicus is a corporation. Counsel has a continuing duty to update this information. Please file an original and three copies of this form.

No. _____    Caption: <u>In re CACI International Inc</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>  CACI N.V.  </u> who is <u>  Petitioner  </u>,
(name of party/amicus)         (appellant/appellee/amicus)

makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?
    [ ]  YES                    [x]  NO

2.  Does party/amicus have any parent corporations?
    [x]  YES                    [ ]  NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:   CACI International Inc

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
    [X]  YES                    [ ]  NO
    If yes, identify all such owners:  CACI International Inc

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
    [x]  YES                    [ ]  NO
    If yes, identify entity and nature of interest:  Titan Corporation

5.  Is party a trade association?
    [ ]  YES                    [x]  NO
    If yes, identify all members of the association, their parent corporations, and any publicly held companies that own 10% or more of a member's stock:

6.  If case arises out of a bankruptcy proceeding, identify any trustee and the members of any creditors' committee:


_____
(signature)

_9 June 2005_
(date)

## TABLE OF AUTHORITIES

### CASES

*AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993) ................................21

*Agilent Technologies, Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322 (E.D. Va. 2004)..................15

*Alabama Aeromarine, Inc. v. Outboard Motor Corp.*, 1990 U.S. Dist. LEXIS 16186
(N.D. Ill. Nov. 29, 1990).....................................................................................25

*Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761 (4th Cir. 2003) .............................23

*In re Braxton*, 258 F.3d 250 (4th Cir. 2001)..................................................................13

*Brown v. Slenker*, 197 F. Supp. 2d 497 (E.D. Va. 2002) ................................................25

*Cessna Aircraft Co. v. Brown*, 348 F.2d 689 (10th Cir. 1965) .......................................17

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)...............................3, 24, 25, 26

*City of Virginia Beach v. Roanoke River Basin Ass'n*, 776 F.2d 484 (4th Cir. 1985) ..................15

*Corry v. The CFM Majestic Prods. Co.*, 16 F. Supp. 2d 660 (E.D. Va. 1998)........................14, 16

*Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002)...........................................23

*Henthorn v. Veterans Admin.*, No. 91-5080, 1992 WL 336784 (D.C. Cir. Nov. 6, 1992)...........17

*Hicks v. Duckworth*, 856 F.2d 934 (7th Cir. 1988)........................................................17

*Hoffman v. Blaski*, 363 U.S. 335 (1960) .......................................................................2

*Holmes v. Securities Investor Protections Corp.*, 503 U.S. 258 (1992) ........................................22

*Hunter Eng'g Co. v. ACCU Indus., Inc.*, 245 F. Supp. 2d 761 (E.D. Va. 2002)............................15

*Ibrahim, et al. v. Titan Corp., et al.*, Case No. 1:04-CV- 01248-JR (D.D.C. 2004).....5, 6, 7, 9, 10,
11, 17, 26, 27

*IntraNexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*, 227 F. Supp. 2d 581
(E.D. Va. 2002)...................................................................................................15

*Koh v. Microtek Int'l, Inc.*, , 250 F. Supp. 2d 627 (E.D. Va. 2003) ...............................15

*Kraft v. Hoskins*, 311 F. Supp. 1404 (E.D. Va. 1970) .................................................14

*Linnell v. Sloan*, 636 F.2d 65 (4th Cir. 1980) ............................................................................14

*Naegele v. Albers*, 355 F. Supp. 2d 129 (D.D.C. 2005)..............................................................20

*In re Ralston Purina Co.*, 726 F.2d 1002 (4th Cir. 1984).....................................................13, 14

*Relf v. Gasch*, 511 F.2d 804 (D.C. Cir. 1975)...........................................................12, 15, 17, 18

*Repub. of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997)...........21

*Saleh v. Titan Corp.*, 2005 WL 668830 (S.D. Cal. March 21, 2005) ...........................................7, 8

*Salinas v. United States*, 522 U.S. 52 (1997)..............................................................................23

*Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985)............................................................22

*ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997).............................................21

*U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924 (E.D. Va. 2005)......................15

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) .....................................................17, 18

*Sosa v. Alvarez Machain*, ___ U.S. ___, 124 S. Ct. 2739, 159 L. Ed. 2d 718 (2004) ....................3

*Starnes v. McGuire*, 512 F.2d 918 (D.C. Cir. 1974).....................................................................14

*Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28 (3d Cir. 1993) ...................................17

*United States v. Aramony*, 166 F.3d 655 (4th Cir. 1999)............................................................24

*United States v. Turkette*, 452 U.S. 576 (1981) .........................................................................23

## STATUTES

28 U.S.C. § 1404(a) .......................................................................................1, 2, 4, 11, 12,
                                                                                    13, 14, 15, 17, 18,
                                                                                                    27

## MISCELLANEOUS

Charles A. Wright et al., *Federal Practice & Procedure* § 3845, at 340 (2d ed. 1986)................15

I. **RELIEF SOUGHT: A WRIT DIRECTING THE DISTRICT COURT TO VACATE THE UNLAWFUL JUNE 3, 2005, TRANSFER ORDER**

Petitioners CACI International Inc, CACI, INC. – FEDERAL, and CACI N.V. (collectively, the "CACI Defendants") respectfully ask the Court to issue a writ of mandamus directing the United States District Court for the Eastern District of Virginia to vacate its June 3, 2005 order transferring this action for a *second* time, this time to the United States District Court for the District of Columbia.[1] For the reasons set forth in this petition, the district court's order constitutes an abuse of judicial power that warrants the extraordinary relief sought by the CACI Defendants.

II. **THE ISSUES PRESENTED: WHETHER THE DISTRICT COURT'S TRANSFER OF THIS ACTION PURSUANT TO 28 U.S.C. § 1404(A) IMMEDIATELY AFTER RECEIVING THE CASE PURSUANT TO A § 1404(A) TRANSFER CONSTITUTED AN ABUSE OF JUDICIAL POWER WHERE THE COURT MADE NO FINDING THAT THE CASE ORIGINALLY COULD HAVE BEEN BROUGHT IN THE TRANSFEREE DISTRICT AND DISREGARDED CASE LAW RESTRICTING THE COURT'S POWER TO TRANSFER THE CASE FOR A SECOND TIME**

This district court ordered the transfer of this action pursuant to 28 U.S.C. § 1404(a), which provides as follows:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil

---

[1] A copy of the June 3, 2005 order is attached as Exhibit 1 to the Declaration of John F. O'Connor.

> action to any other district or division where it might
> have been brought.

28 U.S.C. § 1404(a). Thus, § 1404(a) prohibits transfer of an action to a district

which would not have been a proper venue in the first instance. *Hoffman v. Blaski*,

363 U.S. 335, 344 (1960). In seeking a second transfer of this action, Plaintiffs

presented the district court with no evidence to support a finding that this action

originally could have been brought in the District of Columbia, and the district

court made no finding to this effect. Indeed, while this case was pending in the

United States District Court for the Southern District of California, Plaintiffs

actively opposed a transfer to the District of Columbia and advised that court that it

was "unclear" whether the action originally could have been brought in the District

of Columbia. The courts of appeals regularly issue writs of mandamus to prevent

the transfer of cases to a district where, as here, there has been no showing that the

action originally could have been brought in the transferee district. *See* Section

IV.B, *infra*.

    In addition, the district court abused its judicial power by reversing, without

explanation, the considered opinion of a coordinate United States District Court

that the appropriate forum for this action is the Eastern District of Virginia, even

though there had been absolutely no change in circumstances since the first

transfer of this action. Indeed, not one substantive event had taken place in the

Eastern District of Virginia before the court transferred the action to the District of

Columbia.   This second transfer ignores the Supreme Court's admonition in *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815 (1988), that courts are not "entirely free" to disregard the transfer decisions of coordinate courts and transfer cases for a second time.   The immediate re-transfer of this action without any assertion that there are changed circumstances or that the original transfer of this action was somehow erroneous constitutes an additional abuse of judicial power that warrants the issuance of a writ of mandamus.

## III.   PROCEDURAL BACKGROUND

### A.   Plaintiffs' Allegations

Plaintiffs filed this twenty-five count putative class-action complaint in the United States District Court for the Southern District of California on June 9, 2004.[2]   Plaintiffs allege that Defendants engaged in a conspiracy with high-ranking government officials (including the Secretary of Defense and various Undersecretaries of Defense) to increase demand for interrogation services through the abuse of detainees in Iraq.   Plaintiffs' complaint alleges that Defendants

---

[2] On June 30, 2004, Plaintiffs filed a First Amended Complaint to include an additional named Plaintiff and to correct the mistaken identification of Defendant Israel as a CACI employee.   Plaintiffs filed a Second Amended Complaint on July 30, 2004 to revise their allegations of a RICO "enterprise" and to allege that their Alien Tort Act Claims are within the scope of the conduct deemed actionable under *Sosa v. Alvarez Machain*, ___ U.S. ___, 124 S. Ct. 2739, 159 L. Ed. 2d 718 (2004).   A copy of the Second Amended Complaint, without its exhibits, is attached as Exhibit 2 to the accompanying Declaration of John F. O'Connor.

engaged in a pattern of racketeering activity, violated United States domestic and international law and intentionally and negligently committed a series of tortious acts against Plaintiffs, who were detainees at Abu Ghraib prison and elsewhere in Iraq. In most cases, the individual Plaintiffs have not even made allegations that they had *any* significant contact with Defendants or their employees, with Plaintiffs' counsel seeking to sidestep this evidentiary difficulty by asserting that their far-flung and unsupported conspiracy allegation allows Plaintiffs to tag Defendants with liability for virtually any injury suffered by an Iraqi detainee while in United States custody.

**B.    The CACI Defendants' Motion to Transfer Venue**

The CACI Defendants filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer venue from the Southern District of California to the Eastern District of Virginia.[3] In moving to transfer venue to the Eastern District of Virginia, the CACI Defendants presented considerable evidence that the Eastern District of Virginia is the center of gravity for this action. First, Plaintiffs are all Iraqi

---

[3] On September 10, 2004, the CACI Defendants and Defendant Titan Corporation each filed motions to dismiss the Second Amended Complaint on multiple grounds. Individual Defendants Nakhla, Stefanowicz, and Israel also filed motions to dismiss for lack of personal jurisdiction, and also joined in the motions to dismiss filed by the corporate defendants. Judge Rhoades determined that the appropriate course was to decide the transfer motion before deciding the motions to dismiss.

nationals who live outside the United States and had no connection to California, thus making it inappropriate to give any weight to the Plaintiffs' choice of forum. Second, the CACI Defendants are located in the Eastern District of Virginia, and the relevant contracting activity for both the CACI Defendants[4] and Defendant Titan Corporation occurred in this district. Third, Plaintiffs have alleged a conspiracy among the CACI Defendants, Defendant Titan Corporation, and high-level United States government officials. Many if not all of these witnesses are located in the Eastern District of Virginia. Finally, Plaintiffs' allegations concern the way in which the United States government conducted the war in Iraq; the decisions that Plaintiffs necessarily call into question emanated from the Pentagon, which is located in the Eastern District of Virginia.

The CACI Defendants' transfer motion also noted the pendency of another lawsuit, filed by a different set of plaintiffs in the U.S. District Court for the District of Columbia, *Ibrahim, et al. v. Titan Corp., et al.*, Case No. 1:04-CV-

---

[4] The particular CACI company that held the contract at issue for the CACI Defendants, CACI Premier Technology, Inc. ("CACI PT"), while related to the CACI Defendants, is not a party to this case, but is also located in the Eastern District of Virginia. Indeed, the order transferring this action to the Eastern District of Virginia specifically identified four employees or former employees of CACI PT who would have "material, first-hand knowledge regarding the seminal issues in this case," and noted that these potential witnesses live and reside in or near the Eastern District of Virginia, making it a more convenient forum. O'Connor Decl., Ex. 3 at 19.

01248-JR (D.D.C. 2004). The *Ibrahim* case is a nine-count complaint, filed on July 27, 2004. The *Ibrahim* lawsuit alleges that employees of the CACI Defendants and Titan Corporation, who were contracted by the U.S. government to provide interrogation and/or linguist services to Coalition forces in Iraq, directed and participated in the abuse and torture of prisoners at the Abu Ghraib prison. Plaintiffs are five Iraqis who allege that they suffered physical injury, emotional distress, and/or wrongful death while they or their family members were held in Abu Ghraib. Unlike the present action, the *Ibrahim* lawsuit does not allege a conspiracy between the corporate defendants and elements of the United States government and does not name any individuals as defendants.

Given the pendency of the *Ibrahim* case, the CACI Defendants suggested, as an alternative to this district, that the court might transfer venue to the U.S. District Court for the District of Columbia. At all times, however, the CACI Defendants argued that transfer to this Court was the most appropriate result. Notably, *Plaintiffs opposed transfer to the District of Columbia*, arguing that the District of Columbia was likely not a district in which the action "might have been brought." O'Connor Decl., Ex. 4 at 19 ("[I]t is unclear whether defendant's proposed 'alternate' forum even has personal jurisdiction over all defendants."). The Plaintiffs also rejected the notion that transfer to the District of Columbia would further the interest of judicial efficiency.

In explaining why transfer to the Eastern District of Virginia was preferable to a transfer to the District of Columbia, the CACI Defendants advised Judge Rhoades that consolidation of the two suits likely would not make sense. The *Ibrahim* plaintiffs had indicated that they would opt out of any class proposed for certification in this case and the counsel in *Ibrahim* had unequivocally rejected the notion of proceeding in conjunction with this action. Thus, traditional notions of judicial economy would not obtain. *Plaintiffs did not challenge this assertion.*

### C.  Judge Rhoades' Order Transferring This Action to the Eastern District of Virginia

On March 21, 2005, Judge Rhoades granted the CACI Defendants' motion and transferred the case to this Court. *Saleh v. Titan Corp.*, 2005 WL 668830 (S.D. Cal. March 21, 2005) (copy attached as Exhibit 3 to the O'Connor Declaration). In granting the CACI Defendants' motion to transfer venue, Judge Rhoades found that the Eastern District of Virginia – not the District of Columbia – was the appropriate forum for this action. Judge Rhoades specifically found transfer to the Eastern District of Virginia to be convenient for both the parties and witnesses. *Saleh,* 2005 WL 668830, at *5-11. The CACI Defendants have their principal place of business and corporate headquarters in the Eastern District and numerous witnesses reside in this district. *Id.* at *5-7.

Second, the court observed that Plaintiffs' allegations would necessitate "access to sensitive documents concerning United States military policy toward

detainees in Iraq as well as the United States military's interrogation records . . .
[which] are in the possession of the Defense Department and other agencies
located in and around the Eastern District of Virginia." *Id.* at *12. Third, the court
noted that the controversy had no relationship to the Southern District of
California: "Plaintiffs are not residents of this district, the alleged acts of abuse that
underlie plaintiffs' claims did not occur in this district, and California does not
have any significant interest in applying and interpreting its laws in this case." *Id.*
at *13. Conversely, the court found that the Eastern District of Virginia had a
strong connection to the action: "[I]f top government officials at the Pentagon
were, as Plaintiffs allege, involved in a conspiracy with Defendants, then the
Eastern District of Virginia would have a strong interest in this action . . . ." *Id.*
Finally, the ability of the Eastern District of Virginia to resolve the case more
quickly than the Southern District of California favored transfer. *Id.* at *13 n.2.

Dissatisfied with that decision, Plaintiffs sought to reverse it through a
petition for a writ of mandamus to the Ninth Circuit. On April 11, 2005, the Ninth
Circuit denied the petition for a writ of mandamus without requesting a response
from Defendants.

**D.    Plaintiffs' Motion for a *Second* Transfer of This Action**

Upon the docketing of this action in the Eastern District of Virginia, the
Plaintiffs' first move was to ask that court to disregard Judge Rhoades' decision

and immediately transfer the action to the United States District Court for the District of Columbia. Although Plaintiffs had taken the position before Judge Rhoades that it was "unclear" whether the District of Columbia was a district where this action originally could have been brought, O'Connor Decl., Ex. 4 at 19, Plaintiffs represented in their motion before the Eastern District of Virginia, without explanation or evidentiary support, that the District of Columbia would have been a proper forum for the original filing of this action. In addition, Plaintiffs' motion to transfer did not even attempt to argue that the District of Columbia was a more convenient forum for the parties or witnesses, or that anything had changed from the time that Judge Rhoades determined that this case should be transferred to the Eastern District of Virginia.[5]

Instead, Plaintiffs' sole argument was that this case should be transferred to the District of Columbia because of the supposed efficiencies to be gained by consolidation of this action with the *Ibrahim* action that is already pending in the District of Columbia. Of course, the *Ibrahim* action was pending in the District of Columbia when Plaintiffs vigorously opposed transfer to that district from the Southern District of California. Moreover, in representing to the district court that there were efficiencies to be gained through consolidation of this action with the

---

[5] Plaintiffs' memorandum in support of their motion to transfer is attached as Exhibit 5 to the accompanying Declaration of John F. O'Connor.

*Ibrahim* action (an action that differs from the present action in several material respects), Plaintiffs did not disclose to the district court that the *Ibrahim* plaintiffs had expressly and recently advised Plaintiffs' counsel that the *Ibrahim* plaintiffs had *no interest* in consolidation of their lawsuit with the present action. O'Connor Decl., Ex. 6. The CACI Defendants did not learn of this correspondence between Plaintiffs' counsel and the *Ibrahim* plaintiffs' counsel until June 8, 2005, when the *Ibrahim* plaintiffs attached the correspondence to a motion they filed in their action seeking to disqualify one of the Plaintiffs' counsel from appearing in the *Ibrahim* action. *See* O'Connor Decl., Ex. 7. Thus, Plaintiffs' representation to the district court of supposed efficiencies to be gained through consolidation, attenuated as that claim may have been in the first instance, was even more dubious than known at that time because Plaintiffs had failed to disclose to the district court that they had been expressly advised that the *Ibrahim* plaintiffs have no interest in consolidation. All Defendants opposed Plaintiffs' motion to transfer the action to the District of Columbia.[6]

On June 3, 2005, the district court, per Judge Hilton, issued a three-page order transferring this action to the District of Columbia. O'Connor Decl., Ex. 1.

---

[6] The principal opposition briefs were drafted by the CACI Defendants and by Defendant Titan Corporation. The CACI Defendants' opposition is attached as Exhibit 8 to the O'Connor Declaration, and Titan Corporation's opposition is attached as Exhibit 9 to the O'Connor Declaration.

That Order was docketed on June 6, 2005.[7]  That Order makes no finding that this action originally could have been brought in the District of Columbia.  Nor does the order assert that there had been any change in circumstances since Judge Rhoades issued his order transferring the case to the Eastern District of Virginia, or address the legal consequences of the Plaintiffs' opposition to a transfer to the District of Columbia when the transfer issue was before Judge Rhoades.  Instead, the district court, like the CACI Defendants unaware that the *Ibrahim* plaintiffs had explicitly and unambiguously rejected the notion of consolidation, based his transfer order solely upon the prospect that this case would be consolidated with the *Ibrahim* case upon its transfer to the District of Columbia.

## IV.   ARGUMENT

The CACI Defendants' petition differs from the typical challenge to a § 1404(a) transfer order in two important respects.  First, § 1404(a) unambiguously limits a district court's transfer power by permitting transfer only to a judicial

---

[7] On June 7, 2005, the CACI Defendants filed in the District Court a motion to stay the transfer order pending the filing and the disposition of this mandamus petition.  Subsequently, petitioners were advised that, before the clerk's office opened to the public, the clerk's office had delivered the case file to United Parcel Service for transmission to the U.S. District Court for the District of Columbia.  As of the preparation of this petition, the action had not been docketed in the U.S. District Court for the District of Columbia.  The CACI Defendants have also filed a motion in the Eastern District of Virginia, asking that court to request that the District of Columbia not docket the action and return the case file pending the disposition of this petition.

district where the action originally could have been brought. This is not a matter of judicial discretion, but a statutory limitation on the district court's power. *See, e.g., Relf v. Gasch*, 511 F.2d 804, 806 (D.C. Cir. 1975) ("Section 1404(a) restricts the District Court's discretion to transfer a civil action by confining the transfer to a judicial district 'where it could have been brought.'"). Plaintiffs presented the district court with no evidence to support a finding that this action could have been brought in the District of Columbia.[8] Second, this is not a first transfer of this action, but a second transfer that would take place immediately after the first, with no pretense of changed circumstances. Supreme Court and Fourth Circuit precedent places restraints on the district court's exercise of discretion when it would effectively reverse the transfer decision of a coordinate court.

**A.    The Standard for a Petition for a Writ of Mandamus**

A party seeking issuance of a writ of mandamus must demonstrate each of the following requirements:

> (1) he has a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to obtain the relief he desires; and (5) the issuance of the writ will effect right and justice in the circumstances.

---

[8] Indeed, even after the CACI Defendants filed an opposition that challenged whether the action could have been brought in the District of Columbia, Plaintiffs elected not to file a reply brief rather than to address this issue.

*In re Braxton*, 258 F.3d 250, 261 (4th Cir. 2001).  The CACI Defendants submit that the second, third, and fourth requirements are not at issue, as it is clear that vacation of the June 3, 2005 transfer order is an official function of the district court that can be accomplished only by the district court.  Moreover, the interests of right and justice are served by the issuance of relief to which a party has a clear and indisputable right.  Therefore, issuing a writ of mandamus is appropriate provided that the CACI Defendants demonstrate a clear and indisputable right to vacation of the transfer order.

In *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984), the Court discussed the propriety of mandamus relief in the context of the denial of a motion to transfer venue.  In that context, the Court held that "before the writ should issue in a case in which the matter at hand is entrusted to the discretion of the district court, the district court's abuse of discretion must amount to a 'judicial usurpation of power.'"  *Id.* (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980)).

Of course, the district court does not have the discretion to transfer an action under § 1404(a) to a district in which the action originally could not have been brought.  Thus, the district court's failure to make a finding that the action could have been brought in the District of Columbia, or to even require a showing of this requirement by Plaintiffs in the face of a challenge by the CACI Defendants, is not

- 13 -

tested for abuse of discretion but is an exercise of power that the district court does not possess. Similarly, the district court's immediate reversal of a coordinate court's determination that the appropriate forum for this action is the Eastern District of Virginia is not a matter committed to the district court's unrestrained discretion as this Court and the Supreme Court have recognized that such action should be undertaken only in the rarest of circumstances. The district court's opinion makes no attempt to show the existence of such circumstances. Therefore, each of the errors identified in this petition involve an abuse of judicial power, and not the garden-variety abuse of discretion that can be corrected on direct appeal.[9]

**B.    The District Court Committed Clear Error in Failing to Require a Showing That This Action Could Have Been Brought in the District of Columbia**

Plaintiffs, as the moving party, bear the burden of establishing the propriety of transfer. *See, e.g., Corry v. The CFM Majestic Prods. Co.*, 16 F. Supp. 2d 660, 666 n.13 (E.D. Va. 1998) citing *Kraft v. Hoskins*, 311 F. Supp. 1404, 1405 (E.D. Va. 1970). In deciding whether a transfer of venue is proper, a court must first

---

[9] Indeed, *Ralston Purina* involved the *denial* of a § 1404(a) transfer motion, where the district court's decision ultimately could be tested on direct appeal. However, both this Court and the District of Columbia Circuit have held that the court of appeals with supervisory power over the transferee court *cannot* review the propriety of the transferor court's decision to grant a motion to transfer. *Linnell v. Sloan*, 636 F.2d 65, 67 (4th Cir. 1980); *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974). Therefore, unlike the situation involved in *Ralston Purina*, it would be incorrect to submit that the CACI Defendants do not need mandamus relief because they can pursue their claims of error on direct appeal.

determine that the Plaintiff's claims could have been brought in the transferee

forum. *See, e.g., Agilent Technologies, Inc. v. Micromuse, Inc.,* 316 F. Supp. 2d

322, 325 (E.D. Va. 2004); *IntraNexus, Inc. v. Siemens Med. Solutions Health

Servs. Corp.,* 227 F. Supp. 2d 581, 582 n.3 (E.D. Va. 2002). This is not an

exercise of discretion, but a limitation on the district court's transfer power. *City

of Virginia Beach v. Roanoke River Basin Ass'n,* 776 F.2d 484, 489 (4th Cir. 1985)

("Transfer, of course, can be made only to a district where the action could have

been brought."); *Relf,* 511 F.2d at 806; *see also* Charles A. Wright et al., *Federal

Practice & Procedure* § 3845, at 340 (2d ed. 1986) ("Section 1404(a) of Title 28

permits transfer of an action only to another district or division 'where it might

have been brought.'" (quoting 28 U.S.C. § 1404(a)) (footnote omitted)).

Thus, the transfer analysis:

> properly begins with the recognition that the transfer
> statute, 28 U.S.C. § 1404(a), allows transfer to a
> transferee district only if the case "might have been
> brought" in that district. This threshold prerequisite must
> be addressed and resolved before it is appropriate to
> consider whether the case *should be* transferred to the
> transferee forum for the convenience of the parties and
> witnesses and in the interest of justice.

*U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.,* 357 F. Supp. 2d 924, 930 (E.D. Va.

2005). A movant must establish that both venue and jurisdiction with respect to

**each defendant** is proper in the transferee district. *Hunter Eng'g Co. v. ACCU

Indus., Inc.,* 245 F. Supp. 2d 761, 766 (E.D. Va. 2002); *Koh v. Microtek Int'l, Inc.,*

250 F. Supp. 2d 627, 631 (E.D. Va. 2003); *Corry,* 16 F. Supp. 2d at 663. Only *after* the court has resolved this threshold determination in the affirmative will the court reach the convenience factors that guide the district court's discretion in deciding whether it *should* transfer the action to another district.

In seeking a second transfer of this action, Plaintiffs presented no evidence to support a finding that this action could have been brought in the District of Columbia. Faced with the absence of such evidence, as well as their admission in the Southern District of California that it was "unclear" whether the District of Columbia qualified as a district in which the action could have been brought,[10] Plaintiffs merely offered a conclusory and unsupported assertion that "[i]t is clear that this action 'might have been brought' in the District of Columbia." O'Connor Decl., Ex. 5 at 13 n.10. Moreover, even after the CACI Defendants devoted half of their opposition to pointing out Plaintiffs' lack of evidence that the action could have been brought in the District of Columbia, Plaintiffs elected not to file a reply brief challenging this position.

The district court's order transferring this action to the District of Columbia makes no finding that the Plaintiffs' motion satisfies the threshold requirement of showing that the action could have been brought in the District of Columbia.

---

[10] *See* O'Connor Decl., Ex. 4 at 19.

Indeed, the district court's order does not even discuss this statutory limitation on its transfer power. O'Connor Decl., Ex. 1. Rather, the district court's transfer order merely discusses the supposed efficiencies to be gained through consolidation of this action with the *Ibrahim* action in the District of Columbia.

The district court's decision to transfer this action to the District of Columbia without finding that the proposed transferee district is one where an action originally could have been brought is just the type of abuse of judicial power that has caused courts of appeals to issue writs of mandamus vacating a transfer order. *See, e.g.*, *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 33 (3d Cir. 1993) ("The contacts relied upon by [defendant seeking transfer], whether considered individually or collectively, are insufficient to establish specific jurisdiction over [a co-defendant], thus the Southern District of Texas is not a district in which the action 'might have been brought.' Accordingly, the district court lacked the authority to transfer this case under 28 U.S.C. § 1404(a) and the writ must issue."); *see also Hicks v. Duckworth*, 856 F.2d 934, 935 (7th Cir. 1988); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965); *Henthorn v. Veterans Admin.*, No. 91-5080, 1992 WL 336784, at *1 (D.C. Cir. Nov. 6, 1992).

Two decisions in which courts of appeals issued writs vacating transfer orders are particularly instructive. In *Relf*, the District of Columbia Circuit noted

that venue in the transferee district was proper as to the United States "but that the record before us does not clearly establish that proposition for the individual defendants." *Relf*, 511 F.2d at 807. Because the record did not demonstrate that the district court's transfer order met the jurisdictional prerequisite of § 1404(a), the court issued the writ and remanded the proceedings. Similarly, in *Shutte*, the district court issued an order transferring an action under § 1404(a) based on the convenience of the parties, but "[n]o mention was made of Subsection 1404(a)'s limiting provision to the effect that a transfer is authorized by the statute only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action." *Shutte*, 431 F.2d at 24. Given the absence of any finding that the action could have been brought in the proposed transferee district, the Third Circuit held that it was obliged to issue the writ of mandamus to prevent transfer.

The present action is no different from the cases cited above, where courts of appeals have issued writs of mandamus to prevent the transfer of an action in the absence of a supportable finding that the action could have been brought in the transferee district. The June 3, 2005 transfer order makes no such finding, and does not even discuss the requirement in § 1404(a) that transfer may be made only to a district where the action originally could have been brought. The record provides no further support, as Plaintiffs merely offered a conclusory statement

that the action could have been brought in the District of Columbia and, when challenged on that point by the CACI Defendants, elected not to defend their position on reply.

Indeed, the record before the district court would not have supported a finding that venue in the District of Columbia was appropriate. First, Plaintiffs' attempt to wave off the jurisdiction/venue question as a non-issue, without any factual support whatsoever, must be measured against Plaintiffs' assertion in the Southern District of California that it was "unclear" whether their own lawsuit could have been brought in the District of Columbia. O'Connor Decl., Ex. 4 at 19. Second, the CACI Defendants provided the district court with record evidence that at least one of the individual defendants has *no contacts* with the District of Columbia that would support an exercise of personal jurisdiction over him in that district.

In opposing the transfer of this action to the District of Columbia, the CACI Defendants presented the district court with the Declaration of Defendant Steven Stefanowicz. That Declaration provides unrebutted record evidence that Mr. Stefanowicz: (1) has never lived in the District of Columbia; (2) has never conducted any business of any kind in the District of Columbia; (3) maintains no residences in the District of Columbia; (4) has never negotiated or signed a contract in the District of Columbia; (5) has no bank accounts in the District of

Columbia; (6) has no automobiles registered in the District of Columbia; and (7) owns no real or personal property in the District of Columbia. *See* O'Connor Decl., Ex. 10. The Declaration also states that the alleged acts or omissions for which Plaintiffs seek to hold Mr. Stefanowicz liable, as alleged in paragraphs 23 and 25 of the Second Amended Complaint, all occurred outside the District of Columbia.[11] As a result, the District of Columbia long-arm statute does not confer personal jurisdiction over Mr. Stefanowicz, and likely over other of the individual defendants. *See, e.g., Naegele v. Albers*, 355 F. Supp. 2d 129, 138 (D.D.C. 2005) (dismissing claims for lack of personal jurisdiction where plaintiff failed to show that defendant "transacted any business in the District, contracted to supply services in the District, caused tortious injury to him in the District, or that the defendant caused a tortious injury to him outside of the District but nevertheless solicits business or derives a substantial income from services rendered in the District").

Given Mr. Stefanowicz's complete lack of contacts with the District of Columbia, the only possible basis upon which Plaintiffs could assert personal jurisdiction over Mr. Stefanowicz in the District of Columbia is through the RICO statute's provision for nationwide service of process. This Court and other courts

---

[11] A similar lack of jurisdiction may also exist with respect to other individual defendants.

of appeals, however, have recognized that a plaintiff may not evade the constitutional protection inherent in the doctrine of personal jurisdiction[12] by asserting a patently flawed RICO claim and then using RICO's nationwide service of process to justify personal jurisdiction over other claims. In *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d at 629, this Court held that a district court rely upon RICO's nationwide service of process provision to exercise personal jurisdiction over a defendant for non-RICO claims "arising from the same nucleus of fact," but only "so long as the federal [RICO] claim is not wholly immaterial or insubstantial." *Id.*; *see also Repub. of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) (same); *AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (applying same analysis to nationwide service of process provision in Multi-employer Pension Plan Amendments Act).

In this case, the district court made no findings concerning the viability of Plaintiffs' RICO claims, and the ability of Plaintiffs to rely on their RICO claims as the basis for personal jurisdiction for the other federal and state law claims asserted against the individual defendants. This omission in itself merits issuance

---

[12] *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997) ("The Fifth Amendment's Due Process Clause . . . protects the liberty interests of individuals against unfair burden and inconvenience.").

of the writ.  Here, however, the parties have pending motions to dismiss Plaintiffs'

RICO claims that demonstrate that the RICO claims are frivolous on their face.

Plaintiffs' RICO claims make the improbable assertion that Defendants and

certain elements of the United States government conspired to abuse detainees held

in wartime detention facilities in Iraq, for the ostensible purpose of increasing the

United States' demand for interrogation services.  While the obvious flaws in

Plaintiffs' RICO counts are discussed in considerable detail in the motions to

dismiss pending before the district court,[13] some of the more obvious flaws can be

summarized as follows:

*First*, Plaintiffs' alleged injuries are personal injuries, not injuries to their

business or property.  The Supreme Court has held that a RICO plaintiff "only has

standing if, and can recover to the extent that, he has been injured in his business

or property by the conduct constituting the [RICO] violation." *Sedima S.P.R.L. v.*

*Imrex Co., Inc.*, 473 U.S. 479, 496-97 (1985); *see also Holmes v. Securities*

*Investor Protections Corp.*, 503 U.S. 258, 268 (1992).

---

[13] A copy of the CACI Defendants' motion to dismiss the Second Amended
Complaint, attached as Exhibit 11 to the O'Connor Declaration, discusses the
myriad flaws with Plaintiffs' RICO claims at length, as does the supplemental
memorandum filed by the CACI Defendants after the transfer of this action to the
Eastern District of Virginia. *See* O'Connor Decl., Ex. 12.

*Second,* Plaintiffs have failed to plead a RICO "enterprise" that is "an entity . . . separate an apart from the pattern of [racketeering] activity in which it engages." *United States v. Turkette,* 452 U.S. 576, 583 (1981). This flaw is fatal to Plaintiffs' RICO claims. *Id.*

*Third,* Plaintiffs have failed to allege any factual basis for a finding that the Defendants engaged in a RICO conspiracy. *See Salinas v. United States,* 522 U.S. 52, 63, 65 (1997). Under Fourth Circuit pleading standards, merely stating the legal conclusion that a conspiracy existed is insufficient; the pleader must allege facts concerning the formation and operation of the conspiracy. *Bass v. E.I. Dupont De Nemours & Co.,* 324 F.3d 761, 765-66 (4th Cir. 2003) ("[Plaintiff] has done no more than assert that the EEOC and Dupont conspired together; the facts that she has alleged do not give rise to a reasonable inference of conspiracy."); *see also Dickson v. Microsoft Corp.,* 309 F.3d 193, 212-13 (4th Cir. 2002) ("The pleader may not evade Rule 12(b)(6)'s requirements by merely alleging a bare legal conclusion . . . ."). Yet, that is exactly what Plaintiffs try to do in their complaint, merely asserting, without factual support, that a conspiracy existed between all of the Defendants and an undefined cadre of high-level United States officials and military personnel.

Plaintiffs cannot use an implausible and obviously flawed RICO claim as a Trojan horse to manufacture personal jurisdiction in the District of Columbia over

Mr. Stefanowicz (and likely the other individual defendants) for their non-RICO claims. Because the record does not support a finding that this action could have been brought in the District of Columbia, and the district court made no finding to that effect, the June 3, 2005 transfer order is a clear abuse of judicial power.

### C.    The District Court Abused Its Judicial Power By Immediately Reversing, Without Changed Circumstances or Explanation, the Considered Opinion of a Coordinate Court That Transfer to the Eastern District of Virginia Was Appropriate

In transferring this action to the Eastern District of Virginia, Judge Rhoades necessarily considered, and rejected, the District of Columbia as the appropriate forum for the litigation of this action. That decision is the law of the case, and the district court abused its judicial power by immediately reversing Judge Rhoades' considered opinion without any change in circumstances and, indeed, without any explanation.

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815 (1988); *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999).[14]

---

[14] The law of the case must be applied: "in all subsequent proceedings in the same case in the trial court or on a later appeal ...unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was

The doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions. *Christianson*, 486 U.S. at 816. The doctrine routinely applies to transfer decisions of coordinate courts. *Id.* (citations omitted). As noted in *Christianson*, "the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Id.* Moreover, where the prior ruling "was issued by a different district, the prior ruling is entitled to great deference and should not be revisited absent a compelling reason to do so." *Brown v. Slenker*, 197 F. Supp. 2d 497, 504 (E.D. Va. 2002). Unless a plaintiff can identify changed circumstances making a re-transfer appropriate, courts apply the doctrine of the law of the case to "suggest the wisdom of not re-examining the decision of a coordinate court." *Alabama Aeromarine, Inc. v. Outboard Motor Corp.*, 1990 U.S. Dist. LEXIS 16186 (N.D. Ill. Nov. 29, 1990) (denying motion to re-transfer because of failure to demonstrate changed circumstances and noting that "transferor court had these issues before it when it granted the Motion to Transfer").

___

clearly erroneous and would work manifest injustice." *Aramony*, 166 F.3d at 661 (quoting *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)).

In issuing the June 3, 2005 transfer order, the district court made no reference to the law of the case doctrine, or the Supreme Court's admonition in *Christianson*, 486 U.S. at 7, that courts should be very hesitant to transfer an action a second time. The district court merely made reference to the potential for judicial efficiency through consolidation of this action with the *Ibrahim* case in the District of Columbia. However, the district court's order made no assertion that Judge Rhoades had erred in transferring the action to the Eastern District of Virginia, even though the *Ibrahim* action was pending in the District of Columbia at the time of Judge Rhoades' transfer order. Nor did the June 3, 2005 transfer order note that Plaintiffs previously had opposed transfer to the District of Columbia and had advised Judge Rhoades that "it will not conserve judicial resources to transfer this action" to the District of Columbia. O'Connor Decl., Ex. 4 at 20.

Moreover, it is apparent that the district court's discussion of the prospect of transfer was not informed by the fact that the *Ibrahim* plaintiffs had, as recently as March 24, 2005, expressly advised Plaintiffs' counsel that they would object to consolidation of this action with the *Ibrahim* case. Thus, at the time that Plaintiffs were advising the district court of the many efficiencies supposedly to be gained by transfer and consolidation, Plaintiffs withheld from the district court their own knowledge that any attempt to consolidate the actions in the District of Columbia

would be opposed vigorously by the *Ibrahim* plaintiffs. *See* O'Connor Decl., Ex. 6. Therefore, any conclusion by the district court that the prospect of judicial economy should trump all other factors – including the law of the case doctrine and the statutory requirement that transfer be to a district where venue is proper over all defendants – was not even based on all of the facts known to Plaintiffs' counsel concerning the possibility of consolidation.

## V.   CONCLUSION

Absent the issuance of a writ of mandamus, the CACI Defendants have no available means to seek redress for the abuse of judicial power inherent in the June 3, 2005 transfer order. The district court's order to transfer this action to the District of Columbia exceeds the district court's transfer powers under § 1404(a) and reverses the considered twenty-five page transfer order issued by a coordinate federal district court, without any explanation or pretense of changed circumstances. For all of these reasons, the Court should issue the writ of mandamus directing the district court to vacate its transfer order.

Respectfully submitted,

J. William Koegel, Jr. (VA Bar No. 38243)
John F. O'Connor
Frank H. Griffin, IV
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902

By:

J. William Koegel, Jr.

*Counsel for Petitioners for CACI
International Inc, CACI INC.-FEDERAL,
and CACI N.V.*

- 28 -

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served this 9th day of June, 2005,

in the manner indicated below, on the following:

> The Honorable Claude M. Hilton (by hand delivery)
> United States District Judge
> United States District Court
>     for the Eastern District of Virginia
> 401 Courthouse Square
> Alexandria, Virginia  22314
>
> Susan L. Burke (by electronic transmission and overnight delivery)
> MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP
> 123 South Broad Street
> Philadelphia, Pennsylvania 19109
> slburke@mmwr.com
>
> **Attorneys for Plaintiffs**
>
> F. Whitten Peters (by electronic transmission)
> Ari Zymelman
> WILLIAMS & CONNOLLY
> 725 12th Street, N.W.
> Washington, D.C. 20005
> wpeters@wc.com
> azymelman@wc.com
>
> **Attorneys for Defendant Titan Corporation**
>
> James Hundley (by electronic transmission)
> BRIGLIA & HUNDLEY, P.C.
> 10560 Main Street, Suite 314
> Fairfax, Virginia 22030
> jhundley@briglia-hundley.com

Henry E. Hockeimer, Jr. (by electronic transmission)
HANGLEY ARONCHICK SEGAL & PUDLIN, P.C.
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103-6933
heh@hangley.com

**Attorneys for Defendant Steven Stefanowicz**

Alison Doyle (by electronic transmission)
Shari L. Klevens
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C. 20006
adoyle@mckennalong.com
sklevens@mckennalong.com

**Attorneys for Defendant John Israel**

Adam L. Rosman (by electronic transmission)
Ellen D. Marcus
Eric Delinsky
ZUCKERMAN SPAEDER
1201 Connecticut Avenue, N.W.
Washington, D.C. 20036
arosman@zuckerman.com
emarcus@zuckerman.com
edelinsky@zuckerman.com

**Attorneys for Defendant Adel Nakhla**

John F. O'Connor