# - No. 05-1636 -

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**IN RE CACI INTERNATIONAL INC., CACI INCORPORATED – FEDERAL, CACI N.V.,** *Petitioners*

ON PETITION FOR WRIT OF MANDAMUS FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT NO. 05-CV-427

_____

**PLAINTIFFS' RESPONSE TO PETITION FOR WRIT OF MANDAMUS**

_____

Susan L. Burke (VA Bar # 27769)
Jonathan H. Pyle
MONTGOMERY, MCCRACKEN,
    WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109
Telephone:     (215) 772-1500
Facsimile:      (215) 772-7620

*Counsel for Plaintiffs and Parties in Interest Saleh et al.*

# TABLE OF CONTENTS

**Page**

Summary of Argument.................................................................. 1

Statement of Facts......................................................................2

Argument................................................................................12

    I.    An Extraordinary Writ May Only Be Granted in Drastic
        Circumstances............................................................14

    II.    The District Court Had the Power To Transfer the Action for
        Reasons of Judicial Economy......................................16

    III.    The District Court Had the Discretion To Rule that the RICO
        Claims Were Colorable and that the Action Might Have Been
        Brought in the District of Columbia..............................17

Conclusion .............................................................................24

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*A. J. Indus., Inc. v. U. S. Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384 (9th Cir. 1974)   18

*Akers v. Norfolk and W. Ry.*, 378 F.2d 78 (4th Cir. 1967)   18

*Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379 (1953)   15

*D'Addario v. Geller*, 264 F. Supp. 2d 367 (E.D. Va. 2003)   22

*ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997)   passim

*General Tire & Rubber Co. v. Watkins*, 373 F.2d 361 (4th Cir. 1966)   1, 5, 16, 17

*Gower v. Lehman*, 799 F.2d 925 (4th Cir. 1986)   13

*Hoffman v. Blaski*, 363 U.S. 335 (1960)   9, 17

*In re Braxton*, 258 F.3d 250 (4th Cir. 2001)   15, 23

*In re Catawba Indian Tribe of S.C.*, 973 F.2d 1133 (4th Cir. 1992)   14

*In re Collett*, 337 U.S. 55 (1949)   17

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049 (2d Cir. 1993)   22

*Kerr v. United States Dist. Court*, 426 U.S. 394 (1976)   14

*Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782 (6th Cir. 1961)   23

*Sadighi v. Daghighfekr*, 36 F. Supp. 2d 267 (D.S.C. 1999)   22

*United States v. Oncology Assocs., P.C.*, 198 F.3d 502 (4th Cir. 1999)   15

**FEDERAL STATUTES**

28 U.S.C. § 1404(a)   1

# SUMMARY OF ARGUMENT

The only issue before this Court is whether the District Court (J. Hilton) had the discretion to decide that this action "might have been brought" in the District Court for the District of Columbia, and thus could be transferred there under 28 U.S.C. § 1404(a). As explained below, it is clear from the record of events that the District Court (J. Hilton) carefully considered the transfer issue, decided the action could have been brought in the District of Columbia, and transferred it there in order to conserve judicial resources. The Court's ruling and its exercise of discretion to transfer the action for reasons of judicial economy was in complete accord with controlling decisional law from the Court of Appeals for the Fourth Circuit, including *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626-27 (4th Cir. 1997) and *General Tire & Rubber Co. v. Watkins*, 373 F.2d 361 (4th Cir. 1966).

Defendant CACI International, Inc. ("CACI") concocted a petition for a writ of mandamus that argued the District Court (J. Hilton) made a clear error because he granted the plaintiffs' motion to transfer without making them prove that they could have sued one of the individual defendants, Steven Stefanowizc, in the District of Columbia. CACI argued that the District Court (J. Hilton) erred by failing to require the plaintiffs to carry their burden of proof. As the only evidence to support this argument, CACI relied on the "fact" that the plaintiffs failed to file

a Reply brief after CACI's opposition muddied the jurisdictional waters. CACI argued that Judge Hilton acted beyond his authority because he did not "even require a showing of this [jurisdictional] requirement in the face of a challenge by the CACI Defendants." *CACI Petition for Writ of Mandamus at 13.*

But CACI, not the District Court (J. Hilton), erred. CACI simply failed to read the Reply brief (properly and timely served) in which the plaintiffs carried the burden of rebutting CACI's challenge and establishing the District of Columbia as an eligible transferee jurisdiction. When apprised of its error, CACI did not withdraw the Petition for Mandamus, as would have been appropriate in light of the record below. Instead, CACI filed an addendum that attempts to rebut the plaintiffs' Reply, but fails to identify in any way why the District Court (J. Hilton) was not free to exercise discretion in light of the undisputed facts and agree with the plaintiffs' (rather than CACI's) legal analysis of jurisdiction. The fact that the District Court (J. Hilton) disagrees with CACI does not suffice as a reason for this Court to issue an extraordinary writ.

## STATEMENT OF FACTS

This is a case about whether government contractors and their employees can be held accountable for their role in torturing and abusing prisoners at the Abu Ghraib and other prisons in Iraq. The case ("the *Saleh* action") was filed in the Southern District of California on June 9, 2005 against CACI International, Inc.,

Titan Corporation, Steven Stefanowicz, Adel Nakhla, and John Israel, all of whom were publicly identified by U.S. Army General Taguba as participating in and directing the torture and abuse at Abu Ghraib. *Second Amended Class Action Complaint*, Ex. H. at 17, 19, 48. This case was brought as a class action and seeks relief on behalf of everyone tortured at Abu Ghraib and other prisons in Iraq under United States' control. The case was filed in the Southern District of California because Titan Corporation, the larger of the two corporate defendants, is headquartered in San Diego.

On July 27, 2004, the Abu Ghraib torture scandal prompted the filing of another action against CACI and Titan. An action captioned *Ibrahim v. Titan Corp.* (the "*Ibrahim* action"), was filed in the United States District Court for the District of Columbia. *See* No. 04-cv-1248 (D.D.C.). The *Saleh* and the *Ibrahim* action challenge the same course of conduct by the government contractors. The *Ibrahim* action does not seek recovery from the three individual CACI and Titan employees.

Although the *Saleh* case has been pending for more than one year, there has not been much forward progress towards resolution. CACI and the other defendants filed substantial motions to dismiss under Fed. R. Civ. P. 12(b)(6), arguing, among other things, that the torture victims could not assert claims under the Rackeetering Influenced Corrupt Organizations Act ("RICO"). *See*

- 3 -

*Memorandum of Points and Authorities in Support of the Motion of Defendants CACI International Inc., CACI Inc. – Federal, and CACI N.V. To Dismiss Plaintiffs' Second Amended Complaint (Sept. 10, 2004); Memorandum of Points and Authorities in Support of Defendant Titan's Motion To Dismiss (Sept. 10, 2004).* Two of the three individual defendants – Stephanowicz and Nakhla – sought dismissal on the ground that the Southern District of California did not have personal jurisdiction over them under the RICO nationwide service of process provision. *Motion of Defendant Steven A. Stefanowicz To Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction and, Alternatively, To Dismiss the Action and/or claims Therein (Sept. 10, 2004); Adel Nakhla's Motion To Dismiss the Complaint for Lack of Personal Jurisdiction and Failure to State a Claim Upon Which Relief Could Be Granted (Sept. 10, 2004).* The third individual, John Israel, is a California resident and did not contest jurisdiction. *Nov. 22, 2004 Hr'g Tr. at 49-50.*

After months of briefing by the parties, but before the long-awaited hearing on whether the victims' RICO and other claims would survive the Rule 12(b)(6) motions, CACI filed a motion seeking to transfer of the action from the Southern District of California to the Eastern District of Virginia or, in the alternative, the District of Columbia. *Motion of Defendants CACI International Inc., CACI Inc. – Federal, and CACI N.V. To Transfer Venue (Nov. 10, 2004).* CACI's co-defendant

Titan joined the motion, but asked that the District Court (J. Rhoades) rule on the long-pending motions to dismiss before taking up the transfer motion. *The Titan Corporation's Response to the CACI Defendants' Motion To Transfer (Dec. 13, 2004) at 1.* CACI urged the District Court to take up transfer first. *Nov. 22, 2004 Hr'g Tr. at 52.*

During the February 14, 2005, oral argument held on the motion to transfer before the Southern District of California, CACI abruptly changed its position and withdrew its request for transfer in the alternative to the District of Columbia. *Feb. 14, 2004 Hr'g Tr. at 27-28.* CACI asserted in that hearing that there may not be personal jurisdiction over all of the defendants in the District of Columbia. *Id.* The torture victims argued that their choice of forum should be accorded deference and that transfer to any other forum should be denied. *Plaintiffs' Opposition to CACI Defendants' Motion To Transfer Venue (Dec. 13, 2004).* The torture victims did not address in any way CACI's new assertion that the District of Columbia lacked jurisdiction.[1]

---

[1] At that time, CACI stood alone in identifying the alleged jurisdictional defect. Indeed, Counsel for Stefanowicz, the same individual defendant who later supplied a declaration so CACI could try to resist the transfer to the District of Columbia, stated: "either DC or Virginia would certainly be a more convenient forum for Mr. Stevonivich [sic], access to witnesses, access to documents." *Feb. 14, 2004 Hr'g Tr. at 60.* Later, despite having joined the motion to transfer the action to the District of Columbia, Stefanowizc dutifully provided his employer or former

(continued . . .)

On March 21, 2005, the Southern District of California transferred the action to the Eastern District of Virginia on the grounds of convenience to the parties and witnesses. Not surprisingly in light of the movant's position, the District Court (J. Rhoades) issued a decision that addressed only the merits of transfer to the Eastern District of Virginia. *Mar. 21, 2005 Order.* After the transfer to the Eastern District of Virginia, the torture victims immediately and successfully moved to transfer this action to the District of Columbia for one simple and straightforward reason – judicial economy. *Plaintiffs' Motion to Transfer Venue to the District Court for the District of Columbia (May 10, 2005).*

The torture victims argued that the Court (J. Hilton) should consider whether judicial efficiency propels transferring this action across the river. *Id. at 7-10.* Transfer spares the parties the need to draft and file every paper twice and the need to argue every motion twice and spares the District Court from having to rule on issues that have been ruled on or are pending before the District Court in the District of Columbia. *Reply to CACI's Opposition to Plaintiffs' Motion To Transfer Venue to the District of Columbia (May 26, 2005) at 2-3.* Transfer also

---

(. . . continued)
employer, CACI, with an affidavit attesting to no contacts with the District of Columbia.

prevents two district courts located only ten miles apart from issuing possibly conflicting decisions. *Id. at 3.*

In its Opposition to the Motion To Transfer, CACI argued that the District of Columbia was not a district where the action "might have been brought" under Section 1404. *Memorandum of the CACI Defendants in Opposition to Plaintiffs' Motion To Transfer Venue (May 23, 2005) at 11-14.*[2] CACI relied exclusively on a declaration by Steven Stefanowicz (a former CACI employee), who asserted that he had no contacts with the District of Columbia,[3] and CACI's own self-serving prediction that the torture victims' RICO claims would not survive the Rule 12(b)(6) motions to dismiss. *Declaration of John O'Connor (May 23, 2005) at Ex. D.* To date, no District Court has heard the motions to dismiss the *Saleh* RICO

---

[2] CACI also made a law of the case argument that lacked merit. *Id. at 6-10.* At present, however, only the jurisdictional arguments are before this Court because the action is now pending in the District of Columbia.

[3] Defendants Nakhla, Stefanowicz, and Israel joined the oppositions to the transfer filed by CACI and Titan. *Defendant Adel L. Nakhla's Memorandum in Opposition to Plaintiffs' Motion To Transfer Venue to the District Court for the District of Columbia (May 23, 2005); Stefanowicz's Opposition to Plaintiffs' Motion to Transfer Venue (May 23, 2005); Joinder to Memoranda in Opposition to Motion To Transfer Venue to the District Court for the District of Columbia (May 23, 2005).* Defendants Nakhla and Israel also filed motions to dismiss claiming that the Eastern District of Virginia lacked personal jurisdiction over them. *Defendant Adel L. Nakhla's Motion To Dismiss the Second Amended Class Action Complaint (May 26, 2005); Memorandum in Support of Defendant John B. Israel's Motion To Dismiss the Second Amended Class Action Complaint (May 26, 2005).*

claims.  The District Court of the District of Columbia heard the motions to

dismiss the RICO claims filed by the *Ibrahim* plaintiffs.  The *Ibrahim* plaintiffs

(unlike the *Saleh* plaintiffs) failed to allege any business injury, which lead the

Court to make comments that seemed to indicate the RICO claims may be

dismissed.

Titan, who had urged transfer to District of Columbia before the Southern

District of California, *The Titan Corporation's Response to the CACI Defendants'*

*Motion To Transfer*, opted not to join CACI's last minute reversal on jurisdiction

in the District of Columbia, but instead argued that transfer would not achieve the

judicial efficiencies identified by the torture victims because, among other reasons,

the counsel for the *Ibrahim* case were not willing to consent to consolidation.

*Defendant the Titan Corporation's Opposition to Plaintiffs' Motion to Transfer to*

*the District Court for the District of Columbia (May 23, 2005)*.

The torture victims timely filed and served Reply briefs to both Titan and

CACI Oppositions.  *Reply to CACI's Opposition to Plaintiffs' Motion To Transfer*

*Venue to the District of Columbia (May 26, 2005) ("Reply to CACI"); Reply to*

*Titan's Opposition to Plaintiffs' Motion to Transfer Venue to the District of*

*Columbia (May 26, 2005) ("Reply to Titan")*.  The Replies were e-mailed and

mailed to CACI counsel.  In its Reply to the CACI Opposition, the torture victims

characterized CACI's jurisdictional argument premised on the individual

defendants (who are free to consent to jurisdiction and who had advocated for transfer to the District of Columbia) as a "red herring" and explained at length to the District Court (J. Hilton) why the torture victims' invocation of RICO jurisdiction suffices to give the District of Columbia jurisdiction. *Reply to CACI at 2, 6-7.* The torture victims explained the invocation of RICO jurisdiction is valid so long as the RICO claims are colorable. Thus, even the claims get dismissed for some reason during the course of litigation, personal jurisdiction survives so long as the claims were colorable when stated. The torture victims also alerted the District Court that CACI was engaged in exactly the type of selective waiver for forum-shopping purposes that the Supreme Court forbade in *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). *Reply to CACI at 2, 4-6.*

In its Reply to the Titan Opposition, the torture victims told the District Court (J. Hilton) that the *Ibrahim* counsel likely would not willingly consent to jurisdiction, but that "[t]he happenstance that plaintiffs' counsel would not have voluntarily chosen to work together does not merit the federal district courts expending twice the resources they would otherwise expend." *Reply to Titan at 4.* (The reasons for the *Ibrahim* counsel's animosity towards the undersigned counsel are set forth in the Reply to the Titan Opposition, but have no bearing on the issue before this Court.)

On May 27, 2005, after the completion of the briefing, the District Court (J. Hilton) held a hearing.  The torture victims explained why transfer was merited and why personal jurisdiction in the District of Columbia was clear under the RICO nationwide service of process provision.  Counsel for the torture victims explained to the Court:

> The same reason why the California Court had the power to transfer it here [Virginia] is the reason that this Court has the power to transfer it to D.C.  And that is that the plaintiffs have asserted jurisdiction under RICO.  Now, the defendants argue, well, Judge Robertson has suggested in oral argument that he may dismiss the RICO claims in the other [*Ibrahim*] case.  Setting aside whether that is even relevant to this Court's decision, the reality is that dismissal by Judge Robertson for failure to properly plead RICO is not the same thing as saying that there was never RICO jurisdiction for the plaintiffs to have filed the lawsuit in D.C.

*May 27, 2005 Hr'g Tr. at 3-5 (attached hereto as Exhibit A).*

Counsel for CACI did not rebut the torture victims' jurisdictional argument during oral argument.  (Nor did any other counsel.)  *Id. at 5-14.*  Indeed, CACI, when asked why the action should not be transferred to the District of Columbia, merely recited that it did more business in Virginia than in the District and that it did not think a second transfer was appropriate.  *Id. at 7-8.*  At the time of the hearing, CACI had not read the torture victims' Reply brief that explained why controlling decisional law (*ESAB Group, Inc.*, 126 F.3d at 626-27) supported the torture victims' argument on RICO jurisdiction, not CACI's argument.  But even

so, CACI had the opportunity to try to persuade the Court not to accept the torture victims' legal reasoning relating to RICO jurisdiction, but did not do so. Counsel for the torture victims assumed, as perhaps did the Court, that CACI had decided that pressing a legally-infirm jurisdictional argument contrary to *ESAB Group, Inc.*, 126 F.3d at 626-27, would not carry the day and doing so would undermine CACI's credibility on its law of the case and judicial economy arguments.

On June 3, 2005, the District Court (J. Hilton) issued a written order transferring the case to the District of Columbia for reasons of judicial economy. *June 3, 2005 Order.* On June 7, 2005, the Clerk of the Eastern District of Virginia mailed the case file to the District of Columbia. After learning that the case file had been mailed out of the Eastern District of Virginia, CACI asked the Court (during a telephonic conference with all parties present) to send a letter to the District Court for the District of Columbia and ask it not to docket the matter. The District Court (J. Hilton) stated that he had thoroughly and carefully considered the transfer motion and was not willing to request that the District of Columbia send the files back to the Eastern District of Virginia.

Thereafter, CACI tried to persuade the District Court for the District of Columbia that it should not docket the action. That Court (J. Hogan) refused CACI's request and ordered the action docketed on June 10, 2005, the day after CACI filed its petition for writ of mandamus. The Court also *sua sponte* filed a

notice identifying the *Ibrahim* action as a related case on the grounds that the *Ibrahim* action "grows out of the same event or transaction."

On June 13, 2005, counsel for the torture victims sent an e-mail to counsel for CACI asking them to correct their erroneous statements that they did not file a reply brief. On June 15, 2005, rather than withdrawing the Petition which now was known to lack any arguable basis to challenge the District Court's conduct, CACI instead filed an Addendum to Petitioners' Petition for Writ of Mandamus. The Addendum was a four-page effort to erase CACI's silence on jurisdictional issues during oral argument.[4]

On June 22, 2005, CACI filed its Second Addendum to Petitioners Petition for Writ of Mandamus, a four-page argument that the docketing of the *Saleh* action in the District of Columbia was of no consequence. Consistent with this Court's order, the torture victims will be filing a response to that Addendum on July 5, 2005.

## ARGUMENT

Although as will be further explained in the July 5, 2005, response, the physical transfer of the action to the District of Columbia divests this Court of jurisdiction over the District Court's non-jurisdictional rulings, this Court retains

---

[4] CACI attached plaintiffs' Reply to CACI, but did not attach plaintiffs' Reply to Titan. Therefore, plaintiffs' Reply to Titan is attached hereto as Exhibit B.

the inherent jurisdiction to determine whether the transfer itself was within the

authority of the District Court. *See Gower v. Lehman*, 799 F.2d 925, 927 (4th Cir.

1986). If indeed the District of Columbia is not a jurisdiction where the action

"might have been brought" (as that term is used in Section 1404), the Eastern

District of Virginia simply lacked the authority or power to transfer the action

there, and any transfer could be set aside via a writ of mandamus.

Here, the District of Columbia is an eligible jurisdiction under Section 1404

jurisprudence. The District Court (J. Hilton) considered and rejected CACI's

challenge to jurisdiction premised exclusively on an assumption that torture

victims' RICO claims against the individual defendants may in the future be

dismissed under Fed. R. Civ. P. 12(b)(6). In so doing, the District Court was on

the firm terrain established by the Court of Appeals in *ESAB Group, Inc.*, 126 F.3d

at 626-27, which held that dismissing RICO claims pursuant to Rule 12(b)(6) is *not*

equivalent to finding those claims were so frivolous as to deprive the plaintiffs of

the ability to assert personal jurisdiction under RICO's nationwide service-of-

process provisions.

In its Petition for a Writ, CACI does not bring forward any evidence or

argument that establishes the District Court erred or failed to consider some pivotal

fact. Instead, CACI tries to hang on to its chosen forum by simply reiterating the

same arguments made below – an individual defendant, Steven Stefanowicz, lacks

- 13 -

personal contacts with the District of Columbia District Court and therefore would not be subject to its jurisdiction if for some reason the RICO claims were dismissed. Even setting aside the facts that Stefanowicz affirmatively sought transfer to the District of Columbia, and thus likely waived any objection to personal jurisdiction there, CACI simply cannot escape from fact that the District Court (J. Hilton) thoroughly and thoughtfully considered CACI's Opposition jurisdictional argument, but was not persuaded by it. The fact that the District Court (J. Hilton) reached this result cannot be characterized as a "clear error" when the Court of Appeals for the Fourth Circuit has spoken on precisely the point and soundly rejected the very same type of RICO jurisdictional argument in *ESAB Group, Inc.*, 126 F.3d at 626-27. This Court should deny the Petition for the Writ.

## I.    AN EXTRAORDINARY WRIT MAY ONLY BE GRANTED IN DRASTIC CIRCUMSTANCES.

Where, as here, mandamus is sought to compel an act committed to the District Court's discretion the "district court's abuse of discretion must amount to a 'judicial usurpation of power.'" *In re Catawba Indian Tribe of S.C.*, 973 F.2d 1133, 1136 (4th Cir. 1992) (citations omitted). The Court of Appeals needs to identify a drastic and extraordinary error, not merely an ordinary abuse of discretion. *Kerr v. United States Dist. Court*, 426 U.S. 394, 402 (1976); *In re Catawba*, 973 F.2d at 1137 (The "inquiry is not whether this court would have arrived at the same result were we sitting as a trial court, nor even whether the

decision amounts to an ordinary abuse of discretion."). *See also In re Braxton*, 258 F.3d 250, 261 (4th Cir. 2001); *United States v. Oncology Assocs., P.C.*, 198 F.3d 502, 511 (4th Cir. 1999).

The Supreme Court made clear in *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379 (1953) that transfer decisions are within the District Courts' discretion. There, plaintiff sought a writ of mandamus to vacate the transfer order, arguing that the District Court exceeded his legal powers. *Id.* at 382. The Supreme Court held:

> [J]urisdiction need not run the gauntlet of reversible errors. The ruling on a question of law decisive of the issue presented by [the motion to transfer] was made in the course of the exercise of the court's jurisdiction to decide issues properly brought before it. *Its decision against petitioner, even if erroneous – which we do not pass upon – involved no abuse of judicial power . . . . If we applied the reasoning advanced by the petitioner, then every interlocutory order which is wrong might be reviewed under the All Writs Act.* The office of a writ of mandamus would be enlarged to actually control the decision of the trial court rather than used in its traditional function of confining a court to its prescribed jurisdiction.

*Id.* at 328-83 (emphasis added).

CACI's initial mandamus petition accused the Court (J. Hilton) of failing to require the torture victims to meet their standard of proof. Although such a failure would constitute an ordinary abuse of discretion, not a judicial usurpation of power, that accusation does not even withstand scrutiny because the torture victims

did file a Reply brief.  After the torture victims alerted CACI to the existence of the

Reply, CACI "addended" its petition but it clearly seeks nothing more than having

this Court substitute its discretion for the District Court's discretion.

## II.     THE DISTRICT COURT HAD THE POWER TO TRANSFER THE ACTION FOR REASONS OF JUDICIAL ECONOMY.

The District Court exercised its discretion and transferred this action to the

District of Columbia to preserve judicial resources.  *June 3, 2005 Order at 2-3.*

The District Court has the power to transfer based on that reason.  Indeed, this

Court has found that failure to consider judicial economy is reason for the

extraordinary writ to issue.  In *General Tire & Rubber Co. v. Watkins*, 373 F.2d

361 (4th Cir. 1966), the Court reviewed on mandamus the district court's denial of

a motion to transfer to a district where a related case was pending.  The Court

found that "effective administration and supervision" compelled transfer:

> We are unanimously of the opinion that the case should
> be transferred to the Northern District of Ohio in order to
> prevent an extravagantly wasteful and useless duplication
> of the time and effort of the federal courts by the
> simultaneous trial of two complex and elaborate cases
> involving substantially the same factual issues.

*Id.* at 362.[5]  Clearly, the District Court here made the right decision in light of this controlling Court of Appeals decision.

## III.    THE DISTRICT COURT HAD THE DISCRETION TO RULE THAT THE RICO CLAIMS WERE COLORABLE AND THAT THE ACTION MIGHT HAVE BEEN BROUGHT IN THE DISTRICT OF COLUMBIA.

The District Court's discretionary decision to transfer the action to the District of Columbia cannot be challenged by a Petition for a Writ unless the District of Columbia indisputably lacks jurisdiction.  Here, CACI, a defendant, does not establish beyond dispute that the District of Columbia lacks jurisdiction. Further, the "where it might have been brought" prong of § 1404(a) was crafted to protect plaintiffs from being forced by defendants' transfer motions to prosecute their actions in inhospitable fora that would not recognize their claims.  *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960); *In re Collett*, 337 U.S. 55 (1949) (discussing legislative history of § 1404(a)).  This Court has endorsed Learned Hand's view that:

> We do not believe that our power to protect our own jurisdiction extends to protecting it as against the jurisdiction of another federal court of equal jurisdiction, *or that a suitor has any legally protected interest in having his action tried in any particular federal court,*

---

[5] The Court also rejected the argument, also made by CACI here, that judicial efficiencies would not be realized because consolidation in the transferee district would be opposed.  *Id.* at 369.

> *except insofar as the transfer may handicap his*
> *presentation of the case, or add to the costs of trial.*

*Gen. Tire & Rubber Co. v. Watkins*, 373 F.2d at 370 n.9 (quoting *Magnetic Eng'g*

*& Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 869 (2d Cir. 1950)).  The District

Court (J. Hilton) clearly considered whether the District of Columbia was an action

where the action might have been brought under Section 1404.  Indeed, the District

Court described himself as having thoughtfully and carefully considered the

transfer decision.  *See Statement of Facts at 10-11.*  Given that CACI's Opposition

focused primarily on lack of jurisdiction, it is clear that the District Court

considered the issue.  That the District Court did not address the issue in the

written opinion is likely reflective of the fact that CACI failed to press the point at

oral argument and failed to rebut the torture victims' counsel characterization of

the issue as a red herring that did not withstand even modest scrutiny.[6]

---

[6] A District Court need not issue a written decision at all on a motion to transfer, let alone address every facet of every legal issue before it.  *See, e.g., Akers v. Norfolk and W. Ry.*, 378 F.2d 78, 80-81 (4th Cir. 1967) (Boreman, J., dissenting) (although it was "regrettable that the district judge disposed of the motion to transfer without even a word of explanation . . . [i]t can be assumed that all of the arguments advanced here were presented to the district judge and it is quite obvious that the arguments presented and the reasons advanced by the plaintiff, although not revealed by the court, were more persuasive and merited more consideration than those of the defendant"); *A. J. Indus., Inc. v. U. S. Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974) (neither written nor oral opinion is necessary if the record as a whole demonstrates that the factors were considered.).

In any event, it is clear under controlling decisional law authored by this Court that the District Court reached the correct legal result by finding that the District Court of the District of Columbia is a jurisdiction where the *Saleh* action could have been brought.  The Court of Appeals for the Fourth Circuit has ruled on when a plaintiff may rely on RICO to obtain personal jurisdiction over a non-resident defendant.  This Court held that the exercise of personal jurisdiction is permissible unless it is inconsistent with the Fifth Amendment's protection of individual liberty interests.  *ESAB Group, Inc.*, 126 F.3d at 626-27 (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946-47 (11th Cir. 1997)).

In *ESAB Group, Inc.*, the Court was asked to rule on circumstances very similar to those presented here.  There, plaintiff ESAB alleged that a company called Centricut and an individual named Aley conspired (with help from an ESAB sales representative) to defraud ESAB.  126 F.3d at 620.  ESAB asserted RICO claims, and relied on RICO's service of process provisions to acquire jurisdiction over Centricut and Aley.  *Id.* at 621-22.  Defendants Centricut and Aley sought to defeat jurisdiction by arguing that the assertion of RICO jurisdiction was inconsistent with the Fifth Amendment Due Process clause because they did not have any contacts with the forum.  *Id.*  The Court considered defendants' objections to jurisdiction and rejected them.  *Id.* at 627.

The Court reasoned that the Fifth Amendment protects "the liberty interests of individuals against unfair burden and inconvenience." *Id.* at 626. The Court found, however, that for defendants located in the United States, only unusual cases of inconvenience raise constitutional concerns. *Id.* at 627. The Court of Appeals for the Fourth Circuit's reasoning was consistent with, and relied in part on, the reasoning of the Court of Appeals for the Eleventh Circuit expressed in *Republic of Panama*, 119 F.3d at 492. The Court of Appeals found that there was simply not enough evidence of inconvenience imposed on Centricut and Aley to merit preventing plaintiff EASB from exercising personal jurisdiction under RICO. 126 F.3d at 627.

Centricut and Aley then argued that, at the very least, the personal jurisdiction afforded by RICO should not give the federal court the power to exercise pendent jurisdiction over the state law claims. *Id.* The Court of Appeals considered and rejected this argument, finding that so long as the federal and state claims arise from the same nucleus of facts, and the federal claims is "not wholly immaterial or insubstantial," the federal court may, consistent with the Constitution, exercise jurisdiction over the state law claims. *Id.* at 629.[7]

---

[7] As plaintiffs argued in the District Court, personal jurisdiction in the District of Columbia is also proper because the individual defendants purposefully availed themselves of the forum by conspiring with the corporate defendants and certain

(continued . . .)

Here, the District Court (J. Hilton) necessarily found that (1) CACI and the other defendants would not suffer constitutionally compelling case of inconvenience if transferred to the District of Columbia[8] and (2) the torture victims' federal claims were material and substantial enough to support pendent jurisdiction over the state law claims.  CACI casts about for reason to hang on to its chosen forum, but does not – and cannot – explain to this Court why the exercise of discretion by the District Court (J. Hilton) on these two issues should not be respected.

CACI has already admitted that the District of Columbia is a convenient forum by having moved in the alternative for transfer to that jurisdiction.  In those briefs, CACI argued the District of Columbia was far more convenient for the parties than California.  *See Statement of Facts at 4.*

CACI tries to challenge the District Court's (J. Hilton) ruling that the torture victims' RICO claims against Stefanowicz and the other defendants are material

_____

(. . . continued)

government officials, who, as the complaint alleges, took actions in furtherance of the conspiracy in the District of Columbia.  *See Reply to CACI at 7.*

[8] In its transfer order, the Southern District of California found that the Washington, D.C. area was convenient for the parties and witnesses.  None of the individual defendants objected to that finding, or to transfer.  Thus, it was "law of the case" there would be no "extreme inconvenience or unfairness," *ESAB Group, Inc.*, 126 F.3d at 627, that would make the assertion of RICO jurisdiction unconstitutional.

and substantial enough to support the exercise of personal jurisdiction.  But all

CACI offers to defeat the Court's exercise of discretion is its own contrary view

that the torture victims' claims are immaterial and insubstantial.  *Petition at 22-23*.

However, even setting aside whether CACI's hubris may be leading them astray in

predicting success on the Rule 12(b)(6) motion, this Court need not be concerned

about whether the RICO claims will survive dismissal, but only about whether the

District Court had the power to find that the claims were colorable.

To eliminate RICO jurisdiction, there must be a showing that the claims are

not even colorable: "[t]o defeat plaintiff's use of the nationwide service of process

provision, [defendants] must meet the high burden of establishing that plaintiff's

RICO claim against them is not colorable, i.e., that it is implausible, insubstantial,

or frivolous."  *D'Addario v. Geller*, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003)

(citing *ESAB Group, Inc.*, 126 F.3d at 629).  *See also Republic of Panama*, 119

F.3d at 941 (11th Cir. 1997) (reversing district court denial of RICO jurisdiction);

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993)

(ERISA nationwide service provision); *Sadighi v. Daghighfekr*, 36 F. Supp. 2d

267, 271 (D.S.C. 1999).  An even cursory review of the Second Amended

Complaint suffices to establish that the claims are indeed colorable, and that the District Court had the discretion to so find.[9]

CACI cannot point to any evidence that the District Court failed to read the record, failed to listen to oral argument, and failed to consider thoughtfully the arguments advanced by both parties. The mere fact that CACI lost a legal argument does not prove the District Court was not paying attention.

Granting the extraordinary writ in such circumstance would fly in the face of this Court's consistent holdings that "even if the petitioner can demonstrate an abuse or usurpation of judicial power, there are additional hurdles to make certain that mandamus relief is available only in extraordinary circumstances: . . . the 'right to issuance of the writ [must be] clear and indisputable.'" *In re Braxton*, 258

---

[9] CACI fails to recognize the inevitable result of success on its own arguments. If the RICO claims are not colorable claims, the Southern District of California had no power to transfer the action to the Eastern District of Virginia because jurisdiction in Virginia over the individual defendants is also based on the nationwide service of process under RICO. (The torture victims have never contested jurisdiction in any venue. They have taken the consistent position that RICO confers nationwide jurisdiction.) Thus, this Court would be obliged to send the action back to California. Or, alternatively, if RICO jurisdiction cannot be obtained over the individual defendants, then they are simply non-parties whose existence has no bearing on venue. *See Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 785 (6th Cir. 1961) (where personal jurisdiction over defendants was not proper in the transferor forum, "[t]he fact that their names were listed as defendants on the complaint gave them no status as parties which should bar a transfer of the action.").

F.3d at 264 (citations omitted). Here, the only "clear and indisputable" fact is that

the District Court exercised its discretion in a manner consistent with the

controlling *General Tire & Rubber Co. v. Watkins* and *ESAB Group, Inc.* decisions

issued by this Court. There is no legal reason to substitute this Court's discretion

for the District Court's discretion.

## CONCLUSION

For the foregoing reasons, CACI's petition for writ of mandamus should be

denied.

Respectfully submitted,

Date: July 1, 2005

Susan L. Burke (VA Bar # 27769)
Jonathan H. Pyle
MONTGOMERY, MCCRACKEN,
     WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
Telephone: (215) 772-1500
Facsimile: (215) 772-7620

Jennifer Green
Judith Brown Chomsky
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6439
Facsimile: (212) 614-6499

Shereef Hadi Akeel

- 24 -

AKEEL & VALENTINE, P.C.
401 South Old Woodward Avenue
Suite 430
Birmingham, MI 48009
Telephone:  (248) 594-9595
Facsimile:   (248) 594-4477

*Counsel for Plaintiffs and Parties in Interest*
*Saleh et. al*

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 05-1636          **Caption:** In re CACI International Inc.

### CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because:

*[principal brief may not exceed 14,000 words or 1,300 lines; reply or amicus brief may not exceed 7,000 words or 650 lines; line count can be used only with monospaced type]*

G    this brief contains 5,865 *[state the number of]* words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

G    this brief uses a monospaced typeface and contains _____ *[state the number of]* lines of text, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

G    this brief has been prepared in a proportionally spaced typeface using _____ _____ *[state name and version of word processing program]* in _____ _____ *[state font size and name of the type style]; or*

G    this brief has been prepared in a monospaced typeface using _____ _____ *[state name and version of word processing program]* with_____ _____ *[state number of characters per inch and name of type style]*.

(s) _____

Attorney for Plaintiffs and Parties in Interest Saleh et. al

Dated: July 1, 2005

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan H. Pyle, do hereby certify that on the 1st day of July 2005, I

caused a true and correct copy of the foregoing Plaintiffs' Response to Petition for

Writ of Mandamus to be served via U.S. First Class Mail, postage prepaid, upon

the following individuals at the addresses indicated:

F. Whitten Peters
Thomas M. Craig
Williams and Connolly
725 12th Street, North West
Washington, DC  20005
wpeters@wc.com

*Counsel for Defendant Titan Corp.*

J. William Koegel Jr.
John F. O'Connor
Steptoe & Johnson LLP
1330 Connecticut Avenue, North West
Washington, DC  20036
wkoegel@steptoe.com

*Counsel for Defendants CACI International,
CACI Inc. – Federal, and CACI N.V.*

Adam L. Rosman
Ellen D. Marcus
Zuckerman Spaeder LLP
1201 Connecticut Avenue North West
Washington, DC  20036
arosman@zuckerman.com

*Counsel for Defendant Adel Nakhla*

Henry E. Hockeimer Jr.
Hangley Aronchick Segal & Pudlin, P.C.
One Logan Square, 27th Floor
Philadelphia, PA  19103-6933
heh@hangley.com

*Counsel for Defendant Steven Stefanowicz*

James W. Hundley
Briglia & Hundley, P.C.
Mosby Professional Building
10560 Main Street, Suite 314
Fairfax, VA  22030
jhundley@briglia-hundley.com

*Counsel Defendant Steven Stefanowicz*

Alison L. Doyle
Shari L. Klevens
McKenna Long & Aldridge LLP
1900 K Street, North West
Washington, DC  20006-1108
adoyle@mckennalong.com

*Counsel for Defendant John B. Israel*



Jonathan H. Pyle
MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109
Telephone No.: (215) 772-1500
Facsimile No.: (215) 772-7620