# - No. 05-1636 -

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### IN RE CACI INTERNATIONAL INC., CACI INCORPORATED – FEDERAL, CACI N.V., *Petitioners*

ON PETITION FOR WRIT OF MANDAMUS FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT NO. 05-CV-427

_____

### PLAINTIFFS' RESPONSE TO ADDENDA TO
### PETITION FOR WRIT OF MANDAMUS

_____

Susan L. Burke (VA Bar # 27769)
Jonathan H. Pyle
MONTGOMERY, MCCRACKEN,
    WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109
Telephone:    (215) 772-1500
Facsimile:    (215) 772-7620

*Counsel for Plaintiffs and Parties in Interest
Saleh et al.*

## SUMMARY OF ARGUMENT

This Court clearly has the power to decide whether the District Court of the Eastern District of Virginia had the power and authority to transfer the action to the District Court for the District of Columbia. As explained in the torture victims' July 1, 2005, Response, the District Court did have such power because the action could have been brought in the District Court for the District of Columbia. This Court, however, does not have mandamus jurisdiction to review whether the District Court for the Eastern District of Virginia properly exercised its discretion merely because the Court rejected as unpersuasive CACI's "law of the case" argument. In addition, even if this Court were to have mandamus jurisdiction, that argument is so lacking in merit as to be frivolous. The torture victims respectfully request that this Court promptly deny CACI's petition for a writ and put an end to CACI's year-long procedural gamesmanship that has successfully prevented any District Court from hearing and ruling on whether the torture victims' action withstands a Rule 12(b)(6) motions to dismiss.

## STATEMENT OF FACTS

On July 1, 2005, the torture victim plaintiffs filed a Response to CACI's Petition for a Writ of Mandamus. The torture victims' Statement of Facts from that Response is hereby incorporated by reference as if fully set forth. This

Statement sets forth a few additional facts relevant to responding to CACI's addenda to the Petition.

On November 10, 2004, CACI moved to transfer to the Eastern District of Virginia, or in the alternative, to the District of Columbia. *Motion of Defendants CACI International Inc., CACI, Inc. – Federal, and CACI N.V. To Transfer Venue.* Titan and the other defendants other than John Israel joined in the motion to transfer, including the request for the District of Columbia as an alternative venue. *Transcript of Feb. 14, 2005, Oral Argument at 25-26, 60-61.* The torture victims opposed the motion, arguing that transfer to either forum should be denied. They argued that they should be entitled to choose the Southern District of California, a forum substantively connected to the action by virtue of being the location of Titan's corporate headquarters. *Plaintiffs' Opposition to CACI Defendants' Motion To Transfer Venue (Dec. 13, 2004).* Having relied on the nationwide service of process provisions under the Rackeetering Influenced Corrupt Organizations Act ("RICO"), the torture victims could not (and did not) claim that the Eastern District of Virginia or the District Court for the District of Columbia failed to satisfy the "where it could have been brought" test of Section 1404(a).

Although the torture victims did not contest jurisdiction, they pointed out that CACI (who had challenged plaintiffs' RICO claims) had not carried the

movants' burden of proving jurisdiction because they had not admitted that RICO

provided a jurisdictional basis:

> [I]t is unclear whether defendant's proposed "alternate"
> forum even has personal jurisdiction over all defendants.
> CACI's own memorandum in support of its motion does
> not put such concerns to rest: at 20, it states, "it might be
> possible to conclude that Plaintiffs' allegations
> concerning Defendants' government contracts are
> sufficient to sustain venue in the District of Columbia."

*Id.* at 19-20.

On February 14, 2005, the Southern District of California (J. Rhoades)

heard oral argument on CACI's motion to transfer.  At the close of CACI's oral

argument, counsel for CACI told the Court that CACI no longer sought (in the

alternative) to be transferred to the District of Columbia:

Mr. Koegel:  May I have one more point, your honor?

The Court:  One more.

Mr. Koegel:  We're not certain that there would be jurisdiction
over all of the defendants in the District of
Columbia.  We think there would be in the
Eastern District of Virginia, but absent
jurisdiction over all the defendants in D.C., then,
the Court might well be precluded from
transferring the case to D.C.

The Court:  You don't want to go across the river.  Let's hear
from the plaintiffs.

Mr. Koegel:  Thank you, your honor.

*Transcript of Feb. 14, 2005, Oral Argument at 27-28.*  The torture victims did not

respond in any way during oral argument to CACI's statement regarding

jurisdiction; they simply opposed any transfer from their chosen forum.  *Transcript*

*of Feb. 14, 2005, Oral Argument.*

On March 21, 2005, the District Court (J. Rhoades) issued a 28-page

opinion that did not address in any way whether the action could be transferred to

the District of Columbia.  *Order Granting Motion To Transfer Action (March 21,*

*2005)*.  With respect to the "where it might have been brought" requirement of 28

U.S.C. § 1404(a), the District Court noted only that "[i]t is undisputed that this

action could have been brought in the Eastern District of Virginia."  *Id. at 2.*

On April 25, 2005, the action was docketed in the Eastern District of

Virginia.  Shortly thereafter, on May 9, 2005, the torture victims moved to transfer

the action to the District of Columbia for reasons of judicial economy.  *Plaintiffs'*

*Motion To Transfer Venue to the District Court for the District of Columbia (May*

*9, 2005)*.  CACI filed an Opposition arguing, among other things, that the "law of

the case" precluded transfer to the District of Columbia.  *Memorandum of CACI*

*Defendants in Opposition to Plaintiffs' Motion To Transfer Venue (May 23, 2005)*.

The torture victims responded to this Opposition by citing the excerpt from the

Southern California oral argument (cited above) and explaining that the Court had

not implicitly ruled on whether the District of Columbia had jurisdiction by

granting the motion to transfer to the Eastern District of Virginia.  *Plaintiffs' Reply to CACI's Opposition to Plaintiffs' Motion To Transfer (May 26, 2005)*.

On May 27, 2005, the Eastern District of Virginia (J. Hilton) heard oral argument on the torture victims' motion to transfer.  During the oral argument, counsel for torture victims stated:

> By our read[ing] and our understanding both being present and listening and reviewing the transcript, Mr. Koegel, the lead defense counsel for CACI, the movant, withdrew from the Court the request to move to D.C.  He did so by saying that it could not have been brought there and, therefore, they did not want to go there and that the Court was precluded from doing so.
>
> So, I think it is clear on that record that Judge Rhoades just did not analyze or decide the issue.  There was simply no reason for him to do so because he hadn't been asked to do so.

*Transcript of May 27, 2005 Oral Argument at 4*.  In response, counsel for CACI argued:

> Mr. O'Connor:  . . .  As Judge Rhoades pointed out in his decision, the documents and the witnesses are centered in this district.  We think that this is where the case ought to be.  Judge Rhoades agreed with that.
> The Court:  You-all have a lot of business over in the District of Columbia.
> Mr. O'Connor:  Excuse me, Your Honor?
> The Court:  You-all do a lot of business in the District of Columbia.
> Mr. O'Connor:  I dare say we do a lot more here.
> The Court:  Very familiar with the place.
> Mr. O'Connor:  Yes, Your Honor, I can find my way there.  But the CACI companies, I dare say, do more business here.

> But Judge Rhoades considered where this case
> ought to be, and he said the District of Columbia [sic].
> And once he made the decision that the case was coming
> east, what you didn't have is you did not have the
> plaintiffs call Judge Rhoades and say, we want to ask you
> to reconsider where you are going to send it.  They stayed
> with it not going anywhere.  But they didn't say, if you
> are going to send it, it ought to go to D.C.

*Id. at 8.*

On June 3, 2005, the District Court (J. Hilton) issued a written order

transferring the case to the District of Columbia for reasons of judicial economy.

*June 3, 2005 Order.*  On June 7, 2005, the Clerk of the Eastern District of Virginia

mailed the case file to the District of Columbia.  After learning that the case file

had been mailed out of the Eastern District of Virginia, CACI asked the Court,

during a June 9, 2005 telephonic conference with all parties present, to send a letter

to the District Court for the District of Columbia and ask it not to docket the matter

because it planned to file its petition for writ of mandamus that day.  The District

Court (J. Hilton) stated that it had thoroughly and carefully considered the transfer

motion and was not willing to request that the District of Columbia send the files

back to the Eastern District of Virginia.

Nonetheless, CACI, in a letter hand delivered to the Chief Judge of the

District Court and to the Clerk of the District Court on June 9, 2005 *before* the

conference call with the District Court (J. Hilton), as well as in a second letter

delivered after the conference, CACI unilaterally requested that the District Court

- 6 -

for the District of Columbia not docket the action. That Court (C.J. Hogan) refused CACI's requests and ordered the action docketed on June 10, 2005. The District Court also *sua sponte* filed a notice identifying the *Ibrahim* action as a related case on the grounds that the *Ibrahim* action "grows out of the same event or transaction."

## ARGUMENT

As the torture victims acknowledged in their July 1, 2005, Response, this Court retains the inherent jurisdiction to determine the jurisdictional issue presented by CACI (who challenges jurisdiction in the District of Columbia) because it impacts whether the transfer itself was within the authority of the District Court. "[W]hen the transferring court's authority to order the transfer is challenged, the circuit court retains jurisdiction to review the transfer even after its completion." *Gower v. Lehman*, 799 F.2d 925, 927 (4th Cir. 1986).

As set forth in Section I, however, mandamus review does not encompass reviewing discretionary decisions other than jurisdiction for two reasons: First, the Court of Appeals for the Fourth Circuit has held that the physical transfer of the action to the District of Columbia divests this Court of mandamus jurisdiction over such rulings. *In re Carefirst of Md., Inc.*, 305 F.3d 253, 262 (4th Cir. 2002); *Technosteel, LLC v. Beers Const. Co.*, 271 F.3d 151, 157 (4th Cir. 2001). Second, even if the Court of Appeals for the Fourth retained jurisdiction, the Eastern

District of Columbia (J. Hilton) had the full discretion to decide whether the "law of the case" doctrine should be applied to preclude transfer.

In addition, as set forth in Section II, even if mandamus review of the District Court's decision was permitted under Fourth Circuit jurisprudence (whit it is not), the Court's decision was clearly correct.  The record reveals that the Southern District of California did not consider or analyze whether the District Court for the District of Columbia had jurisdiction because the movant, CACI, told the Court not to do so.

I.    **The Scope of Mandamus Review Precludes Revisiting the District Court's Holding on the Law of the Case Doctrine.**

There are two reasons why this Court should limit its mandamus review to the jurisdictional issue:

*First*, the Court's jurisdiction is limited because this action has been physically transferred to the District of Columbia with the express consent of the Eastern District of Virginia.  In such circumstances, this Court's scope of review is limited to the jurisdictional issues.  The Court of Appeals for the Fourth Circuit has held that it loses jurisdiction over a transferred case when the case is physically transferred.  *In re Carefirst of Md., Inc.*, 305 F.3d 253, 262 (4th Cir. 2002) ("in cases involving transfers outside the circuit, jurisdiction is conveyed to the transferee court upon the physical transfer of the case file") (citing the holding of *Wilson-Cook Med., Inc. v. Wilson*, 942 F.2d 247, 250 (4th Cir. 1991)); *Technosteel,*

*LLC v. Beers Const. Co.*, 271 F.3d 151, 157 (4th Cir. 2001) (noting the general rule that "a transferor court loses jurisdiction over a case once the file is physically transferred to the transferee district."); *Manchester v. United States Organized Crime Drug Enforcement Task Force of the Mid-Atlantic*, 900 F.2d 253 (4th Cir. 1990) (unpublished; available at 1990 WL 36734) ("Jurisdiction is . . . lacking because the record in the case has already been transferred to the District of Delaware.").

This Court has recognized two exceptions to the general rule that transfer divests the Court of Appeals of jurisdiction. Neither applies here. In *Technosteel*, the district court denied plaintiff's petition to compel arbitration and in the same order granted defendant's motion to transfer. 271 F.3d at 153. After the case was transferred, the plaintiff appealed the denial of the petition to compel arbitration and the defendant moved to dismiss the appeal for lack of jurisdiction on the grounds that transfer destroyed appellate jurisdiction. *Id.* The Court of Appeals recognized the "general rule that the transfer of jurisdiction is plenary and occurs when the record is physically transferred to the transferee court," but found that jurisdiction still existed to hear the appeal because, by statute, the denial of the petition was immediately appealable. *Id.* at 160. Here, however, no part of a § 1404(a) motion to transfer is immediately appealable. *Jiffy Lubricator Co. v. Stewart-Warner Corp.*, 177 F.2d 360, 362 (4th Cir. 1949).

In *Gower*, the District Court physically transferred the case to the Court of Claims before the plaintiff appealed the transfer order. 799 F.2d at 927. The Court of Appeals rejected the defendant's argument that the transfer of the record barred review of the transfer order. While acknowledging that other circuits have held that "the physical transfer of the original papers in a case to a permissible transferee forum deprives the transferor circuit of jurisdiction to review the transfer," the Court of Appeals held that "when the transferring court's authority to order the transfer is challenged, the circuit court retains jurisdiction to review the transfer even after its completion." *Id.*

While it is clear, under *Gower*, that this Court has jurisdiction to hear CACI's challenge to the District Court's power to transfer the action, the mandamus jurisprudence in this Circuit suggests that this Court does not retain jurisdiction to consider non-jurisdictional arguments, such as those now raised by CACI concerning the District Court's exercise of its discretion.

For no reason, CACI waited almost a week to file its petition for writ of mandamus, during which time the case files were sent to the District of Columbia. CACI unilaterally stepped in to try to stop the District Court for the District of Columbia from docketing the matter. It is unsettled in this Circuit exactly when a case can be deemed to have been physically transferred. The Court of Appeals for the Fourth Circuit considered the question in *Technosteel*, but noted only that "the

docketing of a transferred case in the transferee circuit is the [standard] most courts have adopted." 271 F.3d at 160. In *Gower*, the Court of Appeals referred only to the time of "the physical transfer." 799 F.2d at 927.

Here, the unique set of facts warrant a finding that the physical transfer was effective before CACI filed its petition for writ of mandamus. The District Court for the Eastern District of Virginia signed the transfer order on Friday, June 3, 2005. On Tuesday, June 7, 2005, the case file was shipped to the District of Columbia. On the morning of Thursday, June 9, 2005, without waiting for the arranged 11 a.m. conference call with the District Court (J. Hilton), CACI hand-delivered a letter to the Chief Judge and the Clerk of the District of Columbia asking that the action not be docketed. During the conference call, the District Court (J. Hilton) refused CACI's request that it ask for the return of the file, stating that it had carefully considered the transfer order. Despite this, in the afternoon CACI hand delivered yet another letter to the Chief Judge and the Clerk asking that the action not be docketed. CACI filed its petition for writ of mandamus later that afternoon. Likely as a result of CACI's efforts to halt the docketing of the action, the case was not docketed when received, but was docketed on June 10, 2005. Given the decision by the District Court (J. Hilton) not to request return of the file and given CACI's unilateral efforts to influence the Clerk's docketing of the action in the District of Columbia, the torture victims respectfully suggest that the Court

of Appeals find that the action was physically transferred and that the only issues

reviewable by way of a writ are those issues relating to the District Court's power

to transfer.  That ruling would be the most consistent with the jurisprudence in this

Circuit relating to the limited and extraordinary nature of the writ.  *See In re*

*Catawba Indian Tribe of S.C.*, 973 F.2d 1133, 1136-37 (4th Cir. 1992).

   *Second*, even if this Court could hear issues other than jurisdiction on

mandamus review, the scope of mandamus review is not so broad as to encompass

review of the Eastern District of Virginia's discretionary decision that the "law of

the case" doctrine should not preclude transfer.  Applying the "law of the case"

doctrine is a decision fully within the power and authority of the District Court.  It

"is discretionary, not mandatory, and is in no way a limit on [a court's] power."

*City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882,

888 (9th Cir. 2001) (quotations omitted); *Perillo v. Johnson*, 205 F.3d 775, 780-81

(5th Cir. 2000) ("The law of the case doctrine is a matter of judicial discretion

rather than judicial power."); *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995)

("observance of the doctrine is discretionary").  Since there is no question that the

District Court (J. Hilton) had the power to reject defendants' "law of the case"

arguments, the propriety of that decision should be reconsidered, if at all, in the

District of Columbia, where this case is now docketed.  *See Linnell v. Sloan*, 636

F.2d 65, 67 (4th Cir. 1980) (noting that review of a transfer decision is available in

the transferee forum by filing a motion to retransfer to the transferor district); *see also Technosteel*, 271 F.3d at 155 (same).

In sum, this Court should dismiss CACI's petition for a writ of mandamus because the District Court had the power and authority to transfer the action to the District Court for the District of Columbia.

## II.    The District Court Correctly Found the Law of the Case Does Not Preclude Transfer to the District Court for the District of Columbia.

Moreover, review would reveal that the District Court (J. Hilton) properly rejected CACI's argument that the "law of the case" doctrine precludes transfer to the District of Columbia.  The "law of the case" doctrine "posits that when a court *decides upon a rule of law*, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Group*, 486 U.S. 800, 816 (1988) (emphasis added).[1]  The doctrine "presumes a hearing on the merits."  *United States v. Hatter*, 532 U.S. 557, 566 (2001).  Thus, it applies only to "issues that have been decided either expressly or by necessary implication," *DeWeerth v. Baldinger*, 38 F.3d 1266, 1271 (2d Cir. 1994), and "it

---

[1] As the Ninth Circuit has explained, "[t]he law of the case doctrine originated in the courts as a means of ensuring the efficient operation of court affairs" and "in order to maintain consistency during the course of a single lawsuit."  *City of Los Angeles, Harbor Division*, 254 F.3d at 888 (citations omitted).  It is worth noting that CACI invokes the "law of the case" doctrine in order to *prevent* a transfer that would serve these very same interests of judicial efficiency and consistency.

clearly does not extend to issues [the] court did not address," *Hegler v. Borg*, 50
F.3d 1472, 1475 (9th Cir. 1995) (quotation omitted). *See also United States v.
Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir. 2001) ("The doctrine does not
apply to issues not addressed by [the] court."); *Int'l Union of Operating Engineers,
Local Union 103 v. Indiana Const. Corp.*, 13 F.3d 253, 256 (7th Cir. 1994)
(rejecting argument that implication of court's statement was "law of the case"
where "we did not 'fully decide' the issues").

CACI indisputably withdrew the issue of transfer to the District of Columbia
from consideration by the Southern District of California, as explained above in the
Statement of Facts. CACI did not provide any compelling reason to persuade the
Eastern District of Virginia to ignore its earlier statements in the hearing before the
District Court in California. At the oral argument on transfer to the District of
Columbia, counsel for CACI merely reiterated that the Southern District of
California had decided the issue, but failed to address the impact of the fact that
CACI had voluntarily withdrawn the issue from that Court's review.[2]

_____

[2] CACI also argued that the fact that the torture victims did not request transfer to
the District of Columbia somehow transforms the Court's silence on the issue into
a "law of the case" precluding transfer to the District of Columbia. *Transcript of
May 27, 2005 Oral Argument at 4*. This is absurd. The torture victims were
entitled to try to preserve their forum choice, not to accede to transfer. In any
event, arguments not raised do not create "law of the case." *See Mosher v.
Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 917 (11th Cir. 1995) ("The [law
(continued . . .)

Even if CACI had not withdrawn the issue from the Southern District of California, the Court's decision ordering transfer to the Eastern District of Virginia necessarily creates law of the case only on the validity of transfer to that District, not the validity of transfer the District of Columbia. The District Court (J. Rhoades) need not even have reached CACI's "alternative" argument, had it still been presented, because it found CACI's primary argument persuasive. Had the District Court addressed the issue, its findings would have been *dicta*, which is outside the scope of the law of the case doctrine. *See Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 988 F.2d 414, 429 (3d Cir. 1993).

In *Coca-Cola Bottling*, plantiffs argued that the district court's statement that "the plaintiffs' interest in the mark will be a significant element in the final resolution of their contract claims" operated as "law of the case" on the issue of whether the plaintiffs owned an equitable interest in the Coca-Cola trademark. *Id.* at 428. The Court of Appeals rejected that argument, holding that the District Court's earlier statement was not an expressed or implied decision, but merely *dicta* to which the "law of the case" doctrine did not apply. *Id.* at 429. *See also United States v. O'Keefe*, 169 F.3d 281, 283 (5th Cir. 1999) ("The law of the case

---

(. . . continued)

of the case] doctrine does not apply . . . to preclude further review of issues that should have been raised, but were not.").

doctrine applies to an issue that has actually been decided, not to statements made by the court in passing, or stated as possible alternatives, or dictum.").

In sum, the District Court (J. Hilton) hardly "usurped" its power by declining to read into the Southern District of California's detailed 28-page transfer order an unwritten and unspoken holding that the District of Columbia lacked jurisdiction over the action because the defendants' motions to dismiss the RICO counts were going to prevail and thus deprive that District of jurisdiction. Indeed, as the torture victims explained in their Reply brief, if that unwritten and unspoken finding can be discerned from the Court's opinion, that same unwritten and unspoken finding would necessarily require transfer back to California because RICO provides the jurisdictional basis for the transfer to the Eastern District of Virginia as well. The District Court's wise decision to disregard CACI's "law of the case" argument simply does not cry out for the "drastic" and "extraordinary" remedy of mandamus. *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 426 U.S. 394, 402 (1976).[3]

---

[3] In their responses to CACI's petition, defendants Titan, Stefanowicz, Nakhla and Israel discuss a host of arguments and facts that were not raised in the District Court (J. Hilton). These issues could have been raised in opposition to the motion to transfer or in a motion for reconsideration of the District Court's transfer order, but were not. Should this Court consider these new issues in ruling on CACI's petition, plaintiffs respectfully request the opportunity to file a responsive memorandum.

## CONCLUSION

For the reasons set forth in the torture victims' Response to the Petition for a
Writ of Mandamus and for the foregoing reasons, CACI's petition for writ of
mandamus should be denied.

Respectfully submitted,

Date:  July 5, 2005

*Susan L. Burke (J.H.P.)*

Susan L. Burke (VA Bar # 27769)
Jonathan H. Pyle
MONTGOMERY, MCCRACKEN,
    WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109
Telephone:  (215) 772-1500
Facsimile:  (215) 772-7620

Jennifer Green
Judith Brown Chomsky
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:  (212) 614-6439
Facsimile:  (212) 614-6499

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
401 South Old Woodward Avenue
Suite 430
Birmingham, MI 48009
Telephone:  (248) 594-9595
Facsimile:  (248) 594-4477

- 17 -

*Counsel for Plaintiffs and Parties in Interest
Saleh et. al*

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan H. Pyle, do hereby certify that on the 5th day of July 2005, I

caused a true and correct copy of the foregoing Plaintiffs' Response to Addenda to

Petition for Writ of Mandamus to be served via U.S. First Class Mail, postage

prepaid, upon the following individuals at the addresses indicated:

F. Whitten Peters
Thomas M. Craig
Williams and Connolly
725 12th Street, North West
Washington, DC 20005
wpeters@wc.com

*Counsel for Defendant Titan Corp.*

J. William Koegel Jr.
John F. O'Connor
Steptoe & Johnson LLP
1330 Connecticut Avenue, North West
Washington, DC 20036
wkoegel@steptoe.com

*Counsel for Defendants CACI International,*
*CACI Inc. – Federal, and CACI N.V.*

Adam L. Rosman
Ellen D. Marcus
Zuckerman Spaeder LLP
1201 Connecticut Avenue North West
Washington, DC 20036
arosman@zuckerman.com

*Counsel for Defendant Adel Nakhla*

Henry E. Hockeimer Jr.
Hangley Aronchick Segal & Pudlin, P.C.
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
heh@hangley.com

*Counsel for Defendant Steven Stefanowicz*

James W. Hundley
Briglia & Hundley, P.C.
Mosby Professional Building
10560 Main Street, Suite 314
Fairfax, VA  22030
jhundley@briglia-hundley.com

*Counsel Defendant Steven Stefanowicz*

Alison L. Doyle
Shari L. Klevens
McKenna Long & Aldridge LLP
1900 K Street, North West
Washington, DC  20006-1108
adoyle@mckennalong.com

*Counsel for Defendant John B. Israel*

Jonathan H. Pyle
MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109
Telephone No.: (215) 772-1500
Facsimile No.: (215) 772-7620