No. 05-1636

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

## IN RE CACI INTERNATIONAL, INC, CACI, INC. – FEDERAL, AND CACI N.V.

**On Petition for Writ of Mandamus from the United States District Court for the Eastern District of Virginia at No. 05-CV-00427**

---

## JOINT RESPONSE TO PETITIONER'S SECOND ADDENDUM BY RESPONDENTS THE TITAN CORPORATION, ADEL L. NAKHLA, AND STEVEN A. STEFANOWICZ

---

Adam L. Rosman
Eric R. Delinsky
Ellen D. Marcus
**ZUCKERMAN SPAEDER LLP**
1201 Connecticut Avenue, N.W.
Washington, DC 20036
202-778-1800
*Attorneys for Adel L. Nakhla*

James W. Hundley
**BRIGLIA & HUNDLEY, P.C.**
10560 Main Street, Suite 314
Fairfax, Virginia 22030
(703) 385-8005
Henry E. Hockeimer, Jr.
**HANGLEY, ARONCHICK, SEGAL &
PUDLIN, P.C.**
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
(215) 496-7035
*Attorneys for Steven A. Stefanowicz*

F. Whitten Peters
Ari S. Zymelman

**WILLIAMS & CONNOLLY LLP**
725 12th Street, N.W.
Washington, D.C. 20005
(202) 434-5000
*Attorneys for The Titan
Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

SUMMARY OF ARGUMENT ....................................................................1

STATEMENT OF FACTS .........................................................................1

ARGUMENT ...........................................................................................5

I.   JURISDICTION FOR ALL ISSUES VESTED IN THIS COURT
UPON FILING OF THE PETITION FOR WRIT OF MANDAMUS .....................6

    A.   Jurisdiction Remains in this Circuit Until a Case Is Docketed, or
at the Very Least Received, by a Court in Another Circuit ................................7

    B.   Docketing or Receipt of the Physical Record After Filing of a
Petition in this Court Does not Divest or Limit This Court's
Jurisdiction to Review the Petition........................................................10

II.   THIS COURT SHOULD VACATE THE RE-TRANSFER FOR
DISREGARD OF THE PREVIOUS TRANSFER ORDER AND IN
EXERCISE OF ITS SUPERVISORY POWER ........................................14

    A.   The Issue of Which District this Case Should be Tried in Was
Law of the Case Absent Changed Circumstances or Clear Error........................15

    B.   Plaintiffs' Silence and Affirmative Statements to the Southern
District of California Further Support Issuance of the Writ ................................19

III.   ORAL ARGUMENT IS WARRANTED ....................................................21

CONCLUSION........................................................................................22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.C. Nielsen Co. v. Hoffman*, 270 F.2d 693 (7th Cir. 1959) .......................10, 14, 21

*In re Briscoe*, 976 F.2d 1425 (D.C. Cir. 1992)....................................................11, 14

*Carefirst of Md, Inc. v. Carefirst Urgent Care Ctr, LLC*, 305 F.3d 253 (4th Cir. 2002).........................................................................................13

*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988) ...........17, 18

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991).............................................................................................................7

*DeWeerth v. Baldinger*, 38 F.3d 1266 (2d Cir. 1994) .............................................16

*Drabik v. Murphy*, 246 F.2d 408 (2d Cir. 1957) .................................................9, 10

*Feller v. Brock*, 802 F.2d 722 (4th Cir. 1986) .........................................................16

*Ferens v. John Deere Co.*, 494 U.S. 516 (1990) ......................................................16

*Goodyear Tire & Rubber Co. v. McDonnell Douglass Corp.*, 820 F. Supp. 503 (C.D. Cal. 1992) .........................................................................18

*Gower v. Lehman*, 799 F.2d 925 (4th Cir. 1986)...............................................11, 14

*Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3rd Cir. 1982).............14, 20

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987).....................................................7, 13

*Manchester v. United States Organized Crime Drug Enforcement Task Force Mid-Atlantic*, 1990 WL 36734 (4th Cir. 1990)...................................13

*NBS Imaging Systems, Inc. v. United States District Court*, 841 F.2d 297 (9th Cir. 1988) ......................................................................................passim

*In re Nine Mile Ltd.*, 673 F.2d 242 (8th Cir. 1982) ............................................9, 10

*In re Southwestern Mobile Homes, Inc.*, 317 F.2d 65 (5th Cir. 1963) ................9, 10

*Starnes v. McGuire*, 512 F.2d 918 (D.C. Cir. 1974) ...........................................9, 12

*Technosteel, LLC v. Beers Construction Co.*, 271 F.3d 151 (4th Cir. 2001) ....10, 13

*In re Warrick*, 70 F.3d 736 (2d Cir. 1995).................................................................10

*Wilson-Cook Medical, Inc. v. Wilson*, 942 F.2d 247 (4th Cir. 1991) ..............7, 8, 13

*Wilson v. Ohio R. Co.*, 236 F. Supp. 96 (D. W.Va. 1964)........................................10

## FEDERAL STATUTES

28 U.S.C. § 1291.......................................................................................................13

28 U.S.C. § 1406.......................................................................................................14

Fed. R. of App. P. 26(a)(2) .........................................................................................5

Fed. R. Civ. P. 79(a) ...................................................................................................8

## MISCELLANEOUS

15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3846 (2d
    ed. 1976) ...........................................................................................................11

17 James Wm. Moore et al., *Moore's Federal Practice* § 111.64 (3d ed.
    2005)..................................................................................................................10

## SUMMARY OF ARGUMENT

Respondents The Titan Corporation ("Titan"), Adel L. Nakhla, and Steven A. Stefanowicz (collectively, "Defendants-Respondents") agree with the arguments set forth in CACI's Second Addendum to its Petition for Writ of Mandamus and make the following additional points in support thereof.

1.      The filing and docketing of the petition for writ of mandamus in this Court prior to the receipt and docketing of the case in the District of Columbia secured jurisdiction over this matter in this Court.  Subsequent actions taken by the U.S. District Court for the District of Columbia are irrelevant to this Court's jurisdiction.

2.      The District Court was constrained to follow relevant Supreme Court precedent rather than ignoring the law of the case and discarding the considered judgment of a coordinate court by re-transferring the case to a third jurisdiction. This Court should issue the requested writ of mandamus to correct this clearly erroneous and manifestly unjust transfer and in exercise of its supervisory role.

## STATEMENT OF FACTS

Relevant procedural facts were set forth in CACI's petition and in Defendants-Respondents' response thereto.  Below we highlight and add facts relevant to CACI's second addendum.

On March 21, 2005, pursuant to a § 1404(a) transfer motion by CACI, this case was transferred from the Southern District of California (Rhoades, J.) to the Eastern District of Virginia. (CACI Ex. 3.) Judge Rhoades wrote a very careful, twenty-five page opinion that addressed every argument raised by plaintiffs in opposition to transfer, and affirmatively demonstrated why the Eastern District of Virginia was the best jurisdiction, notwithstanding plaintiffs' choice of the Southern District of California as the forum in which to litigate this case. Plaintiffs filed a petition for writ of mandamus to the Ninth Circuit the day after Judge Rhoades's order was issued. (Unlike in this case where the order was issued without notice, Judge Rhoades had informed the parties weeks ahead of time the date on which he would issue his order.) As in this case, the case files were dispatched from the Southern District of California before defendants could request a stay of the transfer.[1] In the face of Judge Rhoades's 25-page opinion, the

---

[1] Under those circumstances, plaintiffs secured defendants' consent to a motion that Judge Rhoades request the Eastern District of Virginia not to docket this case before plaintiffs' petition for a writ of mandamus to the Ninth Circuit was decided. The motion was granted, and the Eastern District of Virginia acceded to Judge Rhoades's request to stay docketing of the case pending decision of the Ninth Circuit on the petition for mandamus. When CACI sought the same courtesy from plaintiffs in the Fourth Circuit, plaintiffs not only refused to cooperate but affirmatively urged the transferee court to docket the case. *See* Ex. 4 (6/9/05 ltr Susan L. Burke to Chief Judge Hogan) ("We respectfully request that this Court docket the file in the regular course."); Ex. 5 (CACI's Emerg. Mot. Stay Docketing in D.D.C. 3). In doing so, plaintiffs represented to the U.S. District Court for the District of Columbia that "retaining the files and moving forward does not prejudice CACI in any way because it does not deprive CACI of its ability to have

Ninth Circuit denied plaintiffs' writ without calling for a response, and the case was docketed in the Eastern District of Virginia on April 25.

The District Court ordered the parties to supplement their briefs in support of and in opposition to the motions to dismiss to address relevant Fourth Circuit precedent, and scheduled the motions for oral argument on June 10, 2005. On May 9, after defendants had supplemented their briefs with Fourth Circuit precedent, plaintiffs moved to re-transfer the case to the District of Columbia.[2]

---

the Court of Appeals for the Fourth Circuit review its petition for mandamus." (Ex. 6, Pls.' Opp. CACI's Emerg. Mot. 6.)  As has typified their opportunistic representations to different courts, plaintiffs now argue to this Court that, "the physical transfer of the action to the District of Columbia divests this Court of mandamus jurisdiction over [the District Court's non-jurisdictional rulings]." (Pls.' Resp. Add. at 7.)

[2] In an extraordinary example of hypocrisy, plaintiffs characterize CACI's petition as "year-long procedural gamesmanship that has successfully prevented any District Court from hearing and ruling" on defendants' motions to dismiss. (Pls.' Resp. Add. at 1.)  The plaintiffs, however, mounted the same challenge in the Ninth Circuit in their unsuccessful bid to oppose CACI's motion to transfer and stated, "United States Courts of Appeals...routinely issue writs of certiorari [sic] ordering district courts to vacate erroneous transfer orders." (Ex. 7, Pls.' Pet. Writ Mandamus (9th Cir.) 13 n.2).  More importantly, it is the plaintiffs who have delayed resolution of defendants' motions to dismiss by moving to transfer the case away from the fastest court in the country only four weeks before the pending motions were scheduled to be argued and subsequent to defendants' supplementation of their briefs with Fourth Circuit precedent.  Moreover, Defendants-Respondents asked the Southern District of California to decide the pending motions to dismiss before taking up CACI's transfer motion, which was filed before plaintiffs had even filed their oppositions to the motions to dismiss.

- 3 -

The District Court granted plaintiffs' motion and signed the order—which is the subject of the petition—on Friday, June 3, 2005; it was not docketed then, and no party knew that the order had been signed on that day. The order was entered on the electronic docket on Monday, June 6 and *mailed* to the parties that day. The parties learned of the order that day because CACI checked the electronic docket sheet on its own initiative via the PACER system. On the morning of Tuesday, June 7, prior to the opening of the clerk's office for public business, the case file was dispatched via United Parcel Service (UPS) bound for the U.S. District Court for the District of Columbia. Approximately 17 minutes after clerk's office opened to the public that morning, unaware that the file had already been given to the carrier, CACI filed a motion to stay the transfer of the case file to allow time for this court to review the case by way of mandamus. On Thursday, June 9, the Eastern District of Virginia (Hilton, J.), during a telephone conference with the parties, refused to request that the D.C. District Court stay docketing of the case pending mandamus review. That same day, June 9, 2005, CACI filed the instant petition for writ of mandamus, which was docketed in this Court that day.[3]

---

[3] As another example of plaintiffs' misleading rhetoric, they characterize the time period between issuance of the order and the filing of the petition as "CACI wait[ing] almost a week to file its petition for writ of mandamus, during which time the case files were sent to the District of Columbia." (Pls.' Resp. Add. at 10.) The true chronology reveals that CACI filed its petition within three days of learning of the order, and that the files were dispatched contemporaneous with CACI learning of the order, though not received (and the transfer not completed)

On Friday, June 10, the U.S. District Court for the District of Columbia received the case files. (Ex. 8, D.D.C. Dkt # 1, 2.) Prior to this Court docketing its petition, CACI had both informally, and by way of a miscellaneous motion, requested that the D.C. District Court stay docketing of this case pending the filing of a petition for mandamus. (CACI's Second Add. 2 n.1.)

On June 22, CACI filed in this Court a second addendum to the petition for writ of mandamus informing the Court of these subsequent developments in the D.C. District Court.  On June 24, this Court issued an Order directing the respondents to file an answer to the petitioners' second addendum within ten days (which under Fed. R. of App. P. 26(a)(2) excludes holidays and weekends).

## ARGUMENT

Because CACI's petition for writ of  mandamus was docketed in this Court *before* the case files were received (let alone docketed) in D.C., this Court has jurisdiction to review all the issues raised by CACI's Petition.  Plaintiffs' position that this Court's review is limited to orders that were a jurisdictional nullity and that it is powerless to review the District Court's completely unprecedented, clearly erroneous, and manifestly unjust departure from the law of the case doctrine is in direct contradiction to binding precedent in this Circuit, that of the

---

until *after* the petition was filed and docketed.  *See* CACI's Second Add. 2 n.1 (detailing CACI's diligent efforts to obtain review in this Court).

District of Columbia Circuit, and on-point Supreme Court precedent (which plaintiffs mention but do not address) applying the doctrine in the context of transfer orders.

While there are jurisdictional grounds upon which to grant the writ, the unjustified departure from the law of the case provides an independent basis for issuance of the writ because (a) the District Court was bound to follow Supreme Court precedent applying the law of the case doctrine to transfer motions; (b) the District Court's departure from Supreme Court precedent and unprecedented re-transfer of this case to a third jurisdiction amounted to a usurpation of judicial power; and (c) failure to grant the writ would reward plaintiffs' contradictory representations to different courts and the kinds of actions that this Court should not condone in its supervisory role.

## I.    JURISDICTION FOR ALL ISSUES VESTED IN THIS COURT UPON FILING OF THE PETITION FOR WRIT OF MANDAMUS

The filing of the Petition in this Court before the D.C. District Court received, let alone docketed, this case, vested jurisdiction for all issues presented by the petition in this Court. The docketing of the case in the District of Columbia *after* the filing of the petition in this Court did not divest this Court of jurisdiction.

**A.    Jurisdiction Remains in this Circuit Until a Case Is Docketed, or at the Very Least Received, by a Court in Another Circuit**

The Fourth Circuit has adopted the general rule that in the case of transfer, jurisdiction vests in the transferee court upon the physical transfer of the case:

> The general rule, which was not disturbed by *Koehring* and which we adopt, is that jurisdiction is not conveyed from the transferor court to the transferee court until the record is physically transferred to the transferee court.

*Wilson-Cook Medical, Inc. v. Wilson*, 942 F.2d 247, 250 (4th Cir. 1991) (internal citations omitted); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516-17 (10th Cir. 1991); *NBS Imaging Systems, Inc. v. United States District Court*, 841 F.2d 297, 298 (9th Cir. 1988).

While this Circuit has never had occasion to decide what act completes the "physical transfer" of the record, the Ninth and Tenth Circuits, which follow the same general rule as the Fourth Circuit (and whose cases on this issue have been cited with approval by this Circuit), has addressed that question.  The Ninth and Tenth Circuits have held that the physical transfer of the case, and the end of the transferor circuit's ability to exercise jurisdiction, occurs upon docketing of a case in an out-of-circuit transferee court.  *Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987) ("We adopt the docketing date as the time of effective transfer."); *Chrysler Credit Corp.*, 928 F.2d at 1517 ("The date the papers in the transferred case are docketed in the transferee court also forms the effective date that appellate

jurisdiction in the transferor circuit is terminated.").[4]  The rule that physical transfer is not complete until the case is actually docketed in the transferee jurisdiction (the "docketing rule") best comports with the need recognized by this circuit that one, and only one, court exercise jurisdiction over a case at any given time. *See Wilson-Cooke Med., Inc.,* 942 F.2d at 250.  Physical transfer requires receipt for a case to be clearly in one court, and a record is not legally received by a transferee district until the case is entered onto its docket, the required chronological record of district courts. *See* Fed. R. Civ. P. 79(a).  Anything other than the docketing rule would allow for a period of limbo when a case had been physically sent from the transferor court, but was not yet acknowledged as a case by the transferee court.

The docketing rule also commends itself as the definition of physical transfer because it (1) is a bright-line rule about which there can be no debate, since the docket requires that all entries be dated; and (2) promotes judicial efficiency because it is easily established through public records.

The appropriateness of the docketing rule is further demonstrated by the relevant D.C. Circuit precedent.  D.C. Circuit precedent precludes the U.S. District Court for the District of Columbia from exercising jurisdiction over the case while

---

[4] *Cf. NBS Imaging Systems, Inc.,* 841 F.2d at 298 (exercising jurisdiction over mandamus petition despite docketing in transferee court prior to filing of the petition).

a timely-filed petition is pending in this Court: "[W]hen an appeal has been filed and docketed at the time the physical transfer takes place, the district court is without power to complete a valid physical transfer." *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974) (en banc) (citing *Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 869 (2d Cir. 1950)). It is clear that the D.C. Circuit concurs with the Ninth Circuit that a physical transfer is not complete until the case is docketed in the transferee district. More importantly to this case, under D.C. Circuit law the docketing of the case by the U.S. District Court for the District of Columbia during the pendency of this petition is a nullity. If this Court were not to adopt the docketing rule, it would create the contradiction that the D.C. Circuit recognizes this Court's jurisdiction as this Court was disclaiming it.

Even if one were not to adopt the docketing rule as the test for whether physical transfer of the record was completed, there is no doubt that physical transfer cannot be completed until, at a minimum, the transfer papers are received by the transferee court. *See In re Nine Mile Ltd.*, 673 F.2d 242, 243 (8th Cir. 1982); *In re Southwestern Mobile Homes, Inc.*, 317 F.2d 65, 66 (5th Cir. 1963); *Drabik v. Murphy*, 246 F.2d 408, 409 (2d Cir. 1957).

Regardless of whether jurisdiction shifts upon docketing (which is the articulated rule) or upon receipt in the transferee court, this Court has jurisdiction over all issues raised in CACI's petition. The petition was filed on Thursday, June

9, 2005, while the earliest the case file was received or docketed was on Friday, June 10, 2005. Thus, it is not surprising that all of the authority supports that when, as here, a petition for writ of mandamus is filed **prior to** the receipt and docketing of the case in the transferee court, jurisdiction attaches in the transferor court of appeals.[5]

**B.    Docketing or Receipt of the Physical Record After Filing of a Petition in this Court Does not Divest or Limit This Court's Jurisdiction to Review the Petition**

While there appears to be a split of authority on whether physical transfer is completed upon docketing or mere receipt of the files, we are unaware of any court holding that transfer is effective upon the mailing of the files, as plaintiffs here seem to urge. In addition to being unprecedented, such a rule would undermine

---

[5] *See In re Warrick*, 70 F.3d 736, 739 (2d Cir. 1995); *NBS Imaging Systems, Inc.*, 841 F.2d at 298; *In re Nine Mile Ltd.*, 673 F.2d at 243; *In re Southwestern Mobile Homes, Inc.*, 317 F.2d at 66; *A.C. Nielsen Co. v. Hoffman*, 270 F.2d 693 (7th Cir. 1959) ("There is no showing that the papers reached the clerk of the New York District Court earlier than the time the petition for the writ of mandamus was presented to our Court.") (court of appeals in transferor circuit had jurisdiction to review petition filed same day file received by transferee court); *Drabik*, 246 F.2d at 409; *Wilson v. Ohio R. Co.*, 236 F. Supp. 96, 97-98 (D. W.Va. 1964), *aff'd* 375 F.2d 775 (1967) (lodgment of papers in transferee court pursuant to transfer order divests transferor court of jurisdiction); 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.64[2][a] (3d ed. 2005) (explaining that "the transferor circuit [has] no jurisdiction to hear any motions or appeals filed *after* the court papers were physically transferred.") (emphasis added); *see also Technosteel, LLC v. Beers Construction Co.*, 271 F.3d 151, 154 (4th Cir. 2001) ("Immediate challenges to a § 1404(a) transfer are limited to the filing of a petition for writ of mandamus with the transferor circuit prior to the physical transfer of the file…").

orderly litigation.  First, such a rule would result in a period of time—from the mailing of the files until their receipt and docketing—in which no court would be able to exercise effective supervision over the case.  While the files were in transit, the transferor court would have ceded jurisdiction to a court that is yet to receive the files, assign a case number, or otherwise be available to deal with the case over which that court, unbeknownst to it, supposedly had jurisdiction.[6]

Second, and equally important, such a rule would significantly undermine the ability of a party opposing a successful transfer motion to have its day in court. As this Court has already observed, the better practice is to stay the transfer to allow for appellate review, *Gower v. Lehman*, 799 F.2d 925, 928 n.1 (4th Cir. 1986),[7] not, as occurred here, an unseemly race to the courthouse to try and preserve jurisdiction in the face of a district court's intent to shunt the case elsewhere before such review could be had.  The timeline here—in which the case

---

[6] A misdirection of the files would result in an even longer lapse in jurisdiction. For example, say the files were misplaced by the postal service for several weeks, not unimaginable in these days of anthrax and other burdens on the postal service. Under the plaintiffs' view, this Court would have no jurisdiction, yet the receiving court would not even know that the file was on the way, let alone have a formal case over which to assume jurisdiction.

[7] *See also In re Briscoe*, 976 F.2d 1425, 1426 (D.C. Cir. 1992); 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3846, at 357 (2d ed. 1976) ("Because appellate review, if it is available at all, is more appropriate in the circuit in which the transferor court sits than in the circuit to which the case is transferred, the better practice, often codified in local rules, is routinely to stay grants of transfer for a sufficient period for appellate review to be sought.").

file was mailed by the District Court prior to any party receiving formal notice of the transfer and prior to the clerk's office opening on the next business day—is a good illustration of the problem with such a rule—it would preclude this Court from supervising the lower courts' decisions to send cases to other circuits even under circumstances, as here, where petitioners moved with diligence and incredible speed and the transfer constituted a usurpation of judicial power. *See, e.g., NBS Imaging Systems, Inc.*, 841 F.2d at 298 ("One factor courts consider when mandamus is sought in this situation is whether the district court acted hastily in transferring the case, thus precluding a diligent petitioner from seeking mandamus in the appellate court.").

In their filings to this Court, plaintiffs argue that this Court should "find that the action was physically transferred" (Pls.' Resp. Add. at 11-12), and decline to exercise jurisdiction over "non-jurisdictional" issues raised in the petition. As set forth above, there is absolutely no support for, and all the precedent against, finding that the mailing of the record completes the physical transfer that divests this Court of jurisdiction over the petition. *See, e.g., Starnes*, 512 F.2d at 924 (citing *Magnetic Engineering & Mfg. Co.*, 178 F.2d at 869) (once jurisdiction is vested in the court of appeals it is not terminated by the subsequent completion of a § 1404 transfer).

For the second proposition—that review in this Court should be limited to jurisdictional issues because of the mailing—plaintiffs rely upon four opinions of this Court (three published and one unpublished). All of these cases, dealt with the ability to appeal under the collateral order doctrine, 28 U.S.C. § 1291, or some other statutory basis after physical transfer had been completed.[8] None of the cases discuss when physical transfer has been completed, with the exception of *Manchester v. United States Organized Crime Drug Enforcement Task Force Mid-Atlantic*, 1990 WL 36734 (4th Cir. 1990), which supports our position by relying on *Lou v. Belzberg*, 834 F.2d 730, for the proposition that "jurisdiction of [the] transferring court and corresponding appellate court ends once papers are docketed in receiving court." Thus, on their face these cases have nothing to do with this

---

[8] *See, e.g., Carefirst of Md, Inc. v. Carefirst Urgent Care Ctr, LLC*, 305 F.3d 253 (4th Cir. 2002) (appeal under the collateral order doctrine filed *after* physical transfer of files; court of appeals ordered district court to obtain copy of the file and reviewed petition for writ of mandamus without limitations); *Wilson-Cook Medical, Inc.*, 942 F.2d 247 (appeal of Rule 41 dismissal in which jurisdiction retained in transferee court where file was never physically transferred); *Technosteel*, 271 F.3d 151 (question of whether the Court of Appeals retained jurisdiction over issues made immediately appealable by statute notwithstanding the receipt of the file by the transferee jurisdiction prior to the filing of the appeal); *Manchester v. United States Organized Crime Drug Enforcement Task Force Mid-Atlantic*, 1990 WL 36734 (4th Cir. 1990) (no appeal jurisdiction after transfer order completed).

situation, where this Court acquired jurisdiction over a petition for mandamus (not

an appeal) *before* physical transfer was completed.[9]

## II.   THIS COURT SHOULD VACATE THE RE-TRANSFER FOR DISREGARD OF THE PREVIOUS TRANSFER ORDER AND IN EXERCISE OF ITS SUPERVISORY POWER

While the failure to make jurisdictional findings is a sufficient ground on

which to vacate the transfer to the District of Columbia, the complete disregard of

the Southern District of California's decision based on plaintiffs' misleading and

erroneous assertions provides an independent ground for issuing the writ.

*Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3rd Cir. 1982), in

granting the writ to reverse a re-transfer in the context of 28 U.S.C. § 1406,

---

[9] Plaintiffs suggest that the case might have been docketed sooner but for CACI's interference and, as a result, this Court should "find that the action was physically transferred." (Pls.' Resp. Add. at 11-12.) This assertion is incorrect and irrelevant. First, plaintiffs did exactly the same thing, *with the consent of defendants* (which consent they withheld in this instance). Second, seeking a stay to allow for appellate review of an expeditiously filed petition is not interference, it is the preferred course of action in this circuit, *Gower*, 799 F.2d at 928 n.1, and required in the District of Columbia, *In re Briscoe*, 976 F.2d at 1426 (20-day hold of case file required to allow orderly appellate review). Third, it is factually inaccurate; the case was docketed the day it was received, thus there was no "delay." The fact that the docketing was of no consequence is a result of CACI having filed its petition the day before. If anything, it is the conduct of plaintiffs in trying to prevent this court's review that points in favor of a particular outcome. *See A.C. Neilson Co.*, 270 F.2d at 695 ("Courts do not look with favor upon the efforts of parties to a lawsuit or their counsel to prevent an opposing party from having its day in court.").

explained the rationale for issuance of the writ to police failure to adhere to law of the case in transfer situations:

> [J]udges of co-ordinate jurisdiction sitting in the same court and in the same case should not overrule the decisions of each other. The purpose of this rule is to preserve the orderly functioning of the judicial process....This rule of judicial comity, should similarly apply to the propriety of transfer orders between two courts. Once the transferor court has decided the issue of whether the suit "could have been brought" in the transferee court, 28 U.S.C. s 1406(a), this ruling becomes the law of the case. If the party opposing the transfer believes the decision is erroneous, it can either seek reconsideration in the transferor court or else petition for a writ of mandamus in the court of appeals of the circuit in which the transferor court is located. A disappointed litigant should not be given a second opportunity to litigate a matter that has been fully considered by a court of coordinate jurisdiction, absent unusual circumstances.
>
> Adherence to law of the case principles is even more important in this context where the transferor judge and the transferee judge are not members of the same court. Here, the principles of comity among courts of the same level of the federal system provide a further reason why the transferee court should not independently re-examine an issue already decided by a court of equal authority.

*Id.* at 168-69 (internal quotations, citations, and footnotes omitted).

### A.    The Issue of Which District this Case Should Be Tried in Was Law of the Case Absent Changed Circumstances or Clear Error

In the Southern District of California, CACI moved for transfer to the Eastern District of Virginia or, in the alternative, to the District of Columbia. Titan and the other Defendants-Respondents argued that the Court should rule on the outstanding motions to dismiss prior to entertaining the motion to transfer to determine the contours of what, if anything, was left of the case, before deciding

where it should be litigated. Once it became clear the Court would not do so, however, Defendants-Respondents supported transfer to the District of Columbia or to the Eastern District of Virginia.

Judge Rhoades on March 21, 2005 transferred the case to the Eastern District of Virginia. In doing so, he found that the case could have been brought there. (CACI Ex. 3, 3/21/05 Tr. Order 2.[10]) Having decided the § 1404(a) motion, Judge Rhoades, "by necessary implication," *DeWeerth v. Baldinger*, 38 F.3d 1266, 1271 (2d Cir. 1994), determined that the Eastern District of Virginia was superior to the District of Columbia as the proper forum to try this case. This would have been the case even if CACI, Titan, and the other defendants had not argued in the alternative to transfer the case to the District of Columbia: district courts are empowered to transfer cases *sua sponte* pursuant to § 1404(a). *See Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990); *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th

---

[10] Because he did not elaborate, there is no way to determine whether Judge Rhoades based this decision on the record evidence that Titan and CACI's pertinent operational units are located in the Eastern District of Virginia or some other reason such as nationwide service conferred by plaintiffs' RICO claims. That is why Judge Hilton—even if he had the power to re-examine the issue of transfer, which he did not—was required to make specific jurisdictional findings that the case could have been brought in the District of Columbia, because that issue has to this day not yet been decided by any court. His failure to do so provides an independent basis for issuing the writ, as set forth in CACI's petition and Defendants-Respondents' previous response.

Cir. 1986). But because they did so argue,[11] Judge Rhoades had before him the relevant facts bearing on the appropriateness of whether the case should have been transferred there in the first instance. That Judge Rhoades decided to transfer the case to the Eastern District of Virginia, in the face of the alternative suggestion of the District of Columbia, precluded the District Court from reopening the decision to transfer to the District of Columbia—or any other jurisdiction for that matter— absent extraordinary or changed circumstances that no party has argued existed.

Plaintiffs have not identified, and we have not found, a single case where having been presented with two alternatives (E.D.Va. or D.C.), and having chosen one (E.D.Va.), the decision not to choose the other (D.C.), was not deemed law of the case. It was not necessary, as plaintiffs suggest, *see* Pls.' Resp. Add. at 16, for Judge Rhoades to explain why he declined to transfer to the District of Columbia for his decision to be law of the case. Whether a court "explicate[s] its rationale is irrelevant, for the law of the case turns on whether a court previously 'decide[d] upon a rule of law'…not on whether, or how well, it explained the decision." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988) (internal citations omitted). Whether Judge Rhoades chose the Eastern District of

---

[11] Nothing that CACI said at oral argument prevented Judge Rhoades from transferring the case to D.C. given the authority to do so *sua sponte*. At any rate, it is undisputed that the Defendant-Respondents, after the Court rejected their request to decide the motions to dismiss first, did not withdraw their support for the District of Columbia as an alternate venue.

Virginia over the District of Columbia based on plaintiffs' argument that there were no judicial efficiencies to be gained by a transfer to the District of Columbia or because plaintiffs agreed with CACI that it was "unclear" whether the case could have been brought there in the first instance (plaintiffs later contradicted both of these points on the re-transfer motion before Judge Hilton) is both impossible to ascertain and immaterial to the application of the law of the case to the District Court's re-transfer order. The point of law of the case is to avoid having another court, or the same court later in the litigation, go back and relitigate decisions (e.g., where should this case be litigated) that have already been made.

What is clear is that other courts have recognized that this type of litigation by ambush undermines the orderly and fair administration of cases and properly used their supervisory authority to ensure that such practices are not rewarded. *See Goodyear Tire & Rubber Co. v. McDonnell Douglass Corp.*, 820 F. Supp. 503, 509 (C.D. Cal. 1992). It is also clear that, under these circumstances, the District Court was not free to discard Judge Rhoades's considered judgment absent a finding, which was not made, that his decision was "clearly erroneous." *Christianson*, 486 U.S. at 819.[12]

---

[12] Plaintiffs assert that the Defendants-Respondents, including John Israel, discuss a "host of arguments and facts that were not raised in the District Court" and request the opportunity to file a responsive memorandum. (Pls.' Resp. Add. at 16 n.3.) Presumably this refers to the law of the case issues addressed by Defendants-Respondents. If this assumption is correct, then the assertion is simply false.

**B.    Plaintiffs' Silence and Affirmative Statements to the Southern District of California Further Support Issuance of the Writ**

Here, several of the defendants urged the court to choose the District of Columbia over the Eastern District of Virginia.  Yet plaintiffs remained silent, except to disavow the existence of efficiencies by sending this case to the District of Columbia.  More generally, as set forth above, the decision to send the case to a particular district necessarily implies it should not be sent to any other.  Plaintiffs, despite two rounds of briefing so far on CACI's petition, do not even address *Christianson* and perhaps more surprisingly, *Goodyear*, the only case to have actually analyzed the question that was before the Eastern District of Virginia and is now before this court, about how should a transferee court treat a motion to transfer to a third district.  *Goodyear* denied a motion to re-transfer absent changed circumstances.  The court's finding in *Goodyear* was, in part, supported by plaintiff's attempt to relitigate the transfer decision after remaining silent on its preferred forum during its opposition to defendant's initial (and ultimately successful) transfer motion, leading the court to conclude that plaintiff was

---

Titan, joined by the other Defendant-Respondents filed an opposition to plaintiffs' motion to transfer in the Eastern District of Virginia, which specifically relied upon *Christianson* and the other cases discussed in Defendants-Respondents' response. (CACI Ex. 9).  While we disagree with plaintiffs' characterization of our pleadings (and note that the "host of arguments and facts" is unspecified), we join plaintiffs' request insofar as we believe that a full round of briefing and oral arguments is appropriate.

engaged in forum shopping. If anything, plaintiffs' motion in the District Court presented a more compelling case for denial than did the motion in *Goodyear*. Unlike the movant in that case, the plaintiffs here actually argued *against* transfer to the very court they now find preferable to this one.

Nor is the District Court's and plaintiffs' conduct the sort of error (in the case of the District Court) or misbehavior (in the case of plaintiffs) that is wrong but does not rise to the level of warranting issuance of the writ. The failure to adhere to the law of the case doctrine is different in kind from a disagreement with the manner in which the District Court weighed the evidence in applying the correct standard. *See Hayman*, 669 F.2d 162 (issuing writ to vacate re-transfer of case for failure to adhere to law of case). That the District Court here also failed to follow controlling Supreme Court precedent as to the extremely limited circumstances under which a re-transfer should occur rendered the transfer fundamentally flawed.

The whole sequence of events here calls out for this Court to exercise its supervisory powers and issue the writ. First, plaintiffs secured the transfer by making a series of representations, first to the Eastern District, then to this Court that were completely at odds with earlier positions on the same subject. Second, the Eastern District transferred this case without making the necessary jurisdictional findings, and without attempting in any way to justify its disregard of

*Christianson* and the decision of the Southern District of California and its selection of the Eastern District of Virginia over the District of Columbia. Third, the speedy dispatch of the physical record and plaintiffs' refusal to consent to a stay of the docketing in the District of Columbia (a courtesy they had sought and received from defendants in the context of the initial transfer) and the District Court's refusal to request that the D.C. District Court stay docketing of the case was a blatant, though foredoomed, attempt to divest this court of jurisdiction to review.[13] This is precisely the type of fundamental error and behavior by district courts and litigants for which the extraordinary remedy of mandamus is available and should be exercised.

## III.   ORAL ARGUMENT IS WARRANTED

This petition presents substantial questions bearing on the reach of this Court's supervisory authority. We believe that the petition is sufficient on its face to warrant issuance of the writ. If, however, the Court has any doubt about its jurisdiction or adequate grounds to issue the writ, we urge the Court to set this matter for oral argument. This is particularly appropriate in this case given that it

---

[13] *See NBS Imaging Systems, Inc*, 841 F.2d at 298 ("One factor courts consider when mandamus is sought in this situation is whether the district court acted hastily in transferring the case, thus precluding a diligent petitioner from seeking mandamus in the appellate court."); *A.C. Neilson Co.*, 270 F.2d at 695 ("Courts do not look with favor upon the efforts of parties to a lawsuit or their counsel to prevent an opposing party from having its day in court.").

does not appear that this Court has previously had occasion to precisely define the meaning of "physical transfer" in this context, or whether a district court can insulate its decision to ship a case off to another district without giving this Court the opportunity to review its actions.

## CONCLUSION

This Court acquired jurisdiction over the instant petition when it was filed in advance of the receipt and docketing of the case in the District of Columbia and, therefore, this Court may review all issues raised in the petition. The District Court's order must be vacated because it ignored Supreme Court and other persuasive appellate precedent counseling courts to observe law of the case and because the District Court failed to make the required findings with respect to whether the case might have been brought in the District of Columbia prior to re-transferring the case.

Respectfully submitted,

By: _____
F. Whitten Peters
Ari S. Zymelman
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (facsimile)
*Attorneys for Respondent The Titan
Corporation*

By: _____
Adam L. Rosman
Eric R. Delinsky
Ellen D. Marcus
ZUCKERMAN SPAEDER LLP
1201 Connecticut Avenue, N.W.
Washington, DC 20036
202-778-1800 (phone)
202-822-8106 (facsimile)
*Attorneys for Respondent Adel L.
Nakhla*

By: _____
James W. Hundley
BRIGLIA & HUNDLEY, P.C.
10560 Main Street, Suite 314
Fairfax, Virginia 22030
(703) 385-8005

Henry E. Hockeimer, Jr.
HANGLEY, ARONCHICK,
SEGAL & PUDLIN, P.C.
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
215-496-7035
Attorneys for *Steven A. Stefanowicz*

Date: July 8, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of July, 2005 I caused this Joint

Response to be served by first class mail upon each of the following:

The Honorable Claude M. Hilton
United States District Judge
United States District Court for the Eastern District of Virginia
401 Courthouse Square
Alexandria, Virginia  22314

J. William Koegel, Jr.; Esq.          Shari L. Klevens, Esq.
John F. O'Connor, Esq.                Alison L. Doyle, Esq.
Steptoe & Johnson LLP                 McKenna Long & Aldridge LLP
1330 Connecticut Avenue, N.W.         1900 K Street, NW
Washington, DC 20036                  Washington, DC 20006

Adam L. Rosman, Esq.                  Henry E. Hockeimer Jr., Esq.
Ellen D. Marcus, Esq.                 Hangley Aronchick Segal & Pudlin, P.C.
Zuckerman Spaeder LLP                 One Logan Square, 27th Floor
1201 Connecticut Avenue, N.W.         Philadelphia, PA 19103-6933
Washington, DC  20036

                                      Susan L. Burke, Esq.
                                      Jonathan Pyle, Esq.
James W. Hundley, Esq.                Montgomery, McCracken, Walker & Rhoads
Briglia & Hundley, P.C.               Suite 314
10560 Main Street                     Avenue of the Arts
Fairfax, VA 22030-7182                Philadelphia, PA 19109

                    Thomas Craig