## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SALEH et al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) Case No. 05-cv-1165 (JR) |
| v. | ) |
| | ) |
| TITAN et al., | ) |
| Defendants. | ) |
| | ) |

### PLAINTIFFS' REPLY TO CACI'S OPPOSITION TO
### PLAINTIFFS' MOTION FOR LEAVE TO AMEND

On February 9, 2006, plaintiffs filed a motion for leave of Court to file a Third Amended Complaint. Alone among the defendants, the CACI defendants oppose the motion because it fails to accede to the CACI defendants' demand that plaintiffs drop their claims against CACI International Inc. and CACI Inc. – Federal.

The CACI defendants lack any credible legal justification to support the dismissal of plaintiffs' claims against CACI International Inc. and CACI Inc. – Federal at this early juncture in the litigation, before discovery has even commenced. The CACI defendants attempt to portray plaintiffs' allegations as contract-based claims, but this is seriously misguided. Plaintiffs are alleging that CACI International Inc. and CACI, Inc. – Federal conspired with others and participated in events that led to the torture and other abuse of plaintiffs and class plaintiffs. Plaintiffs' allegations in the Third Amended Complaint more than suffice for federal pleading requirements and the proposed amendment should be allowed under Federal Rule of Civil Procedure 15(a). Furthermore, even without the benefit of any discovery, the documents already in the public record establish that CACI International Inc. and CACI, Inc. – Federal played a

pivotal role in the torture and other abuse of plaintiffs. CACI International Inc. continues to play

a pivotal role by actively trying to prevent the truth from being known and publicized.

## STATEMENT OF PROCEDURAL FACTS

On June 9, 2004, plaintiffs filed this action in the Southern District of California. *See
Complaint (S.D. Cal. No. 04-CV-1143)(June 9, 2004)*. CACI, as well as the other defendants,
filed motions to dismiss in September 2004. *See Motion by Defendants CACI International Inc.,
CACI, Inc. – Federal, and CACI N.V. To Dismiss Second Amended Complaint (Sept. 10, 2004)*.
The parties submitted extensive briefing on the legal issues raised in those motions.

At that point, having waited for five months, CACI filed a motion to transfer the case to
the Eastern District of Virginia and urged the Court to rule on it before ruling on already-briefed
motions to dismiss. *See Motion by Defendants CACI International Inc., CACI, Inc. – Federal,
and CACI N.V. To Transfer Venue (Nov. 10, 2004); Transcript of Hearing on Motion To Enjoin
Duplicative Action (Nov. 22, 2004)* at 52. The Court granted the motion to transfer on March 21,
2005. Plaintiffs immediately sought – successfully – to transfer the action to the District of
Columbia to be consolidated with the pending *Ibrahim* action. *See Order (E.D. Va. 1:05-cv-
00427) (June 3, 2005)*.

CACI thereafter again delayed the progress on the litigation by challenging this Court's
jurisdiction over the three individual defendants. This challenge to jurisdiction was ultimately
resolved by the Eastern District of Virginia's straightforward ruling that this Court has
jurisdiction under both RICO and the D.C. long-arm statute. S*ee Order (E.D. Va. 1:05-cv-
00427) (Jan. 13, 2006)* at 1 ("This Court finds that there is jurisdiction in the D.D.C. because the
D.D.C. has personal jurisdiction over Defendants under the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. §§ 1961-1968 (2000); and the District of Columbia's long-arm statute.").

Upon return of the action to the District for the District of Columbia, CACI and the other defendants took the position that all pending motions on file when the case was transferred to the Eastern District of Virginia should be considered to have been withdrawn unless they had been set for hearing within thirty days, in accordance with that district's local rules. *See Response of Defendant L-3 Communications Titan Corporation to Plaintiffs' Motion for an Expedited Status Conference (Jan. 24, 2006) at 3* (joined by defendants CACI, Nakhla, Stefanowicz, and Israel). Plaintiffs did not contest that assertion, but instead acquiesced to this interpretation of the procedural posture and refiled their motion to amend the complaint on February 9, 2006. At present, this is the only motion pending before this Court. Every other motion has been deemed withdrawn because the action was pending eighty-five days in the Eastern District of Virginia without any party noticing a motion for hearing.

Given this procedural posture, plaintiffs sought and obtained agreement from all defendants other than CACI that the most efficient way to proceed would be to permit the filing of the Third Amended Complaint with the subsequent refiling of the defendants' motions to dismiss. Any and all challenges to the Third Amended Complaint could be heard on the motions to dismiss, rather than as challenges to the amendment itself. The Stipulation – signed by all parties other than CACI – is attached as Exhibit A. That Stipulation states: "To avoid duplicative and piecemeal litigation and unnecessary disputes over the procedural posture of the case, the non-CACI defendants do not oppose the Court granting plaintiffs' February 9, 2006 Motion to amend the complaint. The non-CACI defendants will assert their challenges to the Third Amended Complaint in motions to dismiss and other appropriate motions."

CACI, however, refused to agree to the Stipulation unless plaintiffs dismissed their claims against CACI International Inc. and CACI Inc. – FEDERAL.  When plaintiffs refused to dismiss these claims, CACI filed an Opposition challenging the motion to amend as futile as to the claims raised against CACI International Inc. and CACI Inc. – Federal.  CACI claims that plaintiffs' proposed amendment is futile because it (1) alleges no facts that would create liability for CACI International Inc. and CACI, Inc.- Federal and (2) its allegations of a conspiracy are insufficient to establish liability for CACI International Inc. and CACI, Inc.-Federal.  *See Defendants CACI International Inc. and CACI, Inc. – Federal's Memorandum In Opposition To Plaintiffs' Motion For Leave To File A Third Amended Complaint (Feb. 24, 2006)* ("CACI Mem.").

## STATEMENT OF FACTS

Plaintiffs' Third Amended Complaint ("TAC") challenges the lawfulness of conduct by the web of CACI companies who do business under the moniker "CACI."  All of the allegations set forth below directly challenge conduct by CACI International Inc. and CACI Inc. – Federal.

The TAC alleges that CACI participated in a conspiracy to torture and otherwise abuse prisoners being held in United States custody.  *See, e.g., TAC* ¶ 88 ("The CACI Corporate Defendants amended the CACI Code of Ethics and Business Conduct Standards to encourage employees to disregard the law and to discourage employees from reporting violations of the law to the relevant United States authorities."); *TAC* ¶ 70 ("The CACI Corporate Defendants maintained close relationships with certain government officials.  As their SEC filings reveal, 'our senior management team is very important to our business . . . .'"); *TAC* ¶ 98 ("Certain government officials and senior management in Defendant Titan and the CACI Corporate Defendants had relationships that assisted in the formation and implementation of the Torture

Conspiracy."); *TAC* ¶ 72 ("The CACI Corporate Defendants failed to exercise due diligence in hiring. The CACI Corporate Defendants hired people based on telephone interviews and deployed them to Iraq without anyone in CACI management even meeting or interviewing them in person."); *TAC* ¶ 68 ("To implement the strategy to build services capacity, the CACI Corporate Defendants made a series of acquisitions and took other steps designed to increase their ability to contract with the United States military for intelligence services."); *TAC* ¶ 104 ("During the period 2002 to present, upon information and belief, the CACI Corporate Defendants earned millions of dollars in revenues from their provision of Interrogation Services. These fruits of the Torture Conspiracy have been invested in the ongoing operations of the CACI Corporate Defendants."); *TAC* ¶ 319 ("Defendant Titan and the CACI Corporate Defendants . . . formed an Enterprise as that term is defined by RICO. The Enterprise intended to, and did, earn millions of dollars more than would have been earned in the absence of illegal activity.").

The TAC alleges that CACI participated in a conspiracy to cover up the discovery of torture and other abuses at prisons in Iraq. *See TAC* ¶ 84 ("The CACI Corporate Defendants intentionally and knowingly engaged in a conspiracy to prevent the reporting of human rights violations to the appropriate authorities."); *TAC* ¶ 92 ("The CACI Corporate Defendants continue to further their own goals and the goals of the conspiracy by investing money, time and energy into halting the various efforts being made to uncover the full truth relating to its role in the torture and mistreatment of prisoners held under United States' custody in Iraqi prisons."); and *TAC* ¶ 93 ("The CACI Corporate Defendants have knowingly and intentionally embarked upon a course of action designed to suppress any coverage or investigation of their role in the conspiracy. The CACI Corporate Defendants have sent several letters to reporters threatening to

sue them if they report on the CACI Corporate Defendants' role in the torture and mistreatment.").

The TAC alleges that CACI failed to investigate complaints about their interrogators and attempted to prevent outside investigations. *See TAC* ¶ 94 ("Upper management of the CACI Corporate Defendants made a series of unqualified and false statements to the effect that independent and complete internal investigations had been conducted and had confirmed that CACI employees had not engaged in any wrongdoing."); *TAC* ¶ 164 ("The Corporate Defendants failed to investigate fully the conduct of their employees."); *TAC* ¶ 169 ("Defendants took steps within the United States as well as abroad to prevent the commencement or completion of investigations into the torture and mistreatment of prisoners.").

Although almost two years has passed since they filed their complaint, plaintiffs have not yet had the benefit of any discovery. Nonetheless, facts on record in this litigation as well as facts in the public domain continue to accumulate in support of plaintiffs' allegations regarding CACI International Inc. and CACI Inc. – Federal. A few are worthy of note.

***First,*** the chief executive officer of CACI International Inc., J.P. ("Jack") London, testified under oath in a declaration he submitted in this action that he has "personal knowledge" about whether CACI encouraged abuse of detainees in Iraq. *Declaration of J.P. London ¶ 2(d)* (*Exhibit A to Declaration of John F. O'Connor in Support of Motion of Defendants CACI International Inc., CACI, Inc. – Federal, and CACI N.V. To Transfer Venue (Feb. 7, 2005)*), attached hereto as Exhibit B. *See also* Anitha Reddy & Ellen McCarthy, *CACI in the Dark on Reports of Abuse*, Wash. Post, May 6, 2004 at E1 (London saying that the man accused of wrongdoing is still at work and that he has been doing "a damn fine job."), attached hereto as Exhibit C; J.P. London, Editorial, *Angelides takes wrong tack with CACI investment*,

Sacramento Bee, Aug. 19, 2004 at B7 ("With American troops risking their lives in Iraq, CACI International Inc. is proud to honor the Army's request for services, including interrogation, to help our men and women in uniform and perhaps reduce the risk to their lives."), attached hereto as Exhibit D.  CACI's web site also has a section entitled *CACI in Iraq – Frequently Asked Questions*, *available at* http://www.caci.com/iraq_faqs.shtml, that does not even mention CACI Premier Technology, Inc.

  ***Second***, CACI International Inc. is playing a leading role in CACI's efforts to suppress public discussion of CACI's role in the Abu Ghraib debacle.  CACI International Inc. (along with CACI-PT) filed a lawsuit against a radio talk show host who talked about CACI's role in the torture and abuse.  *See Amended Complaint, CACI Premier Technology, Inc. & CACI International Inc. v. Rhodes (E.D. Va. No. 1:05 CV 1111 Nov. 10, 2005)* at 11 (seeking $1,000,000 in compensatory damages and $10,000,000 in punitive damages), attached hereto as Exhibit E.

  Counsel for CACI International Inc. and CACI-PT also sent a threatening letter to *The New Standard* claiming that the newspaper had engaged in defamation per se.  The letter alleged:

> [T]he article conveys the false impression that CACI is in some way responsible for, or connected with, the new allegations of abuse.  There is simply no factual basis to support this insinuation. The public record is completely devoid of any factual information supporting the conclusion that CACI personnel have been assigned to work at locations other than Abu Ghraib, much less participated in abuses at such locations.

*Letter from J. William Koegel to B. Dominick (Oct. 5, 2004)*, attached hereto as Exhibit F.  (In fact, CACI personnel did work at locations other than Abu Ghraib.)[1]

---

[1] Counsel for CACI International Inc. and CACI-PT routinely police media coverage to squelch reports that contradict their litigation positions.  Thus, counsel told *Government Executive* magazine that it should not insinuate "that CACI personnel conducted interrogation activities that was [sic.] not subject to the military chain of command" because the magazine "had been given repeated explanations of CACI's management and high-level

**Third**, in a letter on letterhead stating at the top "CACI" and at the bottom "CACI International Inc. and Subsidiary Companies," CACI tried to stifle academic debate by claiming (falsely) that CACI was not involved in torture. *See, e.g.*, *Letter from J. Elefante, CACI, International Inc., to M. Sapir, M.D., Ph.D., Retro Poll (May 12, 2005)* ("It has recently come to my attention that you and Prof. L. Ling-chi Wang convened an event in which CACI was linked to the abuses at Abu Ghraib prison in Iraq . . . any reference that CACI was involved in torture is false and damaging to the company's fine reputation."), attached hereto as Exhibit H.

**Fourth**, CACI International Inc. and CACI Inc. – Federal are leading the efforts to dissuade the investing public from learning about CACI's role in the Abu Ghraib debacle. In July 2004, California State Controller Steve Westly suggested that the California State Teacher's Retirement System "restrict investments in companies engaged in torture." *Westly Seeks Anti-Torture Investment Policy*, Business Wire (July 6, 2004), attached hereto as Exhibit I. Mr. Westly stated that he would discuss his proposal during a meeting when "[t]he subcommittee was set to discuss a proposal to question executives from CACI International regarding its role in the Iraq prisoner abuse scandal." CACI International Inc. issued a press release the next day accusing the Controller of grandstanding. CACI Press release, *CACI Rejects 'Vile' Allegations by California Controller: Company Cites Westly for Political Grandstanding*, July 7, 2004, attached hereto as Exhibit J.

A month later, California State Treasurer Phil Angelides publicly questioned whether the California Public Employees' Retirement System should continue to invest in CACI International Inc. because "interrogation is a high-risk activity that is way out of [CACI's] core

---

defense officials to the contrary." J. William Koegel, Jr., *CACI Response to July 27 Article on Iraq Contracts*, Government Executive (July 30, 2004), attached hereto as Exhibit G. In fact, the reality of what happened in Iraq differs from CACI's litigation position, as will be demonstrated by the subsequent papers filed on the "government contractor defense."

business and has minimal return."  Robert Collier, *Executive Grilled on Firm's Role in Iraq Torture*, San Francisco Chronicle, Aug. 3, 2004, attached hereto as Exhibit K.  The CACI executive who appeared before Angelides at a public hearing was Kenneth Johnson, the President of CACI Inc. – Federal.  *Id.*  According to the press coverage, the CACI Inc. – Federal president claimed he personally "reviews and approves every hire and that all employees being sent to Iraq must undergo a one-week 'charm school' run by the Army at Fort Bliss, Ga., which includes some human rights training."  *Id.*

   **Fifth**, and as will be discussed at further length in the briefing regarding the so-called "government contractor defense," the United States Government Accountability Office conducted an in-depth analysis of CACI's activities relating to obtaining contracts for interrogation services and expressly condemned CACI International Inc. and its subsidiaries for their participation in wrongdoing in the procurement process.  *Interagency Contracting Problems with DoD's and Interior's Orders to Support Military Operations, GAO, Apr. 2005* ("GAO Report") at 2, excerpt attached hereto as Exhibit L.  The GAO does not even mention the entity CACI-PT in its report beyond noting that it and its blanket purchase agreements had been acquired in 2003.  *Id.* at 5 n.4, 10 n.18.[2]  *See also Letter from J. Neurater to J.P. London (July 7, 2004)* (letter from a Suspension and Debarment Official at the United States General Services Administration to J. P. London, CEO of CACI International Inc., captioned "Contract issues with CACI International, Inc."), attached hereto as Exhibit M.

   **Sixth**, although the TAC does not allege contract breaches and is not limited to torture and abuse occurring during interrogations, one of the blanket orders used by CACI to obtain

---

[2] Jeffrey P. Elefante, Executive Vice President, Secretary and General Counsel at CACI International Inc., submitted comments to the GAO Report on behalf of "CACI International Inc and CACI Premier Technology, Inc. (collectively 'CACI')."  *Id.* at Appendix IV.

funds from the United States military for interrogation services was issued to CACI, Inc. –

Federal, not CACI Premier Technology.  *See Work Order*, attached hereto as Exhibit N.

   **Seventh**, CACI International Inc., not CACI-PT, claimed to have conducted an internal

investigation into the conduct of CACI interrogators in Iraq and found no evidence of CACI

involvement in abuses.  *See* CACI Press Release, *CACI Reports Preliminary Findings of Internal*

*Investigation*, Aug. 12, 2004 ("CACI International Inc (NYSE:CAI) announced today that the

internal investigation it is conducting concerning its interrogator personnel in Iraq to date has not

produced any credible or tangible evidence that substantiates the involvement of CACI personnel

in the abuse of detainees at Abu Ghraib prison or elsewhere in Iraq ."), attached as Exhibit O.

   **Eighth,** CACI International Inc., not CACI-PT, decided to cease providing interrogators,

but not other personnel, to the military.  The most recent Annual Report filed by CACI

International Inc. with the United States Securities and Exchange Commission states:

> Beginning in August, 2004  . . . the Company provided
> interrogation services pursuant to a contract issued by the Army's
> Wiesbaden Contracting Center (WCC).  The original term of that
> contract ended on July 31, 2005, but the Company has continued to
> provide such services pursuant to an extension of that contract that
> expires on September 30, 2005.  After the completion of that
> contract extension the Company will no longer be providing
> interrogation services.

*CACI International Inc. 10-K (Sept. 13, 2005), available at*

http://www.sec.gov/Archives/edgar/data/16058/000119312505184854/d10k.htm.

   **Ninth,** key corporate executive leadership, including  Messrs. London, Kuhn, and

Waechter, serve on the boards of all three entities, CACI International Inc., CACI Inc. – Federal,

and CACI-PT.[1]  The three companies are all registered at the same address in Arlington,

Virginia.[3]  As noted above, the three companies hold themselves out to the public as "CACI" or "CACI International Inc."

## ARGUMENT

Plaintiffs were tortured and abused in Abu Ghraib and other prisons in Iraq.  Plaintiffs allege that men and women working for CACI caused and participated in that torture and abuse because they were more interested in making money than in ensuring respect for human rights. Plaintiffs point to a litany of conduct by CACI International Inc. and CACI Inc. – Federal in the TAC, including conspiring with military and government officials, attempting to obstruct any investigation into or public discussion of CACI's role, and amending the corporate code of ethics to lower reporting standards.  These allegations against CACI International Inc. and CACI Inc. – Federal clearly suffice under the Fed. R. Civ. P. 15 standard for amending pleadings.

CACI, intent on postponing discovery, claims it has legal support for its posture that the motion for leave to amend should be denied, but each and every case cited by CACI to support its effort to defeat the amendment reveals that the amendment was denied only *after* discovery. CACI also seeks to have the amendment denied as futile for allegedly failing to meet the standard for pleading conspiracy as set forth in two District of Columbia cases.  Even setting aside the obvious point that federal, not state, pleading rules control, the argument lacks merit because the TAC meets the standard for alleging conspiracy set forth in those cases.

---

[3] The officers of the three entities are as follows.
   *CACI International Inc.*
   J.P. London, Chief Executive Officer, James D. Kuhn, Senior Vice President; Stephen L. Waechter, Executive Vice President; Jeffrey P. Elefante, Executive Vice President; William J. Clancy, Executive Vice President
   *CACI Inc. – Federal*
   J.P. London, Chief Executive Officer; James D. Kuhn, Senior Vice President; Stephen L. Waechter, Executive Vice President; S. Mark Monticelli, Senior Vice President; Paul M. Cofoni, President
   *CACI Premier Technology, Inc.*
   J.P. London, Chief Executive Officer; James D. Kuhn, Senior Vice President; Stephen L. Waechter, Executive Vice President; Jeffrey P. Elefante, Executive Vice President; F. Michael Gray, Vice President
*See* http://www.scc.virginia.gov/division/clk/diracc.htm (visited March 3, 2006).

I. **THE TAC CLAIMS AGAINST CACI INTERNATIONAL INC. AND CACI, INC. – FEDERAL SATISFY FED.R.CIV.P. 8.**

The proposed TAC states viable claims against CACI International Inc. and CACI Inc. – Federal. Under the Federal Rules, pleadings "need only identify the basis of the court's jurisdiction, demand for judgment for the relief sought, and contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Pleadings need not even identify any particular legal theory under which recovery is sought. *See Hanson v. Hoffman*, 628 F.2d 42, 53 (D.C. Cir. 1980). Plaintiffs' allegations against CACI International Inc. and CACI, Inc. – Federal in the proposed TAC more than suffice for the pleading requirements of Federal Rule of Procedure 8.

II. **THIS COURT SHOULD GRANT LEAVE TO FILE THE TAC AS TO CACI INTERNATIONAL INC. AND CACI, INC. – FEDERAL**

The only question raised by CACI's opposition is whether the TAC can be filed as to CACI International Inc. and CACI, Inc. – Federal. CACI concedes (and the other parties have stipulated) that plaintiffs' TAC can be filed against all other defendants, including CACI-PT. Clearly, plaintiffs are entitled to amend and update the previously filed claims asserted against CACI International Inc. and CACI, Inc. – Federal. There has not been any record evidence developed that exonerates these two parties. Rather, all that is on record is CACI's self-serving attempt to narrow the TAC to CACI-PT merely because that subsidiary is the alleged signatory on the contracts that CACI claims are relevant. But there are no contracts on the record at all, let alone contracts that require CACI interrogators and others to torture and abuse plaintiffs. This is not a contract action – this is a human rights action alleging grave and serious crimes committed by CACI and its employees. CACI's effort to limit its misconduct to the contracts should fail.

It is black letter law that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has said this "mandate is to be heeded" by district courts and cautioned not to deny leave in the absence of bad faith, delay or prejudice – none of which is even alleged by CACI to be present here. *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Caribbean Broadcasting System, Ltd. v. Cable & Wireless, PLC*, 148 F.3d 1080, 1084 (D.C. Cir. 1998) (noting that district court's discretion to dismiss without leave to amend is "severely restricted" by the command of Rule 15(a) that such leave be "freely given").

Clearly, plaintiffs are entitled to discovery about the role of CACI International Inc. and CACI, Inc. – Federal. The standard for futility at this stage of litigation—before any ruling on motions to dismiss and before any discovery has been conducted—is very high. *See Foman* at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). In *Henderson v. Stanton*, 172 F.3d 919 (Table) (D.C. Cir. 1998), the Court of Appeals for the D.C. Circuit held that establishing futility is much more difficult when the party pressing the claims has not had the benefit of discovery.

Each and every case relied upon by CACI in opposing leave to amend is inapplicable because they all involved denying leave to amend *after* discovery and *after* the development of a full factual record. *CACI Mem.* at 6-7 (citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996); *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996); and *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 105 (D.D.C. 2002)). *See James Madison* at 1099 (denying motion for leave to amend a claim for due process violations, together with a motion for summary judgment, because the facts as alleged in the complaint and in the government's statement of undisputed facts established beyond doubt that the government had

not violated the plaintiff's due process rights); *Willoughby* at 1003 (denying leave to amend to add a discrimination claim based on facts obtained during discovery and because the state discrimination claim was outside the statute of limitations); *Robinson* at 105 (denying motion for leave to amend in the context of a motion for summary judgment, after discovery, where the Court had also already granted judgment against plaintiff on a claim arising out of the same factual allegations).

Indeed, a survey of case law in this Circuit reflects that the courts have denied leave to amend only when confronting an incurable defect. *See, e.g.*, *Moldea v. N.Y. Times*, 22 F.3d 310, 319 (D.D.C. 1994) (denying leave to amend because the plaintiff was attempting to add a defendant who was protected by governmental immunity); *Johnson v. Billington*, 404 F. Supp. 2d 157, 163 (D.D.C. 2005) (denying leave to amend as futile because the plaintiff had not met the exhaustion requirement); *We the People v. U.S.*, No. Civ. A. 04-1211-EGS, 2005 WL 2473698 (D.D.C. 2005) (denying leave to amend as futile because the court had already decided a motion for summary judgment after full oral argument and the motion to amend merely restated the case without substantive change); *Bestor v. Lieberman*, No. Civ. A. 03-1470-RWR, 2005 WL 681460 (D.D.C. 2005) (denying leave to amend as futile because the court lacked subject matter jurisdiction over the entire case and proposed amendments would not survive a motion to dismiss). No such defect exists here – and CACI has not alleged that it does.

### III.    PLAINTIFFS STATE VIABLE CLAIMS AGAINST CACI INTERNATIONAL INC. AND CACI, INC. – FEDERAL

In contrast to the plaintiffs in the *James Madison*, *Willoughby*, and *Robinson* cases, plaintiffs have not been permitted to take discovery on the very issues raised by CACI International Inc. and CACI, Inc.-Federal – namely, their participation in the conspiracy; the relationship with the other defendants; the degree of control over their subsidiaries; their role in

the contracting process and in directing the relevant events in Iraq.  According to CACI,

however, plaintiffs' claims should be dismissed without any discovery because there is not ***any***

set of facts that would make CACI International Inc. and CACI Inc. – Federal (as opposed to

CACI-PT) legally liable for the abuses of prisoners in Iraq.  This troubling assertion lacks any

principled support.

      CACI argues, based on the questionable assumption that Delaware law controls,[4] that the

only applicable bases for such liability are agency and alter ego theories.  *See CACI Mem*. at 7.

This is simply wrong.  Corporations like CACI International Inc. and CACI, Inc.-Federal, may

be held liable for human rights violations under theories of aiding and abetting, ratification, joint

venture, and conspiracy.  *See e.g*., *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229 (N.D.

Cal. 2004); *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 100 (D.D.C. 2003);

*Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1157 (11th Cir. 2005); *Villeda Aldana v. Fresh Del

Monte Produce*, 416 F.3d 1242, 1248 (11th Cir. 2005); *In re Agent Orange Product Liability

Litigation*, 373 F. Supp. 2d 7, 112-21, 132-35 (E.D.N.Y. 2005); *In re Terrorist Attacks on Sept.

11, 2001*, 349 F. Supp. 2d 765, 826 (S.D.N.Y. 2005); *Doe v. Saravia*, 348 F. Supp. 2d 1112,

1148 (E.D. Cal. 2004); *Doe v. Qi*, 349 F. Supp. 2d 1258, 1332 (N.D. Cal. 2004); *Hilao v. Estate*

---

[4] Plaintiffs note that CACI assumes incorrectly that Delaware law applies on this issue because the applicable law is determined by the place of incorporation.  *See CACI Mem*. at 7, n.3.  The majority of plaintiffs' claims are based on federal statutes; for those claims, the ancillary legal question of third-party tort liability should be resolved by applying general federal common law tort principles, such as agency, joint venture, or reckless disregard.  Even assuming that a genuine choice of law analysis is required, where federal question jurisdiction is invoked, federal courts apply federal common law principles to resolve choice of law disputes.  *See Nat'l Fair Housing Alliance v. Prudential Ins. Co.*, 208 F. Supp. 2d 46, 62 (D.D.C. 2002).  Federal common law follows the approach of the *Restatement (Second) of Conflicts of Laws*, which set forth several factors that courts may consider in ascertaining the appropriate rule of law.  *Nat'l Fair Housing Alliance* at 62.  CACI International Inc. and CACI, Inc.-Federal have failed to make any showing that the application of federal common law choice of law principles would result in the application of Delaware law.  Indeed, at this stage of the litigation, before discovery has been taken, a choice of law analysis would be premature.  The assertion that Delaware law automatically applies is not even supported by the cases on which CACI International Inc. and CACI, Inc.-Federal rely.  *See CACI Mem*. at 7, n.3 (citing *Wright v. Herman*, 230 F.R.D. 1 (D.D.C. 2005) and *Association of Merger Dealers, LLC v. Tosco Corp.* 167 F. Supp. 2d 65 (D.D.C. 2005), both of which were diversity cases, not based on federal statues, and so District of Columbia choice of law principles applied).

*of Marcos*, 103 F.3d 767, 776 (9th Cir. 1996); *Presbyterian Church of Sudan v. Talisman*

*Energy, Inc.*, 244 F. Supp. 2d 289, 328 (S.D.N.Y. 2003), 374 F. Supp. 2d 331, 337-41 (S.D.N.Y

2005); *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 128 (E.D.N.Y. 2000); *Nat'l Coalition*

*Government of Union of Burma v. Unocal*, 176 F.R.D. 329, 347 (C.D. Cal. 1997).  Any one of

these theories is sufficient to support a parent corporation's liability for the acts of its subsidiary,

its employees, and/or for those of the government.

        CACI concedes – as it must – that the TAC alleges CACI International Inc. and CACI,

Inc. – Federal participated in a conspiracy.  CACI tries to argue that the TAC's conspiracy

claims do not suffice, in light of *Paul v. Howard Univ.*, 754 A.2d 297, 301 (D.C. 2000), and

*Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001).[5]  It is hard to understand why CACI finds

any solace for its meritless arguments in these District of Columbia cases.  Both cases proceeded

to discovery and neither were based federal pleading requirements.  In *Paul v. Howard*, an

employment discrimination action, the court found the statute of limitations barred certain claims

and the undisputed facts failed to support the plaintiff's conspiracy claims and other claims.

After discovery had been completed, the court found that the records established during

discovery did not suffice to establish the claims of civil conspiracy.  In *Weishapl v. Sowers*, the

court found on summary judgment that plaintiff simply did not have any evidence of an unlawful

agreement.  Neither case supports CACI's claim that plaintiffs here should not be able to proceed

to discovery on their civil conspiracy claims against CACI International Inc. and CACI, Inc. –

Federal.

---

[5] CACI has tried without success before to claim that plaintiffs' RICO conspiracy claim is insufficient.  While plaintiffs maintained that this Court had personal jurisdiction over the individual defendants pursuant to the RICO nationwide service of process provision, CACI argued the RICO claim could not support the exercise of jurisdiction. *See Plaintiffs' Response to the CACI Defendants' Submission of Supplemental Authority Regarding Venue (Dec. 12, 2005)* at 5; *CACI Defendants' Submission of Supplemental Authority in Connection With the Reconsideration of Plaintiffs' Motion To Transfer Venue (Nov. 2, 2005)*.  The District Court for the Eastern District of Virginia, however, rejected CACI's effort to characterize the RICO claims as insufficient and held that personal jurisdiction was proper under RICO.  *See Order, E.D. Va. 05-cv-0427 (Jan. 13, 2006)* at 1.

CACI also cites an unpublished district court decision from the United States District Court for the District of Delaware, *Kacprzycki v. A.C.&S., Inc.*, Civ. A. No. 88-34-JRR, 1990 WL 605604 (D. Del. 1990). *CACI Mem.* at 8. In *Kacprzycki*, the defendants had filed a motion for partial summary judgment to which the plaintiffs had not responded. It was not clear that the *Kacprzycki* plaintiffs were alleging a conspiracy, but the defendants had assumed as such for purpose of presenting a thorough motion for summary judgment. The magistrate judge granted defendants' motion. *See Kacprzycki* at *3-4 ("[D]efendant conjectures that plaintiffs might proffer an alternative theory of liability—that T & N, although not Keasbey's alter ego, is liable under Delaware law for the alleged conspiratorial acts of Keasbey merely because it was Keasbey's parent . . . . Assuming that plaintiffs in fact are proponents of this theory, I find such to be without merit."). Again, CACI seems to be simply throwing citations into its papers without regard to whether they have any bearing on the legal issue at hand. Plaintiffs assert in the TAC that CACI International Inc. and CACI, Inc. – Federal are co-conspirators who engaged in acts to facilitate the conspiracy, such as changing their code of conduct, colluding with government officials, obstructing investigations, and the like. TAC ¶¶ 84, 85, 87-89, 98. Plaintiffs do not raise claims against CACI International Inc. and CACI, Inc. – Federal "merely" because they are parents of CACI Premier Technology, Inc.[6]

Finally, even if plaintiffs' claims were merely based on corporate parentage, CACI assumes as fact something that is very much in dispute – namely, whether plaintiffs could prevail on agency and/or alter ego theories. As noted in the Statement of Facts, *supra*, CACI

---

[6] Furthermore, the line of case law cited by the *Kacprzycki* court in finding that a corporate parent would not liable for conspiracy for merely cooperating with its wholly-owned subsidiary was clearly limited to antitrust conspiracy under Section 1 of the Sherman Act. *See Kacprzycki* at *3, *citing In re Asbestos Litigation*, 509 A.2d 1116 (Del. Super. 1986), *aff'd* 525 A.2d 146 (Del. Supr. 1987)(citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 770 (1984) ("[T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act.")

International Inc. and CACI, Inc. – Federal conduct business and hold themselves out to the investing public merely as "CACI" without regard to the distinctions among its subsidiary companies. Although discovery is needed, it appears that there are overlapping directors, overlapping physical premises, and a single corporate identity identified on a single corporate letterhead as "CACI International Inc. and its Subsidiaries." Discovery may also reveal additional facts that support CACI International Inc. and CACI, Inc. – Federal's liability under these theories.

As noted above, CACI International Inc. holds itself out as having acted in Iraq: "With American troops risking their lives in Iraq, CACI International Inc. is proud to honor the Army's request for services, including interrogation, to help our men and women in uniform and perhaps reduce the risk to their lives." *J.P. London Editorial* (Exhibit D). Clearly, plaintiffs are entitled to discover whether CACI International Inc.'s "proud" honoring of "request for services" is in fact an unlawful conspiracy formed with a small but powerful cabal of military and government officials who decided to break the law and torture other human beings.

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request that the Court grant them leave to file the proposed Third Amended Complaint.


Dated: March 7, 2006                              /s/ Susan L. Burke
                                      Susan L. Burke (D.C. Bar # 414939)
                                      Jonathan H. Pyle (admitted *pro hac vice*)
                                      Anne K. Heidel
                                      BURKE PYLE LLC
                                      3527 Lancaster Avenue
                                      Philadelphia, PA 19104
                                      Telephone:    (215) 387-4705
                                      Facsimile:    (215) 387-4713

Jennifer Green
Judith Brown Chomsky
Anthony DiCaprio
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:    (212) 614-6439
Facsimile:    (212) 614-6499

Shereef Hadi Akeel (admitted *pro hac vice*)
AKEEL & VALENTINE, P.C.
401 South Old Woodward Avenue
Suite 430
Birmingham, MI 48009
Telephone:    (248) 594-9595
Facsimile:    (248) 594-4477

Joseph Margulies
Locke Bowman
MACARTHUR JUSTICE CENTER
UNIVERSITY OF CHICAGO LAW SCHOOL
1111 East 60th Street
Chicago, IL 60637
Telephone:    (773) 702-9560
Facsimile:    (773) 702-0771

Susan Feathers
UNIVERSITY OF PENNSYLVANIA
        LAW SCHOOL
3400 Chestnut Street
Philadelphia, PA 19104-6204
Telephone:    (215) 898-0459
Facsimile:    (215) 573-5808

*Counsel for Plaintiffs and Class Plaintiffs*

## CERTIFICATE OF SERVICE

I, Anne K. Heidel, do hereby certify that on the 7th day of March 2006, I caused true and

correct copies of Plaintiffs' Reply to CACI's Opposition to Plaintiffs' Motion for Leave To

Amend to be served via electronic mail and by first-class mail, postage prepaid, upon the

following individuals at the addressed indicated:

F. Whitten Peters
Thomas M. Craig
Williams and Connolly
725 12th Street, North West
Washington, DC 20005
wpeters@wc.com
*Counsel for Defendant Titan Corp.*

J. William Koegel Jr.
John F. O'Connor
Steptoe & Johnson LLP
1330 Connecticut Avenue, North West
Washington, DC 20036
wkoegel@steptoe.com
*Counsel for Defendants CACI*
*International, CACI Inc. – Federal*

Adam L. Rosman & Ellen D. Marcus
Zuckerman Spaeder LLP
1800 M Street, North West
Washington, DC 20036
arosman@zuckerman.com
*Counsel for Defendant Adel Nakhla*

Henry E. Hockeimer Jr.
Jessica Natali
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market St, 51st Floor
Philadelphia, PA 19103
hockeimerh@ballardspahr.com
*Counsel for Defendant Steven Stefanowicz*

Alison L. Doyle
Shari L. Klevens
McKenna Long & Aldridge LLP
1900 K Street, North West
Washington, DC 20006-1108
adoyle@mckennalong.com
*Counsel for Defendant John B. Israel*

Anne Heidel