# Exhibit F

**STEPTOE & JOHNSON** LLP
ATTORNEYS AT LAW

J. William Koegel, Jr.
202.429.6408
wkoegel@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel 202.429.3000
Fax 202.429.3902

October 5, 2004

Mr. Brian Dominick
Editor
The New Standard
203 Bassett Street
Syracuse, New York 13210

Re: *Article entitled "Abuse, Torture and Rape Reported at Unlisted U.S.-Run Prisons in Iraq" published by the New Standard on September 23, 2004*

Dear Mr. Dominick:

This firm represents CACI International Inc and CACI Premier Technology, Inc. This letter is in response to the article referenced above which is damaging to CACI by falsely conveying the impression that CACI is somehow connected to abuse, torture and rapes that allegedly have taken place at prisons in Iraq other than Abu Ghraib and giving credence to the completely unsupported allegations of Mr. Shereef Akeel.

After unobjectionably focusing its attention on the story represented by the headline, the article refers to the lawsuit filed against CACI and Titan by the Center for Constitutional Rights (CCR). By so doing, the article conveys the false impression that CACI is in some way responsible for, or connected with, the new allegations of abuse. There is simply no factual basis to support this insinuation. The public record is completely devoid of any factual information supporting the conclusion that CACI personnel have been assigned to work at locations other than Abu Ghraib, much less participated in abuses at such locations. Second, the article states that the declassified sections of three military reports investigating prison abuse in Iraq "provide evidence of private contractors ... engaging in crimes against former detainees." That statement is demonstrably false. In fact, none of the reports issued to date states that any CACI employee is guilty of any criminal behavior. For example, the most recent and comprehensive of those reports, the Jones/Fay Report released on August 23, 2004, makes no such finding. Instead, it recommends that the information contained in the report "be forwarded to the Army General Counsel for a determination of whether [CACI personnel referenced in the Report] should be referred to the Department of Justice for prosecution." By its very terms, such a recommendation indicates that the Report makes no finding of criminal behavior by any CACI employee. Moreover, there is no available public information to support Mr. Shereef Akeel's insinuation that the newly reported abuses somehow relate to the actions of CACI employees. In fact, lawyers for the plaintiffs in the CCR case have admitted in court pleadings that they have no evidence connecting any of the defendants to the alleged abuses!

WASHINGTON   PHOENIX   LOS ANGELES   LONDON   BRUSSELS

STEPTOE & JOHNSON LLP

Mr. Brian Dominick
October 5, 2004
Page 2

The unsupported, false and misleading statements and insinuations included in your article cast aspersions on CACI's character, prestige and standing within its field of business and constitute defamation *per se*. We demand that you retract and correct those statements and insinuations immediately.

Sincerely,

William Koegel, Jr.

*Counsel for CACI International Inc
and CACI Premier Technology, Inc.*

JWK/lpc
cc: Lisa Ashkenaz Croke

# Exhibit G



**DAILY BRIEFING**   July 30, 2004

## CACI response to July 27 article on Iraq contracts

*Editor's note: Some editing changes occurred in the article between the time it was initially published and when we received the letter below, so the version currently on GovExec.com is slightly different than it is described below.*

We represent CACI International Inc and CACI PT, Inc. This letter is in response to the above-referenced article appearing in *GovExec.com* on July 28, 2004. That article contains a false insinuation that we call upon you to correct in your next edition.

Specifically, your article states that a review of government contracting documents shows that "[s]ome contractors working at U.S.-run prisons and military locations in Iraq were expected to oversee, monitor and manage security and intelligence-related activities, including the interrogation of detainees." In the next sentence, your article asserts that "[t]he description of [the contractors'] work stands in contrast to the picture painted in the wake of the Abu Ghraib abuse scandal, when officials indicated military personnel fell within the military chain of command."

These statements leave the false impression that the CACI personnel providing interrogation services in Iraq operated outside of the military chain of command, when in fact just the opposite is true. The CACI personnel performing services in Iraq were at all times subject to the military chain of command and took their orders from military personnel.

While some CACI personnel in Iraq provided administrative supervision over CACI contractors, such as managing and monitoring their pay, billeting, and leave schedules, control over the interrogation operations at Abu Ghraib prison and elsewhere remained vested exclusively in the military chain of command. For instance, interrogation operations at Abu Ghraib prison was, and remains, under the operational control of the JIDC, a military unit under the command and control of military personnel.

Indeed, the statements of work quoted in your article specifically state that CACI contractors perform under the direction of competent Untied States military authorities and do not empower CACI personnel to exercise operational control over military or federal civilian personnel in Iraq. This reality is confirmed by the sworn congressional testimony of several of the highest-ranking civilian and military personnel in the Defense Department. For example:

- In May 6, 2004 testimony before the Senate Armed Services Committee, Secretary of Defense Donald Rumsfeld stated that civilian interrogators in Iraq "are responsible to the military intelligence who hire them, and have the responsibility for supervising them."

- At the same May 6, 2004 hearing, Acting Secretary of the Army Les Brownlee added that "in the theatre we have employed civilian interrogators and linguists. The Central Command has done this. And these people have no supervisory capabilities at all. They work under the supervision of the officers in charge or non-commissioned officers in charge of whatever team or unit they are on ... ."

- In July 22, 2004 testimony before the Senate Armed Services Committee, Lieutenant General Mikolashek provided the same information: "[I]n terms of what [civilian contractors] did and how they performed their oversight on a day-to-day basis, it was that military supervisor, that M.I. person in that organization to whom they reported.

It appears that the inaccuracies published in your article are based on a few senior intelligence advisor positions staffed by CACI personnel under the relevant delivery orders. These positions, depending on the delivery order, are staff positions supporting the intelligence officer of either the Army general staff or the joint task force staff. These advisors are located either at the Army or joint task force headquarters, not in the prisons where interrogations take place. While these advisors provide valuable insight and advise to the military intelligence officers they serve, they do not issue orders or exercise operational control of interrogation activities, as such operational control is vested solely in the military chain of command.

The insinuation in your article that CACI personnel conducted interrogation activities that was not subject to the military chain of command, despite the repeated explanations of CACI's management and high-level defense officials to the contrary, casts aspersions on CACI's character, prestige and standing within its field of business. We insist that you immediately and unambiguously correct the false and misleading impression made by your article. We expect that such a correction will be displayed as prominently as the erroneous article that it corrects.

Thank you for your prompt attention to this matter.

J. William Koegel, Jr.
Counsel for CACI International Inc. and CACI PT, Inc.

Return to original article

*This document is located at http://www.govexec.com/dailyfed/0704/073004caci.htm*

# Exhibit H



**EVER VIGILANT**

May 12, 2005

Dr. Marc Sapir, MD, MPH
Executive Director
Retro Poll
1326 Spruce Street,
Berkeley, CA 94709

Dear Dr. Sapir:

It has recently come to my attention that you and Prof. L. Ling-chi Wang convened an event in which CACI was linked to the abuses at Abu Ghraib prison in Iraq. The article, "Academics, Community Teach on Torture, Look for Answers" by Ms. Judith Scherr from the May 3, 2005 Berkeley Daily Planet, states that one of the solutions reached by participants at UC-Berkley's Teach-In on Torture was to "take actions against corporations involved in torture, such as CACI (Consolidated Analysis Center) International which provided interrogators at Abu Ghraib."

We were disappointed that the article conveyed a regrettable lack of facts and a substantial misunderstanding of the role of civilian contractors at Abu Ghraib prison in Iraq in your discussion. Of particular outrage are your references to CACI and the false impression you are perpetuating about the company and its employees.

Let me set the record straight. From the first mention of CACI in conjunction with these allegations, our company began a comprehensive investigation of our work in Iraq and cooperated with all government inquiries into the matter. Since then, further government investigations of the abuses, as well as our own, have shown that the responsibility for misconduct at Abu Ghraib was not that of the CACI employee named in the Taguba report. None of CACI's employees appeared in any of the horrendous photos that depicted wrongful treatment of detainees at Abu Ghraib. As a result, neither the company nor any of its employees has received any official charge of wrongdoing. As our many public statements and news releases have stated, we do not condone any such activity. In view of these facts, therefore, any reference that CACI was involved in torture is false and damaging to the company's fine reputation.

By way of background, I also offer the following. Since its inception in California in 1962, CACI has provided information technology and professional services to U.S. Government clients, many of whom we have had the privilege of serving for more than 20 years (by the way, our name changed from Consolidated Analysis Centers thirty years ago). In 2003, one of our long-term clients, the U.S. Army, asked us to fill a need for information intelligence gathering services, which we did to the U.S. Army's satisfaction. This included a requirement for qualified

CACI International Inc and Subsidiary Companies
Worldwide Headquarters ▪ 1100 North Glebe Road ▪ Arlington, Virginia 22201 ▪ (703) 841-7800 ▪ Fax (703) 841-7882
CACI Website - www.caci.com

WASHINGTON D.C. ▪ SAN DIEGO ▪ LONDON

Dr. Marc Sapir
May 12, 2005
Page 2

individuals to act as interrogators in Iraq. It appears the opinion that CACI employees were engaged in abuse of detainees at Abu Ghraib prison in Iraq stems from the fact that in April 2003 one CACI employee who served as an interrogator was mentioned prominently in the illegally released (leaked) classified (SECRET/NO-FOREIGN) Taguba report on abuses in Abu Ghraib prison in Iraq. As the facts discovered since then indicate, however, the conclusions of Taguba report have not been confirmed.

CACI has maintained a section of its website devoted to providing the public with information about the company, its work in Iraq and the investigations. It can be found at http://www.caci.com/iraq_news.shtml.

We hope this information will be helpful in your future consideration of this issue. We suggest you avoid making damaging and false references about CACI in the future. Making responsible public statements and applying resolute care in presenting accurate facts is always the right thing to do.

Sincerely,

Jeffrey P. Elefante
Executive Vice President.
General Counsel and Secretary

# Exhibit I

LookSmart

FindArticles > Business Wire > July 6, 2004 > Article > Print friendly

**Westly Seeks Anti-Torture Investment Policy; Controller's CalSTRS Proposal Would Mark First for Large Pension Fund**

SACRAMENTO, Calif. -- State Controller Steve Westly called Tuesday for the California State Teacher's Retirement System to become the first among the nation's largest pension funds to restrict investments in companies engaged in torture. E[acute accent]"As a matter of common sense and common decency, companies looking to profit from the torture of human beings don't belong in our portfolio," said Westly, who serves on the CalSTRS board. E[acute accent]Westly proposed amending the CalSTRS statement of investment responsibility to specifically restrict investments in companies that sell "technologies or services designed for use in the torture of human beings or the treatment of people which does not meet the minimum standards of the Geneva Conventions." E[acute accent]Westly said he would discuss his proposal at Wednesday's meeting of the board's subcommittee on corporate governance. The subcommittee was set to discuss a proposal to question executives from CACI International regarding its role in the Iraq prisoner abuse scandal. E[acute accent]"This is not about putting one company under a microscope," Westly said. "This is about setting a clear, responsible standard that applies to everyone -- weeding out the bad guys -- and demanding that every company respect human rights, whether it's operating in Iraq or Indiana."

COPYRIGHT 2004 Business Wire
COPYRIGHT 2004 Gale Group

# Exhibit J

**CACI Rejects 'Vile' Allegations by California Controller**




```
                Company Cites Westly for Political Grandstanding

     ARLINGTON, Va., July 7 /PRNewswire-FirstCall/ -- CACI International Inc
(NYSE: CAI) today said California State Controller Steve Westly is guilty of
political grandstanding with vile and unsubstantiated accusations that
contractors in Iraq are profiting from torture.
     CACI issued the following statement in response to a press release by Mr.
Westly, who yesterday cited CACI in urging the California State Teacher's
Retirement Fund to halt investment in "companies looking to profit from the
torture of human beings."
     "CACI is appalled by yesterday's baseless, inflammatory and malicious
press release by California State Controller Steve Westly.  While posing as a
protector of 'common decency' and corporate ethics, Mr. Westly appears, in
fact, to be chasing headlines for his own political benefit.  He has taken an
Alice-In-Wonderland approach:  'Sentence first -- verdict afterwards.'
     "As we have said repeatedly, CACI does not condone or tolerate illegal
acts or behavior by its employees and we will act quickly and forcefully in
the unfortunate event the evidence shows that any of our employees acted
improperly.  But unlike Mr. Westly, we are waiting to see the evidence before
rushing to judgment.
     "It is deplorable for Mr. Westly to rush to judgment with such broad and
malicious accusations while investigations are still under way.  He seems to
have ignored some critical facts:

     * To date, no charges have been filed against any employee of CACI or, as
       far as we know, any other private company in this matter.

     * No CACI employees are in any of the alarming photographs that have been
       published.

     * CACI is aware only of a single vague allegation, in an unreleased report
       that has been illegally leaked to the media, about possible misconduct
       by one CACI employee.

     * CACI is fully cooperating with all official inquiries.

     * CACI is also working on its own to determine the facts of the matter,
       and has not found any evidence of wrongdoing.

     "We agree with Mr. Westly that torture is appalling and intolerable.
There is no evidence of any kind that CACI supports, condones or participates
in such inappropriate conduct.  Mr. Westly's attempt to brand CACI with this
label is both vile and irresponsible, and contradicts the very decency he says
he supports.
     "CACI has a special interest in this matter.  For 42 years, CACI has
proudly and successfully provided support services to government and private
sector customers.  At the request of the U.S. Army, it has provided a small
number of qualified interrogators because the Army does not have sufficient
```

interrogation personnel available for assignment to Iraq.  CACI expects its employees to conduct themselves properly at all times and to comply with all laws and the rules of engagement.

"Mr. Westly ignores one of America's most precious principles -- the presumption of innocence.  In our country, we collect the evidence before reaching a verdict or issuing a sentence.  Mr. Westly has the process backwards."

Additional information, news releases and FAQs on CACI's Iraq business and these matters is up on CACI's website http://www.caci.com.

CACI International Inc provides the IT and network solutions needed to prevail in today's new era of defense, intelligence, and e-government.  From systems integration and managed network solutions to knowledge management, engineering, simulation, and information assurance, we deliver the IT applications and infrastructures our federal customers use to improve communications and collaboration, secure the integrity of information systems and networks, enhance data collection and analysis, and increase efficiency and mission effectiveness.  Our solutions lead the transformation of defense and intelligence, assure homeland security, enhance decision-making, and help government to work smarter, faster, and more responsively.  CACI, a member of the Russell 2000 and S&P SmallCap 600 indices, provides dynamic careers for approximately 9,400 employees working in over 100 offices in the U.S. and Europe.  CACI is the IT provider for a networked world.  Visit CACI on the web at http://www.caci.com.

There are statements made herein which do not address historical facts and, therefore could be interpreted to be forward-looking statements as that term is defined in the Private Securities Litigation Reform Act of 1995.  Such statements are subject to factors that could cause actual results to differ materially from anticipated results.  The factors that could cause actual results to differ materially from those anticipated include, but are not limited to, the following: regional and national economic conditions in the United States and the United Kingdom (an economic downturn in the UK is affecting CACI's UK operations), including conditions that result from terrorist activities or war; failure to achieve contract awards in connection with recompetes for pre sent business and/or competition for new business; the risks and uncertainties associated with client interest in and purchases of new products and/or services; continued funding of U.S. Government or other public sector projects in the event of a priority need for funds, such as homeland security, the war on terrorism or rebuilding Iraq; government contract procurement (such as bid protest, small business set asides, etc.) and termination risks; the results of government investigations into allegations of improper actions related to the provision of services in support of U.S. military operations in Iraq; the results of the appeal of CACI International Inc. ASBCA No. 53058; individual business decisions of our clients; paradigm shifts in technology; competitive factors such as pricing pressures and/or competition to hire and retain employees; material changes in laws or regulations applicable to our businesses, particularly in connection with (i) government contracts for services, (ii) outsourcing of activities that have been performed by the government, and (iii) competition for task orders under Government Wide Acquisition Contracts ("GWACs") and/or scheduled contracts with the General Services Administration; our own ability to achieve the objectives of near term or long range business plans; and other risks described in the company's Securities and Exchange Commission filings.

```
For other information contact:                                Page 3 of 3

Jody Brown
Senior Vice President, Public Relations
703-841-7801, jbrown@caci.com
```

SOURCE CACI International Inc
Web Site: http://www.caci.com

**Issuers of news releases and not PR Newswire are solely responsible for the accuracy of the content.**
**Terms and conditions, including restrictions on redistribution, apply.**
Copyright © 1996- 2006 PR Newswire Association LLC. All Rights Reserved.
A **United Business Media** company.

# Exhibit K

SFGate.com   www.sfgate.com
Return to regular view



## SACRAMENTO
## Executive grilled on firm's role in Iraq torture
- Robert Collier, Chronicle Staff Writer
Tuesday, August 3, 2004

**Sacramento** -- Iraq's prison torture scandal came to California on Monday, as executives of a company tarnished in the controversy came under heavy fire from officials of the state's two largest public pension funds.

State Treasurer Phil Angelides led a team of pension fund board members in questioning Kenneth Johnson, president of U.S. operations of CACI International, a defense contractor based in Arlington, Va., that saw one of its employees implicated in the torture of Iraqi prisoners at Abu Ghraib prison.

The California Public Employees' Retirement System, with $162 billion in assets, and the California State Teachers' Retirement System, with $114 billion in assets, are the largest and third-largest public pension funds in the nation, respectively. CalPERS currently owns 209,100 shares of CACI, and the teachers' fund owns 77,882 shares of the firm -- worth a total of $11.6 million at Monday's closing stock price of $40.43.

The meeting Monday at times resembled a hostile interrogation itself, as Angelides repeatedly interrupted Johnson and the company's lead attorney, William Koegel. "It seems like interrogation is a high-risk activity that is way out of your core business and has minimal return," he said. "Why are you even in it in the first place?"

Johnson replied that the company's work in Iraq is highly profitable. "Iraq is a very fertile opportunity for growth," he said.

CACI, which employs more than 9,000 people, reported revenues of $843 million in 2003, he pointed out, and is expected to gross about $1.5 billion in 2004 -- an increase attributed in part to large defense contracts in Iraq. In addition to providing interrogators to the U.S. military -- which accounts for less than 1 percent of the company's total revenues -- CACI furnishes a wide range of information services and analysis to help the 140, 000 American troops throughout Iraq.

Business in Iraq, Johnson said, "has gone considerably better than even we had hoped for. ... We've been in the right place at the right time."

Angelides shook his head and interrupted again: "No, you've been in the wrong place at the wrong time."

CACI has been under the glare of unwelcome publicity because of Steven Stefanowicz, a CACI employee who was working at Abu Ghraib as an interrogator. A report by Army Maj. Gen. Antonio Taguba found that Stefanowicz had commanded military police when torture

took place and recommended that he be fired and stripped of his security clearance.

But civilian contractors working abroad fall into a legal black hole and are out of reach of most forms of military and civilian justice. Johnson noted that Stefanowicz has not been charged with any crime.

In contrast, seven American soldiers have been formally accused of abusing Iraqi prisoners at Abu Ghraib. One has pleaded guilty and was sentenced to a year in prison and given a bad conduct discharge. The remaining six await possible legal action.

Johnson said that 19 CACI interrogators were still working in Iraq, mainly at Abu Ghraib. Twelve other company interrogators, including Stefanowicz, have returned to the United States and are still working for the company, though Johnson said Stefanowicz was no longer an interrogator.

Janice Hester Amey, the principal investment officer of the state teachers' retirement fund, pressed Johnson about what steps the company had taken to prevent further abuse from occurring.

Johnson said that he now personally reviews and approves every hire and that all employees being sent to Iraq must undergo a one-week "charm school" run by the Army at Fort Bliss, Ga., which includes some human rights training. Also, he said, the company now requires its Iraq-bound employees to sign a form indicating they have read a company-supplied synopsis of the Geneva Conventions.

Angelides said that at the next CalPERS board meeting, on Sept. 1, he might recommend that the fund sell its CACI holdings. "Either CACI needs to get out of this line of business, or our pension funds need to get out of this company," he said.

Angelides is expected to be a leading candidate for the Democratic nomination for governor in 2006, and his critics have accused him of using his position at the public pension funds to grandstand on liberal human rights issues.

Timothy Quillin, a defense industry analyst at Stephens Inc. in Little Rock, Ark., noted that there was no proof of legal wrongdoing by CACI, but he said Angelides' arguments had merit from a bottom-line perspective.

"The more legitimate concern is whether the outsourcing of military jobs has gone too far, whether there will be a political backlash against contractors in front-line assignments," Quillin said. "It's pretty unlikely that there will be significant growth in this type of business in the future, and it could decline."

E-mail Robert Collier at rcollier@sfchronicle.com.

Page B - 3
URL: http://sfgate.com/cgi-bin/article.cgi?file=/chronicle/archive/2004/08/03/BAG5781RDQ1.DTL

©2004 San Francisco Chronicle | Feedback | FAQ