# Exhibit M



U.S. General Services Administration

JUL 7 2004

CERTIFIED MAIL-RETURN RECEIPT REQUESTED

Dr. J.P. London
Chief Executive Officer
CACI International, Inc.
1100 North Glebe Road
Arlington, VA 22201

Re: Contract Issues with CACI International, Inc.

Dear Dr. London:

On May 26, 2004, I sent you a letter questioning CACI International, Inc.'s (CACI's) business practices and ethics in the context of your Company's Multiple Award Schedule with GSA's Federal Supply Service. Based on information I had received, it appeared that the GSA Schedule was misused in the issuance of certain task orders to your Company with the knowledge and consent of CACI. I asked you to respond to my letter within ten days to provide me with information and argument as to why CACI should remain eligible for future Government contracts.

Through your outside counsel, Craig King, you asked for an extension of the time to respond to my letter. I granted that and, on June 14, 2004, at your request, we met at the GSA Central Office where you, members of your staff, and Mr. King presented matters for my consideration, to include a two volume set of documents as "Information and Argument" on CACI's behalf.

During the meeting you informed me that my letter to you was a "disservice," that you were required to disclose the letter publicly, and that CACI was singled out unfairly. You questioned whether GSA acted appropriately in addressing this issue in the context of a "potential suspension/debarment." You stated that it is "unseemly for the Government to shift blame to contractors." You reviewed the results of your investigation into what happened concerning the task orders mentioned in my letter and concluded that there is "no evidence anyone believed anything was improper about the contracting approach." You concluded that CACI justifiably relied on the Government, that GSA advertises "similar" flexibility in using Schedules, and that "ordering offices, not contractors, are responsible/accountable for delivery orders." You seemed to take the position that contractors have no obligation to inform the government when the work they are being asked to do falls outside the scope of their contract.

1800 F Street, NW
Washington, DC 20405-0002
www.gsa.gov

2

You also explained that what occurred with the task orders at hand with interrogation services was an aberration, that you have engaged in a self-examination of CACI practices by reviewing all BPAs and delivery orders under GSA Schedules, and found there were no scope issues, "for the most part." You also described remedial measures, such as revised procedures regarding work in Iraq; revised internal controls regarding GSA Schedule contracting; revised procedures for review of contracting practices; and training regarding use of GSA Schedules and organizational conflicts of interest, all implemented subsequent to your receipt of the May 26 letter.

In addition to the information CACI has already provided, there are some areas I would like to explore in more detail:

1. CACI's possible role in preparing Statements of Work is a cause for concern. During the June 14, 2004, meeting, CACI representatives indicated that in response to information gained from Federal employees regarding the contracting needs of the Government, CACI employees in Iraq suggested language for Statements of Work. CACI representatives further stated that they did not believe that "any lines had been crossed" and that the employees merely "participated as the contracting process allows." When I asked for clarification, CACI representatives spoke about crosswalks. This response is insufficient and I believe that CACI's possible role in preparing Statements of Work continues to be an open issue and a potential conflict of interest. I request that CACI provide me a clearer explanation of what CACI believes is the appropriate role of its employees in preparing or advising on the drafting of Statements of Work.

2. In order to avoid any misunderstandings and to keep communications between GSA and CACI as open as possible, I would appreciate it if you would provide me with information on any pending investigations of CACI, including but not limited to, all Federal or state investigations and any pending Federal or state lawsuits against CACI as well as copies of any judgments or other resolutions.

3. In your written submission, I noted that you appear to have three different hotlines: one for any impropriety, one for concerns within the code of ethics, and one for accounting improprieties. Multiple hotlines, in contrast to a single unified hotline, is an unusual approach in my experience. Has it caused any confusion among employees? Have you done any audits or studies to evaluate the effectiveness of this approach? If so, I would request that you share the reports with GSA. I also note that complaints/calls to the various hotlines are assigned to investigators. What is the training, background, and experience of the investigators? Do investigators handle calls regardless of how they come in or do they work within only one area? How many investigators are there and to whom do they report? Are they full time investigators or do they do the investigations as well as other work?

As the above comments and questions indicate, I still have concerns about whether you understand that all parties to a transaction are responsible for ensuring that the rules are followed and the integrity of the system is maintained. Nonetheless, I do not feel that, at this time, it is necessary for me to take any formal action to protect the interests of the Federal government.

Please provide me with your response to these issues within the next two weeks.

Sincerely,

Joseph A. Neurauter
Suspension and Debarment Official

# Exhibit N

**CACI, INC.-FEDERAL**
**GSA Contract Number: GS-35F-5872H**
**NAME OF EFFORT: CJTF C2 G2-X / Interrogation Cell**

*Labor Costs*

| Labor Category | Fixed Rate | Estimated Hours | Estimated Cost |
|---|---|---|---|
| Principal Engineer/Project Manager | $65.95 | 3,750 | $247,313 |
| Sr. Systems Engineer | $69.37 | 3,948 | $273,873 |
| Admin Specialist | $25.47 | 3,750 | $95,513 |
| Senior Systems Planner | $55.80 | 74,424 | $4,152,859 |
| Database Manager | $49.84 | 40,596 | $2,023,305 |
| Training Specialist | $43.57 | 81,144 | $3,535,444 |
| Total Estimated Hours/Cost of Labor | | 207,612 | $10,328,306 |

*Travel Costs*

| | Estimated Cost |
|---|---|
| Operational TDY | $78,535.71 |
| Relocation Expenses (Non-Recurring Costs) | $177,000.00 |
| Relocation Expenses (Recurring OCONUS Costs) | $2,854,449.50 |
| Total Estimated Cost of Travel | $3,109,985 |

*Other Direct Costs*

| | Estimated Cost |
|---|---|
| Equipment (consists of cameras, computers, cell phones, rental cars and other incidentals associated with the Task Order) | $327,442.27 |
| Total Estimated Other Direct Costs | $327,442.27 |

**Total Estimated Cost of Effort**  $13,765,733

Use or disclosure of proposal data is subject to the restrictions on the title page of this proposal.

# Exhibit O

Case 1:05-cv-01165-JR     Document 31-6     Filed 03/07/2006     Page 7 of 10

# News Release

CACI International Inc · 1100 North Glebe Road · Arlington Virginia 22201



## CACI Reports Preliminary Findings of Internal Investigation
*Company Provides Information About Its Interrogator Support Personnel in Iraq, No Evidence of Abusive Wrongdoing Uncovered*

Arlington, VA, August 12, 2004 — CACI International Inc (**NYSE:CAI**) announced today that the internal investigation it is conducting concerning its interrogator personnel in Iraq to date has not produced any credible or tangible evidence that substantiates the involvement of CACI personnel in the abuse of detainees at Abu Ghraib prison or elsewhere in Iraq (interrogation services are an intelligence information gathering function). As part of its ongoing investigation, CACI has formally requested that the U.S. Army provide the company with any information it has concerning misconduct by CACI personnel in Iraq. The information recently released by the Army since the disclosure ("leak") of the Major General Antonio Taguba Report is not inconsistent with information developed by CACI. While the information developed to date does not indicate the involvement of any CACI employee in such misconduct, CACI cautioned that its internal investigation continues unabated. CACI further noted that the information developed by its investigation has been compiled despite the constraints of the ongoing conflict and the limitation of access to information and witnesses under the control of the U.S. Army and the Department of Defense (DoD), as well as by the restrictions against conducting on-site interviews of witnesses in Iraq.

CACI continues to cooperate fully with all inquiries from the U.S. government concerning all matters of their investigations.

Since the beginning of its interrogation support services contract in August 2003, CACI has provided a total of 36 interrogators to support the military efforts in Iraq with not more than 10 on site at Abu Ghraib at any one time. CACI's contracts have provided other professionals, as well as interrogators, such as screeners, intelligence analysts, and logisticians. Although CACI represents only a portion of the overall interrogation effort in Iraq, CACI has been proud to support its client, the U.S. military. The company also emphasized that public reports implying that the only interrogators working in Iraq have been those employed by CACI are false.

During the past year, a number of CACI's interrogator personnel have rotated out of their positions for routine reasons, but in addition a few others left at the request of the Army and are no longer with the company. CACI emphasized that the circumstances concerning the employees' departure did <u>not</u> involve the abuse of detainees or any other inappropriate behavior that has been identified with the Abu Ghraib prison.

CACI also reiterated emphatically that it does not condone, tolerate or in any way endorse illegal behavior by its employees and said it would take swift action if the evidence demonstrates culpable wrongdoing by any of its employees. But, CACI also emphasized its strong commitment to the fundamental American principle that people are presumed innocent until proven guilty.

CACI Senior Vice President Jody Brown noted, "CACI has received, and continues to receive, good reports from its U.S. military customers in Iraq about its support services. We also remain proud of the stalwart services we have provided the Army, which are continuing. Earlier this week, we were pleased to announce the award of a contract to extend our interrogation and professional support services to the U.S. Army in Iraq."

CACI Chairman, President, and CEO, Dr. J.P. (Jack) London emphasized: "Conditions in Iraq are extremely dangerous, difficult and unrelenting. It is not easy to recruit qualified people to go to Iraq, and to remain there for extended periods of time. Yet we have had many loyal, dedicated and hard-working professionals who have been willing to face danger over the past year in support of our country's military in their mission to establish a free Iraq and eliminate terrorism."

CACI revealed its findings in keeping with its pledge to inform the public of the results of its internal investigation and any action taken. Given the publicity received by one of its employees, Steven Stefanowicz, the company concluded that it was also appropriate to note that he remains employed by CACI at a location within the U.S.A. However, the company has a longstanding policy of not publicly discussing individual personnel matters. CACI maintains a policy of confidentiality regarding its personnel and is mindful of the privacy, safety and security of all its employees.

With American troops risking their lives in Iraq, CACI has been proud to honor the Army's request for services, including interrogation support, to help our country's men and women at war and perhaps reduce the risk to their lives.

CACI's advanced information technology solutions and intelligence support services in Iraq enhance military effectiveness. The company's efforts also free the troops to concentrate on other critical military missions. Its U.S. military customers in Iraq have commended the company for its performance.

Since 1962, the company has successfully provided IT and related professional services during nine U.S. Presidential administrations that have had varying policies and objectives. With more than 9,400 employees operating from over 100 office locations in the USA and around the world, CACI takes pride in satisfying its customers and in complying with the highest ethical standards.

Additional information, news releases, and FAQs on CACI's Iraq business and these related matters is available on CACI's website: **www.caci.com** at "The Truth Will Out."

CACI International Inc provides the IT and network solutions needed to prevail in today's new era of defense, intelligence, and e-government. From systems integration and managed network solutions to knowledge management, engineering, simulation, and information assurance, we deliver the IT applications and infrastructures our federal customers use to improve communications and collaboration, secure the integrity of information systems and networks, enhance data collection and analysis, and increase efficiency and mission effectiveness. Our solutions lead the transformation of defense and intelligence, assure homeland security, enhance decision-making, and help government to work smarter, faster, and more responsively. CACI, a member of the Russell 2000 and S&P SmallCap 600 indices, provides dynamic careers for approximately 9,400 employees working in over 100 offices in the U.S. and Europe. CACI is the IT provider for a networked world. Visit CACI on the web at **www.caci.com**.

*There are statements made herein which do not address historical facts and, therefore could be interpreted to be forward-looking statements as that term is defined in the Private Securities Litigation Reform Act of 1995. Such statements are subject to factors that could cause actual results to differ materially from anticipated results. The factors that could cause actual results to differ materially from those anticipated include, but are not limited to, the following: regional and national economic conditions in the United States and the United Kingdom, including conditions that result from terrorist activities or war; failure to achieve contract awards in connection with recompetes for present business and/or competition for new business; the risks and uncertainties associated with client interest in and purchases of new products and/or services; continued funding of U.S. government or other public sector projects in the event of a priority need for funds, such as homeland security, the war on terrorism or rebuilding Iraq; government contract procurement (such as bid protest, small business set asides, etc.) and termination risks; the results of government investigations into allegations of improper actions related to the provision of services in support of U.S. military operations in Iraq; the results of the appeal of CACI International Inc ASBCA No. 53058; individual business decisions of our clients; paradigm shifts in technology; competitive factors such as pricing pressures and/or competition to hire and retain employees; material changes in laws or regulations*

*applicable to our businesses, particularly in connection with (i) government contracts for services, (ii) outsourcing of activities that have been performed by the government, and (iii) competition for task orders under Government Wide Acquisition Contracts ("GWACs") and/or schedule contracts with the General Services Administration; our own ability to achieve the objectives of near term or long range business plans; and other risks described in the company's Securities and Exchange Commission filings.*

# # #

**For information contact:**

Jody Brown
Senior Vice President, Public Relations
(703) 841-7801
[jbrown@caci.com](mailto:jbrown@caci.com)