# EXHIBIT A

# LegalTimes.com

Select '**Print**' in your browser menu to print this document.

**©2006 Legal Times Online**
Page printed from: http://www.legaltimes.com

Back to Article

---

**Abuse Case Prosecution Falls Apart**

Jason McLure

05-29-2006

Of all the allegations of abuse stemming from the scandal of Abu Ghraib, the rape accusation against Adel Nakhla was among the most sensational. According to a detainee, a man who partially fit Nakhla's description raped a teenage boy in cell No. 23 of the Iraqi prison while a female soldier took photos.

The case against Nakhla, a civilian translator who worked with U.S. Army interrogators at the prison in 2003, seemed even stronger given other accusations of abuse against him.

Pentagon investigators referred the case to the Justice Department after the now-infamous Abu Ghraib photos were made public, and it quickly drew the attention of prosecutors in the U.S. Attorney's Office for the Eastern District of Virginia, which was assigned the matter. Prosecutors "got very excited" about the allegation, says one government lawyer with knowledge of the matter, who requested anonymity to discuss the pending investigation.

But as they probed deeper into the case, they found it wasn't the slam-dunk they had hoped for.

Nakhla's case is one of 20 cases of alleged prisoner abuse by civilian contractors or CIA personnel that have been referred to the Justice Department by the Pentagon and the CIA since 2004. The Justice Department declined to prosecute two of the cases and referred a third case — involving the beating death of an Afghan prisoner — to the Eastern District of North Carolina, where charges were quickly brought against CIA contractor David Passaro.

The remaining 17 cases were sent to the U.S. Attorney's Office in Alexandria, Va., which currently has a team of four prosecutors investigating them. Of those cases, at least six, including Nakhla's, involve civilian translators and interrogators who were implicated in prisoner abuse at Abu Ghraib in 2003. But two years after the release of the horrific photos of abuse at Abu Ghraib, not a single charge has been brought in Virginia in any of the cases — even though the military has court-martialed 10 of the uniformed soldiers who worked side by side with civilian interrogators and translators at the prison.

The Virginia prosecutors' 0-for-17 record hasn't escaped the notice of critics of the administration's handling of abuse cases. "I haven't seen any sign from the Department of Justice that there's any excuse for taking so long," says Elisa Massimino, director of the Washington, D.C., office of **Human Rights First**.

And the tally wasn't ignored when Paul McNulty, the recently departed U.S. attorney in Alexandria, **faced senators earlier this year in his confirmation hearing** to become deputy attorney general.

"These have hurt American credibility in the world," Sen. Patrick Leahy (D-Vt.) told McNulty at his confirmation hearing in February. "I want to know why, when the military has prosecuted detainee abuse cases and the Eastern District of North Carolina has returned the one indictment so far, nothing has come out of your task force."

But as Nakhla's case demonstrates, not all of the cases referred to the Justice Department are clear-cut, and prosecutors say they have struggled to locate witnesses overseas and may not have statutory authority to bring charges in some of the cases.

**A PRISONER'S ACCUSATION**

On Jan. 18, 2004, Army criminal investigators probing abuse allegations for the Pentagon interviewed detainee Kasim Mehaddi Hilas. Hilas told them he had seen a man, later identified as Nakhla, raping a teenager in a neighboring cell. "The kid was hurting very bad, and they covered all the doors with sheets," he said, according to the translation of a statement Hilas gave investigators. "When I heard the screaming I climbed the door because on top it wasn't covered."

The Pentagon referred the matter to then-Deputy Attorney General James Comey, who in turn assigned the matter to McNulty and the Eastern District of Virginia. Piqued by the allegation, prosecutors there asked the FBI and the Army's Criminal Investigative Command to reinterview Hilas in an effort to build a criminal case against Nakhla.

But the second time Hilas was questioned, his story fell apart, says the government lawyer with knowledge of the case. Investigators determined that it would have been physically impossible for Hilas to have seen what he described based on his location at the time. Hilas also gave them names of other witnesses he said could corroborate his charge, but when investigators contacted them, they couldn't confirm the allegation of rape against Nakhla.

"When [Hilas] was reinterviewed, he started throwing in other names of people who had been in the headlines" and who he said would back up his story, says the government lawyer. "There was no evidence of Nakhla doing anything untoward that way."

According to a court filing in a civil suit related to the Abu Ghraib scandal, Nakhla, 51, lives in Maryland and works in an eyeglasses shop. Born in Egypt, he immigrated to the United States in 1979 and became a citizen in 1985. After working in computers and sales, Nakhla, who is fluent in Arabic, took a job as a translator with defense contractor Titan Corp. in 2003. Though Nakhla had no military background, he was assigned to Abu Ghraib to translate military interrogations of suspected insurgents.

Nakhla's lawyer, Adam Rosman of the Washington office of Zuckerman Spaeder, declined to comment for this article. But word that government investigators have found evidence debunking the rape allegation may come as cold comfort to Nakhla. A report based on Army investigation documents published on Salon.com in August 2004 linked him by name to the rape allegation. Additionally, a pleading in a civil-racketeering suit against Nakhla and other civilians and their employers at Abu Ghraib, filed by the **Center for Constitutional Rights**, accused him of rape. (The allegation was removed in a later filing after Nakhla's attorneys challenged its admissibility.)

There's little doubt that Nakhla, who was fired by Titan in May 2004, witnessed some of the abuses at Abu Ghraib. A 2004 internal Pentagon report about the abuses, written by Maj. Gen. Antonio Taguba, cites Nakhla describing to investigators an incident in which two soldiers humiliated a group of naked detainees who had been doused in water. "They handcuffed their hands together and their legs with shackles and started to stack them on top of each other by insuring [sic] that the bottom guy's penis will touch the guy on top's butt," Nakhla is quoted as saying.

Yet it remains unclear whether Nakhla's hands are clean of any responsibility for the abuse at Abu Ghraib. His name has appeared in a second civil suit brought in federal court in the District on behalf of victims of abuse at Abu Ghraib. In that suit, *Ibrahim v. Titan Corp.*, detainee Saddam Saleh Aboud specifically identified Nakhla and another civilian contractor as being involved in what Aboud describes as torture.

In addition, the Taguba report found "numerous incidents of sadistic, blatant, and wanton criminal abuses." A section of the report leaked in the spring of 2004 singled out five people by name as suspects in the abuse: four soldiers and Nakhla. The four soldiers — Spcs. Jeremy Sivits and Sabrina Harman, Sgt. Javal Davis, and Pvt. Lynndie England — are among the 10 soldiers who have already been court-martialed. All four received prison sentences ranging from six months to three years from military courts.

**FINDING FELONIES**

One problem federal prosecutors face in charging the civilians from Abu Ghraib is statutory. The Justice Department has the authority to prosecute civilians (including military contractors and CIA agents) at overseas bases under a federal statute defining "military extraterritorial jurisdiction." But that statute limits Justice to prosecuting felonies punishable by more than a year in prison. Some of the actions described at Abu Ghraib, such as punching and smacking prisoners or intimidating them with dogs, may not be felonies and thus can't be charged under the extraterritorial statute. Other activities, such as forced nudity and sexual degradation, appear more serious.

Filing felony conspiracy charges is one way prosecutors could indict Nakhla or other civilians. According to the government lawyer, one strategy examined was to bring charges based on the unusual theory of conspiracy to induce soldiers to violate military law. But after two years, prosecutors have been unable to assemble such a case.

Pentagon prosecutors, however, haven't had difficulty bringing conspiracy charges against the soldiers who worked

side by side with civilian contractors. Of the 10 soldiers court-martialed to date, eight have been found guilty on at least one charge of conspiracy under military law.

McNulty offered other reasons for the delay in bringing charges or closing the abuse cases during his confirmation hearing. He told senators that prosecutors have struggled to get access to victims and witnesses overseas. Additionally, he said, in some cases prosecutors in the Eastern District have had to wait to get access to military witnesses until after the completion of their courts-martial.

But as additional courts-martial against soldiers implicated in the Abu Ghraib affair conclude (an 11th case, against prison dog handler Sgt. Santos Cardona, was ongoing last week), pressure on the Justice Department to bring charges against civilian contractors will only intensify. And although the Pentagon has been criticized for failing to press charges against the officers who supervised Abu Ghraib, there's at least been tangible public evidence that the military is moving to punish some of those responsible.

"There may be greater motivation within the military to resolve these issues than DOJ," says John Hutson, a former judge advocate general of the Navy who has been critical of how the government has handled abuse cases. "The Department of Justice doesn't have that we-need-to-get-over-this motivation to the extent the military does."

---

*Jason McLure can be contacted at **jmclure@alm.com**.*