Article 13--PWs must be humanely treated. Any unlawful act or omission by the Detaining Power causing death or seriously endangering the health of a PW in its custody is prohibited. PWs must always be protected, particularly against acts of violence or intimidation and against insults and public curiosity.

Article 14--PWs are entitled, in all circumstances, to respect for their persons and honor. Women shall be treated with all regard due their sex, and shall always benefit by treatment as favorable that granted men.

Article 15--The Power detaining PWs shall provide, free of charge, for the maintenance and medical attention required by their state of health.

Article 17--This article covers several requirements with direct impact on interrogation.

- Every PW, when questioned on the subject, is bound to give only his surname, first names and rank, date of birth, and army, regimental, personal or (SIC) serial number, or failing this, equivalent information. If he willfully infringes this rule, he may render himself liable to a <u>restriction of the privileges</u> (emphasis added) accorded to his rank or status.

- For example, this does not mean if a prisoner fails to give this information he loses status as a prisoner, only special privileges. An example might be an officer who fails to identify himself as such. An officer cannot be compelled to work (Article 49). An officer who fails to identify himself as such could lose this privilege.

- The questioning of PWs shall be carried out in a language they understand.

- No physical or mental torture nor any other form of coercion may be inflicted on EPWs to secure from them information of any kind whatsoever. EPWs who refuse to answer may not be threatened, insulted, or exposed to unpleasant or disadvantageous treatment of any kind.

Article 18--All effects and articles of personal use, except arms, horses, military equipment and documents, shall remain in the possession of PWs. They will also retain their metal helmets, gas masks, and like articles issued for personal protection. Effects and articles used for their clothing or feeding shall also remain in their possession, even if such effects and articles belong to their regulation military equipment.

- Badges of rank and nationality, decorations and articles having above all a personal or sentimental value may not be taken from PWs.

- Sums of money carried by PWs may not be taken away from them except by order of an officer, and after the amount and particulars of the owner have been recorded in a special register and an itemized receipt has been given, legibly inscribed with the name, rank, and unit of the person issuing said receipt.

Article 19--PWs shall be evacuated, as soon as possible after their capture, to camps situated in an area far enough from the combat zone for them to be out of danger. Only those PWs, who, owing to wounds and sickness, would run greater risks by being evacuated than by remaining where they are, may be temporarily kept back in a danger zone.

Article 33--Medical personnel and chaplains, while retained by the Detaining Power with a view to assisting PWs, shall not be considered as PWs. They shall, however, receive as a minimum, the benefits and protection of the Geneva Convention. They shall continue to exercise their medical and spiritual functions for the benefits of PWs.

Figure 1-4. Pertinent articles of the GPW.

Sources may be civilian internees, insurgents, EPWs, defectors, refugees, displaced persons, and agents or suspected agents. Because of these variations, the interrogator makes a careful study of every source to evaluate his mental, emotional, and physical state, and uses it as a basis for interrogation. He deals mainly with three categories of sources: cooperative and friendly, neutral and nonpartisan, and hostile and antagonistic.

### COOPERATIVE AND FRIENDLY

A cooperative and friendly source offers little resistance to interrogation, and normally speaks freely on almost any topic introduced, other than those which tend to incriminate or degrade him personally. To obtain the maximum amount of information from cooperative and friendly sources, the interrogator takes care to establish and preserve a friendly and cooperative atmosphere by not inquiring into those private affairs which are beyond the scope of the interrogation. At the same time, he must avoid becoming overly friendly and losing control of the interrogation.

### NEUTRAL AND NONPARTISAN

A neutral and nonpartisan source is cooperative to a limited degree. He normally takes the position of answering questions asked directly, but seldom volunteers information. In some cases, he may be afraid to answer for fear of reprisals by the enemy. This often is the case in LIC where the people may be fearful of insurgent reprisals. With the neutral and nonpartisan source, the interrogator may have to ask many specific questions to obtain the information required.

### HOSTILE AND ANTAGONISTIC

A hostile and antagonistic source is most difficult to interrogate. In many cases, he refuses to talk at all, and offers a real challenge to the interrogator. An interrogator must have self-control, patience, and tact when dealing with him.

At lower tactical echelons, there is generally insufficient time available to effectively interrogate a hostile or antagonistic source. When time is available, and the source appears to be an excellent target for exploitation, the source should be segregated and approached in an effort to obtain his cooperation. Because of possible high stress and frustration levels that such a source may invoke in you, great care must be taken to maintain your self-control. No matter what the source says or does, you must abide by the provisions of the law of war as previously discussed.

The absence of the use of threats in interrogation is intentional, as threats in and of themselves constitute a form of coercion. Any attempt at enforcement of a threat would constitute an act prohibited by the GWS, GPW, or GC and is punishable under the UCMJ.

A hostile or antagonistic source may be best exploited at echelons where sufficient time and resources will generally be available.

The successful interrogator is a skilled professional who is able to rapidly evaluate sources of information and adapt his approaches and techniques accordingly. The interrogator extracts intelligence from two primary sources: human sources and material sources (primarily CEDs). The senior interrogator determines which of these sources may be most effectively exploited to meet the supported commander's PIR and IR.

CEDs (see Chapter 4) include any piece of recorded information which has been in the possession of a foreign nation and comes into US possession. This includes US documents which the foreign nation may have possessed. There are many ways to acquire a document; some are found in the possession of human sources, on enemy dead, or on the battlefield. There are three types of documents:

- Official (government or military) documents such as overlays, field orders, maps, and codes.

- Personal (private or commercial) documents such as letters, diaries, newspapers, and books.

- Identity (government or military) documents such as cards and books.

## PERSONAL QUALITIES

An interrogator should possess an interest in human nature and have a personality which will enable him to gain the cooperation of a source. Ideally, these and other personal qualities would be inherent in an interrogator; however, in most cases, an interrogator can cultivate these qualities if he has the desire and is willing to devote time to study and practice. Some desirable personal qualities in an interrogator are discussed below.

### MOTIVATION

Motivation is the most significant factor to achieve success. Without motivation, other qualities lose their significance. The stronger the motivation, the more

successful the interrogator. An interrogator may be motivated by several factors; for example:

- An interest in human relations.
- A desire to react to the challenge of personal interplay.
- An enthusiasm for the collection of information.
- A profound interest in foreign languages and cultures.

### ALERTNESS

The interrogator must be constantly aware of the shifting attitudes which normally characterize a source's reaction to interrogation. The interrogator—

- Notes the source's every gesture, word, and voice inflection.
- Determines why the source is in a certain mood or why his mood suddenly changed. It is from the source's mood and actions the interrogator determines how to best proceed with the interrogation.
- Watches for any indication the source is withholding information.
- Watches for a tendency to resist further questioning, diminishing resistance, contradictions, or other tendencies, to include susceptibility.

### PATIENCE AND TACT

The interrogator must have patience and tact in creating and maintaining rapport between himself and the source, thereby enhancing the success of the interrogation. The validity of the source's statements and motives behind these statements may be obtainable only through exercise of tact and patience. Displaying impatience may—

- Encourage the difficult source to think if he remains unresponsive for a little longer, the interrogator will stop questioning.
- Cause the source to lose respect for the interrogator, thereby reducing his effectiveness.

An interrogator, with patience and tact, is able to terminate an interrogation and later continue it without arousing apprehension or resentment.

### CREDIBILITY

The interrogator must maintain credibility with the source and friendly forces. Failure to produce material rewards when promised may adversely affect future interrogations. The importance of accurate reporting cannot be overstressed, since interrogation reports are often the basis for tactical decisions and operations.

### OBJECTIVITY

The interrogator must maintain an objective and dispassionate attitude, regardless of the emotional reactions he may actually experience or simulate during the interrogation. Without objectivity, he may unconsciously distort the information acquired. He may also be unable to vary his interrogation techniques effectively.

### SELF-CONTROL

The interrogator must have exceptional self-control to avoid displays of genuine anger, irritation, sympathy, or weariness which may cause him to lose the initiative during the interrogation. Self-control is especially important when employing interrogation techniques which require the display of simulated emotions or attitudes.

### ADAPTABILITY

An interrogator must adapt to the many and varied personalities which he will encounter. He should try to imagine himself in the source's position. By being adaptable, he can smoothly shift his techniques and approaches during interrogations according to the operational environment. In many cases, he has to conduct interrogations under unfavorable physical conditions.

### PERSEVERANCE

A tenacity of purpose can be the difference between an interrogator who is merely good and one who is superior. An interrogator who becomes easily discouraged by opposition, noncooperation, or other difficulties will neither aggressively pursue the objective to a successful conclusion nor seek leads to other valuable information.

### APPEARANCE AND DEMEANOR

The interrogator's personal appearance may greatly influence the conduct of the interrogation and attitude of the source toward the interrogator. Usually a neat, organized, and professional appearance will favorably influence the source. A firm, deliberate, and businesslike manner of speech and attitude may create a proper environment for a successful interrogation. If the interrogator's manner reflects fairness, strength, and efficiency, the source may prove cooperative and more receptive to questioning.

However, depending on the approach techniques (see Chapter 3), the interrogator can deliberately portray a different (for example, casual or sloven) appearance and demeanor to obtain the cooperation of the source.

## INITIATIVE

Achieving and maintaining the initiative are essential to a successful interrogation just as the offense is the key to success in combat operations. The interrogator must grasp the initiative and maintain it throughout the interrogation.

The source, especially if detained by military forces during tactical operations, normally has undergone a traumatic experience and fears for his life. This anxiety is usually intensified by the source's lack of knowledge and understanding of what is about to occur (fear of the unknown), or by the unfounded fear he will be tortured or executed.

The interrogator has a position of authority over the source. The source realizes this fact, and, in some cases, believes his future might depend upon his association with the interrogator.

## SPECIAL AREAS OF KNOWLEDGE

The interrogator must be knowledgeable on a variety of subjects in order to be effective in exploiting sources. Some of these areas are—

- Proficiency in the target language.
- Knowledge of the target country.
- International agreements.
- Enemy materiel and equipment.
- Armed forces uniforms.
- OB information.

In addition to these subjects, the interrogator should have a knowledge of basic psychology and neurolinguistics.

### PROFICIENCY IN THE TARGET LANGUAGE

The interrogator must be proficient in one or more foreign languages to exploit both human sources and CEDs. According to the GPW, a prisoner must be questioned in a language he understands.

The more proficient an interrogator is with the target language, the better he will be able to develop rapport with his source, understand the nuances of the source's speech, and follow up on source leads to additional information.

The skilled linguist will be able to translate CEDs quicker and more accurately than the interrogator who is merely familiar with the target language.

### KNOWLEDGE OF THE TARGET COUNTRY

The interrogator should be familiar with the social, political, and economic institutions; geography; history; language; and culture of the target country. Since many sources will readily discuss nonmilitary topics, the interrogator—

- May induce reluctant prisoners to talk by discussing the geography, economics, or politics of the target country.
- May gradually introduce significant topics into the discussion to gain insight about the conditions and attitudes in the target country.
- Should keep abreast of major and current events as they occur in the target country to better understand the general situation, as well as causes and repercussions.

### LAW OF WAR

The interrogator should understand US law of war obligations contained in the GWS, GPW, and GC regarding the treatment of EPWs, retained personnel, and civilian internees (see Figure 1-4).

### ENEMY MATERIEL AND EQUIPMENT

The interrogator should be familiar with the capabilities, limitations, and employment of standard weapons and equipment so he may recognize and identify changes, revisions, and innovations. Some of the more common subjects of interest to the interrogator include the following:

- Small arms.
- Infantry support weapons.
- Artillery.
- Aircraft.
- Vehicles.
- Communications equipment.
- NBC defense.

### ARMED FORCES UNIFORMS AND INSIGNIA

Through his knowledge of uniforms, insignia, decorations, and other distinctive devices, the interrogator may be able to determine the rank, branch of service, type of unit, and military experience of a military or paramilitary source. This knowledge is helpful during the planning and preparation and the approach phases discussed in Chapter 3.

### OB INFORMATION

OB is defined as the identification, strength, command structure, and disposition of personnel, units, and equipment of any military force. Interrogation OB elements are separate categories by which detailed information is maintained. They are—

- Missions.
- Composition.
- Disposition.
- Strength.
- Training.
- Combat effectiveness.
- Tactics.
- Logistics.
- Electronic technical data.
- Miscellaneous data.

During the questioning phase, OB elements assist the interrogator in verifying the accuracy of the information obtained and can be used as an effective tool to gain new information. Aids which may be used to identify units are—

- Names.
- Commanders.
- Home station identifications.
- Code designations and numbers.
- Uniforms and insignia.
- Guidons.
- Documents.
- Military postal system data.
- Equipment and vehicle markings.

### UNDERSTANDING BASIC PSYCHOLOGY

An interrogator can best adapt himself to the EPW's or detainee's personality and control of the their reactions when he understands basic psychological factors, traits, attitudes, drives, motivations, and inhibitions. For example, the timely use or promise of rewards and incentives may mean the difference between an interrogation's success or failure and future EPW or detainee exploitation.

### NEUROLINGUISTICS

Neurolinguistics is a behavioral communication model and a set of procedures that improve communication skills. The interrogator should read and react to nonverbal communications. An interrogator can best adapt himself to the source's personality and control his own reactions when he understands basic psychological factors, traits, attitudes, drives, motivations, and inhibitions.

## INTERROGATOR CAPABILITIES AND LIMITATIONS

HUMINT collection is capable of obtaining information pertinent to all six IEW tasks:

- Situation development.
- Target development and target acquisition.
- I&W.
- IPB.
- BDA.
- Force protection.

Interrogators are trained as linguists to question EPWs and civilian detainees and to exploit CEDs.

During their collection, interrogators attempt to obtain and report any information possessed by these targets that pertains to the IEW tasks. This persistence is determined by comparing the information obtained to the SIR contained in the interrogation element's collection mission.

Interrogators are capable of collecting information on political, economic, and a wide range of military topics. For the most part, interrogators attempt to organize their collection effort according to the OB elements analysts use. In addition to these elements, interrogators also obtain PIR-directed information on the

missions assigned to enemy units. Appendix B discusses relevant questioning guides.

## ENVIRONMENTAL CONSIDERATIONS

The environment in which interrogation operations are performed affects the degree of success achieved. There are primarily two areas, both having limitations, upon which the interrogators depend:

- The IEW process which gives direction and purpose to their collection efforts.
- The conduct of combat operations which provides them with collection targets; that is, EPWs, detainees, and CEDs.

If the IEW process or combat operations are not ideal, use what you can to capitalize on capabilities.

### IEW Process

The IEW process can limit interrogators by assigning collection missions which are not suited to HUMINT collection capabilities; as well as by not disseminating copies of the following reports:

- Intelligence summary (INTSUM).
- Intelligence report (INTREP).
- Daily intelligence summary (DISUM).
- Periodic intelligence report (PERINTREP).
- Supplementary intelligence report (SUPINTREP).
- Other intelligence reports.

### Combat Operations

Combat operations can limit interrogators by—

- Delaying evacuation of EPWs or detainees and captured documents, thereby limiting time available to exploit them.
- Allowing prisoners and documents to be mishandled, thereby decreasing their exploitation potential.
- Not providing the equipment, supplies, and secure communications needed for successful operations.

## INHERENT LIMITATIONS

Interrogation operations are also limited by the very nature of HUMINT collection. EPWs or detainees and CEDs must actually have the desired information before interrogators can collect it. With EPWs or detainees, there is always the possibility knowledgeable individuals may refuse to cooperate.

The UCMJ, GWS, GPW, and GC set definite limits on measures which can be taken to induce an EPW or detainee to cooperate.

## CONFLICTS

HICs are conflicts between two or more nations and their respective allies, where the belligerents employ modern technology complemented by intelligence; mobility; firepower (to include NBC weapons); service support; and $C^3$ resources.

MICs are conflicts between two or more nations and their respective allies, where the belligerents employ modern technology complemented by intelligence; mobility; firepower (without NBC); $C^3$; and service support resources for limited objectives under definitive policy limiting employment of destructive power and geography involved.

LICs are political-military confrontations between contending states or groups below conventional war and above the routine, peaceful competition among states. They—

- Frequently involve protracted struggles of competing principles and ideologies.
- Range from subversion to the use of armed force.
- Are waged by combining and employing political, economic, informational, and military instruments.
- Are often localized, generally in the Third World, but contain regional and global security implications.

LIC operational intelligence requirements are HUMINT intensive and demand detailed familiarity with the military, political, and front organizations of the insurgent enemy, and the environment in which he operates.

The interrogator's familiarity with the areas of operations (AOs) must include an understanding of the insurgency, its objectives, history, successes, and failures. This understanding is required not only on a general countrywide basis but also on an expanded basis within the interrogator's particular AO. Therefore, it is essential the interrogator grasps the importance the insurgent organization places on accomplishing political objectives as opposed to military successes.