One measure of the interrogator's effectiveness is his ability to apply appropriate interrogation techniques to the personality of the source. Interrogations associated with LIC operations dictate the need for skill in the full range of interrogation techniques so the interrogator can conduct the many types of interrogations demanded.

Warfighting doctrine IEW principles apply for LIC; however, intelligence indicators for insurgent activity are unique. Anything insurgents can do to influence and direct a society toward overthrowing its government is reflected by some action or indication, no matter how subtle. Some MI advisors may be required to assist paramilitary and nonmilitary elements in developing HUMINT sources and exploiting their information.

As US forces are committed to the LIC operation, interrogation support will more closely adhere to the traditional tactical environment. Typical LIC missions are—

- Counterinsurgency and insurgency support.
- Combatting terrorism.
- Peacekeeping and peacetime contingency operations.

HUMINT is a major LIC source because of the necessity to exploit the local populace and to know and understand enemy intentions. In LIC, interrogators exploit EPWs and CEDs. For example, in addition to conducting EPW operations at collecting points, interrogators may participate in cordon and search and roadblock operations, tactical check points, and low-level collection missions in conjunction with the supporting CI unit (see FM 34-60A(S)). Interrogators may also provide support to drug and law enforcement agency (DLEA) operations.

## INTERROGATION MISSIONS

Interrogators perform various types of missions. As discussed previously, the two main missions are personnel and document exploitation. There are other functions for which interrogators are ideally suited because of their language and HUMINT training. These include—

- Linguist support to hostage negotiations, counterdrug, and special operation forces (SOF) operations.
- LLSO linguist support.
- Psychological operations (PSYOP) linguist support.
- Civil Affairs (CA) linguist support.
- Treaty verification and observer duties.

## DRUG AND LAW ENFORCEMENT AGENCY OPERATIONS

Army interrogators may assist Federal law enforcement authorities and, where lives are endangered, state and local law enforcement authorities, after concurrence by the Army General Counsel and approval by the Secretary of Defense or his designee. (See AR 381-10, Procedure 12, and AR 500-51.)

Army interrogators may assist law enforcement agencies and security services or foreign governments or international organizations only in accordance with applicable law and policy, including any status of forces agreements. Such assistance will ordinarily constitute security assistance, which must be approved in accordance with AR 12-15.

Under no circumstances will interrogators assist any law enforcement authorities in any manner without prior approval by competent authority after a legal review of the proposal.

# CHAPTER 2
# COMPOSITION AND STRUCTURE

The interrogation architecture (interrogators and interrogation units) is a seamless system that supports operations from brigade to theater level. The dynamic warfighting doctrine requires interrogation units be highly mobile and have automation and communication equipment to report information to the supported commander.

Regardless of their employment level, interrogation units should be equipped with state-of-the-art automation equipment, necessary HUMINT software, and dedicated and secure communication equipment with skip echelon, digital, voice, facsimile, and optical scanning capability. This equipment enables interrogators to—

- Receive data base information.
- Manipulate that information.
- Incorporate it into their operational data bases.
- Produce tactical information reports.

By using secure communication equipment, interrogators are able to disseminate time-sensitive information to the supported commander as answers to his PIR which facilitates decision-making. The Prisoner of War Information System (PWIS) is a databased system maintained by the provost marshal's office at theater level. It has the capability to recall an EPW's evacuation audit trail.

This prisoner of war interrogation (IPW) communication and automation system facilitates transmission of EPW-derived information from brigade to theater; it precludes duplicated effort in EPW or CED exploitation.

The MI unit commander must ensure interrogators have the necessary equipment to accomplish their wartime mission. The MI unit commander retains overall responsibility for interrogators assigned to his unit. The manner in which these interrogators are controlled depends on how the MI unit is task organized for combat.

If interrogators are deployed in general support (GS) of the division, the MI battalion commander exercises control over them through his S3 and the battalion tactical operations center (TOC). If interrogators are deployed in direct support (DS) of a division's subordinate units, they are tasked by the commanders of those units through their S2s.

## TACTICAL OPERATIONS CENTER

Normally, interrogators are a primary source of OB information. The interrogation element chief should ensure that he or someone appointed to this duty has daily personal contact with the division or corps collection management and dissemination (CM&D) section at the TOC. During these visits, all questions and information pertaining to OB and intelligence target priority lists can be discussed and later disseminated to various interrogators.

Interrogator elements must receive all reports and findings made by analysts; in turn, all interrogation reports should reach analysts. Direct contact must be maintained between these two elements, preferably in person or by telephone. This ensures access to important information which may arise between liaison visits.

### TASKING RELATIONSHIPS

When interrogators are task-organized under the IEW company, the team leader directs the tasking. The DS and GS teams are under operational control (OPCON) to the IEW company when they are supporting that company. The officers responsible for tasking interrogation elements ensure the following steps are accomplished:

- Collection missions that reflect the capabilities and limitations of interrogators are assigned.
- INTREPs are integrated with information provided by other collectors during the IPB process.
- Copies of the INTSUM, INTREP, PERINTREP, DISUM, and SUPINTREP are disseminated to the interrogation element as they are published.
- Close contact is maintained with the interrogation element.

## INTERROGATOR TASK ORGANIZATIONS

Interrogators are not assigned by tables of organization and equipment (TOE) to units below division. However, MI parent units often task interrogators and place them in DS to brigades. For example, in a light division, there are usually enough interrogators assigned to send forward deployed interrogation teams, known as "GO" teams, to the brigades to complement light division operations.

EPW interrogation may be desirable at all echelons, but is not practicable due to limited numbers of interrogators available. As a minimum, there should be an interrogation element at the division central collection point, corps holding areas, and theater internment facility.

Interrogation elements at all echelons are task organized, and may not mirror the TOE organization in their parent unit.

## DEPLOYMENT SITES

Interrogation assets are mobile enough to be shifted in response to new developments. The initial deployment of these assets are guided by the exploitation priority established by the commander. Operations are conducted at an echelon that will allow interrogators the best opportunity to satisfy their assigned collection mission. The areas discussed below should be considered when making the deployment decisions.

### Number of Interrogators Available

The number of interrogators available limit the number of deployment sites that can be used. MI commanders at corps consider how many interrogators will be available for interrogation operations after augmentation has been provided to subordinate divisions. The number of interrogators also play a key role in deciding the level of intense or sustained collection operations they can conduct.

### Type and Intensity of Combat Operations

Intense collection employs all available interrogators with little or no provision for them to rest. The major disadvantage of intense collection is these interrogators become exhausted quickly. Interrogations amount to prolonged conversations under extreme stress. Once the available interrogators are exhausted, collection stops until they recover or additional assets arrive.

A severe decrease in interrogation effectiveness can be expected between 12 and 18 hours after the onset of intense collection, with 18 hours as the maximum time possible for intense collection. This kind of all-out effort can be justified when critical information must be obtained or confirmed quickly to forestall a major disaster. Similar problems can be expected during intense CED exploitation.

Sustained operations can be maintained indefinitely. They also allow the commander some rested interrogators to use on a contingency basis in a different location. Disadvantages of sustained collection are fewer sources are exploited over a given time and operations are slower.

### Support Available

In making deployment decisions, the area where operations are to be conducted must provide the support required by the interrogation element. This support includes—

- MP coordination.
- Priority access to reliable means of secure communications.
- Adequate shelter and security.
- A flow of CEDs and sources to exploit.

## INTERROGATION BELOW DIVISION

The first interrogation could take place at brigade. Interrogation teams are attached temporarily to brigades in enemy contact when determined appropriate by the division G2. These teams come from the interrogation section of the parent division. Interrogation personnel are organic to separate brigades and armored cavalry regiments (ACRs). Interrogation at brigade level is strictly tactical and deals with information of immediate value.

Other information the EPW might possess is developed at higher levels. At brigade, the scope of interrogation changes from hour-to-hour as the tactical situation develops. These interrogations must be geared to cope with any tactical possibility at a moment's notice.

Interrogation personnel in DS to brigade will be collocated or immediately adjacent to the division forward EPW collecting point in the brigade support area

(BSA). For MI units to receive S2 support, the collecting point and interrogation site will be collocated and accessible to the command post (CP).

## DIVISION INTERROGATION ASSETS

An MI battalion is organic to each division. It provides combat intelligence, EW, and OPSEC support to light or heavy infantry and airborne or air assault divisions.

The MI battalion provides special support the G2 needs to produce combat intelligence. Interrogation personnel organic to the MI battalions compose the interrogation support element.

The intelligence and surveillance (I&S) company provides division CI, interrogation, and surveillance support.

The I&S company interrogation team manages the division's interrogation assets, including those interrogation teams attached from corps. Additional team duties are—

- Screen CEDs.
- Provide interpreter and translator support.
- Liaison with PSYOP and G5 personnel.

### ORGANIZATION (LIGHT DIVISION)

In a light division, interrogators belong to the I&S Company, MI Battalion. Figure 2-1 shows this structure. Light division MI battalions have 25 interrogators subordinate to the I&S company. Two 5-man DS teams in the interrogation platoon ensure the platoon can provide support to two committed brigades.

#### Platoon Headquarters

Platoon headquarters provides $C^3$ for the interrogation element. It consists of a platoon leader and sergeant. The platoon headquarters coordinates with—

- I&S company commander for personnel status, administrative support, and logistical support prior to deployment to the division support area (DSA).
- MI battalion S3 for intelligence tasking and deployment of interrogation assets.
- Division G2 for reporting, enemy situation updates, and PIR, IR, and SIR.
- DISCOM commander for DSA logistical and communications support, and interrogation element location in the DSA.



Figure 2-1. MI Company (I&S), MI Battalion, Light Division.

- MP company commander for division central EPW collecting point location, and EPW processing and evacuation procedures.
- Medical battalion commander for procedures to treat and clear wounded EPW for questioning.
- CI platoon leader for requirements and joint CI and interrogation procedures.
- MI company team leaders for deployment of DS interrogation teams.
- CA and PSYOP elements for requirements and processing of civilian detainees and refugees.

### Operations Section

This consists of a section chief (warrant officer), noncommissioned officer in charge (NCOIC), and two 4-member interrogation teams. The operations section chief manages the interrogation effort to ensure interrogations respond to division intelligence requirements.

### DOCEX Section

This consists of a section chief (warrant officer) and three document examiners. The DOCEX section may be used as an additional interrogation team when priority of exploitation and EPW capture rate dictate. The division G2 determines whether interrogation or document examination will have priority.

When three brigades are committed in an operation, the DOCEX section may be employed as a third brigade level team.

DOCEX assets may also function in an interrogation role when the number of EPWs at the division central collecting point requires additional division level interrogators or when the CED rate is very low.

### Interrogation Teams

Each interrogation team consists of a team leader (warrant officer), NCO assistant team leader, and three team members. Teams are normally employed as part of the MI company teams which provide IEW support to the brigades.

### ORGANIZATION (HEAVY DIVISION)

In a heavy division, interrogators are assigned to the I&S Company, MI Battalion. Figure 2-2 shows this structure.



Figure 2-2. I&S Company, MI Battalion, Heavy Division.

## ORGANIZATION (AIRBORNE OR AIR ASSAULT DIVISION)

In an airborne or air assault division, interrogators are assigned to the I&S Company, MI Battalion. Figure 2-3 shows this structure.

## ORGANIZATION (ACR AND SEPARATE BRIGADE)

In an ACR or separate brigade, interrogators are assigned to the operations support platoon of the MI company. Figure 2-4 shows this organization.



Figure 2-3. I&S Company, MI Battalion, Airborne or Air Assault Division.



Figure 2-4. MI Company Operations Support Platoon for ACR and Separate Brigade.

FM 34-52

## SPECIAL FORCES GROUP

In a Special Forces Group (Airborne) (SFGA), interrogators are assigned to the Military Intelligence Detachment (MID). Figure 2-5 shows this structure. Interrogation teams may be combined with the CI section when not conducting interrogation operations.



Figure 2-5. Organization, MI Detachment, Support Company, Special Forces Group.

## CORPS INTERROGATION ASSETS AND ORGANIZATION

At corps, interrogators are assigned to the MI Battalion (Tactical Exploitation) (TE). Figure 2-6 shows this structure. The CI interrogation company consists of a company headquarters, IPW and CI operation sections, CI and interrogation platoons, and a maintenance section.



Figure 2-6. MI Battalion (TE).

The CI platoon has nine teams and the interrogation platoon normally has eight teams. Interrogators can be placed in a DS role to divisions to augment division interrogation assets.

The corps also has a Reserve Components (RC) MI Battalion (TE), which has a subordinate CI interrogation company. Figure 2-7 shows this structure.

There are also linguist battalions which augment and support Active Component (AC) units in time of hostilities.



Figure 2-7. RC MI Battalion (TE) Corps.

## ECHELONS ABOVE CORPS INTERROGATION ASSETS AND ORGANIZATION

The MI Battalion (Collection and Exploitation [C&E]), as shown at Figure 2-8, has a headquarters and headquarters company (HHC), MI Company (CI), and MI Company (Interrogation and Exploitation) [I&E]).



Figure 2-8. MI Battalion (C&E), MI Brigade (EAC).

FM 34-52
The MI Battalion (I&E), as shown at Figure 2-9, has an HHC and three MI companies (I&E), of which one is GS. Two MI companies (I&E) (INTG) operate the theater, joint, or combined interrogation facilities, while the MI company (I&E) (GS) is for GS to echelons corps and below (ECB).

The MI Company (Interrogation) of the MI Battalion (C&E) and (I&E), as shown at Figure 2-10, has a company headquarters, operations section, communications section, food service section, and an I&E platoon, consisting of two sections.

The MI company (I&E) (GS), MI Battalion (I&E), has a headquarters section, an operations section, and three interrogation platoons, each with a platoon headquarters and eight sections. Figure 2-11 shows this structure.



Figure 2-9. MI Battalion (I&E), MI Brigade (EAC).



Figure 2-10. MI Company (INTG), MI Battalion (C&E) and (I&E).



Figure 2-11. MI Company (I&E) (GS), MI Battalion (I&E).

## ENEMY PRISONER OF WAR AND INTERROGATION FACILITIES

There are significant differences in EPW and interrogation facilities at each echelon; this is due to the numbers of EPWs, the missions of the various echelons, and the size of the interrogation elements.

### EVACUATION AND GUARDING EPW

Initially, the capturing unit is responsible for evacuating and guarding EPWs. In brigade-size operations, battalions evacuate prisoners to brigade collecting points as the situation permits. In most cases, EPWs are evacuated rapidly using backhaul transportation from brigade collecting points to departure areas because they require food and guards, both of which are in short supply at brigade. EPW collecting points should be located close to supply routes to speed evacuation.

### BRIGADE AND LOWER ECHELONS

At brigade level, EPWs can be detained in open fields, courtyards, gardens, jungle clearings, or similar sites if they are hidden from enemy observation. If necessary, these areas can be enclosed with barbed wire for more efficient EPW handling. Because EPWs seldom remain at a forward collecting point for more than a few hours, EPWs are not usually kept in a building or other shelter.

Interrogation facilities at battalion and brigade are kept to a minimum. Brigade interrogation personnel should be located adjacent to the brigade forward EPW collecting point in the BSA. The collecting point should be out of sight and sound of other BSA activities. It should be close to normal evacuation routes.

The distance between the collecting point and CP is important. When possible, the collecting point and interrogation site should be within walking distance or a few minute's driving distance of the CP.

Interrogators with battalions or brigades should have vehicles equipped with radios for rapid communication with their respective intelligence officers and other intelligence agencies.

### DIVISION FACILITIES

The principal EPW tactical interrogation takes place at division. While the procedure is similar to that used at brigade, the interrogation scope is broader.

Previous interrogation reports received from brigade are reviewed. This information is expanded by further interrogations for tactical information to include all OB elements.

The interrogators at division level will prepare and disseminate summary interrogation reports. As dictated by the tactical situation, the interrogation facility at division may be augmented by corps interrogation personnel.

The division's central EPW collecting point is operated by division MP under the supervision of the division provost marshal. The interrogation section should be located immediately adjacent to the division's