**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SALEH, *et al.*,                                   :
                                                   :
          Plaintiffs,                              :
                                                   :
     v.                                            :   Civil Action No. 05-1165 (JR)
                                                   :
TITAN CORPORATION, *et al.*,                       :
                                                   :
          Defendants.                              :


**<u>MEMORANDUM ORDER</u>**


          In this vexed lawsuit,[1] a number of named Iraqi

nationals bring allegations of nearly unspeakable acts of torture

and other mistreatment by interpreters and interrogators who were

civilian employees of American corporations doing contract work

for the U.S. military at Abu Ghraib prison in Baghdad.  Before

this court are five motions to dismiss plaintiffs' third amended

complaint ("complaint"), filed on behalf of all the defendants

---

          [1] The adjective refers to an unfortunate history of
relations among counsel for plaintiffs in the related case of
<u>Ibrahim v. Titan Corporation</u>, Civil Action No. 04-1248, and to
this case's odyssey from the Southern District of California, to
the Eastern District of Virginia, to this court, back to the
Eastern District of Virginia, and finally back here on January
24, 2006.  That history is not germane to the present motions but
is a matter of public record.  <u>See</u> No. 04-1248, docket entries
[26], [32], [34], [35], [52]; and, in the instant case, docket
entries [7], [8], [19], [27], and minute entries of 9/16/05 and
10/25/05.

who who have been served,[2] and a motion by plaintiffs for summary

judgment on one of the defenses interposed by one defendant.

        The plaintiffs are twelve named Iraqis, the estate of a

thirteenth, and 1050 unnamed Does comprising "classes of persons

similarly situated."  The lead named plaintiff Saleh is "an

individual residing in Sweden and Dearborn, Michigan."  The other

plaintiffs are all residents of Iraq.  Defendants/movants are

three individuals, John B. Israel, Adel L. Nakhla, and Steven A.

Stefanowicz, and two corporate government contract firms, CACI

Premier Tachnology, Inc. (together with related corporate

entities) and L-3 Communications Titan Corporation (formerly

known as The Titan Corporation).

        This case is related to the Ibrahim case, see note 1,

supra, because, except for the allegations of conspiracy made in

this case, the factual allegations of the two cases are virtually

indistinguishable from one another.  Both cases involve the same

corporate defendants, allegedly doing (or negligently allowing to

be done, or failing to prevent) the same kinds of acts, in the

same place, at the same time.  In Ibrahim, I dismissed the

plaintiffs' Alien Tort Statute, RICO, and government contracting

claims, as well as plaintiffs' common law claims of false

imprisonment and conversion, but I allowed their common law

_____

        [2] Proof of service upon defendant Timothy Duggan was filed
on 6/27/06.  This memorandum order does not apply to him.

                            - 2 -

claims of assault and battery, wrongful death, intentional
infliction of emotional distress and negligence to go forward,
finding no merit in the defendants' political question defense
and finding that the defendants had not provided enough factual
support for their government contractor preemption defense.
<u>Ibrahim</u>, 391 F.Supp.2d 10 (D.D.C. 2005)

   Apparently assuming (correctly) that I would treat my
<u>Ibrahim</u> decision as if it were *stare decisis*, each side in the
present case has attempted to distinguish it.  Plaintiffs have
broken their ATS claim into component parts, added claims of
aiding and abetting and conspiracy, added individual defendants,
named three putative subclasses of plaintiffs (the "RICO" class,
the "common law" class, and the "wrongful death" class), and
fashioned legal arguments that were not addressed in <u>Ibrahim</u>.
CACI and Titan, for their part, have argued that plaintiffs'
arguments have laid even their common law claims open to
dismissal.  For reasons that will be amplified below, however, I
find no reason to treat any of the claims and defenses asserted
in this case differently from the way they were treated in
<u>Ibrahim</u>.  (The reasoning supporting my rulings in <u>Ibrahim</u> is
incorporated by reference here.)

   1.  <u>Alien Tort Statute</u>

   In <u>Ibrahim</u>, I held that, after <u>Tel Oren v. Libyan Arab</u>
<u>Republic</u>, 726 F.2d 774 (D.C. Cir. 1984), <u>Sanchez-Espinoza v.</u>

Reagan, 770 F.2d 202 (D.C. Cir. 1985), and Sosa v. Alvarez-Machain, 124 S. Ct. 27, 39 (2004), it was clear that I had jurisdiction under the Alien Tort Statute (ATS), 28 U.S.C. § 1350, but that the conduct of private parties described by plaintiffs' allegations was not actionable under the ATS's grant of jurisdiction as violative of the law of nations.   The plaintiffs in this case, apparently thinking they see daylight in footnote 3 of the Ibrahim opinion, have run to it, arguing that the Supreme Court's Sosa opinion approved Judge Edwards's view in Tel Oren, 726 F.2d at 781, that torture by private parties would be actionable under the ATS if the private parties were acting under color of law, and alleging that these defendants were indeed acting under color of law.   The argument is rejected. Sanchez-Espinoza is controlling Circuit precedent and is not cast in doubt by the other cases upon which plaintiff relies.[3]   Sosa did not overrule that precedent (and Sosa's pointed admonition that lower federal courts should be extremely cautious about discovering new offenses among the law of nations certainly cannot be read as an endorsement of Judge Edwards' view in Tel Oren that "the law of nations is not stagnant and should be

---

[3] The scholarly and persuasive opinion of Judge Schwartz in Presbyterian Church of Sudan v. Talisman Energy, 244 F. Supp 2d 289 (S.D.N.Y. 2003), involved a Canadian corporation acting under color of Sudanese law and relied heavily upon Second Circuit precedent laid down in Kadic v. Karadzic, 70 F.3d 232 (1995), and Filartiga v. Pena-Irala, 630 F.2d 876 (1980), both of which involved acts done under color of non-U.S. law.

construed as it exists today among the nations of the world." 726
F.2d at 777). Sanchez-Espinoza makes it clear that there is no
middle ground between private action and government action, at
least for purposes of the Alien Tort Statute.

          Plaintiffs' color of law theory is not advanced by
their assertions that the defendants aided and abetted official
action, Complaint ¶¶ 189, 206, 221, 236, 250, or that they
conspired with military personnel, Complaint ¶¶ 183, 201, 216,
231, 245. It is certainly true, see [42-1] at 15,[4] that
participation in a conspiracy with government actors does not
confer government immunities,[5] but in the absence of supporting
citation it is difficult to see how conspiratorial behavior,
which by definition is secretive, can show the color of law. And
the more plaintiffs assert official complicity in the acts of
which they complain, the closer they sail to the jurisdictional
limitation of the political question doctrine. See, Gonzalez-
Vera v. Kissinger, No. 05-5017 (D.C. Cir., decided June 9, 2006);
Schneider v. Kissinger, 412 F.3d 190 (D.C. Cir. 2005).

---

[4] Citation to an electronic document is to the page number
of the original document, rather than the number assigned by the
CM/ECF system.

[5] On this motion to dismiss, plaintiff's allegations of
conspiracy are taken as true.

    2.  <u>RICO</u>

I dismissed the RICO claims in <u>Ibrahim</u> because allegations of personal injuries alone are not sufficient to meet RICO's standing requirement of some allegation of damage to business or property, 18 U.S.C. § 1964(c).  Here, seeking to avoid the same result, the plaintiffs claim that they were victims of predicate acts of robbery, but their allegations – that three of them were robbed upon their arrest by unnamed American soldiers, complaint ¶¶ 131, 140, 151, or that (upon information and belief) an unnamed employee of Titan stole and never returned a Mercedes automobile owned by an unnamed class member, <u>id</u>. ¶ 55 – are vague to the point of rumor.  Plaintiffs concede that the alleged takings of property occurred at the time of arrest, not during interrogation.  They nevertheless insist, [42-1] at 27, that

> only at the time of release from prison did seizure of money and goods become robbery; the initial *taking* does not establish who *stole* it.  Regardless of timing, the robberies were as much part of the attempt to intimidate and demean the prisoners as any other act of torture and abuse.

Unfortunately, there is no "artful pleading" exception to the rule that the allegations of a complaint must be taken as true when considering a motion to dismiss.  Here, however, even assuming the truth of plaintiffs' allegations that the unnamed persons (maybe American soldiers, maybe not) who arrested the plaintiffs (where? when?) stole their money, jewels and

- 6 -

automobiles to imtimidate and demean them, all in order to
further the unlawful purposes of the vast "torture conspiracy"
plaintiffs have conjured, complaint ¶¶ 97-107, the resulting (and
quite fantastic) plot line describes a theory of injury causation
that is too attenuated for RICO.  Cf. Anza v. Ideal Steel Supply
Corp.,__ U.S. __, decided June 5, 2006.

       3.  CACI International Inc and CACI, INC.-FEDERAL.

      The leave given plaintiffs to file their (third
amended) complaint against three CACI corporate entities [33] was
conditional.  They were to

> make[] allegations as to the individual CACI corporations
> now lumped together in the proposed third amended complaint
> as "the CACI Corporate defendants" . . . specific enough
> that such allegations may be tested against the requirement
> of Rule 11 that they "have evidentiary support, or, if
> specifically so identified, are likely to have evidentiary
> support after a reasonable opportunity for further
> investigation or discovery."

Instead of doing so, plaintiffs simply added a footnote,
complaint ¶ 24, explaining that their allegations as to CACI
International Inc and CACI, INC.-FEDERAL were now made

> upon information and belief . . . to connote those instances
> where Plaintiffs believe the allegations are likely to have
> evidentiary support after a reasonable opportunity for
> further investigation or discovery.

Asserting that they have now "alleged facts establishing
liability for each of the CACI entities," [41-1] at 41, the
plaintiffs have thrown together a number of claims that sound in
negligence (knew or should have known, allowed employees to

design illegal interrogation, failure to prevent or stop, etc.,
see id. at 42) or agency (CACI International "controlled" CACI-PT
and acquired it to meet its own strategic goals, id.), none of
which, even if proven, would "pierce the corporate veil" so as to
make the corporate parents of CACI-PT liable for the torts of
CACI-PT.  The complaint asserts Alien Tort Statute claims for
extrajudicial killing, torture, cruel/inhuman/degrading
treatment, war crimes, and crimes against humanity, as well as
common law claims for assault and battery, sexual assault,
wrongful death, negligent hiring and supervision, and intentional
and negligent infliction of emotional distress.  The claims that
might be supported by proof of negligence (wrongful death,
negligent hiring and supervision, negligent infliction of
emotional distress) all are variants of intentional tort claims.
Plaintiffs will have a hard enough time establishing CACI-PT's
respondeat superior liability for these torts.  If they choose to
pursue their claims against CACI-PT's corporate parents, they
(and their counsel) are on notice that I will permit discovery as
to exactly what "evidentiary support" existed for their claims
when they filed their (third amended) complaint, and, for those
claims asserted upon information and belief, exactly what
information they acted upon.

4.  <u>Individual defendants</u>

The motions of defendants Israel, Nakhla, and
Stefanowicz to dismiss for lack of personal jurisdiction will be
granted.  None of them lives in the District of Columbia or has
meaningful contacts here, and plaintiffs have made no attempt to
invoke the District of Columbia's long-arm statute as to any of
them.  The arguments for personal jurisdiction are that RICO
supports nationwide service of process and that the
jurisdictional question has already been decided, by the United
States District Court for the Eastern District of Virginia.  A
properly pleaded RICO claim does support nationwide service of
process, but these defendants need not respond to a RICO claim
that plaintiffs have no standing to pursue.  Judge Hilton's
referral to this court [44-14] was not an adjudication of the
RICO standing issue.

5.  <u>Further proceedings</u>

The disposition of the present motions renders this
case, and its procedural posture, virtually indistinguishable
from <u>Ibrahim</u>.  Here, as in <u>Ibrahim</u>, the next step must be to
determine whether the defendants' employees "were essentially
acting as soldiers," <u>see</u> No. 04-1248 [39] at 16-18.  In <u>Ibrahim</u>,
the defendants moved for summary judgment on that question, after
which the parties embarked on an agreed discovery program, No.
04-1248 [63].  It will be in the interest of justice, and of the

- 9 -

efficient use of litigation resources, for these two cases to be
consolidated, for discovery purposes only.  Defendants will not
be required to duplicate the discovery they have provided in
Ibrahim, if plaintiffs in the instant case are given access to
the same discovery, under the terms of the protective order
issued in that case, No. 04-1248 [66].

          *     *     *     *     *

          For the reasons set forth above and in No. 04-1248 [38]
it is

          ORDERED that the motions of Stephen A. Stefanowicz
[36], John B. Israel [38] and Adel Nahkla [39] to dismiss for
lack of personal jurisdiction are **granted.**  It is

          FURTHER ORDERED that the motions of CACI Premier
Technology, Inc., CACI International Inc and CACI, INC.-FEDERAL
[37] and L-3 Communications Titan Corporation [40] to dismiss for
failure to state a claim upon which relief can be granted are
**granted** as to Counts One through Fifteen, Thirty and Thirty-one
of the Third Amended Complaint [34] and **denied** as to Counts
Sixteen through Twenty-nine.  It is

          FURTHER ORDERED that plaintiffs' motion for summary
judgment against Titan Corporation on the government contractor
defense [61] is **denied.**  And it is

- 10 -

        FURTHER ORDERED that the parties meet and confer and
present a proposed schedule for further proceedings – an agreed
schedule, if possible – within 30 days of the date of this order.


                        JAMES ROBERTSON
                   United States District Judge