**EXHIBIT D**

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

2005 MAY 05   P  1:30

DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| SALEH et al., | ) |
| Plaintiffs, | ) Case No. 1:05cv427 (CMH/BRP) |
| v. | ) |
| TITAN et al. , | ) |
| Defendants. | ) |

**REPLY TO CACI'S OPPOSITION
TO PLAINTIFFS' MOTION TO TRANSFER VENUE
TO THE DISTRICT OF COLUMBIA**

Plaintiffs have moved to transfer this action to the District of Columbia for one simple and straightforward reason – judicial economy.  If the action is not transferred, this Court will be asked to engage in the very same task being undertaken by Judge Robertson across the river in the District of Columbia.  In its Opposition to the Motion To Transfer ("Opposition"), CACI argues that the District Court for the Southern District of California ruled on transfer to the District of Columbia and thus the "law of the case" doctrine controls.  CACI also argues in the alternative that the action cannot be transferred to the District of Columbia because plaintiffs could not have brought the action there.

As set forth below, the law of the case doctrine does not apply because during the oral argument. CACI withdrew from the Court's consideration its alternative request for transfer to the District of Columbia. By the time the Court issued its decision, it was not being asked to rule on transfer to District of Columbia.  Not surprisingly, the Court did not take it upon itself to do so, and did not even mention that issue in the otherwise carefully crafted and thorough decision.

For that reason, there is no controlling "law of the case" on whether it makes more sense to hear this action in the District Court of the District of Columbia than in this jurisdiction.

CACI's reliance on the Section 1404 "where [the case] might have been brought" standard is also a red herring. As plaintiffs readily admitted in California and readily admit to this Court, it remains unclear whether any of the relevant jurisdictions (California, Virginia, District of Columbia) has personal jurisdiction over the three non-corporate defendants because defendants have challenged plaintiffs' assertion of jurisdiction under the Racketeering-Influenced Corrupt Practices Act ("RICO"). The District Court in the Southern District of California transferred the action without ruling on the motions to dismiss for lack of RICO jurisdiction. But what is clear is that plaintiffs "might have brought" this action in the District of Columbia as that term is used in Section 1404. That CACI boldly asserts this case "could not have been brought" in the District of Columbia simply ignores plaintiffs' invocation of RICO jurisdiction, which, if valid, would give any federal district court jurisdiction over the three non-corporate defendants. CACI's extensive (and likely expensive from a client perspective) effort to create a paper trail to support their argument is exactly the type of selective waiver for forum-shopping purposes that the Supreme Court forbade in *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).

In contrast, plaintiffs are not engaged in forum shopping by moving to transfer. Plaintiffs properly chose the forum they wanted when they filed in Titan's home jurisdiction, the Southern District of California. Plaintiffs' counsel fought to the bitter end – the denial of the mandamus – to try to preserve plaintiffs' initial choice of a forum. Plaintiffs have consistently argued that their right to choose their forum should trump the witness conveniences held to justify the transfer to this jurisdiction.

Now, having been transferred, plaintiffs are asking merely for this Court to consider whether judicial efficiency propels transferring this action across the river. That transfer will not result in plaintiffs obtaining the forum of their choice – the Southern District of California. But the transfer will spare the parties the need to draft and file every paper twice and the need to argue every motion twice. The transfer will spare this Court from having to rule on issues that have been ruled on or are pending before the District Court in the District of Columbia. The transfer will prevent two district courts located only ten miles apart from issuing possibly conflicting decisions.

This action raises a critical issue of national and indeed international importance: can the government contractors who have been found by the military to have participated in the torture and abuse at the Abu Ghraib prison in Iraq be held accountable for their misdeeds by the United States' independent judiciary? Alhough the case law of this Circuit strongly supports transfer, the decision to transfer is in this Court's sound discretion. Plaintiffs respectfully request that this Court exercise its discretion and issue a ruling from the bench after oral argument on May 27, 2005.

I.     **THERE IS NO LAW ON THE CASE ON TRANSFER TO THE DISTRICT OF COLUMBIA BECAUSE CACI WITHDREW ITS ALTERNATIVE REQUEST FOR TRANSFER DURING ORAL ARGUMENT.**

CACI asserts that "Judge Rhoades was squarely asked to transfer this case to the District of Columbia if he declined to transfer the action to the Eastern District of Virginia." *Opposition at p. 8.* It is hard to "square" that CACI statement with the CACI statement to Judge Rhoades during the oral argument held on February 14, 2005:

> Mr. Koegel:     May I have one more point, your honor?
>
> The Court:     One more.

| Mr. Koegel: | We're not certain that there would be jurisdiction over all of the defendants in the District of Columbia. We think there would be in the Eastern District of Virginia, but absent jurisdiction over all the defendants in D.C., then, the Court might well be precluded from transferring the case to D.C. |
| The Court: | You don't want to go across the river. Let's hear from the plaintiffs. |
| Mr. Koegel: | Thank you, your honor. |

*Transcript of Feb. 14, 2005, Oral Argument at 27-28.*

By the time the Southern District of California (J. Rhoades) issued its decision, CACI, the moving party, was no longer seeking to transfer the action to the District of Columbia. The lengthy and thorough decision reveals that that Court considered many arguments about transferring to the Eastern District of Virginia. But the decision does not reveal that the Court took up on its own initiative a matter withdrawn from consideration by CACI. That the Court could have done so is not disputed. That the Court actually did so is far from clear. Such a shaky foundation does not suffice to erect a compelling "law of the case" argument.

## II. THE SUPREME COURT FORBIDS DEFENDANTS FROM FORUM SHOPPING BY SELECTIVELY CONTESTING AND CONSENTING TO PERSONAL JURISDICTION.

When CACI told the District Court in the Southern District of California that it might be "precluded" from transferring the action to the District of Columbia, CACI was withdrawing and contradicting its own earlier assertions:

> [T]his Court may also transfer this case to the United States District Court for the District of Columbia. A related case, making similar allegations against the same group of corporate Defendants, is currently pending there before Judge James Robertson.
>
> The private interests involving convenience for the litigants and nonparty witnesses all favor litigation in the District

- 4 -

of Columbia as easily (or nearly as easily) as in the Eastern
District of Virginia. The federal courthouse in the District of
Columbia is less than ten miles from the courthouse in
Alexandria. The same geographic considerations apply.
. . .

        Considerations of the public interest and judicial economy
also favor transfer to the District of Columbia. There is a
significant potential for savings through judicial economy,
through possible consolidation with the *Ibrahim* case pending
before Judge Robertson.

*Memorandum of Points and Authorities in Support of the Motion of Defendants CACI*

*International, Inc., CACI, Inc. – Federal, and CACI N.V. To Transfer Venue at 19.* CACI

obviously recognized that judicial efficiency favored transfer of the case to the District of

Columbia. CACI now opposes such transfer, perhaps because it believes it has found a more

favorable forum.

    Such transparent efforts by a defendant to shop for a forum by selectively consenting or

objecting to personal jurisdiction have been the subject of stern words by the Supreme Court:

        We do not think the § 1404(a) phrase "where it might have been
brought" can be interpreted to mean, as petitioners' theory would
require[], "where it may now be rebrought, with defendants'
consent . . . ." *[T]he power of a District Court under § 1404(a)
to transfer an action to another district is made to depend not
upon the wish or waiver of the defendant* but, rather, upon
whether the transferee district was one in which the action "might
have been brought" by the plaintiff.

*Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) (emphasis added).

    CACI's effort to defeat transfer to the District of Columbia by offering an affidavit of

one of its employees asserting that only the Eastern District of Virginia has jurisdiction is

precisely the kind of jurisdictional game-playing the Supreme Court warned against in *Hoffman*.

In fact, plaintiffs "might have brought" the action against all of the defendants in the District of

Columbia or the Eastern District of Virginia on the same grounds asserted in California –

namely, jurisdiction under RICO. It is for that reason that plaintiffs did not – and do not – contest that this Court has jurisdiction over the action.

CACI claims that this Court should find that the District of Columbia is not a place where the action "might have been brought" because the District Court in the District of Columbia intimated in the *Ibrahim* argument that it would likely dismiss the *Ibrahim* RICO claims. *Opposition at 13-14*. CACI was apparently blind to the fact that it is exactly this type of argument that proves the validity of plaintiffs' point about duplicate actions and the need to avoid the dynamic of having two courts have to look at the same issue (such as RICO jurisdiction).

But regardless of the fact that CACI is already beginning to subject this Court to what would become (if transfer is denied) a steady stream of information about judicial actions taken across the river, the reality is that the RICO claims have not been dismissed. These RICO claims provided the jurisdictional basis for the transfer to the Eastern District of Virginia, and they serve equally as the jurisdictional basis for transfer to the District of Columbia.

Otherwise, if one were to accept CACI's reasoning, the Southern District of California erred as a matter of law by transferring the action to the Eastern District of Virginia. That is, Defendant Adel Nakhla, who resides within the District of Maryland, claims that absent RICO neither the District of Columbia *nor* the Eastern District of Virginia have personal jurisdiction over him. *Defendant Adel L. Nakhla's Memorandum in Opposition to Plaintiffs' Motion to Transfer Venue to the District Court for the District of Columbia at 1.* Does that mean that the Southern District of California lacked the ability to transfer the action to this jurisdiction? Must

the action be transferred back to California because this is not a jurisdiction where the action "might have been brought"?  No.  Plaintiffs' assertion of RICO jurisdiction suffices. [1]

This action "might have been brought" in the District of Columbia, just as it "might have been brought" in the Eastern District of Virginia, and just as it actually was brought in the Southern District of California.  In addition to RICO jurisdiction, it appears plaintiffs, had they initially filed in the District of Columbia, could have asserted personal jurisdiction based on the conspiracy allegations.  Plaintiffs' Second Amended Complaint alleges that the conspirators acted in the District of Columbia, Virginia, and California, as well as in Iraq.  *See* Second Amended Class Action Complaint ¶ 83.  Plaintiffs could have obtained jurisdiction in the District of Columbia under the theory that personal jurisdiction over a defendant may be established based on his co-conspirator's overt acts within the forum.  *See Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72 (D.D.C. 2004), relying on, among other authorities, *International Shoe v. Washington*, 326 U.S. 310, 316 (1945) (plaintiff must demonstrate "minimum contacts" between the defendant and the forum establishing that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice"); and the D.C. long-arm statute, D.C. Stat. § 13-423(a)(E) (providing that "the court may exercise personal jurisdiction if there is any basis consistent with the United States Constitution for the exercise of personal jurisdiction.")

---

[1] CACI is less than precise in describing plaintiffs' past arguments.  For example, CACI asserts that plaintiffs told the Southern District of California that there was no personal jurisdiction over all of the defendants in the District of Columbia. *Opposition at 12*. On the contrary, plaintiffs argued only that the court should not consider CACI's argument for transfer to the District of Columbia in the alternative because CACI itself had disavowed its original position that the District of Columbia was a district where the action "might have been brought." *Plaintiffs' Opposition to CACI Defendants' Motion To Transfer Venue at 18-20.*

A final note about the validity of the conspiracy allegations is needed. CACI claims in its Opposition that plaintiffs have not made allegations that they had any significant contact with defendants or their employees, and characterizes plaintiffs' counsel as seeking "to sidestep this evidentiary difficulty by asserting that their far-flung and unsupported conspiracy allegation . . . ." *Opposition at 3*.

As the Court will appreciate, the prisoners who were tortured in interrogation rooms, showers, cells and elsewhere by a series of Americans are not able to identify those persons by corporate affiliation. Although some of the torture occurred while the prisoners were hooded (which raises its own evidentiary issues), plaintiffs' counsel anticipate that most of the prisoners will be able to identify their torturers by sight. Now that discovery is commencing, plaintiffs will be entitled to receive from defendants photographs of their employees stationed in Iraq, which will permit plaintiffs to learn for the first time the corporate affiliations of their torturers.

Further, although defendants have not participated in *any* discovery to date (despite the fact that action has been pending almost one year), the record already includes such compelling evidence of the conspiracy that it is blatantly misleading the Court to characterize plaintiffs' conspiracy allegations as "unsupported." *Opposition at 3*. The evidence comes from the military's own voluminous reports, which are on record in redacted versions. These reports reveal that CACI and Titan employees worked side-by-side with certain military personnel (several of whom have already been convicted) to torture and abuse prisoners. As but one example, General Antonio M. Taguba found that defendant Stefanowicz "clearly knew his instructions equated to physical abuse." *U.S. Army Report on Iraqi Prisoner Abuse* (May 5, 2004), at 48. Defendant Stefanowicz, then a CACI employee, was not instructing himself to act; he was instructing his co-conspirators, the military police.

- 8 -

**CONCLUSION**

Plaintiffs respectfully request that this Court act expeditiously to grant or deny plaintiffs'
motion to transfer venue, which is founded solely on notions of judicial efficiencies.

Respectfully submitted,

Date: May 25, 2005

Susan L. Burke (Va. Bar # 27769)
Jonathan H. Pyle
MONTGOMERY, MCCRACKEN,
      WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
Telephone:    (215) 772-1500
Facsimile:    (215) 772-7620

Jennifer Green
Judith Brown Chomsky
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:    (212) 614-6439
Facsimile:    (212) 614-6499

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
401 South Old Woodward Avenue
Suite 430
Birmingham, MI 48009
Telephone:    (248) 594-9595
Facsimile:    (248) 594-4477

Joseph Margulies
LOCKE BOWMAN
MACARTHUR JUSTICE CENTER
UNIVERSITY OF CHICAGO LAW SCHOOL
1111 East 60th Street
Chicago, IL 60637
Telephone:    (773) 702-9560
Facsimile:    (773) 702-0771

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Jonathan H. Pyle, do hereby certify that on the 26th day of May 2005, I caused a true

and correct copy of the foregoing Reply to CACI's Opposition to Plaintiffs' Motion To Transfer

Venue to the District of Columbia to be served via electronic mail and U.S. First Class Mail,

postage prepaid, upon the following individuals at the addresses indicated:

F. Whitten Peters
Thomas M. Craig
Williams and Connolly
725 12th Street, North West
Washington, DC 20005
wpeters@wc.com
*Counsel for Defendant Titan Corp.*

Adam L. Rosman
Ellen D. Marcus
Zuckerman Spaeder LLP
1201 Connecticut Avenue North West
Washington, DC 20036
arosman@zuckerman.com
*Counsel for Defendant Adel Nakhla*

James W. Hundley
Briglia & Hundley, P.C.
Mosby Professional Building
10560 Main Street, Suite 314
Fairfax, VA 22030
jhundley@briglia-hundley.com
*Counsel for Defendant Steven Stefanowicz*

J. William Koegel Jr.
John F. O'Connor
Steptoe & Johnson LLP
1330 Connecticut Avenue, North West
Washington, DC 20036
wkoegel@steptoe.com
*Counsel for CACI Corporate Defendants*

Henry E. Hockeimer Jr.
Hangley Aronchick Segal & Pudlin, P.C.
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
heh@hangley.com
*Counsel for Defendant Steven Stefanowicz*

Alison L. Doyle
Shari L. Klevens
McKenna Long & Aldridge LLP
1900 K Street, North West
Washington, DC 20006-1108
adoyle@mckennalong.com
*Counsel for Defendant John B. Israel*

Jonathan H. Pyle
MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
Telephone No.: (215) 772-1500
Facsimile No.: (215) 772-7620