IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SALEH *et al.*,<br><br>          Plaintiffs,<br>v.<br><br>TITAN *et al.*,<br>          Defendants. | )<br>)<br>)<br>) Case No. 05-cv-1165 (JR)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT DANIEL E. JOHNSON'S
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Defendant Daniel E. Johnson ("Defendant Johnson"), a former CACI employee, has moved to dismiss Plaintiffs' Third Amended Complaint ("TAC") for failure to state a claim and for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(6) and (2). The motion should be denied because the TAC alleges facts sufficient to state claims against Defendant Johnson for assault and battery, sexual assault and battery, wrongful death, intentional infliction of emotional distress, as well as civil conspiracy to commit the foregoing tort claims. This motion should also be denied because this Court has personal jurisdiction over Defendant Johnson under the District of Columbia long-arm statute. Defendant Johnson voluntarily joined a conspiracy, which took acts in furtherance of the conspiracy in this District. These allegations suffice under the relevant decisional law. If for some reason they are deemed not to suffice, leave to conduct jurisdictional discovery is routinely granted in this Circuit, and should be granted here.

**STATEMENT OF RELEVANT PROCEDURAL HISTORY**

On June 9, 2004, the torture victims brought this action in the United States District Court for the Southern District of California. On November 10, 2004, CACI International, Inc.

and the other CACI defendants (hereinafter "CACI") moved to transfer the action to the Eastern District of Virginia. The District Court granted CACI's motion and transferred the case to the Eastern District of Virginia. The victims subsequently filed a motion to transfer to the District of Columbia. CACI opposed that transfer, arguing that the victims failed to establish that the action "might have been brought" in this District as is required by 28 U.S.C. § 1404(a).[1] The victims invoked both RICO's nationwide service-of-process jurisdiction and D.C. long-arm jurisdiction based on the conspiracy allegations.[2] *Reply to CACI's Opposition to Motion To Transfer Venue to the District of Columbia (filed May 25, 2005) at 6-7.*

On June 3, 2005, the Eastern District of Virginia granted plaintiffs' motion to transfer. Thereafter, CACI successfully sought a writ of mandamus from United States Court of Appeals for the Fourth Circuit, which ordered the District Court to reconsider "whether the District Court for the District of Columbia has personal jurisdiction over the defendants under either RICO's nationwide-service-of-process provisions or the long arm statute for the District of Columbia." *Sept. 13, 2005 Order (4th Cir., No. 05-1636).* On January 13, 2006, the Eastern District of Virginia, having reconsidered the matter as directed by the Court of Appeals, held this Court has jurisdiction under the D.C. long-arm statute. *Jan. 13, 2005 Order (E.D. Va. 1:05-cv-427).*

After the action was transferred to this Court, Plaintiffs personally served Daniel E. Johnson, a former CACI employee who participated in the abuse at the Abu Ghraib prison, at his residence in Waipahu, Hawaii. *Return of Service of Summons and Complaint Executed (filed July 7, 2006).* Defendant Johnson has not contested service.

---

[1] 28 U.S.C. § 1404 (a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").
[2] This Court dismissed Plaintiffs' RICO claims. *June 29, 2006 Order.*

On August 16, 2006, Defendant Johnson filed a Motion To Dismiss The Third Amended Complaint. He asserts that Plaintiffs have only alleged legal conclusions as to his involvement in the torture of Abu Ghraib prisoners and the conspiracy. *Memorandum Of Law In Support Of Defendant Daniel E. Johnson's Motion To Dismiss The Third Amended Complaint (filed Aug. 16, 2006)* (hereinafter "*Memorandum*") at 9-10. Defendant Johnson also argues that Plaintiffs' TAC does not plead facts sufficient to allow this Court to exercise personal jurisdiction over him. *Id. at 2*.

## ARGUMENT

None of Defendant Johnson's arguments has merit. Plaintiffs' TAC alleges sufficient facts to state claims against Defendant Johnson. This Court has personal jurisdiction over Defendant Johnson.

**I.  PLAINTIFFS STATE TORT CLAIMS AGAINST DEFENDANT JOHNSON IN THEIR TAC.**

Under Rule 12(b)(6), a defendant may only prevail if it appears beyond doubt that no set of facts could support the legal claims made by the plaintiff in his or her complaint. *See*, *e.g.*, *In re Swine Flu Immunization Prod. Liab. Litig.*, 880 F.2d 1439, 1443 (D.C. Cir. 1989) ("The standard is quite strict under Rule 12(b)(6), where the court limits itself to the pleadings; a defendant must show 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1955)); *McBride v. Merrell Dow & Pharmaceuticals Inc.*, 717 F.2d 1460, 1466 (D.C. Cir. 1983) ("The standard to be applied in evaluating the dismissal of a complaint under Fed .R. Civ. P. 12(b)(6) is a stringent one."). The burden is on the defendant to prove that the plaintiff's allegations fail to state a claim as a matter of law. *Kimberlin v. Dept. of Justice*, 150 F. Supp. 2d 36, 41 (D.D.C. 2001) ("A party moving for dismissal under Federal Rule of Civil Procedure

12(b)(6) has the burden of proving that the nonmovant has failed to state a claim upon which relief can be granted.").

Here, Defendant Johnson fails to carry that heavy burden and instead tries to place the burden on Plaintiffs by arguing that their factual allegations are too general in nature. Yet Defendant Johnson admits, as he must, that the TAC alleges he ***personally*** "directed and engaged in torture and mistreatment" and "conducted interrogations in a manner that violated United States law." *Memorandum at 11*. Further, the TAC properly alleges as a matter of fact that Defendant Johnson participated in a conspiracy that engaged in a heinous and voluminous amount of wrongful acts recited in the TAC.

    *A.*    *The TAC Alleges Defendant Johnson Formed a Conspiracy To Torture Prisoners.*

Those allegations suffice to state a claim upon which relied can be granted. As held by the Court of Appeals for the D.C. Circuit, a plaintiff makes out the elements of the common law tort of civil conspiracy by alleging "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). *See also Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001) (same).

Here, Plaintiffs allege that the Defendant Johnson intentionally and knowingly agreed to and did work in concert with others, including co-conspirators Nakhla, Israel, and Dugan. *TAC ¶ 29*. The TAC alleges that in or around 2002, a conspiracy to torture and otherwise mistreat prisoners in Iraq was formed. *TAC ¶ 97*. The TAC alleges that Defendant Johnson conspired with his co-conspirators "to engage in a series of wrongful acts in prisons under the United

States' control." *TAC ¶ 28*.  The TAC alleges that the conspirators also conspired "to prevent the discovery and investigation of these wrongful acts."  *Id*.

The TAC alleges that Defendant Johnson and his co-conspirators committed predicate acts in furtherance of the conspiracy, including, but not limited to, assault, battery, unlawful imprisonment, obstruction of justice, and acts to humiliate those practicing the faith of Islam. *TAC ¶ 107*.  The TAC alleges damages resulting from the conspirators' unlawful acts including deaths, physical injuries, mental illness and disorders, and property losses.  *TAC ¶¶ 170-174*.

### B.  The TAC Alleges Defendant Johnson Personally Committed Overt Acts That Both Evidenced and Furthered the Conspiracy To Torture Prisoners.

The TAC alleges overt acts by Defendant Johnson that both evidenced and furthered the conspiracy.  Namely, the TAC alleges that Defendant Johnson repeatedly conducted interrogations in a manner that violated United States law and policy as well as international law. *TAC ¶ 80*.  The TAC alleges that Defendant Johnson "used his position of authority to direct others, including military soldiers, to torture and mistreat Plaintiffs and Class Members."  *Id*.

These TAC allegations are well-founded and based on evidence already on the public record.  For example, in the AR 15-6 Investigation of the Abu Ghraib Detention Facility and 205th Military Intelligence Brigade conducted by Major General George R. Fay, Daniel Johnson is described as placing a prisoner in an "an unauthorized stress position."  Further, the photograph that shows Johnson violating the law portrays him working with a Titan employee – clear evidence of the conspiracy.  Major General Fay expressly noted in his report that Johnson's conduct violated the Interrogation and Counter-Resistance Policies.  *MG George R. Fay, AR 15-6 Investigation of the Abu Ghraib Detention Facility and 205th Military Intelligence Brigade* (hereinafter "*Fay Report*") *at 82* (Incident # 24), attached hereto as Exhibit A.

MG Fay also reported that Daniel Johnson was the first person at Abu Ghraib known to use dogs to threaten prisoners. *Fay Report at 84* (Incident #25) (Exhibit A). On November 24, 2003 – only four days after the dog teams arrived at the prison – Johnson was interrogating a prisoner, and told soldiers to bring a dog into the cell. The dog barked at the prisoner and attempted to bite one of the interrogators. MG Fay expressly stated in his report that Daniel Johnson's direction to the soldiers to use the dogs was "clearly abusive and unauthorized." *Id. at 84* (emphasis added) (Exhibit A). MG Fay also reported on Johnson conspiring with Staff Sergeant Ivan Frederick. Defendant Johnson threatened a prisoner with SSG Frederick, who came into the cell and held his hand over the prisoner's nose, "not allowing him to breathe for a few seconds," and later used his nightstick to push the prisoner's arm in a painful manner. *Id. at 79* (Incident #15) (Exhibit A).

### C. *The TAC Alleges Conduct by Defendant Johnson and his Co-Conspirators That Suffices To State Tort Claims and Claims for Aiding and Abetting.*

Defendant Johnson does not – and cannot – allege that the conduct alleged in the TAC fails to plead the requisite elements to support the tort claims. In the District of Columbia, a defendant commits civil assault when he or she intends to put the plaintiff in fear of immediate and harmful or offensive conduct. *Madden v. D.C. Transit System, Inc.,* 307 A.2d 756, 757 (D.C. 1973) ("An essential element of the ancient tort of assault is the intentional putting another in apprehension of an immediate and harmful or offensive conduct.").

A defendant commits the tort of battery by intentionally acting in a way that causes harmful or offensive bodily contact. *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. Ct. App. 1997) ("An assault is 'an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff.'. . . 'A battery is an intentional act that causes a harmful

or offensive bodily contact.") (citing *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993)).

A defendant intentionally inflicts emotional distress if the plaintiff shows "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 139 (D.C. 2006) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C. 1984)). As stated by one court in the District, "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Larijani v. Georgetown University*, 791 A.2d 41, 44 (D.C. 2002) (internal citation omitted).

A defendant aids and abets the foregoing torts when (1) the party whom the defendant aids performs a wrongful act that causes an injury; (2) the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant knowingly and substantially assists the principal violation. *Burnett v. Al Baraka Inv. & Dev't Corp.*, 274 F. Supp. 2d 86, 104-05 (D.D.C. 2003) (citing *Halberstam* for aiding and abetting common law tort elements).

Here, the TAC alleges that Defendant Johnson personally "directed and engaged in the torture and mistreatment" of Plaintiffs and Class Members. *TAC ¶¶ 24, 27*. The TAC describes the numerous assaults and batteries committed by Defendant Johnson and/or his co-conspirators, including those of a sexual nature.[3]  The TAC alleges that Defendant Johnson and his co-

---

[3] *See*, *e.g.*, *TAC ¶ 54* (alleging that a Titan employee raped a fourteen-year-old class member); *TAC ¶ 160(a)-(v)* (describing forced nudity, rape and other forced sexual acts, photographing while nude and/or in other humiliating situations, as well as hooding, beating, solitary confinement, deprivation of food and water, exposure to loud music, stress positions, sleep deprivation, exposure to extreme temperatures, and ridicule of religious practice).

conspirators subjected Plaintiff Saleh to, among other brutal acts, electric shocks, threatening him with a dog, shooting him with plastic bullets, and numerous acts of physical and sexual abuse (*TAC ¶116*); subjected Plaintiff Haj Ali to, among other brutal acts, electric shocks, physical abuse, painful stress positions, exposure to extreme cold, and forced nudity (*TAC ¶¶ 125, 124, 123*); subjected Plaintiff Jalel Mahdy Hadood to harmful and offensive acts including exposure to extreme heat, sleep deprivation, humiliation by forcing him to wear women's underwear, beating, food deprivation, stress positions and threats of sodomy (*TAC ¶¶ 129, 130*); subjected a boy, Plaintiff Umer Abdul Mutalib Abdul Latif, to extreme heat, food deprivation, beating, stress positions, threats to harm his family, and electric shocks (*TAC ¶ 133*); subjected Plaintiff Ahmed Shehab Ahmed to harmful and offensive conduct including beating, denial of medical care, forced nudity, and threats to rape his family (*TAC ¶ 135*); subjected Plaintiff Ahmed Ibrahiem Neisef Jassem to harmful and offensive acts including exposure to extreme cold, forced nudity, intimidation with dogs, beating, forced nudity, food deprivation, and stress positions (*TAC ¶ 137*); subjected Plaintiff Ismael Neisef Jassem Al-Nidawi to harmful and offensive acts including beating, stress positions, electric shocks, sleep deprivation, forced nudity, threats of rape, and exposure to extreme heat (*TAC ¶¶ 142, 143, 144*); subjected Plaintiff Kinan Ismael Neisef Al-Nidawi to harmful and offensive acts including beating, sleep deprivation, stress positions, exposure to extreme heat and cold, forced nudity, rape and threats of sodomy (*TAC ¶ 146, 147, 148*); threatened Plaintiffs Mustafa, Natheer, Othman, and Hassan and their family members with sexual abuse, sexually molested two of these plaintiffs, and subjected these plaintiffs to stress positions and food deprivation (*TAC ¶¶ 155, 156, 157, 158*).[4]

---

[4] The TAC also alleges that conspirator Defendant Israel beat, punched and threatened seventeen-year-old Plaintiff Umer during an interrogation and assaulted other class

In short, given that Defendant Johnson is alleged to have personally directed and conspired with others to commit the torture and mistreatment and given that the TAC spells out the many wrongful acts of torture, Defendant Johnson's argument that Plaintiffs' TAC should be dismissed for failure to allege events and allege any facts fails to persuade. This Court has already recognized that the Plaintiffs' allegations of harm by the defendants reflect "nearly unspeakable acts of torture and other mistreatment." *June 29, 2006 Order at 1*. The brutality of the acts committed by the torture conspirators, *see*, *e.g.*, *TAC ¶ 160 (a)-(v)*, more than satisfy the standard of "outrageous" conduct. The international community has recognized torture and other cruel mistreatment of prisoners as intolerable. *See* Geneva Convention Relative to the Treatment of Prisoners of War, Art. III.1 (entered into force Oct. 21, 1950). *See also* 18 U.S.C. § 2441 (criminalizing crimes against humanity). Given that the TAC alleges Defendant Johnson personally participated in and directed torture, Defendant Johnson's motion to dismiss the TAC on the grounds it fails to state valid tort claims simply fails to persuade.

## II.  THIS COURT HAS PERSONAL JURSIDICTION OVER DEFENDANT JOHNSON UNDER THE DISTRICT OF COLUMBIA LONG-ARM STATUTE.

Similarly, Defendant Johnson's argument that this Court should not exercise jurisdiction over him fails to acknowledge the critical fact that the TAC alleges (and evidence on the public record supports) that Defendant Johnson participated in a conspiracy formed and furthered in this District. *See*, *e.g.*, *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. Ct. App. 1979) (holding that section 13-423 "permits a jurisdictional reach coextensive with that permitted by the due process clause"); *Dickson v. United States*, 831 F. Supp. 893, 897 (D.D.C. 1993) (same); *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 78-79 (D.D.C. 2004) (Urbina, J.)

---

members(*TAC ¶¶ 18, 50*) and that conspirator Defendant Nakhla assaulted Plaintiff Hadood and other class members (*TAC ¶¶ 19, 49*).

(holding that court may exercise personal jurisdiction over a defendant based on his co-conspirators' overt acts with the forum.)

This case is on all fours with *Youming Jin v. Ministry of State Security*, 335 F. Supp. 2d 72, 78-79 (D.D.C. 2004) (J. Urbina).  There, plaintiffs alleged that the Chinese government had conspired with certain American officials to abuse and intimidate practitioners of Falun Gong in China.  On a motion to dismiss filed by one of the individual defendants, the member of a Chinese-American group in Chicago, the Court found that the plaintiffs had alleged that the defendant was a member of the conspiracy and plaintiffs had "sufficiently pled acts by purported co-conspirators in the District of Columbia."  *Youming* at 83.  Having found that there was a proper basis for conspiracy jurisdiction, the Court granted the plaintiffs leave to take jurisdictional discovery on the issue of whether the individual defendant had purposefully availed himself of the District such that personal jurisdiction was within the bounds of constitutional due process.  *Id*. at 83-84.

This Court has personal jurisdiction over Defendant Johnson under the same reasoning found in *Youming*.  As set forth in detail above, the TAC alleges Defendant Johnson formed a conspiracy with others to torture prisoners.  The TAC alleges Defendant Johnson's co-conspirators took acts in furtherance of the conspiracy in this District and also alleges overt acts in this District, including forming and fostering relationships that furthered the conspiracy through meetings and communications that occurred in the District of Columbia.  *TAC ¶ 98*.  The TAC alleges overt acts in furtherance of the conspiracy, including meetings, discussion by telephone and in person, e-mail correspondence, and other communications occurring in the District of Columbia.  *TAC ¶ 98*.

It is black-letter law that Defendant Johnson is responsible for the acts of his co-conspirators. *Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 84 (D.D.C. 2006) ("One party may be liable for the acts of another under theories of vicarious liability, such as conspiracy, aiding and abetting and inducement."). Thus, the overt acts of Defendant Johnson's co-conspirators are imputed to him for purpose of the long-arm analysis.

This analysis is, of course, subject to the constitutional limit of due process. *See Youming* at 78 ("It is 'essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'") (citing *Creighton Ltd. v. Government of State of Qatar*, 181 F.3d 118 (D.C. Cir. 1999), and *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Here, exercising personal jurisdiction over Defendant Johnson in this District would not violate standards of due process because he has purposefully availed himself of this District. By entering into an employment agreement with CACI to work on a contract for the U.S. Army in Iraq, Defendant Johnson created a connection to the nation's capital such that he could reasonably anticipate being brought into court here. *See Youming* at 78 ("In short, 'the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.'") (citing G*TE New Media Servs. v. BellSouth Corp*, 199 F.3d 1343, 1347 (D.C. Cir. 2000); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

At the very least, should the Court disagree that Defendant Johnson reasonably could have anticipated being haled into court in the nation's capital as a result of conspiring with Titan and military employees torturing prisoners, Plaintiffs respectfully request jurisdictional discovery to establish additional minimum contacts. Courts in this Circuit have liberally granted leave to

plaintiffs to take jurisdictional discovery. *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000) ("This court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified . . . . We cannot tell whether jurisdictional discovery will assist [plaintiff] on this score, but it is entitled to pursue precisely focused discovery aimed at addressing matters relating to personal jurisdiction."); *Diamond Chemical Co., Inc. v. Atofina Chemicals, Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003) (granting jurisdictional discovery for facts supporting application of the D.C. long-arm statute and noting that it is "hard to imagine a situation where a plaintiff could not demonstrate that it can supplement its jurisdictional allegations through discovery" after the *GTE* Court permitted discovery where it could not tell whether it would help sort out jurisdictional questions) (internal citation omitted); *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) ("A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."). Here, it would not prejudice Defendant Johnson or any of the other parties to permit Plaintiffs a limited amount of jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Johnson's motion to dismiss. In the alternative, Plaintiffs seek leave to take jurisdictional discovery.

Dated: September 6, 2006          /s/ Susan L. Burke
                                   Susan L. Burke (D.C. Bar # 414939)
                                   BURKE PYLE LLC
                                   4112 Station Street

Philadelphia, PA 19127
Telephone:   (215) 487-6590
Facsimile:   (215) 482-0874

Jennifer Green
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:   (212) 614-6439
Facsimile:   (212) 614-6499

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
401 South Old Woodward Avenue, Suite 430
Birmingham, MI 48009
Telephone:   (248) 594-9595
Facsimile:   (248) 594-4477

*Counsel for Plaintiffs and Class Plaintiffs*

## CERTIFICATE OF SERVICE

I, Anne K. Heidel, do hereby certify that on the 6th day of September, 2006, I caused true and correct copies of the foregoing *Plaintiffs' Opposition To Defendant Daniel E. Johnson's Motion To Dismiss the Third Amended Complaint* to be served via electronic mail upon the following individuals at the addresses indicated:

F. Whitten Peters
Thomas M. Craig
WILLIAMS & CONNOLLY LLP
725 12th Street, NW
Washington, D.C. 20005
wpeters@wc.com
*Counsel for Defendant Titan Corp.*

J. William Koegel Jr.
John F. O'Connor
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
wkoegel@steptoe.com
*Counsel for Defendants CACI International Inc. and CACI-PT*

Patrick O'Donnell
Justin Dillon
HARRIS, WILTSHIRE & GRANNIS, LLP
1200 18th Street, NW
Suite 1200
Washington, D.C. 20036
podonnell@harriswiltshire.com
*Counsel for Defendant Daniel E. Johnson*

By regular mail:

Timothy Dugan
3696 Summit Road, SW
Pataskala, OH 43062
*Proceeding Pro Se*

_____
Anne K. Heidel