## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                    )
IBRAHIM, *et al.*,                  )
                                    )
                Plaintiffs,         )
                                    )    Civil Action No. 04-CV-1248 (JR)
        v.                          )
                                    )
TITAN CORP., *et al.*,              )
                                    )
                Defendants.         )
_____)

_____
                                    )
SALEH, *et al.*,                    )
                                    )
                Plaintiffs,         )
                                    )    Civil Action No. 05-CV-1165 (JR)
        v.                          )
                                    )
TITAN CORP., *et al.*,              )
                                    )
                Defendants.         )
_____)

**OPPOSITION OF DEFENDANTS CACI INTERNATIONAL INC AND
CACI PREMIER TECHNOLOGY, INC. TO THE *SALEH* PLAINTIFFS'
MOTION FOR LEAVE TO TAKE DISCOVERY FROM THE CACI
DEFENDANTS UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(f)**

**I.      INTRODUCTION**

The Rule 56(f) affidavit submitted by Susan L. Burke, Esq., counsel for the *Saleh*

Plaintiffs, fails to make any showing that the *Saleh* Plaintiffs need any discovery other than that

provided to the *Ibrahim* Plaintiffs in order to respond to the motion for summary judgment filed

by Defendants CACI Premier Technology, Inc., and CACI International Inc (collectively, the

"CACI Defendants").    As the Court has recognized in several orders in these actions,

Defendants' summary judgment motions involve a very narrow set of facts, and do not support the full-blown discovery that the *Saleh* Plaintiffs seek through Ms. Burke's Rule 56(f) affidavit. Moreover, Ms. Burke's affidavit ignores the document discovery that the CACI Defendants have already provided to the *Saleh* Defendants, as well as the two dozen depositions that Plaintiffs are entitled to take on summary judgment issues, and tries to skirt the fact that the *Saleh* Plaintiffs have already obtained through "informal discovery" information bearing on the command and control issues implicated by Defendants' summary judgment motions.

Apart from showing a lack of need for additional discovery, Ms. Burke's affidavit fails to show that the discovery the *Saleh* Plaintiffs desire to take has any relevance to the factual issues actually involved in Defendants' summary judgment motions, issues that the Court explicitly identified in ruling on Defendants' motions to dismiss. Without exception, the additional discovery sought by the *Saleh* Plaintiffs would shed no light on the command and control issues implicated by Defendants' summary judgment motions, but instead would drown the parties in a sea of merits discovery and other irrelevant discovery under the guise of taking discovery to respond to the CACI Defendants' summary judgment motion. For these reasons, the Court should deny the *Saleh* Plaintiffs' request for summary judgment discovery over and above that provided to the *Ibrahim* Plaintiffs.

## II.     BACKGROUND

### A.     The Summary Judgment Discovery Allowed in *Ibrahim*

In *Ibrahim*, the Defendants moved to dismiss all of Plaintiffs' claims on a number of grounds. By Order dated August 12, 2005, the Court dismissed all of the *Ibrahim* Plaintiffs' claims under the Alien Tort Statute, RICO, and certain government contracting laws. With respect to the remaining claims, all common-law tort claims, the Court dismissed some of the claims and allowed certain other claims to proceed. With respect to those remaining claims, the

Court held that full-blown merits discovery was inappropriate at this stage of the case. Instead, the Court ruled that the appropriate manner of proceeding was to consider summary judgment motions filed by the CACI and Titan Defendants as to whether Plaintiffs' common-law tort claims were preempted. Under the Court's analysis, all of the *Ibrahim* Plaintiffs' remaining common-law claims would be preempted if "defendants have shown that they were essentially soldiers in all but name." August 12, 2005 Order at 15.

In addressing further proceedings on Defendants' preemption defenses, the Court explicitly identified the facts that would inform its summary judgment decision, and highlighted the limited nature of appropriate discovery:

> More information is needed on what exactly defendants' employees were doing in Iraq. What were their contractual responsibilities? To whom did they report? How were they supervised? What were the structures of command and control? If they were indeed soldiers in all but name, the government contractor defense will succeed, but the burden is on defendants to show that they are entitled to preemption.
>
> **Full discovery is not appropriate at this stage**, especially given the potential for time-consuming disputes involving state secrets. Since **limited additional facts are needed**, a motion for summary judgment is the right vehicle to address the issue of preemption. I will entertain such a motion from defendants, complete with whatever supporting material they believe sufficient. If appropriate, plaintiffs will then of course be entitled to file a Rule 56(f) affidavit, and we will address any discovery at that point.

*Id.* at 17-18 (emphasis added).

The CACI and Titan Defendants filed their *Ibrahim* summary argument motions on December 16, 2005. When the *Ibrahim* Plaintiffs filed a Rule 56(f) affidavit detailing the discovery they sought in order to respond to Defendants' summary judgment motions, the Court issued an order *sua sponte* ruling that the *Ibrahim* Plaintiffs' affidavit was inadequate because,

among other reasons, it failed to recognize the limited scope of permissible discovery.  As stated
by the Court:

> I did say that the scope of *limited* discovery contemplated by my
> [August 12, 2005] memorandum would be discussed after
> plaintiffs file a Rule 56(f) response, but plaintiffs have yet to file
> an affidavit that entitles them to that discussion.  A Rule 56(f)
> affidavit must at a minimum set forth what the party opposing a
> motion for summary judgment expects to discover that would give
> rise to a genuine issue of material fact, what efforts the party has
> made to obtain those facts, and why those efforts were
> unsuccessful.

January 27, 2006 Order at 1-2 (emphasis in original).

Subsequent to the Court's January 27, 2006 order, counsel for the parties in *Ibrahim*
reached an agreement regarding the scope of discovery with respect to the summary judgment
motions, and the Court entered an order approving the parties' agreement.  Under the Court's
order, the *Ibrahim* Plaintiffs were entitled to the following discovery:

- The contracts by which CACI PT provided interrogators and Titan provided
  linguists to Abu Ghraib prison;

- Written job descriptions applicable to CACI interrogators and Titan linguists
  assigned to Abu Ghraib prison;

- Policies, procedures, rules, directives, and guidelines applicable to CACI
  interrogators and Titan linguists assigned to Abu Ghraib prison;

- Organizational charts reflecting CACI interrogators and Titan linguists at Abu
  Ghraib prison; and

- Documents or interrogatory responses sufficient to identify Defendants'
  personnel with personal knowledge of the interaction between CACI
  interrogators and Titan linguists with the military at Abu Ghraib prison.

April 27, 2006 Order at 1.  In addition to the written discovery detailed above, the Court's April
27, 2006 order entitled the *Ibrahim* Plaintiffs to take up to nineteen depositions before
responding to Defendants' summary judgment motions, the nine persons who submitted

4

Declarations in support of Defendants' summary judgment motions and ten additional depositions.

Recognizing, however, the limited facts at issue in Defendants' summary judgment motions, the Court's April 27, 2006 order limited the scope of deposition questioning to the precise issues the Court had found relevant to the summary judgment motions:

> The scope of questioning in the depositions is restricted to the issue identified by the Court for summary judgment: the working relationship between the United States Government and CACI interrogators and between the United States Government and Titan linguists at Abu Ghraib generally, and whether CACI interrogators and Titan linguists were subject to the supervision, direction and control of the military in connection with work performed at Abu Ghraib specifically.

*Id.* at 2.

### B.    Summary Judgment Discovery in *Saleh*

In an order dated June 29, 2006, the Court, as in *Ibrahim*, dismissed all of the *Saleh* Plaintiffs' claims except for certain common-law tort claims. In discussing the remaining common-law claims, the Court adopted the same analysis and summary judgment procedure ordered in *Ibrahim*:

> The disposition of the present motions renders this case, and its procedural posture, virtually indistinguishable from *Ibrahim*. Here, as in *Ibrahim*, the next step must be to determine whether the defendants' employees "were essentially acting as soldiers." In *Ibrahim*, the defendants moved for summary judgment on that question, after which the parties embarked on an agreed discovery program. It will be in the interest of justice, and of the efficient use of litigation resources, for these two cases to be consolidated, *for discovery purposes only*. Defendants will not be required to duplicate the discovery they have provided in *Ibrahim*, if plaintiffs in the instant case are given access to the same discovery, under the terms of the protective order issued in that case.

June 29, 2006 Order at 9-10.

On July 31, 2006, counsel for the parties in *Saleh* filed a proposed schedule in which they agreed that the April 27, 2006 discovery Order in *Ibrahim* would apply with full force and effect to discovery in *Saleh* except as otherwise agreed. Thus, the CACI Defendants have produced to the *Saleh* Plaintiffs the same document discovery that they provided to the *Ibrahim* Plaintiffs under the Court's April 27, 2006 order in the *Ibrahim* action. In addition, the parties agreed that the *Saleh* Plaintiffs would be permitted to participate in the up to nineteen depositions that the *Ibrahim* Plaintiffs would be permitted to take, and that the *Saleh* Plaintiffs could notice up to five depositions over and above those noticed and taken by the *Ibrahim* Plaintiffs. The parties' agreement did not modify the scope of questioning permitted in depositions as set forth in the *Ibrahim* order, which was limited to the summary judgment issues identified by the Court.

The parties in *Saleh*, however, continued to negotiate with respect to the *Saleh* Plaintiffs' request for documents over and above those provided to the *Ibrahim* Plaintiffs. Ultimately, Defendant Titan Corporation entered into a stipulation by which it agreed to produce certain additional documents to the *Saleh* Plaintiffs. *See* Stipulation About Document Discovery (filed Aug. 25, 2006). Notably, Titan and the *Saleh* Plaintiffs also entered into a side letter that would restrict Titan's document production obligations from what is set forth in the stipulation.[1] For example, the *Saleh* Plaintiffs have agreed that Titan does not have to conduct a search of emails for responsive documents. Also, with respect to Titan's obligation to produce "[p]erformance reviews, warnings, terminations, and disciplinary reports relating to Titan Category II and III linguists," *id.* at 2, the Titan and the *Saleh* Plaintiffs agreed that Titan would only produce such materials from the personnel files of Titan linguists who had served at Abu Ghraib prison as well

---

[1] To be clear, the CACI Defendants to not suggest that there is anything untoward about the *Saleh* Plaintiffs and Titan entering into the described side letter, as the CACI Defendants were made aware during negotiations of the existence and terms of the letter. The CACI Defendants reference the side letter only to make clear to the Court to limitations on Titan's obligation to search for documents responsive to the categories set forth in the Stipulation About Document Discovery.

as an additional fifteen linguists to be selected by the *Saleh* Plaintiffs. O'Connor Decl., Ex. A. Although the claims in *Saleh*, unlike the claims in *Ibrahim*, are not limited to Abu Ghraib prison, the CACI Defendants understand that the *Saleh* Plaintiffs and Titan agreed to this limited search of personnel files because of burden issues.

During the parties' negotiations, the Stipulation About Document Discovery was originally drafted to govern the discovery obligations not only of Titan but also of the CACI Defendants. While the CACI Defendants believed that several of the categories of documents described in the draft stipulation were not relevant to the Defendants' summary judgment motions, the CACI Defendants were willing to produce much of the material set forth in the stipulation because such a production would not have been unduly burdensome and generally would not have delved into merits issues that are not a proper subject for summary judgment discovery. However, as with Titan, the CACI Defendants had issues with the blanket requirement in Paragraph 2.b of the Stipulation About Document Discovery that CACI Defendants produce performance reviews, warnings, terminations, and disciplinary reports for all of its interrogators.[2]

While Titan's document production obligations were limited to the personnel files of linguists serving at Abu Ghraib and fifteen other linguists selected by the *Saleh* Plaintiffs, the CACI Defendants did not seek to limit its search and production obligation by the location(s) in Iraq where its interrogators served. Rather, the CACI Defendants merely sought to limit their search and production obligations to interrogators who had served in Iraq prior to the filing of the Complaint in this action, or perhaps during the time that the named Plaintiffs claim to have been abused. The basis for the CACI Defendants' position was that the relevant question on summary

---

[2] During negotiations of the proposed joint stipulation, the *Saleh* Plaintiffs had agreed to limit their document requests to CACI employees who had served as interrogators in Iraq, as opposed to employees who had served as analysts or screeners in Iraq.

judgment is the relationship between CACI PT's interrogators and the United States military at the time that the Plaintiffs claim to have suffered injury, and that the personnel files of interrogators who did not arrive in Iraq until some later date simply have no bearing ion this issue. Ms. Burke, speaking for the *Saleh* Plaintiffs, rejected this proposal on the grounds that she had other "clients" who were not named Plaintiffs and had not filed suit, but who had been detained by the United States through May 2005, nearly a year after the original complaint in the *Saleh* action was filed.

The CACI Defendants' position in response was that they should not be required to provide discovery based on the claims of "clients" who had asserted no claims and would not be bound by the result of this action. Indeed, the CACI Defendants' counsel reminded Ms. Burke that she previously had stated that her other "clients" would simply file suit elsewhere if this Court dismissed the named Plaintiffs' Complaint or granted Defendants summary judgment. Ms. Burke reaffirmed this intention, meaning that the *Saleh* Plaintiffs were seeking discovery based on the periods of incarceration of persons who were not named Plaintiffs, would not be bound by a summary judgment ruling in favor of Defendants, and who would file their own lawsuits in this or some other court if the Court granted summary judgment to Defendants. Given the *Saleh* Defendants' determination that any agreement on summary judgment discovery would require production of documents for a time period when the named Plaintiffs – the only claimants bound by the result of Defendants' summary judgment motions – were not even incarcerated or abused, the CACI Defendants were unable to agree to the proposed Stipulation About Document Discovery.

## III.    ANALYSIS

The *Saleh* Plaintiffs have already received all of the documents discovery that the *Ibrahim* Plaintiffs agreed would be sufficient to respond to Defendants' summary judgment

motions.  Defendants also have agreed that the *Saleh* and *Ibrahim* Plaintiffs may take up to twenty-four depositions on the issues implicated by the pending summary judgment motions. The *Saleh* Plaintiffs' Rule 56(f) affidavit fails to justify additional discovery for two reasons. First, the affidavit fails to address the considerable discovery Defendants have provided Plaintiffs or to discuss why this agreed-upon discovery is insufficient.  Second, the CACI Defendants have already provided the discovery that is relevant to the summary judgment issues, and the *Saleh* Plaintiffs' plea for additional discovery is just an attempt to obtain additional discovery that might be of prurient interest to the *Saleh* Plaintiffs' counsel but has no bearing on the narrow issues involved in the Defendants' summary judgment motions.

> **A.    The *Saleh* Plaintiffs Have Not Met Their Burden of Showing a Need for Summary Judgment Discovery Over and Above That Already Provided**

In rejecting the Rule 56(f) affidavit originally submitted by the *Ibrahim* Plaintiffs, the Court reiterated its view that only "***limited*** discovery" was appropriate with respect to Defendants' summary judgment motions.  January 27, 2006 Order at 1.  Moreover, the Court explicitly set forth the showing required in any Rule 56(f) affidavit seeking discovery on Defendants' summary judgment motions:

> A Rule 56(f) affidavit must at a minimum set forth what the party opposing a motion for summary judgment expects to discover that would give rise to a genuine issue of material fact, what efforts the party has made to obtain those facts, and why those efforts were unsuccessful.

*Id.* at 1-2 (citing *Byrd v. EPA*, 174 F.3d 239, 248 & n.8 (D.C. Cir. 1999)).  Ms. Burke's Rule 56(f) affidavit fails to meet this burden.

As the Court explained in its order in *Ibrahim*, a Rule 56(f) affidavit cannot merely recite the discovery that a party opposing summary judgment would like to take; rather, the affidavit must explain what the party opposing summary judgment has done to obtain the factual

information it claims to need and why the information already available to that party is insufficient. *Id.* The *Saleh* Plaintiffs are hardly beginning with a blank slate on discovery, but Ms. Burke's affidavit makes no effort to address the discovery already available to the *Saleh* Plaintiffs or to explain why they need discovery beyond that already afforded to them.

In fact, the *Saleh* Plaintiffs have already received in discovery all of the documents that the *Ibrahim* Plaintiffs agreed were sufficient to allow them to respond to Defendants' summary judgment motions. These documents include:

- The contracts by which CACI PT provided interrogators and Titan provided linguists to Abu Ghraib prison;

- Written job descriptions applicable to CACI interrogators and Titan linguists assigned to Abu Ghraib prison;

- Policies, procedures, rules, directives, and guidelines applicable to CACI interrogators and Titan linguists assigned to Abu Ghraib prison;

- Organizational charts reflecting CACI interrogators and Titan linguists at Abu Ghraib prison; and

- Documents or interrogatory responses sufficient to identify Defendants' personnel with personal knowledge of the interaction between CACI interrogators and Titan linguists with the military at Abu Ghraib prison.

April 27, 2006 Order at 1. Thus, although the *Saleh* Plaintiffs argue that "there is no practicable way for Plaintiffs to obtain information critical to their Opposition without being provided documents from the CACI Defendants," Pl. Mem. at 2, the reality is that the *Saleh* Plaintiffs already have every document that the *Ibrahim* Plaintiffs' counsel deemed necessary to respond to Defendants' summary judgment motions. Ms. Burke's Rule 56(f) affidavit fails to address the document discovery the *Saleh* Plaintiffs already have received, and certainly does not explain why the documents they have been provided are insufficient to address the narrow issues raised by the pending summary judgment motions.

10

Moreover, Ms. Burke's Rule 56(f) affidavit glosses over the fact that the Plaintiffs in *Saleh* and *Ibrahim* are permitted to take up to ***twenty-four depositions*** in the summary judgment phase of this case, and makes no effort to explain why these depositions will leave the *Saleh* Plaintiffs unable to respond to Defendants' summary judgment motions. Given that the default rule in federal courts is that a group of plaintiffs is entitled to take only ten depositions in an entire case without seeking leave of court, Fed. R. Civ. P. 30(a)(2)(A), Plaintiffs are entitled to a remarkable amount of deposition discovery on summary judgment motions that the Court has characterized as implicating only "limited additional facts." August 12, 2005 Order at 15.

Beyond the formal discovery that the CACI Defendants have already agreed to provide to Plaintiffs, the *Saleh* Plaintiffs acknowledge that they "have been and will continue to engage in informal fact-finding." Pl. Mem. at 2. But the *Saleh* Plaintiffs decline to provide any description of the facts they have obtained informally, and the Court simply cannot decide what information the *Saleh* Plaintiffs need without knowing what information the *Saleh* Plaintiffs already have. While the CACI Defendants understandably do not know the universe of materials that the *Saleh* Plaintiffs have obtained through informal fact-finding, they are aware of two such examples. First, on September 9, 2005, Ms. Burke took a deposition-style "sworn statement" of former CACI PT employee Torin Nelson that was transcribed by a court reporter. For reasons only known to *Saleh* Plaintiffs' counsel, the transcript from this deposition-style "sworn statement" includes the caption and case number from the *Saleh* action, misleadingly shrouding this proceeding with the Court's imprimatur at a time when no discovery was permitted in *Saleh* and where none of the other parties were notified of or invited to attend the proceeding. O'Connor Decl., Ex. B. In that 77-page "sworn statement," Ms. Burke asked Mr. Nelson a series of questions about the manner in which CACI PT interrogators were supervised in Iraq and was

advised that these interrogators reported to and were under the direction of the military chain of command.  *Id.* at 22-24.

Second, during the one deposition to take place during the summary judgment phase of these cases, Ms. Burke questioned the witness with a document provided to the United States Army Criminal Investigation Division as part of CACI's cooperation with investigations conducted by that entity.  O'Connor Decl. ¶ 2.  The document was marked as proprietary and directed that CACI be notified prior to any dissemination of the document.  CACI never received notification that the document was going to be released outside the United States government.  Ms. Burke has acknowledged obtaining the document from one or more members of the media while refusing to provide any other information.  As with Ms. Burke's unannounced sworn interview of Torin Nelson, the CACI Defendants do not know what other documents the *Saleh* Plaintiffs have obtained from the media or other sources as part of their ongoing "informal fact-finding."  Given Plaintiffs' burden to show that they need additional discovery in order to respond to the pending summary judgment motions, their decision not to acknowledge the information they already have obtained defeats any claim that the *Saleh* Plaintiffs should receive even more summary judgment discovery.

### B.    The Additional Discovery Sought By the *Saleh* Plaintiffs Is Not Relevant to the Issues Raised in Defendants' Summary Judgment Motions

The Court has already advised the Court of the standard it intends to employ in deciding Defendants' summary judgment motions: Plaintiffs' remaining common-law claims will be preempted "defendants have shown that they were essentially soldiers in all but name."  August 12, 2005 Order at 15.  Putting a finer point on the inquiry, the Court further identified the questions that will control whether Defendants' employees were "essentially soldiers in all but name": "What were their contractual responsibilities?  To whom did they report?  How were they supervised?  What were the structures of command and control?"  *Id.*

In order to fairly address these four questions, the *Saleh* Plaintiffs have been provided: (1) the relevant CACI PT contract; (2) written job descriptions for CACI PT interrogators; (3) documents reflecting policies, procedures, rules, directives, and guidelines for CACI PT interrogators; (4) any organizational charts for CACI interrogators; and (5) a list of persons with personnel knowledge of the interaction between CACI interrogators and the United States military. In addition, the *Saleh* Plaintiffs can inquire as to the manner in which CACI PT interrogators interacted with military personnel through the twenty-four depositions Plaintiffs may take before responding to Defendants' summary judgment motions. When the discovery that the *Saleh* Plaintiffs seek is viewed against the discovery they are already receiving, it becomes clear that the additional discovery sought by the *Saleh* Plaintiffs is irrelevant to the actual issues involved in Defendants' summary judgment motions.

For example, the *Saleh* Plaintiffs' first document request seeks production of "[d]ocuments that reflect, refer, or relate to the contractual responsibilities assumed by CACI employees, including but not limited to contracts, statement of work, delivery orders, task orders, invoices, and any other documents evidencing any contractual responsibilities in response to a request from the United States." Pl. Mem. at 3 n.1. The CACI Defendants have already produced the contracts, statements of work, delivery orders, and task orders under which they provided interrogation services to the United States in Iraq during the relevant time frame. Invoices have nothing to do with the questions posed by the Court on the manner of supervision and control. Moreover, "any other documents evidencing any contractual responsibilities assumed in response to a request from the United States" presumably would encompass every scrap of paper, email or hard copy, discussing work performed by CACI PT interrogators. This is hardly the "limited discovery" authorized by the Court and the *Saleh* Plaintiffs have made no showing of a need for such information.

Similarly, the CACI Defendants have produced a number of items identified in the *Saleh* Plaintiffs' third document request, such as CACI codes of conduct and training materials to the extent that they exist. *See* Pl. Mem. at 3 n.2. But compensation and benefit packages shed no light on the command and control of CACI PT personnel, nor do performance reviews, warnings, terminations or disciplinary reports. If the *Saleh* Plaintiffs' interest is in the structural manner in which CACI PT and the military interacted with respect to disciplinary issues, as opposed to seeking merits-related details of warnings, terminations and the like, the *Saleh* Plaintiffs have not shown why this topic cannot be explored in detail in the two dozen depositions they are permitted to take. Requiring the CACI Defendants to cull through all of the documents regarding CACI PT's interrogation work in Iraq is unduly burdensome when Plaintiffs will have no shortage of deponents who they can ask about structural processes for contractor discipline.

With respect to the *Saleh* Plaintiffs' third document request, the CACI Defendants have produced materials such as codes of conduct and written job descriptions. Pl. Mem. at 3 n.3. Plaintiffs also have had the benefit of deposition testimony on reporting structures and compliance policies from the CACI PT employee who served as CACI PT's administrative site lead at Abu Ghraib prison for parts of 2003 and 2004, and who later served as country manager for the CACI PT intelligence contract. The *Saleh* Plaintiffs have not demonstrated. however, that the other documents sought in their third document request are relevant to the summary judgment motions, such as offer letters or employee contracts, particularly in light of the other document and deposition discovery available to them.

Plaintiffs' fourth document request is overbroad in the extreme, seeking all of the CACI Defendants' email and other communications with the contracting officer's representatives, communications relating to whether CACI employees gave or refused to follow orders, communications between the CACI Defendants and the General Accounting Office, and

14

documents sufficient to disclose the facts obtained by the CACI Defendants' litigation counsel in investigating allegations of abuse of detainees in Iraq. Pl. Mem. at 4 n.4. It is difficult to square the *Saleh* Plaintiffs' contention that they need all of these materials with their agreement that Titan will not have to search any email databases for responsive documents. Moreover, as will be discussed below, the CACI Defendants' communications with the GAO are irrelevant to the issues implicated by Defendants' summary judgment motions and the information obtained by CACI's litigation counsel is both irrelevant and privileged. Finally, to the extent that Plaintiffs seek to discover facts about the interaction between CACI PT and the contracting officer's representatives, Plaintiffs already have taken the deposition of one of CACI's country managers for Iraq, presumably will take the deposition of CACI's country manager from the 2003-04 time frame, and the CACI Defendants will not stand in the way of any effort by Plaintiffs to depose the contracting officer's representatives themselves.

Plaintiffs' fifth document request seeks documents regarding screening, training and security briefing for CACI PT employees. Pl. Mem. at 4 n.5. This issue was fully explored in the one deposition to take place thus far and presumably will be addressed in other depositions as well. A costly and time-consuming search for documents referring to training programs, virtually all of which were conducted by the United States military, is unduly burdensome when there is no shortage of percipient witnesses available to be deposed on the subject.

Plaintiffs' sixth document request seeks documents relating to the CACI PT employees' status as non-combatants, with an emphasis on materials addressing whether CACI PT personnel were permitted to carry firearms in Iraq. Pl. Mem. at 4 n.6 The contract materials already produced by CACI PT explicitly state that CACI PT interrogators are non-combatants who were not authorized to carry weapons. The one CACI PT interrogator deposed thus far echoed the prohibition on the possession of firearms by personnel working under the CACI PT contract for

interrogation services.  To the extent that Plaintiffs believe this fact has some relevance to the pending summary judgment motions, the fact is established.

Plaintiffs' seventh document request seeks production of all documents "that reflect, refer or relate to any governmental inquiries, investigations or communications about how [CACI] operated and managed its personnel in Iraq."  Pl. Mem. at 4 n.7.  But this request conceivably covers every scrap of paper provided by the CACI Defendants to the myriad of government agencies that conducted investigations upon the publication of allegations of detainee abuse in Iraq.  The *Saleh* Plaintiffs have made no effort to show that a document is relevant to the narrow issues implicated by the pending summary judgment motions simply by virtue of the CACI Defendants' provision of such a document to the United States government.  The fact that the CACI Defendants provided a document in cooperation with a government investigation provides no basis for concluding that the document is relevant to the pending summary judgment motions, a fact that is particularly true given that the principal focus of most government investigations was on the allegations of abuse and not on the command and control of contractors.  In addition, the burden of reviewing every document produced to any government entity conducting an investigation would be immense, and an unreasonable burden to impose upon the CACI Defendants given that these investigations were not focused on the relevant summary judgment issues.  Moreover, it appears from the one deposition to proceed thus far that the *Saleh* Plaintiffs already possess some volume of documents that were leaked to the media or others.[3]

---

[3] Two other points regarding the *Saleh* Plaintiffs' document requests deserve mention. First, the *Saleh* Plaintiffs' document requests are unrestricted as to time, when all that is conceivably relevant is the command and control of CACI PT interrogators during the time that the Plaintiffs contend that they were injured.  If CACI PT interrogators were essentially soldiers in all but name at the time that the Plaintiffs suffered their alleged injuries, it would not defeat the CACI Defendants' summary judgment motion if the relationship were different at some earlier or later date.  Second, the *Saleh* Plaintiffs' document requests seek discovery as to all CACI employees in Iraq, even non-interrogators and employees who had zero contact with detainees in Iraq.  For example, when counsel were discussing the *Saleh* Plaintiffs' document requests, Ms. Burke conceded that none of her clients, even the ones who are not named Plaintiffs and are not bound by the Court's summary judgment ruling, had a claim that they had

As the foregoing discussion demonstrates, the CACI Defendants have produced documents covering those portions of the *Saleh* Plaintiffs' document requests that are potentially relevant to the Defendants' summary judgment motions.  Moreover, Plaintiffs will have innumerable opportunities to fill in any gaps in the documentary record through the two dozen depositions that they are permitted to take.  Yet, the *Saleh* Plaintiffs essentially ask the Court to ignore the limited scope of discovery, and the fact that the *Saleh* Plaintiffs claim to "need" considerably more information from the CACI Defendants than they agreed to accept from Titan, on the presumption that production is easier for the CACI Defendants than for Titan.  The *Saleh* Plaintiffs' intimations in this regard will not withstand scrutiny.

*First*, while it is true that the CACI Defendants reviewed and produced documents, including email documents, in the *Rhodes* lawsuit, that case did not involve the issues of supervision and command and control that are determinative on Defendants' summary judgment motions in the present actions.  Thus, if the CACI Defendants were required to produce documents that were produced in the *Rhodes* action, they still would have to review all of the documents reviewed in the *Rhodes* action to determine whether any of those documents have any bearing on the command and control issues implicated in this action.

*Second*, the *Saleh* Plaintiffs reference an investigation conducted by the GAO and blithely assert that the CACI Defendants simply should turn over to the *Saleh* Plaintiffs all of the documents the CACI Defendants provided to the GAO.  But the issues involved in the GAO inquiry have nothing to do with the summary judgment issues in this action.  The GAO inquiry addressed the manner in which the CACI PT contract for interrogation services was awarded by

---

been injured by a CACI screener.  Similarly, the *Saleh* Plaintiffs have no allegations that they were injured by a CACI intelligence analyst.  For these reasons, the scope of discovery should be limited to discovery concerning command and control of CACI interrogators, a limitation to which the *Ibrahim* Plaintiffs readily agreed and one that the *Saleh* Plaintiffs were willing to accept in attempting to negotiate an agreed scope of summary judgment discovery.

the Interior Department, the contract vehicle used to fund the contract for interrogation services, and the manner in which the Interior Department contracting office administered the contract. These issues of contract award and administration have nothing to do with the daily reporting and supervision of the CACI PT interrogators in the field. Indeed, the *Saleh* Plaintiffs take a snippet from the GAO report out of context to argue that the GAO's findings were inconsistent with the CACI Defendants' claims in their summary judgment motion. The very snippet quoted by the *Saleh* Plaintiffs refutes such a contention. The *Saleh* Defendants rely on a finding that the Interior Department contracting office, located in Fort Huachuca, Arizona, had insufficient communications with the contracting officer's representatives in Iraq and could not explain their failure to follow certain contractor surveillance policies. Pl. Mem. at 8-9. Those findings are not the slightest bit inconsistent with the CACI Defendants' contention in this action. The CACI Defendants have never made the ridiculous assertion that their interrogators in Iraq were under the regular supervision of a contracting officer in Fort Huachuca, Arizona. Rather, the CACI Defendants have averred – consistent with the findings of the GAO report – that CACI PT coordinated on a regular basis with the contracting officer's representative in Iraq for issues of contract administration and that the CACI PT interrogators were under the operational control and supervision of United States Army personnel in Iraq.

*Third*, the *Saleh* Plaintiffs remarkably claim an entitlement to documents from the internal investigation conducted by the CACI Defendants' litigation counsel, materials that are both irrelevant to the summary judgment issues and privileged. The focus of the investigation by the CACI Defendants' litigation counsel was the allegations of detainee abuse reported in the media and in certain government investigations. These issues have no bearing on the summary judgment motions pending before the Court. Moreover, materials generated during the course of counsel's investigation are clearly privileged. While the *Saleh* Plaintiffs are plainly aware of the

18

rulings issued in the *Rhodes* case, Pl. Mem. at 7-8, the *Saleh* Plaintiffs fail to advise the Court that the Defendants in *Rhodes* twice moved to compel production of the fruits of counsel's internal investigation and had those motions denied by the Court on the grounds that counsel's investigation was privileged.  Indeed, the *Saleh* Plaintiffs claim to need "the documents and memoranda that set forth the facts found during the internal investigation," but they have made no showing of a need to intrude upon the work product of the CACI Defendants' litigation counsel.  *See Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001); *United States ex rel. Fago v. M&T Mortg. Corp.*, ___ F. Supp. 2d ___, 2006 WL 2501451, at *6 (D.D.C. Aug. 30, 2006).  Any claim of need is of questionable merit in any event given the document discovery already provided and the up to two dozen depositions that Plaintiffs are permitted to take.

## IV.  CONCLUSION

For these reasons, the Court should deny the *Saleh* Plaintiffs' request for document discovery over and above that produced to the *Ibrahim* Plaintiffs.

Respectfully submitted,

/s/  John F. O'Connor
_____
J. William Koegel, Jr. (Bar No. 323402)
John F. O'Connor (Bar No. 460688)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

*Attorneys for Defendants CACI International Inc., and CACI PT Inc*

September 13, 2006

19