IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IBRAHIM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TITAN CORP., *et al.*, <br><br> Defendants. | Civil Action No. 04-CV-1248 (JR) |
| SALEH, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TITAN CORP., *et al.*, <br><br> Defendants. | Civil Action No. 05-CV-1165 (JR) |

**DECLARATION OF JOHN F. O'CONNOR**

I, John F. O'Connor, hereby declare as follows:

1. I am a partner in the law firm of Steptoe & Johnson LLP, and one of the counsel of records for Defendants CACI Premier Technology, Inc., and CACI International Inc (collectively, the "CACI Defendants") in the above-captioned actions. I submit this Declaration in connection with the CACI Defendants' Opposition to the *Saleh* Plaintiffs' Motion for Leave to Take Discovery from the CACI Defendants Under Federal Rule of Civil Procedure 56(f).

2. During the single deposition that has taken place during the summary judgment phase of this action, Susan L. Burke, Esq., counsel for the *Saleh* Plaintiffs, questioned the

deponent with a document that had been provided by the CACI Defendants to the Army Criminal Investigation Division as part of the CACI Defendants' cooperation with that entity's investigation of allegations of abuse in Iraq. The document contained a legend directing that CACI be notified if the document were going to be released outside of the United States government. The CACI Defendants received no such notification of a planned release of this document. After the deposition, my colleague, J. William Koegel, Jr., who had attended the deposition, sent a letter to Ms. Burke asking her to identify the source of this document. Ms. Burke responded by stating that she had received the document from one or more members of the media but declined the CACI Defendants' request for additional information as to the source of the document.

     3.     Exhibit A hereto is a true copy of the letter agreement that amplifies on Titan Corporation's obligation to search for responsive documents as part of Titan's discovery agreement with the *Saleh* Plaintiffs.

     4.     Exhibit B hereto is an excerpt from the sworn statement that Ms. Burke took of former CACI PT interrogator Torin Nelson. I have redacted the name of one former CACI PT employee from the transcript who was not an interrogator, did not submit a Declaration in support of the pending summary judgment motions, and, to my knowledge, has not publicly identified himself as having worked for CACI PT in Iraq. The CACI Defendants' counsel was not aware that this sworn statement had been taken until several months after it occurred, when counsel in another case provided a copy of the transcript the to CACI Defendants' counsel.

     5.     I declare under penalty of perjury that the foregoing is true and correct. Executed at Washington, D.C. this 13th day of September, 2006.

                                                                       _____
                                                                       John F. O'Connor

# Exhibit A

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

F. GREG BOWMAN
(202) 434-5753
fbowman@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 25, 2006

**VIA ELECTRONIC MAIL**

Susan L. Burke, Esquire
Burke Pyle LLC
4112 Station Street
Philadelphia, Pennsylvania 19127

Re:  *Saleh v. Titan*, No. 05-1165 (D.D.C.)

Dear Susan:

Pursuant to our August 25, 2006 stipulation (the stipulation) and telephone discussions earlier today, this side letter sets forth additional details of our agreement regarding document discovery.

First, it is understood and agreed that no email search will be conducted by Titan in producing the documents set forth in the stipulation.

Second, it is understood and agreed that the personnel files of Titan linguists located at Abu Ghraib will be searched in response to paragraph 2 of the stipulation. In addition, Titan will search the personnel files of an additional fifteen (15) Titan linguists to be identified by plaintiffs, by name or location, from other locations in Iraq.

Third, it is understood and agreed that Titan will search its hardcopy delivery order files in the contracts department maintained at its Reston, Virginia, headquarters in responding to paragraph 4 of the stipulation.

Very truly yours,

F. Greg Bowman

cc: J. William Koegel, Esquire (via email)
    L. Palmer Foret (via email)

# Exhibit B

Case 1:05-cv-01165-JR    Document 93-2    Filed 09/13/2006    Page 5 of 11

```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA

                            -o-

SALEH, an individual residing  :
in Sweden and Dearborn,
Michigan; HAJ ALI SHALLAL      :   Case No. 1:05-cv-1165
ABBAS AL-UWEISSI, an individual
residing in Iraq; JILAL MEHDE  :
HADOD, an individual residing
in Iraq; UMER ABDUL MUTALIB    :   Statement Under Oath of:
ABDUL LATIF, an individual         TORIN NELSON
residing in Iraq; AHMED        :
SHEHAB AHMED, an individual
residing in Iraq; AHMED        :
IBRAHIEM NEISEF JASSEM, an
individual residing in Iraq;   :
ISMAEL NEISEF JASSEM AL-NIDAWI,    Place:
an individual residing in      :   HOTEL MONACO
Iraq; KINAN ISMAEL NEISEF          15 West 200 South
AL-NIDAWI, an individual       :   Salt Lake City, Utah 84101
residing in Iraq; ESTATE OF
IBRAHIEM NEISEF JASSEM, the    :   Date:
heirs and estate of Ibrahiem       September 9, 2005
Neisef Jassem; MUSTAFA, an     :
individual residing in Iraq;       Time:
NATHEER, an individual         :   12:50 p.m.
residing in Iraq; OTHMAN, an
individual residing in Iraq;   :   Reporter:
HASSAN, an individual residing     Ariel Mumma, CSR/RPR
in Iraq; and CLASSES OF        :
PERSONS SIMILARLY SITUATED,
KNOWN HEREINAFTER AS JOHN and  :
JANE DOES NOS. 1 - 1050,
                               :
          Plaintiffs,
                               :
     -v-
                               :
TITAN CORPORATION, a Delaware
Corporation; ADEL NAKHLA, a    :
former Titan employee residing
in Maryland; JOHN B. ISRAEL,   :
a former Titan employee
temporarily residing in Iraq;  :
              *

              *
```

```
           CACI INTERNATIONAL INC., a
           Delaware Coorporation; CACI       :
           INCORPORATED - FEDERAL, a
           Delaware Corporation; CACI        :
           PREMIER TECHNOLOGY, INC., a
           Delaware Corporation;             :
           STEVEN A. STEFANOWICZ, a
           former CACI employee residing     :
           in Pennsylvania; TIMOTHY
           DUGGAN, a former CACI             :
           employee residing in Ohio,
           and DANIEL E. JOHNSON, a          :
           former CACI employee residing
           in the United States,             :

                         Defendants.         :
```

-o-

```
                                                              3


    1                   A P P E A R A N C E S

    2
       For the Plaintiffs:
    3            Ms. Susan Burke
                 BURKE PYLE LLC
    4            3527 Lanchastire Avenue
                 Philadelphia, PA 19104
    5            (215) 387-4705
                 (215) 387-4713 (fax)
    6            sburke@burkepyle.com

    7  Also Present:
                 Mr. Keith Rohman
    8

    9                      -oOo-

   10
                            I N D E X
   11
       Witness                                         Page
   12
           TORIN NELSON
   13  Examination by Ms. Burke                           5

   14
                            -oOo-
   15

   16

   17

   18

   19

   20

   21

   22

   23

   24

   25
```

22

```
           1  maybe 40 of those would probably be interrogators.
           2       Q.   And of the intelligence people that were
           3  not interrogators, what were they doing?
           4       A.   Either analysts or screening work.
13:10:35   5       Q.   Okay.  And I'm sorry, I interrupted you.
           6  If you want to go back.
           7            Scott Northrup has everybody reporting in
           8  to him?
           9       A.   Yes, from a variety of locations and a
13:10:45  10  variety of missions.  And so that he was the top
          11  administrative personnel.
          12            At our location at Abu Ghraib, our top
          13  person for CACI was Dan Provoznik, as far as
          14  administrative duties go; that he was the site
13:11:06  15  manager.  But he was also the senior intel person,
          16  really; that if you had problems even with some
          17  intelligence matters, that you should take it through
          18  the military chain of command, obviously, but you
          19  should also let CACI chain of command, Dan Provoznik,
13:11:27  20  know about it.
          21            Not that CACI -- we knew that CACI
          22  couldn't do anything really about operational affairs,
          23  intelligence matters, anything like that, but at least
          24  that they should be aware of the fact that some of the
13:11:36  25  CACI personnel were dealing through the military chain
```

23

```
            1  of command with intelligence matters or operational
            2  matters.
            3      Q.    And so that was Dan Provoznik?
            4      A.    Correct.
13:11:45    5      Q.    Was there anyone else in a supervisory
            6  chain?
            7      A.    Well, officially there was          , who
            8  was kind of in a side role.  He -- I was aware of him
            9  as being the C2X -- the C2X -- that he was the senior
13:12:08   10  CACI intelligence officer in Iraq who was reporting
           11  directly to the C2 in Baghdad, the C2 is in charge of
           12  all intelligence operations.
           13      Q.    What is the C2; what's that mean?
           14      A.    The C2 -- in the military there are four
13:12:28   15  different shops.  At battalion brigade level they're
           16  considered S shops.  At the division and higher level
           17  is when you -- when you refer to the same shop but
           18  as -- with a different letter, will be either G, J,
           19  or C.
13:13:02   20            The C, my understanding is that pretty
           21  much it's at a corps level, and the 2 refers to
           22  intelligence operations.
           23      Q.    And -- and so to make sure I'm
           24  understanding, the interrogators at Abu Ghraib, the --
13:13:20   25  the top supervisor for the interrogators was Dan
```

24

```
              1  Provoznik, and            was the number two guy, or
              2  am I misunderstanding that?
              3      A.   On site, our top CACI personnel was Dan
              4  Provoznik, and he handled mainly administrative
13:13:38      5  affairs as a site manager.
              6           In Baghdad the C2X -- who is the top
              7  intelligence personnel but who is also a CACI
              8  employee -- was          ; and he reported, actually,
              9  to my understanding, to the C2 in Baghdad, who was
13:13:56     10  Brigadier -- no, either Brigadier or Major General --
             11  I think she got promoted right about that time --
             12  Barbara Fast.
             13      Q.   So the CACI interrogators reported to
             14         , and        reported to Fast?
13:14:09     15      A.   No.  CACI interrogators at Abu Ghraib
             16  reported, through our chain of command, to the
             17  military personnel who were running the J-I-D-C, the
             18  JIDC, at Abu Ghraib; we would report to them, as far
             19  as operational matters go.
13:14:25     20           That information would go up to
             21  individuals like           or I believe Wodjakowski,
             22  and that would then eventually reach the desk of
             23  General Fast, who is the C2.
             24           We wouldn't directly report to           .
13:14:45     25  He would just be aware of many of the things that were
```