IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ILHAM NASSIR IBRAHIM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE TITAN CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 04-01248 (JR) |

| | |
|---|---|
| SALEH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE TITAN CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 05-01165 (JR) |

## OPPOSITION TO CACI'S MOTION FOR PROTECTIVE ORDER[*]

CACI is seeking summary judgment on the grounds that its employees were

"essentially soldiers" in Iraq. In support of its summary judgment motion, CACI filed a

"Statement of Material Undisputed Facts" that includes twenty-four paragraphs reciting

CACI's version of the facts. *Statement Of Material Undisputed Facts In Support Of The*

*Motion For Summary Judgment Of Defendants CACI International Inc. And CACI*

*Premier Technology, Inc. (filed Aug. 4, 2006).* Now, after plaintiffs efficiently and

properly elicited direct testimony from a CACI employee that contradicts these allegedly

---

[*] This copy has been redacted; Plaintiffs are moving to file the unredacted original under
seal

"undisputed facts," CACI is seeking a protective order to limit discovery.[1]  This Court

should not grant a protective order merely to protect CACI from having the accuracy of

its "facts" tested by the discovery process.  Protective orders are intended to protect a

party from harassment, not to prevent the truth from being discovered.

CACI's motion for a protective order accuses plaintiffs' counsel of flagrantly

violating the Court's Orders regarding the scope of discovery related to the government

contractor defense.  In fact, counsel from both the *Saleh* and *Ibrahim* matters worked

together[2] on short notice to design and conduct an efficient and focused examination of

the first witness in the matter – Mr. Porvaznik, who was CACI's site lead at Abu Ghraib.

Despite this being the very first examination of any witness in the matter, and the witness

held a significant position, the examination did not even take the full amount of time

permitted by the Federal Rules of Civil Procedure.  Now, relying on vague

generalizations about the testimony elicited during the Porvaznik deposition as support

for this accusation, CACI accuses plaintiffs' counsel of[3] [

---

[1] A federal court judge in the Eastern District of Virginia held on September 21, 2006 that
the record evidence developed through depositions and discovery in *CACI Premier
Technology Inc. et al. v Rhodes et al.* reveals that CACI acted in a supervisory and
managerial capacity in Iraq.  *September 21, 2006 Order, CACI Premier Technology Inc.
et al. v Rhodes et al., C.A. No. 1::05cv1111 (E.D. Va.) at 29 (attached as Exhibit A to
Plaintiffs' Reply To CACI's Opposition To Rule 56 Discovery).*
[2] [
                                                            ].  But having one counsel clearly benefits
CACI by reducing the burden and risk of duplicative questioning of a single witness.
[3] Based on the language in the Declaration, plaintiffs' counsel surmised that lawyers, not
Mr. Porvaznik, drafted the Declaration.  Thus, plaintiffs' counsel sought to elicit the facts
relevant to the summary judgment motion – such as how CACI management actually
interacted with the military and whether CACI management supervised their own

]. But the reality is far different. As set forth below, the testimony elicited from Mr. Porvaznik goes directly to those issues and contradicts CACI's claim that CACI employees were essentially soldiers under the exclusive control of the military rather than CACI employees under the control of CACI management. CACI tries to portray plaintiffs' counsel as either wasting time by spending too long on what CACI characterizes as "background" or by going to the merits of whether or not CACI employees abused prisoners. A review of the testimony elicited from the CACI employees proves CACI is merely trying to stifle legitimate discovery.

## I.    CACI Mischaracterizes Substantive Testimony as "Background."

During the 86 pages that CACI portrays as "background," plaintiffs' counsel actually elicited significant, relevant and helpful testimony from Mr. Porvaznik, the first person deposed in this litigation, that goes directly to the issue of whether CACI employees are essentially soldiers.

Mr. Porvaznik testified that his tenure as a soldier differed dramatically from his tenure as a civilian contractor. *Compare Transcript of the August 16, 2006 Deposition of Daniel Porvaznik ("Tr.") at 16* (military able to command your conduct 24 hours per day) *with Tr. at 78* (civilians able to put limits on time worked); *id. at 20* (military personnel required to follow all lawful orders) *with* [

employees – before questioning about the legalistic verbiage in the Declaration. Mr. Porvaznik confirmed that he had not drafted the declaration, but only "filled in the blanks" when it was sent to him by counsel. *Tr. at 288.*

]. Mr. Porvaznik testified that civilian contractors "augmenting" the military workforce do not subject themselves to the same conditions confronted by soldiers. Civilians are permitted to quit their posts and leave their duties without facing consequences comparable to the serious consequences (jail time) facing soldiers. *Id. at 82-84.* [

]. Civilian contractors, but not soldiers, are able to set parameters on the type of work, hours of work, and compensation. *Id. at 81.* Thus, for example, Mr. Porvaznik could not be directed to stand guard duty, as he could have been ordered to do during his military career. *Id. at 318 and 78.*

Mr. Porvaznik also provided important testimony about what "supervision" actually means in the context of interrogations and about his qualifications to supervise the CACI interrogators. He testified that military actually required extensive training and screening prior to interrogations because it is difficult if not impossible to physically supervise all interrogations conducted in war zones. *Id. at 28-32; 34-36, 39-42, 48.* He testified that as result maturity is needed in interrogators. *Id. at 28.* Mr. Porvaznik testified that "the interrogator is the one in charge" on the "tiger" interrogation teams used in Iraq. *Id. at 68-69.* Mr. Porvaznik testified that his tenure in the military included supervising interrogations. *Id. at 60-61, 63-64.*

Military supervision of interrogations occurs only in a limited number of ways. Namely, a supervisor may (1) sit in on the interrogation but play a passive role, (2) sit in the interrogation booth (or other space used for interrogation such as a tent) but off to the side without participating, (3) watch from a closed circuit TV. *Id. at 47-51.* In addition,

supervision occurs when supervisors read interrogation reports. *Id. at 51.* Mr. Porvaznik explained that most military supervision is passive because a supervisor would not want to interrupt the flow of an interrogation. *Id. at 53.* However, a supervisor would immediately become active and stop an interrogation session if the interrogator crossed the line into physical abuse. *Id. at 54.* In short, during the deposition transcribed in the first 86 pages, Mr. Porvaznik provided substantial information about what constitutes "supervision" in the context of intelligence gathering. Such information is necessary to provide the appropriate context for an inquiry about whether or not CACI supervised its interrogators and other employees.

## II.    CACI Mischaracterizes Testimony Relating Directly to the Summary Judgment Issues as Merits Testimony.

CACI mistakenly believes that any questions relating to prisoner abuse in any way are necessarily "merits" questions beyond the scope of discovery related to supervision and control. But clearly, the question of who was able and obliged to supervise CACI interrogators and prevent them from abusing prisoners during interrogations is a permissible topic of discovery during this phase. All of the testimony elicited from Mr. Porvaznik during the deposition relates directly to building the record to dispute the "material undisputed facts" alleged by CACI. Mr. Porvaznik did not play a clerical role at Abu Ghraib, as portrayed by CACI. Rather, he was a seasoned interrogator who viewed his job as "quality control" over CACI interrogators. Below is an example of how the testimony elicited during the deposition relates to supervision, and will be used to dispute CACI's version of two "facts" set forth in the motion for summary judgment:

*CACI Alleged Fact No. 12: CACI PT personnel did not perform supervisory*

*functions with respect to the conduct of the interrogation mission.*

*CACI Alleged Fact No. 18: The only supervisory positions held by CACI PT employees were purely internal CACI PT-related positions, such as country manager and site lead, that existed solely for providing administrative support to CACI personnel and for making liaison with U.S. Army personnel for contract-related issues. These internal administrative managers did not exercise any operational control over CACI or military interrogators.*

*Statement Of Material Undisputed Facts In Support Of The Motion For Summary Judgment Of Defendants CACI International Inc. And CACI Premier Technology, Inc. (filed Aug. 4, 2006).* Mr. Porvaznik, a seasoned interrogator, testified that he supervised and managed CACI employees. *See, e.g., Tr. at 102, lines 12-14* ("much more of a leadership and management challenge"); *id. at 129, line 5* ("Somebody had to be in charge."); *id. at 131, lines 7-9* ("much more of a managerial position than an interrogator position"). He testified that the military intelligence leadership at Abu Ghraib (Captain Carolyn Wood) did not directly raise issues with CACI employees, but rather worked through him as the site lead:

> Q.    Were you responsible for interacting with Captain Wood?
> A.    Yes.
> Q.    And so rather than all the CACI people talking to her directly, it flowed through you?
> A.    I was the point of contact if there is going to be an issue. ***If the client [i.e. the military] had an issue with one of the employees, they would talk to me and I would talk to the employee.***

*Id. at 133-34 (emphasis added).*[4]

---

[4] This testimony also contradicts CACI Alleged Fact No. 8: As required by the applicable Statements of Work, CACI PT interrogators were integrated within the military interrogation process of the military units that they were assigned to support. That is, the CACI PT interrogators received the same operational interrogation taskings and direction from the military as their military interrogator counterparts. All of the interrogators in the Iraq theater of operations - military and civilian were treated as part of one team and as having the same interrogation responsibilities, reporting obligations,

Mr. Porvaznik testified that he met with Captain Wood on a daily basis to discuss how the CACI employees were performing. *Id. at 135-38.* He was part of the management team (consisting of military and contractors) who attended daily shift change meetings that covered what had happened in the past 12 hours and what was planned for the next 12 hours. *Id. at 158-59.* He had full access to all information about CACI employees and their support of the mission. *Id. at 158.* He and the military had identical sources of information about CACI employees' performance. *Id. at 141, lines 13-17.* He was able to, and did, observe CACI interrogators conducting interrogations. *Id. at 142-43.*

Mr. Porvaznik provided guidance to CACI interrogators on how to go about interrogations. *Id. at 161.* He reviewed interrogation plans prepared by CACI interrogators to make sure CACI interrogators were performing properly. *Id. at 161, 167-68.* [



].

Mr. Porvaznik testified that it was part of his job responsibilities to ensure "quality control" by stopping CACI interrogator from engaging in any abuse of prisoners. *Id. at 143-44.* He testified that, had he seen any CACI interrogators' interrogation plans that called for the use of dogs or the use of a family member as tools to coerce a prisoner, he

---

and mission direction. *Statement Of Material Undisputed Facts In Support Of The Motion For Summary Judgment Of Defendants CACI International Inc. And CACI Premier Technology, Inc. (filed Aug. 4, 2006).*

would have raised objections. *Id. at 164-66.*

If Mr. Porvaznik told an interrogator not to use an interrogation technique it was not consistent with the CACI code of ethics, a CACI employee would have to abide by that direction regardless of the military's direction. *Id. at 183-85.* Mr. Porvaznik also testified he had a duty to stop any abuse:

> Q.    Now, when you are observing the CACI personnel conducting the interrogations, I take it you would have stopped any interrogations in which you say any type of abuse?
> A.    Absolutely.
> Q.    And you say "absolutely." That was part of your job responsibilities?
> A.    To ensure . . . also as the site manager, sure; as part of quality control, yes.

*Id. at 143-44.*

In sum, plaintiffs' counsel conducted an examination that elicited the facts relevant to opposing CACI's motion for summary judgment. CACI's motion for a protective order tries to create a bright line between supervision and abuse, but such a bright line is not there. If CACI, not the military, could have and should have stopped the prisoner abuse by its interrogators, CACI should not be able to hide behind the government contractor defense. CACI's site manager at Abu Ghraib, Daniel Porvaznik, clearly viewed it as part of his job to supervise interrogators and stop any prisoner abuse.

### III.    CACI Mischaracterizes the Deposition Record.

Much as CACI misstates the "facts" in its motion for summary judgment, CACI misstates what plaintiffs' counsel actually asked about during the deposition. [

].

Thus, the questions went to CACI reporting chain issues, such as whether Mr. Porvaznik told his boss he had been interviewed by CID (*Tr. at 219*), whether CACI asked CID for the information that had been provided by or about its employees (*id. at 219-220*); whether Mr. Porvaznik discussed the fact of the investigation with CACI management chain (*id. at 220*); and whether the investigation added to Mr. Porvaznik's duties (*id. at 221*). These questions all go to the issues of the CACI supervisory structure, not the merits. Counsel did not ask merits questions such as what Mr. Porvaznik told investigators or what the CID investigation concluded about CACI interrogators. Counsel will need to depose Mr. Porvaznik again during the merits phase of the discovery to learn that information.

[

]. The questioning yielded precise answers that squarely contradict CACI's claims in its summary judgment papers and demonstrate beyond dispute that Mr. Porvaznik actively supervised CACI interrogators. For example, Mr. Porvaznik testified about working with an interrogator to improve his people skills, which were characterized as essential for interrogation. *Id. at 250* ("I said, 'this is the way you need to approach the job.'"). [

]. CACI may prefer to keep its arguments about supervision in the abstract, but the reality supports plaintiffs' position that CACI was able to supervise its own employees.

[

]. This is simply wrong. The witness volunteered that he lost his position in Iraq because CACI lost the contract. Counsel asked the reason for the loss. *Tr. at 279-80*. This is clearly a permissible question because the answer could have been (but was not) that the military fired CACI for doing such a dismal job in fulfilling its contractual obligation to supervise interrogators.

[

]. But the questioning actually went to a key topic of supervision – did CACI management investigate allegations of wrongdoing by their employees located at Abu Ghraib? The company has claimed in its SEC filings that it conducted an investigation. Clearly, investigating allegations of wrongdoing by employees is clearly a hallmark of supervision and control. Did CACI learn for itself what its employees had done and take adverse personnel actions based on what it learned? Or did the military investigate and take direct action against CACI employees?

[

]. This is false. As set forth more fully in the *Saleh* Plaintiffs' Motion for Leave To Take Discovery under Rule 56, CACI investigated the command and control structure between the military and contractors as one topic among many in its internal investigation. It is appropriate for plaintiffs to inquire about this portion of the internal investigation during this phase of the discovery.

[

]. As CACI counsel

know, Mr. Dugan, proceeding *pro se*, told Ms. Burke that "they" made him interrogate a

dead person. This comment prompted Ms. Burke to alert CACI that Mr. Dugan was

proceeding *pro se* and was making self-incriminating comments likely protected by the

Fifth Amendment. Immediately subsequent to this contact, CACI contacted Mr. Dugan

and arranged for him to be represented by counsel. *See email attached as Exhibit B.*

It is unclear whether Mr. Dugan was referring to the military or CACI as the "they"

in his statement to counsel. Thus, assuming the possibility that the "they" referred to

military authorities, the deposition questioning was designed to test the limits on Mr.

Porvaznik's authority to stop conduct ordered by the military -- a topic clearly relevant to

the invocation of the government contractor defense. *See In re Joint E. & S. Dist. New

York Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990) ("Stripped to its essentials, the

military contractor's defense under *Boyle* is to claim, 'The Government made me do it.'").

Mr. Porvaznik testified that he was in charge and had the power and obligation to stop

abuse by CACI interrogators, such as the power to stop a CACI interrogator from

implementing an interrogation plan that included the use of dogs or family members. *Tr. at

143-44.*[5]

### CONCLUSION

CACI lacks any good faith basis upon which to seek a protective order. Counsel

---

[5] Mr. Porvaznik was unable to answer whether he also had the authority to stop a CACI interrogator from going through the motions of interrogating a dead person, because such conduct was simply beyond the realm of anything he could imagine occurring. *Tr. at 310-11.*

in the *Saleh* and *Ibrahim* actions worked cooperatively together to conduct an efficient examination focused on eliciting testimony that rebuts CACI's claim that its employees were "essentially soldiers" subject to the control of the military. CACI is not entitled to any protective order because it has not – and cannot – make a showing that plaintiffs' discovery is intended to harass or annoy. As demonstrated above, plaintiffs have, and will continue to, limit the scope of their questioning to elicit facts relevant to defeating CACI's motion for summary judgment. Plaintiffs are not interested in conducting more discovery than is needed to defeat that motion. However, unless the Court is inclined to deny CACI's motion at this juncture based on the testimony elicited to date, plaintiffs will continue to take the additional discovery needed to defeat that motion.

Date:   October 2, 2006

<div style="display:flex">
<div>

   /s/ Susan L. Burke
Susan L. Burke (D.C. Bar # 414939)
BURKE PYLE LLC
4112 Station Street
Philadelphia, PA 19127
Telephone:    (215) 487-6590
Facsimile:    (215) 482-0874


Jennifer Green
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone:    (212) 614-6439
Facsimile:    (212) 614-6499


Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
401 South Old Woodward Avenue, Suite 430
Birmingham, MI 48009
Telephone:    (248) 594-9595
Facsimile:    (248) 594-4477


*Counsel for Saleh Plaintiffs and Class Plaintiffs*

</div>
<div>

   /s/ L. Palmer Foret
L. Palmer Foret (D.C. Bar # 260356)
THE LAW FIRM OF
L. PALMER FORET, P.C.
1735 20th Street, N.W.
Washington, D.C. 20009
Telephone:    202-332-2404
Facsimile:    202-332-2808


Craig T. Jones
EDMOND & JONES, LLP
The Chandler Building, Suite 410
127 Peachtree Street, NE
Atlanta, GA 30303
Telephone:    (404) 525-1080
Facsimile:    (404) 525-1073


*Counsel for Ibrahim Plaintiffs*

</div>
</div>

- 12 -

## CERTIFICATE OF SERVICE

I, Anne K. Heidel, do hereby certify that on the 2nd day of October, 2006, I caused true and correct copies of the foregoing Opposition To CACI's Motion For Protective Order (redacted version) to be served via electronic mail, upon the following individuals at the addressed indicated:

F. Whitten Peters
Thomas M. Craig
Williams and Connolly
725 12th Street, NW
Washington, D.C. 20005
wpeters@wc.com
*Counsel for Defendant Titan Corp.*

J. William Koegel Jr.
John F. O'Connor
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
wkoegel@steptoe.com
*Counsel for Defendants CACI International, and CACI-PT*

Michael Nussbaum
Jocelyn Leyretana
BONNER KIERNAN TREBACH
& CROCIATA, LLP
1233 20th Street, NW, 8th Floor
Washington, DC 20036
mnussbaum@bktc.net
*Counsel for Defendant Timothy Dugan*

Patrick O'Donnell
Justin Dillon
HARRIS, WILTSHIRE & GRANNIS, LLP
1200 18th Street, NW
Suite 1200
Washington, D.C. 20036
podonnell@harriswiltshire.com
*Counsel for Defendant Daniel E. Johnson*

Anne K. Heidel

EXHIBIT A

[This exhibit submitted under seal]

**EXHIBIT B**

## Susan Burke

| | |
|---|---|
| **From:** | Susan Burke [sburke@burkepyle.com] |
| **Sent:** | Tuesday, August 22, 2006 7:43 PM |
| **To:** | 'Koegel, William' |
| **Cc:** | 'O'Connor, John' |
| **Subject:** | RE: Timothy Dugan |

Mr. Dugan's statements are not accurate. I told him that we had credible information from several sources that he was directly involved in the abuse, but that we are more than willing to hear his side of the story. If he provided compelling evidence that contradicts what we learned, we would certainly act appropriately and dismiss the action.

Mr. Dugan's behavior on the two calls, however, provided further evidence that we are not misinformed. After telling me that CACI was out to get him, and that is why he refused your offer of counsel, he ranted and raved in a manner inconsistent with a professional interrogator's demeanor. He told me "they made me interrogate a dead guy."

As you know, the very day I spoke to Mr. Dugan, I let John O'Connor know that Mr. Dugan was intending to defend himself on a pro se basis. I did so because I was concerned that Mr. Dugan did not realize he was making self-incriminating admissions that likely could have been the subject to a Fifth Amendment claim.

Am I to take it from your letter to me that you are representing Mr. Dugan? I thought you had involved separate counsel? Based on what Mr. Dugan has conveyed to me by telephone, we do not believe you are free to represent Mr. Dugan.

Susan L. Burke
Burke Pyle LLC
4112 Station Street
Philadelphia, PA 19127
215.487.6596
215.971.5058 (cell)
215.482.0874 (fax)

This message may contain privileged and confidential information. If you are not the intended recipient, please alert me and delete the message. Thank you.

---

**From:** Koegel, William [mailto:WKoegel@steptoe.com]
**Sent:** Tuesday, August 22, 2006 12:21 PM
**To:** Susan Burke
**Cc:** O'Connor, John
**Subject:** Timothy Dugan