IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SALEH *et al.*, | ) |
| Plaintiffs, | ) Case No. 05-cv-1165 (JR) |
| v. | ) |
| TITAN *et al.*, | ) |
| Defendants. | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT TIMOTHY DUGAN'S
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Defendant Timothy Dugan ("Defendant Dugan"), a former employee of the CACI defendants, has moved to dismiss Plaintiffs' Third Amended Complaint ("TAC") for lack of personal jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and (2). Defendant Dugan ignores the legal significance of his decision to join a conspiracy that took acts here in this District. Defendant Dugan, having decided to join together with others in torturing prisoners, cannot now claim he is beyond the reach of the District of Columbia long-arm statute. Defendant Dugan similarly simply ignores the facts plead about his own conduct – threatening death to a person who cooperated with criminal investigators investigating the conspiracy – that clearly are not "boilerplate" or "legal conclusions."

**STATEMENT OF RELEVANT PROCEDURAL HISTORY**

On June 9, 2004, the torture victims brought this action in the United States District Court for the Southern District of California. On November 10, 2004, CACI International, Inc. and the other CACI defendants (hereinafter "CACI") moved to transfer the action to the Eastern District of Virginia. The District Court granted CACI's motion and transferred the case to the Eastern District of Virginia. The victims subsequently filed a motion to transfer to the District of

Columbia. CACI opposed that transfer, arguing that the victims failed to establish that the action "might have been brought" in this District as is required by 28 U.S.C. § 1404(a).[1] The victims invoked RICO's nationwide service-of-process jurisdiction and D.C. long-arm jurisdiction based on the conspiracy allegations.[2] *Reply to CACI's Opposition to Motion To Transfer Venue to the District of Columbia (filed May 25, 2005) at 6-7*.

The Eastern District of Virginia granted Plaintiffs' motion to transfer on June 3, 2005. CACI successfully sought a writ of mandamus from United States Court of Appeals for the Fourth Circuit, which ordered the District Court to reconsider "whether the District Court for the District of Columbia has personal jurisdiction over the defendants under either RICO's nationwide-service-of-process provisions or the long arm statute for the District of Columbia." *Sept. 13, 2005 Order (4th Cir., No. 05-1636)*. On January 13, 2006, the Eastern District of Virginia, having reconsidered the matter as directed by the Court of Appeals, held this Court has jurisdiction under the D.C. long-arm statute. *Jan. 13, 2005 Order (E.D. Va. 1:05-cv-427)*.

After the action was transferred to this Court, Plaintiffs personally served Defendant Dugan, a former CACI employee who participated in the abuse at the Abu Ghraib prison, at his residence in Pataskala, Ohio. *Return of Service of Summons and Complaint Executed (filed June 27, 2006)*.

On October 14, 2006, Defendant Dugan filed a Motion To Dismiss The Third Amended Complaint. He asserts that Plaintiffs have failed to make a *prima facie* showing of common law conspiracy jurisdiction sufficient to support the exercise of jurisdiction. *Memorandum Of Law In Support Of Defendant Timothy Dugan's Motion To Dismiss The Third Amended Complaint (filed*

---

[1] 28 U.S.C. § 1404 (a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").
[2] This Court dismissed Plaintiffs' RICO claims. *June 29, 2006 Order*.

*Oct. 14, 2006)* (hereinafter "*Memorandum*") at 3-6.  Defendant Dugan also argues that Plaintiffs' TAC does not plead facts sufficient to state claims against him.  *Id. at 6-8.*

## ARGUMENT

**I.  THIS COURT HAS PERSONAL JURSIDICTION OVER DEFENDANT DUGAN UNDER THE DISTRICT OF COLUMBIA LONG-ARM STATUTE.**

This Court has jurisdiction over Defendant Dugan because the TAC alleges that Defendant Dugan participated in a conspiracy formed and furthered in this District.  *See*, *e.g.*, *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. Ct. App. 1979) (holding that section 13-423 "permits a jurisdictional reach coextensive with that permitted by the due process clause"); *Dickson v. United States*, 831 F. Supp. 893, 897 (D.D.C. 1993) (same); *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 78-79 (D.D.C. 2004) (Urbina, J.) (holding that court may exercise personal jurisdiction over a defendant based on his co-conspirators' overt acts with the forum.)

This case is on all fours with *Youming Jin v. Ministry of State Security*, 335 F. Supp. 2d 72, 78-79 (D.D.C. 2004) (J. Urbina).  The plaintiffs in *Youming* alleged that the Chinese government had conspired with American officials to abuse and intimidate Chinese practitioners of Falun Gong.  One of the individual defendants, a member of a Chinese-American association based in Chicago, filed a motion to dismiss.  The Court found that the plaintiffs had alleged that the defendant was a member of the conspiracy and had "sufficiently pled acts by purported co-conspirators in the District of Columbia." *Youming* at 83.  Having found that there was a proper basis for conspiracy jurisdiction, the Court granted the plaintiffs leave to take jurisdictional discovery on the issue of whether the individual defendant had purposefully availed himself of the District such that personal jurisdiction was within the bounds of constitutional due process.  *Id.* at 83-84.

Here, this Court has personal jurisdiction over Defendant Dugan under the same reasoning found in *Youming*. The TAC alleges Defendant Dugan formed a conspiracy with others to torture prisoners. The TAC cites to actions taken by Defendant Dugan to further the conspiracy – namely, threatening to kill a co-worker who was cooperating with the criminal investigators who were investigating the conspiracy. *TAC ¶ 79*.

The TAC expressly alleges Defendant Dugan's co-conspirators took acts in furtherance of the conspiracy in this District and also alleges overt acts in this District, including forming and fostering relationships that furthered the conspiracy through meetings and communications that occurred in the District of Columbia. *TAC ¶ 98*. The TAC alleges overt acts in furtherance of the conspiracy, including meetings, discussion by telephone and in person, e-mail correspondence, and other communications occurring in the District of Columbia. *TAC ¶ 98*. As is to be expected, the torture victims have learned more information (dates, etc.) about the facts alleged in the TAC about CACI interrogators engaging in direct telephonic communications with government officials located in the District of Columbia.

But even as plead in the TAC, Defendant Dugan is on notice of the claims and the jurisdictional basis by which the D.C. long-arm statute reaches him based on his participation in the conspiracy. Defendant Dugan is subject to jurisdiction here even if he was not one of the interrogators on the telephone calls because he is responsible for the acts of his co-conspirators. *Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 84 (D.D.C. 2006) ("One party may be liable for the acts of another under theories of vicarious liability, such as conspiracy, aiding and abetting and inducement."). Thus, the overt acts of Defendant Dugan's co-conspirators are imputed to him for purpose of the D.C. long-arm statute analysis.

Here, exercising personal jurisdiction over Defendant Dugan in this District would not violate standards of due process because he has purposefully availed himself of this District. *See Youming* at 78 ("It is 'essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'") (citing *Creighton Ltd. v. Government of State of Qatar*, 181 F.3d 118 (D.C. Cir. 1999), and *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). By entering into an employment agreement with CACI to work on a contract for the U.S. Army in Iraq, Defendant Dugan created a connection to the nation's capital such that he could reasonably anticipate being brought into court here. *Youming* at 78 ("In short, 'the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.'") (citing *GTE New Media Servs. v. BellSouth Corp*, 199 F.3d 1343, 1347 (D.C. Cir. 2000); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Should the Court disagree that Defendant Dugan reasonably could have anticipated being haled into court in the nation's capital as a result of conspiring to and torturing prisoners being held under military control in Iraq, the torture victims respectfully request jurisdictional discovery to establish additional minimum contacts. Courts in this Circuit have liberally granted leave to plaintiffs to take jurisdictional discovery. *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000); *Diamond Chemical Co., Inc. v. Atofina Chemicals, Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003); *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) ("A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."). Here, it would not

prejudice Defendant Dugan or any of the other parties to permit Plaintiffs a limited amount of jurisdictional discovery.

## II.     THE TAC STATES VALID COMMON LAW CLAIMS.

This Court has already denied Rule 12(b)(6) motions filed Defendant CACI and Titan. Yet Defendant Dugan asserts that this Court should dismiss the TAC for a failure to state a claim against him because the torture victims' allegations are either unsupported by the facts or are legal conclusions cast as facts. *Memorandum at 6*. Defendant Dugan was a former CACI interrogator known to have participated in the torture. Defendant Dugan threatened CACI co-worker Torin Nelson with death because Nelson identified Dugan to military criminal investigators. *See Statement of Torin Nelson at 55-58, excerpt attached as Exhibit A*.[3] Indeed, Defendant Dugan himself admitted to counsel that he participated in the conspiracy – stating "they made me interrogate a dead guy." *See Email from S. Burke to W. Koegel & J. O'Connor (Aug. 22, 2006), attached as Exhibit B*.

In any event, regardless of the state of the evidentiary record at present, Defendant Dugan has not – and cannot – carry the heavy burden of proving this motion should be denied. The TAC may be dismissed under Rule 12(b)(6) if it appears beyond doubt that **no set of facts** could support the legal claims made by the torture victims their complaint. *See*, *e.g.*, *In re Swine Flu Immunization Prod. Liab. Litig.*, 880 F.2d 1439, 1443 (D.C. Cir. 1989) ("The standard is quite strict under Rule 12(b)(6), where the court limits itself to the pleadings; a defendant must show 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1955)); *McBride v.*

---

[3] Plaintiffs submitted a complete version of Mr. Nelson's statement to the Court as part of Exhibit B to *Saleh Plaintiffs' Reply To CACI's Opposition To Rule 56 Discovery (Dkt. 97; Oct. 2, 2006)*.

*Merrell Dow & Pharmaceuticals Inc.*, 717 F.2d 1460, 1466 (D.C. Cir. 1983) ("The standard to be applied in evaluating the dismissal of a complaint under Fed .R. Civ. P. 12(b)(6) is a stringent one."). Defendant Dugan has to establish that the torture victims' allegations fail to state a claim as a matter of law. *Kimberlin v. Dept. of Justice*, 150 F. Supp. 2d 36, 41 (D.D.C. 2001) ("A party moving for dismissal under Federal Rule of Civil Procedure 12(b)(6) has the burden of proving that the nonmovant has failed to state a claim upon which relief can be granted."). But here, where the Court has already found that the torture victims stated valid common law claims against CACI and Titan, and the torture victims' TAC clearly identifies Defendant Dugan's acts in furtherance of the conspiracy, Defendant Dugan simply cannot carry that heavy burden.

### A. The TAC Alleges Defendant Dugan Formed a Conspiracy To Torture Prisoners.

The Court of Appeals for the D.C. Circuit had held that a plaintiff makes out the elements of the common law tort of civil conspiracy by alleging "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). *See also Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001) (same).

The TAC alleges that in or around 2002, a conspiracy to torture and otherwise mistreat prisoners in Iraq was formed. *TAC ¶ 97*. Plaintiffs allege that Defendant Dugan intentionally and knowingly agreed to and did work in concert with others, including co-conspirators Nakhla, Israel, and Johnson. *TAC ¶¶ 28, 29*. The TAC alleges that Defendant Dugan conspired with his co-conspirators "to engage in a series of wrongful acts in prisons under the United States' control." *TAC ¶ 28*. The TAC alleges that the conspirators also conspired "to prevent the

discovery and investigation of these wrongful acts." *Id*. The TAC alleges that Defendant Dugan and his co-conspirators committed predicate acts in furtherance of the conspiracy, including, but not limited to, assault, battery, unlawful imprisonment, and obstruction of justice. *TAC ¶ 107*. The TAC alleges damages resulting from the conspirators' unlawful acts including deaths, physical injuries, mental illness and disorders, and property losses. *TAC ¶¶ 170-174*.

**B.    The TAC Alleges Defendant Dugan Personally Committed Overt Acts That Both Evidenced and Furthered the Conspiracy To Torture Prisoners.**

The TAC alleges overt acts by Defendant Dugan that both evidenced and furthered the conspiracy. Namely, the TAC alleges that Defendant Dugan repeatedly conducted interrogations in a manner that violated United States law and policy as well as international law. *TAC ¶ 79*. The TAC alleges that Defendant Dugan "used his position of authority to direct others, including military soldiers, to torture and mistreat Plaintiffs . . . ." *Id*. Plaintiffs specifically allege that Defendant Dugan "threatened death to one or more of those who were unwilling to participate in the conspiracy and instead reported it to the military authorities." *Id*.

**C.    The TAC Alleges Conduct by Defendant Dugan and his Co-Conspirators That Suffices To State Tort Claims and Claims for Aiding and Abetting.**

Defendant Dugan does not – and cannot – allege that the conduct alleged in the TAC fails to plead the requisite elements to support the tort claims. In the District of Columbia, a defendant commits civil assault when he or she intends to put the plaintiff in fear of immediate and harmful or offensive conduct. *Madden v. D.C. Transit System, Inc.,* 307 A.2d 756, 757 (D.C. 1973) ("An essential element of the ancient tort of assault is the intentional putting another in apprehension of an immediate and harmful or offensive conduct.").

A defendant commits the tort of battery by intentionally acting in a way that causes harmful or offensive bodily contact. *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C.

Ct. App. 1997) ("An assault is 'an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff.'. . . 'A battery is an intentional act that causes a harmful or offensive bodily contact.'") (citing *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993)).

A defendant intentionally inflicts emotional distress if the plaintiff shows "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 139 (D.C. 2006) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C. 1984)). As stated by one court in the District, "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Larijani v. Georgetown University*, 791 A.2d 41, 44 (D.C. 2002) (internal citation omitted).

A defendant aids and abets the foregoing torts when (1) the party whom the defendant aids performs a wrongful act that causes an injury; (2) the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant knowingly and substantially assists the principal violation. *Burnett v. Al Baraka Inv. & Dev't Corp.*, 274 F. Supp. 2d 86, 104-05 (D.D.C. 2003) (citing *Halberstam* for aiding and abetting common law tort elements).

Here, the TAC alleges that Defendant Dugan personally "directed and engaged in the torture and mistreatment" of Plaintiffs and Class Members. *TAC ¶¶ 26*. Plaintiffs allege that Defendant Dugan "threatened death to one or more of those who were unwilling to participate in the conspiracy and instead reported it to the military authorities." *TAC ¶ 79*. The TAC describes the numerous assaults and batteries committed by Defendant Dugan and/or his co-conspirators,

- 9 -

including those of a sexual nature.[4]  The TAC alleges that Defendant Dugan and his co-conspirators subjected Plaintiff Saleh to, among other brutal acts, electric shocks, threatening him with a dog, shooting him with plastic bullets, and numerous acts of physical and sexual abuse (*TAC ¶116*); subjected Plaintiff Haj Ali to, among other brutal acts, electric shocks, physical abuse, painful stress positions, exposure to extreme cold, and forced nudity (*TAC ¶¶ 125, 124, 123*); subjected Plaintiff Jalel Mahdy Hadood to harmful and offensive acts including exposure to extreme heat, sleep deprivation, humiliation by forcing him to wear women's underwear, beating, food deprivation, stress positions and threats of sodomy (*TAC ¶¶ 129, 130*); subjected a boy, Plaintiff Umer Abdul Mutalib Abdul Latif, to extreme heat, food deprivation, beating, stress positions, threats to harm his family, and electric shocks (*TAC ¶ 133*); subjected Plaintiff Ahmed Shehab Ahmed to harmful and offensive conduct including beating, denial of medical care, forced nudity, and threats to rape his family (*TAC ¶ 135*); subjected Plaintiff Ahmed Ibrahiem Neisef Jassem to harmful and offensive acts including exposure to extreme cold, forced nudity, intimidation with dogs, beating, forced nudity, food deprivation, and stress positions (*TAC ¶ 137*); subjected Plaintiff Ismael Neisef Jassem Al-Nidawi to harmful and offensive acts including beating, stress positions, electric shocks, sleep deprivation, forced nudity, threats of rape, and exposure to extreme heat (*TAC ¶¶ 142, 143, 144*); subjected Plaintiff Kinan Ismael Neisef Al-Nidawi to harmful and offensive acts including beating, sleep deprivation, stress positions, exposure to extreme heat and cold, forced nudity, rape and threats of sodomy (*TAC ¶ 146, 147, 148*); threatened Plaintiffs Mustafa, Natheer, Othman, and Hassan

---

[4] *See*, *e.g.*, *TAC ¶ 54* (alleging that a Titan employee raped a fourteen-year-old class member); *TAC ¶ 160(a)-(v)* (describing forced nudity, rape and other forced sexual acts, photographing while nude and/or in other humiliating situations, as well as hooding, beating, solitary confinement, deprivation of food and water, exposure to loud music, stress positions, sleep deprivation, exposure to extreme temperatures, and ridicule of religious practice).

and their family members with sexual abuse, sexually molested two of these plaintiffs, and subjected these plaintiffs to stress positions and food deprivation (*TAC ¶¶ 155, 156, 157, 158*).[5]

Given that Defendant Dugan is alleged to have personally directed and conspired with others to commit the torture and mistreatment and that the TAC spells out the many wrongful acts of torture, Defendant Dugan's argument that Plaintiffs' TAC should be dismissed for failure to allege events and allege any facts fails to persuade. This Court has already recognized that the Plaintiffs' allegations of harm by the defendants reflect "nearly unspeakable acts of torture and other mistreatment." *June 29, 2006 Order at 1*. The brutality of the acts committed by the torture conspirators, *see*, *e.g.*, *TAC ¶ 160 (a)-(v)*, more than satisfy the standard of "outrageous" conduct.

## CONCLUSION

For the foregoing reasons, the torture victims respectfully request that the Court deny Defendant Dugan's motion to dismiss or, in the alternative, grant leave to take jurisdictional discovery.

Dated: October 30, 2006                   /s/ Susan L. Burke
                                                    Susan L. Burke (D.C. Bar # 414939)
                                                    BURKE PYLE LLC
                                                    4112 Station Street
                                                    Philadelphia, PA 19127
                                                    Telephone:     (215) 487-6590
                                                    Facsimile:     (215) 482-0874

                                                    Jennifer Green
                                                    CENTER FOR CONSTITUTIONAL RIGHTS

---

[5] The TAC also alleges that conspirator Defendant Israel beat, punched and threatened seventeen-year-old Plaintiff Umer during an interrogation and assaulted other class members(*TAC ¶¶ 18, 50*) and that conspirator Defendant Nakhla assaulted Plaintiff Hadood and other class members (*TAC ¶¶ 19, 49*).

666 Broadway, 7th Floor
New York, NY 10012
Telephone:    (212) 614-6439
Facsimile:    (212) 614-6499

Shereef Hadi Akeel
AKEEL & VALENTINE, P.C.
401 South Old Woodward Avenue, Suite 430
Birmingham, MI 48009
Telephone:    (248) 594-9595
Facsimile:    (248) 594-4477

*Counsel for Plaintiffs and Class Plaintiffs*

- 12 -

## CERTIFICATE OF SERVICE

I, Anne K. Heidel, do hereby certify that on the 30th day of October, 2006, I caused true and correct copies of the foregoing *Plaintiffs' Opposition To Defendant Timothy Dugan's Motion To Dismiss the Third Amended Complaint* to be served via electronic mail upon the following individuals at the addresses indicated:

F. Whitten Peters
Thomas M. Craig
WILLIAMS & CONNOLLY LLP
725 12th Street, NW
Washington, D.C. 20005
wpeters@wc.com
*Counsel for Defendant Titan Corp.*

J. William Koegel Jr.
John F. O'Connor
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
wkoegel@steptoe.com
*Counsel for Defendants CACI International Inc. and CACI-PT*

Patrick O'Donnell
Justin Dillon
HARRIS, WILTSHIRE & GRANNIS, LLP
1200 18th Street, NW
Suite 1200
Washington, D.C. 20036
podonnell@harriswiltshire.com
*Counsel for Defendant Daniel E. Johnson*

Michael Nussbaum
Jocelyn Leyretana
BONNER KIERNAN TREBACH & CROCIATA, LLP
1233 20th Street, NW
8th Floor
Washington, D.C. 20036
mnussbaum@bktc.net
*Counsel for Defendant Timothy Dugan*

_____
Anne K. Heidel