**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ILHAM NASSIR IBRAHIM, *et al.*,

Plaintiffs,

v.

THE TITAN CORPORATION, *et al.*,

Defendants.

Civil Action No. 04-01248 (JR)

SALEH *et al.*,

Plaintiffs,

v.

THE TITAN CORPORATION *et al.*,

Defendants.

Civil Action No. 05-1165 (JR)

**PUBLIC VERSION**

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO CACI'S MOTIONS FOR SUMMARY JUDGMENT ON THE GOVERNMENT CONTRACTOR DEFENSE**

**TABLE OF AUTHORITIES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) .......... 5

*Barron v. Martin-Marietta Corp.*, 868 F. Supp. 1203 (N.D. Cal. 1994) .......... 26

*Bentzlin v. Hughes Airccraft Co.*, 833 F.Supp 1486 (C.D.Cal. 1993) .......... 23

*Bloomgarden v. Coyer*, 479 F.2d 201 (D.C. Cir. 1973) .......... 5

*Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) .......... passim

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 450 F. Supp. 2d 1373, 1380 (N.D. Ga 2006) .......... 23

*Celotex Corp. v Catrett*, 477 U.S 317, 322 (1986) .......... 5

*Chappell v. Wallace*, 462 U.S. 296, 300 (1983) .......... 24

*Cole v. Burns Int'l Security Servs., 105 F.3d 1465, 1485 (D.C. Cir. 1997)* .......... 13

*Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 n.6 (2001) .......... 25

*Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 17-18(D.D.C. 2005) .......... passim

*Jama v. INS*, 334 F. Supp. 2d 662 (D.N.J. 2004) .......... 25

*In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990) .......... 26

*Lewis v. Babcock Industries, Inc.*, 985 F.2d 83, 86 (2d Cir. 1993) .......... 26

*McMahon v. Presidential Airways, Inc.*, 460 F. Supp. 2d 1315, 1320 (M.D. Fla. 2006) .......... 23

*Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 650 (D.C. Cir. 2003) .......... 5

*Neilson v. George Diamond Vogel Paint Co.*, 892 F 2d 1450, 1454-55 (9th Cir. 1990) .......... 26

*Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) .......... 24

*Parker v. Levy*, 417 U.S. 733, 743 (1974) .......... 24

*1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc., 485 A.2d 199, 205 (D.C. 1984)* ........ 13

*Schlesinger v. Councilman*, 420 U.S. 738, 757 (1975) ........ 24

*Shurr v. A.R. Siegler, Inc.*, 70 F. Supp. 2d 900, 927 (E.D. Wis. 1999) ........ 25

*United States v. Brown*, 348 U.S. 110, 112 (1954) ........ 24

*United States v. Grimley*, 137 U.S. 147, 152 (1890) ........ 23

**Code of Federal Regulations**

48 C.F.R. § 7.503(a)(2006) ........ 11

48 C.F.R. § 7.503(c)(3) ........ 12

**Publications**

*2 American University Journal of International Law & Policy*, (1987) 419-27 ........ 9

Maj. Karen L. Douglas, Contractors Accompanying the Force; Empowering Commanders with Emergency Change Authority, 5 A.F.L. 127, 134 (2004) ........ 8

Major Lisa L. Turner, *Civilians at the Tip of the Spear*, 51 A.F.L. 1, 27 (2001)
Maj. Ricou Heaton, *Civilians at War: Reexamining the Status of Civilians Accompanying the Armed Forces*, 57 A.F.L. 155, 173 (2005) ........

**Other Authorities**

Restatement (Second) of Contracts § 203(a) (1981) ........ 13

## TABLE OF CONTENTS

### ARGUMENT

I. CACI BEARS THE BURDEN OF PROVING WITH UNDISPUTED FACTS THAT THE MILITARY CONTROLLED, AND BENEFITTED FROM, CACI'S CONDUCT ..... 4

II. CACI, NOT THE MILITARY, IS LEGALLY OBLIGED TO COMMAND AND CONTROL ITS EMPLOYEES. ..... 6

A. The Military [redacted] ..... 7

B. CACI Cannot Lawfully Evade its Command and Control Duties and Shift Those Duties to the Military. ..... 10

C. CACI Cannot Lawfully Supply the Army With Soldiers-for-Hire ..... 11

III. CACI SUPERVISED AND CONTROLLED ITS EMPLOYEES. ..... 14

A. CACI Established a Corporate Management Structure In Iraq. ..... 15

B. CACI Management [redacted] ..... 17

C. [redacted] ..... 19

IV. THE MILITARY DID NOT AND COULD NOT COMMAND AND CONTROL CACI EMPLOYEES. ..... 20

A. The Military Witnesses [redacted] ..... 20

B. [redacted] ..... 22

V. ........ 24

A. ........ 26

B. ........ 27

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ILHAM NASSIR IBRAHIM, *et al.*,

Plaintiffs,

v.

THE TITAN CORPORATION, *et al.*,

Defendants.

Civil Action No. 04-01248 (JR)

SALEH *et al.*,

Plaintiffs,

v.

THE TITAN CORPORATION *et al.*,

Defendants.

Civil Action No. 05-1165 (JR)

**FILED UNDER SEAL**

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO CACI'S MOTIONS FOR SUMMARY JUDGMENT ON THE GOVERNMENT CONTRACTOR DEFENSE**

CACI has moved for summary judgment in both the above-captioned cases, arguing that the undisputed material facts establish that CACI is entitled to invoke the judicially-created "government contractor defense." *See Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). Plaintiffs in both the actions oppose CACI's motion, and hereby file this Consolidated Opposition.[1]

[1] Because the Consolidated Opposition is being filed by unrelated parties in lieu of two separate Oppositions, plaintiffs exceeded the page limits applicable to a single Opposition but remained within the page limits applicable to filing two Oppositions.

This Court should deny CACI's motions for summary judgment because, as set forth in detail below and in the enclosed Appendices, there are significant disputes about the "facts" CACI misleadingly portrays as "undisputed." CACI advocates an interpretation of its contract with the military that requires this Court to assume the military violated the law. *See Consolidated Plaintiffs' Statement of Material Facts and Appendices Thereto ("Plts. Facts") ¶¶1-24 and Section II, below.*[2]

Further and importantly, CACI's own witnesses, as well as witnesses from the military, [redacted] [redacted]. *See Plts. Facts ¶¶87-156 and Sections III and IV, below.* The testamentary and documentary evidence reveals that [redacted] [redacted] *See Plts. Facts ¶¶25-86 and Sections III and IV, below.*

The evidence also reveals that [redacted] [redacted] [redacted] [redacted] [redacted]. *Plts. Facts ¶¶148-150.*

The ever-growing body of evidence regarding the torture itself also establishes [redacted] [redacted] [redacted] *Plts. Facts*

[2] Plaintiffs' Consolidated Statement of Disputed Facts and Appendices submit evidence that contradicts the vast majority of CACI's Statement of Material Facts is and hereby incorporated in full by reference.

¶¶*134-136.* [redacted] *Plts. Facts* ¶ *134-136.*

The facts establish that CACI's conduct [redacted] terms and conditions of CACI's contract with the military. *Plts. Facts* ¶¶ *113-156.* The facts, taken as a whole, establish that CACI cannot invoke the government contractor defense because CACI fails to meet even the threshold eligibility requirements of having acted consistent with the terms of the contract in a manner designed to benefit the United States. It serves no judicially-cognizable purpose to allow a defense contractor who has violated the contract, violated the law, and has damaged the reputation of the United States to invoke an affirmative defense designed to preserve and protect the United States' interests.

**ARGUMENT**

The judicially-created government contractor defense arose from the concern that a company, doing exactly as the government wanted, should not be subject to liability under state law for those very same actions. The situation here, however, is the reverse. [redacted]

This Opposition, after setting forth the relevant standard of proof in Section I, argues that CACI was [redacted]egally obliged to supervise CACI employees in Iraq (*Section II, pp. 6-14*); [redacted]

*pp.14-20)*; [redacted]

[redacted] *(Section IV, pp.20-31)*.

## I. CACI BEARS THE BURDEN OF PROVING WITH UNDISPUTED FACTS THAT THE MILITARY CONTROLLED, AND BENEFITTED FROM, CACI'S CONDUCT.

Defendant CACI has the burden of establishing it is entitled to the government contractor defense. *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 17-18 (D.D.C. 2005) ("[P]reemption under the government contractor defense is an affirmative defense, with the burden of proof on the defendants."). Although this Court granted Defendants an opportunity to establish their entitlement to the government contractor defense by means of summary judgment, the Court cautioned CACI that, in order to be entitled to invoke the affirmative defense, it would have to prove that its employees in Iraq were *de facto* members of the United States military ("soldiers in all but name").

This Court expressly advised CACI as to the types of material facts that had to be shown as beyond dispute in order to prevail on summary judgment:

> [M]ore information is needed on what exactly defendants' employees were doing in Iraq. What were their contractual responsibilities? To whom did they report? How were they supervised? What were the structures of command and control? If they were indeed soldiers in all but name, the government contractor defense will succeed, but the burden is on defendants to show that they are entitled to preemption.

*Id.*

CACI, seeking to comply with the Court's directive (although continuing to challenge the Court's legal analysis[3]), submitted such evidence by filing a Statement of Material Facts in support of its Motion for Summary Judgment. But summary judgment

---

[3] *See, e.g., CACI Motion for Summary Judgment*, arguing that the Court set the bar too high by requiring CACI to prove its employees were soldiers in all but name.

is appropriate only if there are no genuine disputes about these material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). CACI bears the heavy burden of proving that there are no disputes about these material facts [redacted], [redacted]). Stated differently, Defendant CACI, the moving party, is entitled to a judgment as a matter of law only if the *Saleh* and *Ibrahim* plaintiffs, as the nonmoving parties, fail to establish the existence of a dispute about any of the material facts undergirding the invocation of the affirmative government contractor defense. *See Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 650 (D.C. Cir. 2003), *citing Celotex Corp. v Catrett*, 477 U.S 317, 322 (1986). Plaintiffs, not CACI, are entitled to have this Court draw all inferences from the factual record in the light most favorable to them as the nonmoving parties. *See Bloomgarden v. Coyer*, 479 F.2d 201 (D.C. Cir. 1973).

CACI has not carried this heavy burden. As set forth in the following sections, there are numerous genuine disputes about the validity of CACI's version of the material facts. These disputes go right to the heart of whether CACI has the evidence needed to invoke the government contractor defense. Plaintiffs, relying on testimony from CACI employees and military personnel, dispute CACI's "facts," includin[redacted] [redacted] Indeed, as discussed in Section II, to accept CACI's version of the material facts, this Court would have to assume – without a scintilla of evidentiary support – that the military intentionally flouted the laws prescribing how contractors were to be used [redacted] [redacted]. But the CACI and military witnesses with

actual knowledge of military operations in Iraq[redacted] *See Sections II and III, Plts. Facts* ¶¶ *87-159.*

## II. CACI, NOT THE MILITARY, IS LEGALLY OBLIGED TO COMMAND AND CONTROL ITS EMPLOYEES.

CACI, blatantly ignoring the realities of government contracting, ominously warns that allowing the plaintiffs' claims to proceed will result in "two completely different legal regimes applicable to precisely the same activity…depending on whether the interrogator at issue is a soldier or a civilian." CACI *Motion for Summary Judgment* at 6-7. But soldiers and corporate defense contractor employees have always operated under two completely different legal regimes.

Defense contracting is not new. There is a well-developed body of law and procedures that expressly creates two different legal regimes: One for soldiers, and one for corporate defense contractor employees such as CACI who are hired to support the military in non-combatant jobs. [redacted]. *Plts. Facts* ¶¶ *7-10, 15, 19-23.*

The legal regime governing soldiers results in soldiers leading a far different life than civilian corporate contract employees. Every soldier enlisted in the United States Army has sworn an oath to "obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice." *Plts. Facts* ¶¶ 89-96. Until their discharge from the military, soldiers are required to obey any lawful order from anyone who outranks them, not just their day-to-day supervisors. *Plts. Facts* ¶*91.* Soldiers who disobey an order, fail to perform their duties, leave the military without being lawfully discharged, or otherwise

violate the Uniform Code of Military Justice, are able to be court martialed and sentenced to prison. *Plts. Facts* ¶*91*.

The legal regime governing soldiers does not apply to [redacted] Rather, under the Third Geneva Convention of 1949, CAC[redacted] considered "Persons who accompany the armed forces without actually being members thereof." Third 1949 GC, Art. 4(4). The military refers to them as such. Such civilians are entitled to be treated as Prisoners of War if captured, *id.*, and cannot be targeted for attack, but they are forbidden from engaging in combat. *Plts. Facts* ¶¶ 89-96.

**A. The Military Did Not [redacted]**

As civilians accompanying the force, CACI corporate employees are not subject to any of the requirements placed on soldiers. *Plts. Facts* ¶¶ 90, 92, 94, 96. [redacted] *Plts. Facts* ¶¶ 94, 146, 151. They were not – and could not be -- legally compelled to follow military orders. *Plts. Facts* ¶¶ 95, 96, 105-107. CACI employees could not even be asked or required to perform work outside the scope of CACI's Statement of Work. *Plts. Facts* ¶¶ *9, 24, 32, 36, 40, 41, 58, 68, 75-77.* They were not permitted to engage in combat, or carry a weapon. *Plts. Facts* ¶¶ 9, 15, 20-23. The military could not dock their pay, or fine them, demote or promote them. *Plts. Facts* ¶¶ 41, 68-74, 99-107. They could not be court-martialed, or otherwise subjected to the Uniform Code of Military Justice. *Plts. Facts* ¶¶ 15, 127. The military could not fire them. *Plts. Facts* ¶¶ 19, 80, 114-148.

[redacted]

*See* Major Lisa L. Turner, *Civilians at the Tip of the Spear*, 51 A.F.L. 1, 27 (2001)

("Civilians, as a sub-category of non-combatant, generally are not authorized to take *direct part* in hostilities. Civilians who take direct part in hostilities are 'unlawful combatants' and 'regarded as marauders or bandits.' In any form of armed conflict, unlawful combatants lose the protections afforded their civilian status") (internal citations omitted); Maj. Karen L. Douglas, *Contractors Accompanying the Force: Empowering Commanders with Emergency Change Authority*, 55 A.F.L. 127, 134 (2004) ("Those civilians who do become unlawful combatants by taking direct part in hostilities lose the protections afforded to non-combatants.  Contractors, as civilians, are not lawful combatants in international armed conflict, and the military is strictly forbidden from using contractors as combatants."); Maj. Ricou Heaton, *Civilians at War: Reexamining the Status of Civilians Accompanying the Armed Forces*,  57 A.F.L. 155, 173 (2005) ("contractors who take part in hostilities will be considered unlawful combatants.").

As the Director-General of the International Red Cross has stated, "the cornerstone of all international humanitarian law is the principle of distinction. That principle prohibits all attacks on civilians. It requires parties to a conflict to maintain distinction – at all times – between combatants and civilians.  Only combatants may be attacked."  Statement of Angelo Gnaedinger, Director-General of the International Red Cross, to the United Nations, (December 10, 2002). *See also* Statement of John Bellinger III, State Department Legal Advisor, at George Washington University Law School, (September 30, 2005) ("The principle of distinction, among the foundational principles of humanitarian law, exists for the purposes of civilian protection, to ensure that fighters can identify the combatant from the bystander."); Protocol Additional to the Geneva Conventions (1977), Art. 48 ("In order to ensure respect for and protection of the civilian

population and civilian objects, the Parties to the conflict shall at all times distinguish between the civilian population and combatants.")[4]

U.S. Army Regulations, and binding Army Doctrine as set forth in military field manuals, recognize these obligations. *See, e.g.*, Field Manual 100-21, § 4-49 ("Nations and their military forces are required to distinguish between military forces (combatants) and civilians (noncombatants), according to the Geneva convention."). Accordingly, the military forbids contractors from engaging in combat or taking "any role that could jeopardize their status as civilians accompanying the force" under the laws of war. AR 715-9, § 3-3(d) (1999).

AR 715-9 and Field Manual 100-21 also state repeatedly that contract employees are *not* subject to the military chain of command, and can neither supervise nor be directly supervised by military personnel. *See* AR 715-9 § 3-2(a) ("Contracted support service personnel will not command, supervise, administer, or control Army or Department of the Army Civilian (DAC) personnel"); *id.* at § 3-2(f) ("Contractor employees are not under the direct supervision of military personnel in the chain of command."); *id.* at § 3-3(b) ("Contracted support service personnel shall not be supervised or directed by military or Department of the Army (DA) civilian personnel"). *See also* Field Manual 100-21, § 1-22 (2003) ("Management of contractor activities is accomplished through the responsible contracting organization, not the chain of

[4] The United States has not ratified the 1977 Additional Protocol, but recognizes Article 48 as an accurate statement of binding customary international law. *See* Michael Matheson, U.S. Department of State Deputy Legal Advisor, "The Sixth Annual American Red Cross--Washington College of Law Conference on International Humanitarian Law: A Workshop on Customary International Law and the 1977 Protocols Additional to the 1949 Geneva Conventions," 2 *American University Journal of International Law & Policy*, (1987) 419-27.

command. Commanders do not have direct control over contractors or their employees (contractor employees are not the same as government employees)"); *id.* at § 1-23 ("The management and control of contractors is significantly different than the[command and control] of soldiers and [Department of the Army civilian employees ("DACs")]. During military operations, soldiers and DACs are under the direct [command and control] of the military chain of command..... Military commanders do not have, however, the same authority or control over contractors and their employees"); *id.* at § 4-2 ("As stated earlier, contractor management does not flow through the standard Army chain of command.... It must be clearly understood that commanders do not have direct control over contractor employees (**contractor employees are not government employees**)").

*Plts. Facts* ¶¶ *112.*

**B. CACI Cannot Lawfully Evade its Command and Control Duties and Shift Those Duties to the Military.**

Because the military is unable to directly command, discipline, or supervise contractor employees, contractors are required to supervise their own employees. *See* AR 715-9, § 3-2(c) ("Commercial firm(s) providing battlefield support services will supervise and manage functions of their employees"); *id.* at § 3-2(f) ("The commercial firm(s) providing the battlefield support services will perform the necessary supervisory and management functions of their employees."). *See also FM 100-21*, § 1-22 ("only contractors manage, supervise, and give directions to their employees."); *id.* at § 1-25

("Only the contractor can directly supervise its employees"); *id.* at § 4-2 ("only contractors directly manage and supervise their employees.").

Contractor employees are required to comply with "with all applicable US and/or international laws." *FM 100-21*, § 1-39. Ensuring that contractor employees obey the law is the duty of the corporate contractor, not the military:

> Contractor employees are not subject to military law under the UCMJ when accompanying US forces, except during a declared war. Maintaining discipline of contractor employees is the responsibility of the contractor's management structure, not the military chain of command. The contractor, through company policies, has the most immediate influence in dealing with infractions involving its employees. It is the contractor who must take direct responsibility and action for his employee's conduct. *Id.* at § 4-45.

*See also* Joint Publication 4-0, Doctrine for Logistic Support of Joint Operations (April 6, 2000) V-7, *available at* http://www.dtic.mil/doctrine/jel/new_pubs/jp4_0.pdf ("Since contractor personnel are not subject to command authority enforced by an internal system of penal discipline, commanders have no method of guaranteeing armed contractor personnel will act in accordance with the law of war or [host nation] law."); *id.* at V-8 ("Contract employees are disciplined by the contractor through the terms of the employee and employer relationship. Employees may be disciplined for criminal conduct by their employer per the terms of their employment agreement.....Commanders have no penal authority to compel contractor personnel to perform their duties or to punish any acts of misconduct.")

### C. CACI Cannot Lawfully Supply the Army With Soldiers-for-Hire

The Federal Acquisition Regulations state that government "[c]ontracts shall not be used for the performance of inherently governmental functions." 48 C.F.R. § 7.503(a) (2006). One of the first listed examples of an inherently government function is "[t]he

command of military forces, especially the leadership of military personnel who are members of the combat, combat support, or combat service support role." 48 C.F.R. § 7.503(c)(3).

The U.S. military also considers combat operations and the use of force to be inherently governmental:

> In times of crisis, the DOD has a responsibility to ensure the integrity of military operations (the coherence of action) particularly with regard to the use of deadly force and conduct under fire. This responsibility is non-transferable and must be safeguarded through a strict command structure and extensive military training of the troops expected to enter into, or sustain, combat operations. Functions inherent to, or necessary for the sustainment of combat operations, that are performed under combat conditions or in otherwise uncontrolled situations, and that require direct control by the military command structure and military training for their proper execution, are considered inherently governmental. [5]

AR 715-9. *See also* Joint Publication 4-0, Doctrine for Logistic Support of Joint Operations (April 6, 2000) V-1, http://www.dtic.mil/doctrine/jel/new_pubs/jp4_0.pdf ("In all instances, contractor employees cannot lawfully perform military functions and should not be working in scenarios that involve military combat operations where they might be conceived as combatants").

[5] Some members of the military have argued persuasively that even when interrogators remain "inside the wire" and forbidden from carrying weapons or engaging in combat, intelligence gathering nonetheless "require[s] direct control by the military command structure and military training for [its] proper execution" and is therefore inherently governmental. *See Fay Jones Report (Consolidated Appendix C-7).* If interrogation itself is an inherently governmental function,

[6] There is an open legal question as to whether

[redacted] *See 1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984) (A contract "must be interpreted as a whole, giving a reasonable, *lawful*, and effective meaning to all its terms") (emphasis added); Restatement (Second) of Contracts § 203(a) (1981) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"); *Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1485 (D.C. Cir. 1997) ("where a contract is unclear on a point, an interpretation that makes the contract lawful is preferred to one that renders it unlawful.")

This rule of construction applies with particular force here for the following reason: [redacted].

---

[redacted] They were issued under a 1999 General Services Administration ("GSA") contract to provide the government with "information technology services," not interrogation or intelligence services. These delivery orders characterized [redacted] GAO Report). When the Department of the Interior's Inspector General learned of this, he concluded that CACI's Delivery Orders were outside the scope of CACI's contract with the GSA, in violation of federal contracting laws. He recommended that they be terminated. The United States Government Accountability Office (GAO), the General Services Administration, and the United States Army agreed with this conclusion.

Thus, CACI, not the military, was legally responsible for supervising its employees. *Plts. Facts* ¶¶ *12-23.* controlling military regulations, which expressly forbid government contractors from trying to shift the burden of supervising their employees to the military. *Plts. Facts* ¶¶ *19-23.* As explained by

CACI claims in its Motion for Summary Judgment that *Plts. Facts* ¶¶ *1-86.*

**III. CACI**

CACI witnesses testified *Plts. Facts* ¶¶ *1-24.* Although the CACI contract was a "staff augmentation" contract as that term is commonly used in the defense contracting industry (*Plts. Facts* ¶¶ *39-40),* the military

." *Plts. Facts* ¶ *84.*

*Plts. Facts* ¶*84*



*Facts* ¶¶ *12-14.* As with any consulting contract, the Statement of Work

*Plts. Facts* ¶ *16.*

*Facts* ¶¶ *17-23.*

Importantly, under the Statement of Work,

*Plts. Facts* ¶ *18.*

**A. CACI**

*Plts. Facts* ¶¶ *26-27.*



*Plts. Facts ¶26-27.*

*s. Facts ¶¶ 25-38.*[7]

The military paid CACI,

[7]



**B. CACI Management**

[8]







[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

## IV. THE MILITARY DID NOT AND COULD NOT COMMAND AND CONTROL CACI EMPLOYEES.

### A. Military Witnesses

As Colonel Thomas Pappas, the highest ranking Military Intelligence officer at Abu Ghraib, testified during a court martial proceeding,

[10]



Military Section Leaders also testified

The military's inability to control [redacted]

[redacted]

[redacted] *156.*

**B. [redacted]s [redacted]**

Notably, the military has [11] Two recent decisions refused to extend the reach of *Boyle* in cases in which the United States had failed to intervene. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 450 F. Supp. 2d 1373, 1380 (N.D. Ga 2006); *McMahon v. Presidential Airways, Inc.*, 460 F. Supp. 2d 1315, 1320 (M.D. Fla. 2006).[12] CACI is asking nothing less than that this Court destroy centuries of precedent by elevating CACI corporate employees – who do not take an oath to serve and who can quit without notice – to the same legal status as the men and women who enlist in the Armed Forces and swear to protect us all.

Courts have long recognized the unique nature of the military's command structure, its necessity during combat, and the dangers in interfering with officers' authority to give legally binding orders to their subordinates. But for an equally long period, they have recognized that obedience to this structure of command and control is a function of a soldier's enlistment in the United States armed forces. There is no civilian equivalent. *See, e.g., United States v. Grimley*, 137 U.S. 147, 152 (1890) (The Army's "law is that of obedience. No question can be left open as to the right to command in the officer, or the duty of obedience in the soldier"); *id.* at 152 ("By enlistment the citizen becomes a soldier. His relations to the state and the public are changed. He acquires a new *status*, with correlative rights and duties."); *id.* at 156-67 ("the taking of the oath of allegiance is the pivotal fact which changes the *status* from that of civilian to that of

---

[11] In

[12] By contrast, the government did intervene in *Bentzlin v. Hughes Aircraft Co.*, 833 F.Supp 1486 (C.D.Cal. 1993) to protect its own interest in keeping secret the details of the weapon at the center of the dispute.

soldier"). *See also Orloff v. Willoughby*, 345 U.S. 83, 94 (1953), holding that "[t]he military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters," but that this deference only applies to those "lawfully inducted" into the Army); *United States v. Brown*, 348 U.S. 110, 112 (1954) (noting "[t]he peculiar and special relationship of the soldier to his superiors"); *Parker v. Levy*, 417 U.S. 733, 743 (1974) ("This Court has long recognized that the military is, by necessity, a specialized society separate from civilian society"); *Schlesinger v. Councilman*, 420 U.S. 738, 757 (1975) ("To prepare for and perform its vital role, the military must insist upon a respect for duty and a discipline without counterpart in civilian life."); *Chappell v. Wallace*, 462 U.S. 296, 300 (1983) ("no military organization can function without strict discipline and regulation that would be unacceptable in a civilian setting.... Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment.").

## V. [redacted]

It is black-letter law that CACI can only invoke the government contractor defense if it abided by the terms of the Statement of Work and the military regulations.[13]

---

[13] [redacted]

The government contractor defense is not intended to protect a contractor from liability resulting from its *violation* of federal laws and federal policies. For example, in *Jama v. INS*, 334 F. Supp. 2d 662 (D.N.J. 2004), the district court found the government contractor defense inapplicable to a contractor who ran a detention facility for asylum applicants because the alleged tortious conduct violated certain contract terms. The court found, "In hiring, training, and supervising its employees, [contractor] Esmor was required not only to abide by the detailed terms of the Contract, but also to fulfill its more general obligation of running the facility safely. It would defy logic to suggest that the INS could have 'approved' practices that breached this larger duty." *Id.* at 689. *See also Shurr v. A.R. Siegler, Inc.*, 70 F. Supp. 2d 900, 927 (E.D. Wis. 1999) (Government contractor defense is "intended to protect contractors from 'civil liabilities arising out of the performance of federal procurement contracts,' and not from liabilities arising out of the breach of such contracts.") (internal citations omitted).

The Supreme Court has held that the government contractor defense does not apply even in "an intermediate situation, in which the duty sought to be imposed on the contractor is not identical to one assumed under the contract, but is also not contrary to any assumed." *Boyle*, 487 U.S. at 509. As long as "[t]he contractor could comply with both its contractual obligations and the state prescribed duty of care," state law will not generally be pre-empted. *Id.* *See also Correctional Servs. Corp. v. Malesko*, 534 U.S.

61, 74 n.6 (2001) ("Where the government has directed a contractor to do the very thing that is the subject of the claim, we have recognized this as a special circumstance where the contractor may assert a defense."); *In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990) ("Stripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.'"). *See also Neilson v. George Diamond Vogel Paint Co.*, 892 F 2d 1450, 1454-55 (9th Cir. 1990); *Lewis v. Babcock Industries, Inc.*, 985 F.2d 83, 86 (2d Cir. 1993); *Barron v. Martin-Marietta Corp.*, 868 F. Supp. 1203 (N.D. Cal. 1994) (holding that the "requisite conflict exists only where a contractor cannot at the same time comply with duties under state law and duties under a federal contract.").

**A.**

CACI claims that



[redacted] Every military report that has investigated that topic has reached the same conclusion. *Plts. Facts ¶¶ 87-156.*

[redacted] *Plts. Facts ¶ 134.* [redacted] plaintiffs suffered the worst types of treatment, including sodomy, various types of beatings, handcuffing to a wall until loss of consciousness, being urinated on and spit upon, denial of sleep and various types of sexual abuse and humiliation [redacted]

**A.** [redacted]

[redacted]



*Plts. Facts ¶ 151.*

[14] U.S. soldiers who witness violations of the laws of war and the Geneva Conventions have a legal duty to stop the abuse, and report it to their chain of command. Soldiers who fail to do, whether negligently or willfully, are subject to court martial for dereliction of duty under Article 92(c) of the Uniform Code of Military Justice. Several members of the 372nd M.P. Company at Abu Ghraib were charged under this Article.





## CONCLUSION

For all of the foregoing reasons, CACI has not, and cannot, carry the heavy burden of establishing with undisputed facts an entitlement to the government contractor defense. Plaintiffs respectfully request that the Court deny CACI's motion and set a date for trial in this matter.

Palmer Foret (D.C. Bar No. 260356)
THE LAW FIRM OF PALMER FORET, P.C.
1735 20th Street, N.W.
Washington, D.C 20009
Telephone: (202) 232-2404
Facsimile: (202) 332-2808
lpforet@foretlaw.com
www.foretlaw.com

Susan L. Burke (D.C. Bar No. 414939)
William T. O'Neil (D.C. Bar No. 426107)
Katherine R. Hawkins (admitted *pro hac vice*)
BURKE O'NEIL LLC
Telephone: (215) 487-6590
Facsimile: (215) 482-0874
sburke@burkepyle.com

Craig T. Jones (GA Bar No. 399476)
EDMOND & JONES, LLP

Shereef Hadi Akeel (admitted *pro hac vice*)
AKEEL & VALENTINE, P.C.

127 Peachtree Street, NE
Suite 410
Atlanta, GA 30303
Telephone: (404) 525-1080
Facsimile: (404) 525-1073
cjones@edmondfirm.com

*Counsel for Ibrahim Plaintiffs*

401 South Old Woodward Avenue
Suite 430
Birmingham, MI 48009
Telephone: (248) 594-9595
Facsimile: (248) 594-4477
shereef@akeelvalentine.com

Jennifer Green
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
7th Floor
New York, NY 10012
Telephone: (212) 614-6439
Facsimile: (212) 614-6499
jgreen@ccr-ny.org

*Counsel for Saleh Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Susan L. Burke, do hereby certify that on the 25th day of May, 2007, I caused true and correct copies of the Plaintiffs' Consolidated Opposition to CACI's Motion for Summary Judgment on the Government Contractor Defense, and the Appendices thereto, to be served by hand on the next day on the following:

Greg Bowman
Williams and Connolly
725 12th Street, NW
Washington, D.C. 20005
FBowman@wc.com
*Counsel for Defendant L-3 Titan Corp.*

John F. O'Connor
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
joconnor@steptoe.com
*Counsel for CACI Defendants*

Susan L. Burke