IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IBRAHIM, *et al.*,<br><br>            Plaintiffs,<br><br>            v.<br><br>TITAN CORP., *et al.*,<br><br>            Defendants. | Civil Action No. 04-CV-1248 (JR) |
| SALEH, *et al.*,<br><br>            Plaintiffs,<br><br>            v.<br><br>TITAN CORP., *et al.*,<br><br>            Defendants. | Civil Action No. 05-CV-1165 (JR) |

**OPPOSITION OF DEFENDANTS
CACI INTERNATIONAL INC AND CACI PREMIER
TECHNOLOGY, INC., TO PLAINTIFFS' MOTION FOR A PARTIAL
LIFT OF THE SEAL AND AMENDMENT TO THE PROTECTIVE ORDER**

**I.   INTRODUCTION**

Plaintiffs have moved to modify the Protective Order to give Plaintiffs' counsel *carte blanche* to provide CACI's confidential discovery material, and any pleadings filed under seal, to any "government official" that Plaintiffs' counsel, in their discretion, determines is "interested" in the material. Plaintiffs' proposed modification would eliminate the bedrock provision of the Protective Order that limits the use of confidential material to this litigation. There is no good

cause for this modification, which is particularly inappropriate since summary judgment discovery closed months ago. Indeed, Plaintiffs' approach would take the "protective" out of "Protective Order."

Plaintiffs' counsel first advised Defendants of the proposed motion on the evening of Thursday, August 2, 2007, and insisted that they needed to know Defendants' position *that evening*. Plaintiffs' counsel expressly refused to disclose the circumstances that gave rise to their motion or even to explain why Plaintiffs needed a response on short notice.[1]

Plaintiffs' motion is no more illuminating. Conspicuously lacking is any showing of good cause, changed circumstances, or need with respect to Plaintiffs' request to modify the Protective Order. Absent that showing, and because Defendants have relied on the Protective Order during discovery, there is no basis for the blank check that Plaintiffs seek from the Court. The Court should deny Plaintiffs' motion.

## II.   BACKGROUND

On June 14, 2006, the Court entered a Protective Order in the *Ibrahim* action. That Protective Order was the product of negotiations between *Ibrahim* Plaintiffs' counsel and Defendants' counsel. The Protective Order, unsurprisingly, permits the parties to designate certain documents and other discovery material (such as deposition excerpts) as "confidential," and restricts the parties' use of confidential materials: "No Confidential Information shall be used by the receiving parties for any purpose other than preparing for and litigating this case (including appeals)." *Ibrahim* Protective Order ¶ 5. Moreover, the Protective Order restricts the persons who may be provided with confidential materials to those persons with a legitimate need to see the materials as part of their participation in these cases. *Id.* ¶ 6. The Protective Order

---

[1] A cynic might note that Plaintiffs began this fire drill the evening before Defendants' summary judgment reply memoranda were due.

prohibits persons bound by the order from disclosing any confidential materials or discussing their contents for any purpose other than those permitted by the Protective Order, *i.e.*, litigating the present action. *Id.* ¶ 7. The Protective Order also requires the parties to file under seal any pleadings containing or discussing confidential material. *Id.* ¶ 8.

The Protective Order expressly envisions that a party receiving confidential materials might receive a request for those materials from a third party, such as a governmental entity. In that respect, the Protective Order both prohibits a party from voluntarily providing another party's confidential materials to anyone not listed in the Protective Order, and requires a receiving party to give immediate notice of any subpoena to the party that produced the confidential materials. *Id.* ¶ 9. In that way, the Protective Order provides the producing party with the information and opportunity to protect its rights in its confidential material. A producing party retains the right, of course, to produce voluntarily *its own* confidential materials to government entities. The CACI Defendants have done just that, cooperating with a number of official government requests for information concerning CACI PT's provision of interrogators in support of the U.S. Army's mission in Iraq. *Id.* ¶ 7; O'Connor Decl. ¶ 2.

The *Ibrahim* Protective Order is, pursuant to the Court's subsequent Order, fully applicable to the *Saleh* action. June 29, 2006 Order, *Ibrahim v. Titan Corp.*, No. 04-1248 (D.D.C.) [Dkt. #66]. Moreover, the parties to the *Saleh* action, in response to the Court's direction to meet and confer regarding summary judgment discovery, expressly agreed that the *Ibrahim* Protective Order would apply. Meet and Confer Statement, *Saleh v. Titan Corp.*, No. 05-1165 (D.D.C.) [Dkt. # 73].

The Protective Order served the parties well during summary judgment discovery. The CACI Defendants designated documents as confidential under the Protective Order, as well as

excerpts from some of the depositions taken in these cases. Indeed, the parties completed that discovery without seeking Court intervention concerning the operation of the Protective Order. While Plaintiffs assert that "most of the briefing in this matter has been filed under seal," Pl. Mot. at 1, that is not accurate. CACI's motion to dismiss and CACI's transfer papers were filed in the Court's public file, as were CACI's summary judgment motions, their supporting memoranda, and all related exhibits.[2]

Against this backdrop, Plaintiffs' counsel, Susan L. Burke, contacted Defendants' counsel by email at 5:44 pm on Thursday, August 2, 2007. In that email, Ms. Burke stated:

> We are filing a motion for a partial lift of the seal, which will permit us to provide the government with all of the papers filed under seal and under the protective order. Please let us know tonight if you are willing to consent to this motion.

O'Connor Decl., Ex. B at 3. CACI's counsel asked who in the "government" Plaintiffs wanted to provide copies of confidential materials, and whether there was a "reason [Plaintiffs] want/need to give them to whoever [Plaintiffs] mean by 'government,'" Ms. Burke declined to identify any government officials, responding only that Plaintiffs' counsel had "been asked for certain materials and want[ed] to be able to share them." *Id.* at 2-3

Disinclined to buy a pig in a poke, and in light of Plaintiffs' unwillingness to engage in any meaningful meet and confer process, Defendants did not consent to Plaintiffs' motion.

---

[2] Subsequent to Plaintiffs' request for consent to modify the protective order, the CACI Defendants filed their summary judgment reply under seal, as well as the papers accompanying that reply, as the reply papers quoted extensively from Plaintiffs' opposition (which was filed under seal), as well as from documents and depositions excerpts designated as confidential. The CACI Defendants duly filed in the Court's public file a redacted version of their reply memorandum that redacts descriptions of Plaintiffs' sealed opposition brief and documents designated as confidential. *See, e.g.*, Reply Mem. (Public Version), *Saleh v. Titan* [Dkt. #118]. Notably, many, if not most, of the redactions stem from the U.S. Army's designation of the entire Brady and Karpinski deposition transcripts as confidential under the protective order.

### III. ANALYSIS

#### A. Plaintiffs' Motion Seeks to Radically Rewrite the Protective Order

While Plaintiffs' motion offers only an abbreviated, almost perfunctory, discussion of the relief they seek, the result would be a near-total rewrite of the Protective Order. Specifically, Plaintiffs' motion would permit Plaintiffs' counsel to provide sealed materials and documents designated by other parties as confidential to *any* government official who expresses, in the judgment of Plaintiff's counsel, an interest in the documents. What Plaintiffs seek is the use of CACI's confidential material in pursuit of their collateral agenda.

Plaintiffs' counsel have been unabashed in communicating information about CACI to government officials, in urging government officials to act against CACI, and in seeking maximum media attention for this litigation. Given those efforts, , Plaintiffs' counsel could be expected to contact government officials to "assist" in determining whether those officials might be interested in CACI's confidential documents. There is no good reason to modify the Protective Order to facilitate a frolic and detour by Plaintiffs' counsel. Indeed, Plaintiffs' unwillingness to disclose the identity of the "government officials" that they would like to furnish with CACI's confidential materials suggests that Plaintiffs' purpose is hardly benign, that they are seeking the modification in order to "shop" CACI's confidential materials to anyone willing to express an "interest" in receiving them. That is not a legitimate reason to modify the Protective Order.

This exponential expansion of the Protective Order is also unnecessary. The Protective Order already allows government officials to be shown copies of confidential materials if they are being prepared to testify in these actions (such as the deponents in the summary judgment

depositions) and they are the author, recipient, or subject of a document marked as confidential. Protective Order ¶ 6(e). This was entirely satisfactory for summary judgment discovery.[3]

Plaintiffs' motion also effectively would eliminate Paragraph 9 of the Protective Order, which provides producing parties with rights in the event that a non-producing party receives a subpoena for confidential materials. The entire purpose of this provision is to give a producing party an opportunity to protect its interests by opposing any subpoena that would command production of the party's confidential materials. Plaintiffs' motion would eliminate this protection by allowing Plaintiffs to produce Defendants' confidential materials to "government officials" *in the absence of a subpoena*, and also would eliminate the producing party's right to object to such production.[4] Indeed, the likely scenario would not involve Plaintiffs passively responding to document requests from government officials, as those officials would make such requests directly to CACI in the first instance. Rather, the more likely result would be Plaintiffs actively contacting federal government employees and soliciting "interest" in CACI's confidential materials.

### B. Plaintiffs Cannot Meet, and Have Not Tried to Meet, the Requirements for Modification of a Protective Order

Protective orders play a vital role in "secur[ing] the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might

---

[3] LTC Kevin Robitaille of the U.S. Army's civil litigation division has been involved in these actions as the parties' liaison for requests for information from the United States Army or to comply with the *Touhy* regulations in seeking declarations and depositions from current or former Army personnel. LTC Robitaille also has represented the U.S. Army in these actions during the depositions of certain current and former soldiers. The CACI Defendants believe it unlikely that legitimate disputes will arise concerning materials that LTC Robitaille would need in performing this liaison role for the Army. There is no reason, however, why this cannot be dealt with on a case-by-case basis. This issue is dealt with in greater detail in Section III.B.1, *infra*.

[4] Moreover, the proposed amendment to the protective order would make it impossible to enforce any restrictions on dissemination of confidential materials, as the universe of persons with copies of confidential materials produced in these actions would increase considerably.

conceivably be relevant." *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979) (internal quotations and citations omitted). Because a protective order explicitly establishes the extent to which discovery materials will be available to persons and entities other than the litigants, and a party should be able to rely on the enforceability of a protective order, protective orders should not be modified "absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need." *Id.* at 296.

For these reasons, a threshold burden faced by parties seeking modification of a protective order is that they show good cause for the modification. *Alexander v. FBI*, 186 F.R.D. 99, 100 (D.D.C. 1998) (citing *Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, No. 93-Civ-6766, 1998 WL 23257, at *4 (S.D.N.Y. Jan. 2, 1998)); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, No. 99-3298, 2004 WL 2009414, at *2 (D.D.C. May 17, 2004); *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006) ("It should be no surprise that, there having been good cause to enter the protective order in the first place, there must be good cause before it can be vacated."). "'Good cause' implies changed circumstances or new situations; a continuing objection to the terms of an order does not constitute good cause to modify or withdraw a protective order." *Pogue*, 2004 WL 2009414, at *2.

Where a movant is able to make a sufficient showing of good cause, a court considering a motion to modify a protective order also considers the type of protective order at issue, the foreseeability of the requested modification, and the extent to which the parties have acted in reliance on the existing protective order in determining whether a modification is warranted. Plaintiffs cannot make the required showing of "good cause," and the other factors similarly argue against the radical modifications requested by Plaintiffs.

### 1. Plaintiffs Have Not Shown "Good Cause" for the Requested Modification

Plaintiffs profess a desire to "share" CACI's confidential material with any and all United States "government officials," which has more than 2 million civilian employees. Significantly, the United States has not sought access to confidential materials in this litigation. The proper procedure when a third party desires access to materials subject to a protective order is for the third party to intervene for the limited purpose of seeking modification of the protective order. *See, e.g.*, *Peskoff v. Faber*, 230 F.R.D. 25, 31 (D.D.C. 2005) ("Like every other circuit to consider the issue, this Circuit has held that permissive intervention is the proper procedure for a non-party to seek modification of a protective order.") (quoting *In re Vitamins Antitrust Litig.*, No. MISC 99-197, 2001 WL 34088808, at *5 (D.D.C. Mar. 19, 2001)). None of the unnamed "government officials" to whom Plaintiffs would like to provide copies of CACI's confidential documents, however, has intervened or attempted to make a showing of good cause.

The absence of government intervention is not surprising. The CACI Defendants' stated position has at all times been one of cooperation with official government investigations relating to CACI PT's provision of interrogators in Iraq, as well as investigations of detainee abuse in Iraq. No government entity has seen a need to institute proceedings to compel the CACI Defendants to produce documents, and no government report has indicated any difficulty in obtaining information from CACI. Government agencies seeking information relating to official government inquiries know how to obtain information relating to CACI: they ask CACI. They do not need to use this case as a vehicle for obtaining CACI-related documents for uses other than the litigation of these cases.

Plaintiffs, however, attempt to speak for the United States in explaining the basis for their motion:

> Although the United States is not a party to this litigation, there is a substantial benefit to the conduct of the litigation if parties are able to share information with the United States. For example, LTC Robitaille of the United States Army has been working with the Plaintiffs to collect and produce non-classified documents bearing on the allegations in the litigation. LTC Robitaille also has been and will continue to represent the Army's interests by attending the depositions. In that context, LTC Robitaille expressed to undersigned counsel an interest in reviewing the summary judgment pleadings and their attachments.

Pl. Mot. at 1-2. This passage is remarkable for what it does not say. Plaintiffs do not assert that LTC Robitaille has a need for sealed or confidential materials in order to work with Plaintiffs on documents they are seeking from the United States Army, much less explain why this would be so. Rather, Plaintiffs make two separate representations – (1) that they have been in contact with LTC Robitaille in requesting documents from the Army under FOIA; and (2) that LTC Robitaille has expressed an interest in reviewing the summary judgment papers. The implication is that there is some relationship between the two facts. There is no evidence of that, however, and as the O'Connor Declaration provides, his conversation with LTC Robitaille revealed that LTC Robitaille has no need to see any sealed filings here. O'Connor Decl. ¶¶ 3-4. Worse yet, it confirmed beyond cavil the disingenuous nature of Plaintiffs' motion.

Plaintiffs' motion attempts to use LTC Robitaille's role as the Army's liaison for the parties *in this case* as a wedge to obtain something far greater: Court permission to provide confidential documents to anyone else in the federal government who *is not involved in this case*. That argument is a *non-sequitur*. If LTC Robitaille needs certain documents either filed under seal or designated as confidential in order to respond to the parties' requests for information from the United States Army, the CACI Defendants are perfectly willing to discuss the circumstances under which such disclosure would be permissible. But Plaintiffs' motion is not about LTC Robitaille. It is about giving Plaintiffs' counsel advance permission to provide CACI's

9

confidential materials to *whomever they want* in the United States government. That request cannot be justified by the fact that the one Army official involved in the present actions expressed an interest in seeing some of the pleadings. Indeed, Plaintiffs' refusal to identify the "certain government officials" to whom Plaintiffs want to provide confidential materials indicates that they are seeking to use LTC Robitaille's role in the litigation as a stalking horse for obtaining relief that has nothing to do with LTC Robitaille and his efforts.

Moreover, as the court noted in *Pogue*, 2004 WL 2009414, at *2, a showing of "good cause" implies changed circumstances. Plaintiffs have pointed to no changed circumstances that support a fundamental series of changes to the protective order to which the parties agreed, and the Court entered, in 2006.

### 2. The Other Relevant Considerations Require Denial of Plaintiffs' Motion

Because Plaintiffs have not made, and cannot make, a showing of "good cause" for the radical modification of the protective order that they seek, the Court can deny Plaintiffs' motion on that basis alone. *Alexander*, 186 F.R.D. at 100 (describing "good cause" as a requirement for modifying a protective order); *Pogue*, 2004 WL 2009414, at *2 (same). In addition, however, the factors considered by courts even where a showing of good cause has been made (the nature of the protective order, the foreseeability of the requested modification, and reliance on the existing protective order) strongly support denial of Plaintiffs' motion.

As the court explained in *Pogue*, "[b]lanket protective orders serve interests of just, prompt and efficient resolution of complex actions because they promote the judicial preference that parties work out discovery issues without court intervention, allow parties to object to any specific confidentiality designation, and provide parties with the option of judicial intervention where they are unable to resolve a matter independently." 2004 WL 2009414, at *3 (internal

10

quotations and alterations omitted) (quoting *Standard Chlorine of Del., Inc. v. Sinibaldi*, 821 F. Supp. 232, 256 (D. Del. 1992)).  Therefore, a blanket protective order is an appropriate vehicle for a complex matter such as the present actions.

With respect to the foreseeability of the requested modification to the protective order, amendments to protective orders are disfavored when a party could have foreseen, at the time the protective order was agreed to and entered, the issues that the party later claims support modification of the protective order.  *Pogue*, 2004 WL 2009414, at *3.  There are no unforeseen circumstances here.  It was eminently foreseeable that the parties would have dealings with the United States, given that Plaintiffs' claims arise out of injuries Plaintiffs allegedly received while detained in a United States Army combat-zone detention facility, and the *Saleh* Plaintiffs alleged that their injuries were caused by a vast "Torture Conspiracy" running from the Secretary of Defense through all levels of the United States Army and including Defendants.  *See, e.g.*, Third Am. Compl. ¶¶ 28-30, 97-107.

Finally, the CACI Defendants have acted in reliance on the existing protective order.  *See Pogue*, 2004 WL 2009414, at *4 (modification of protective order inappropriate where a party has acted in reliance on the terms of the protective order); *see also AT&T v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005) ("It is 'presumptively unfair for courts to modify protective orders which ensure confidentiality and upon which the parties have reasonably relied.'" (quoting *SEC v. The Street.com*, 273 F.3d 222, 230 (2d Cir. 2001))).  Quite simply, the CACI Defendants would not have produced certain documents but for the protections of the Protective Order.

During the course of summary judgment discovery, Plaintiffs sought production of all documents produced in an unrelated case in which the CACI Defendants sued a talk radio host, Randi Rhodes, for defamation.  The issues in the defamation case are different from the issue of

11

supervision, direction and control that are front and center before the Court on summary judgment.  For that reason, the CACI Defendants objected to the document request.  In a conference call with the Court, the Court indicated that it wanted Plaintiffs' counsel to review the production from the defamation case (approximately eight boxes of documents) and to identify documents they believed were relevant.  If the parties could not agree on what CACI should produce, the Court would resolve any disputes.

After Plaintiffs' counsel's first visit to review the production from the defamation case, it became clear that Plaintiffs were not proceeding in good faith.  Plaintiffs' counsel refused to tell CACI's counsel what documents they had been able to review, what documents among those reviewed they wanted CACI to produce, or when they would return to finish their review.  CACI's counsel concluded that Plaintiffs' counsel were intentionally delaying the completion of their review  to prevent their time for taking depositions from beginning to run. (The discovery schedule provided that plaintiffs would have 90 days after the completion of document production to take depositions.)  The circumstances surrounding this episode are described in detail in Exhibit A to the O'Connor Declaration.

Rather than engaging in the never-ending discovery battle that Plaintiffs' counsel seemed determined to engineer, and in order to move the summary judgment motions along, the CACI Defendants decided to produce to Plaintiffs' counsel the entire document production from the defamation action, even though virtually none of those documents were relevant to the summary judgment motions.  CACI did that, designating those documents as confidential under the Protective Order.

The CACI Defendants *never* would have produced the entire production from the defamation action if the Protective Order were not in place.  O'Connor Declaration ¶ 9.  Rather,

the CACI Defendants would have required Plaintiffs to identify the documents they contended were relevant to the summary judgment motions and would have addressed with the Court (on a document-by-document basis) any documents as to which the parties disagreed on relevance. O'Connor Decl. ¶¶ 6-9. Thus, even if Plaintiffs could point to changed circumstances that ordinarily might provide "good cause" to modify a protective order, the other factors considered by courts on such motions require that Plaintiffs' motion be denied.

### IV.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to amend the Protective Order.

Respectfully submitted,

*/s/  John F. O'Connor*

J. William Koegel, Jr. (Bar No. 323402)
John F. O'Connor (Bar No. 460688)
Frank H. Griffin, IV (Bar No. 481446)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

*Attorneys for Defendants CACI International Inc. and CACI PT Inc*

August 10, 2007