IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IBRAHIM, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TITAN CORP., *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 04-CV-1248 (JR) |
| SALEH, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TITAN CORP., *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 05-CV-1165 (JR) |

**DECLARATION OF JOHN F. O'CONNOR**

I, John F. O'Connor, hereby declare as follows:

    1.    I am a partner in the law firm of Steptoe & Johnson LLP, and one of the counsel of record for Defendants CACI Premier Technology, Inc., and CACI International Inc (collectively, the "CACI Defendants") in the above-captioned actions. I submit this Declaration in connection with the CACI Defendants' Opposition to Plaintiffs' Motion for a Partial Lift of the Seal and Amendment to the Protective Order.

    2.    Since late April 2004, I have been one of the attorneys representing the CACI Defendants with respect to issues arising out of the provision by CACI Premier Technology, Inc.

("CACI PT") of interrogators in support of the United States Army's mission in Iraq. In the course of that representation, I am personally aware of numerous inquiries and investigations by government agencies, appointed investigating officers, and congressional committees relating to allegations of detainee abuse in Iraq and/or the involvement of CACI PT in providing interrogators in Iraq. The position of the CACI Defendants with respect to such inquiries has been one of full cooperation. I am unaware of any nonprivileged documents requested during the course of these official government inquiries that the CACI Defendants have declined to provide.

3.     On August 7, 2007, I participated in a telephone conference with LTC Kevin Robitaille, U.S. Army, regarding Plaintiffs' motion. Other participants in the telephone call were Ari Zymelman and Greg Bowman, both of whom represent Titan Corporation. In that conversation, LTC Robitaille explained that he had been involved in communications with Susan L. Burke, Esq., one of Plaintiffs' counsel in the *Saleh* case, concerning a *Touhy* request made by Ms. Burke. LTC Robitaille explained that, during the course of his conversations with Ms. Burke, Ms. Burke mentioned the summary judgment opposition that Plaintiffs had filed under seal and asked LTC Robitaille if it would help him respond to the *Touhy* requests each side have filed. LTC Robitaille explained to me that he responded, "yes" to Ms. Burke's inquiry. When we asked LTC Robitaille whether he needed to see the sealed summary judgment papers in order to respond to Ms. Burke's pending *Touhy* requests, LTC Robitaille stated that he did need to know what the summary judgment issues were in order to handle the pending requests, but that he had an understanding of those issues from his prior involvement in the case, including his participation in the depositions of Colonel Brady, Colonel Karpinski, CW3 Rumminger, and Anthony Lagouranis. LTC Robitaille further stated that his inability to see the sealed portions of the parties' summary judgment papers did not render him unable to respond to Plaintiffs' *Touhy*

requests, and that if he had needed access to the sealed summary judgment papers he would have contacted all counsel with that request rather than expressing such a sentiment solely to Ms. Burke.

4.      During my August 7, 2007 conversation with LTC Robitaille, we asked LTC Robitaille whether there was anything from these cases that he needed in order to deal with any pending *Touhy* requests from Plaintiffs' counsel. He responded that there was not.

5.      Prior to filing this Declaration, I provided a copy of Paragraphs 3 and 4 of the Declaration to LTC Robitaille to ensure that it accurately reflected our August 7, 2007 conversation. LTC Robitaille agreed that the description that is now in Paragraphs 3 and 4 of this Declaration is a fair description of our conversation.

6.      On December 18, 2006, I participated in conference call with the Court in which Ms. Burke also participated. During that call, Plaintiffs asked the Court to require the CACI Defendants to produce to Plaintiffs all of the documents produced in the *Rhodes* case, a defamation action filed by the CACI Defendants against a talk radio host. On behalf of the CACI Defendants, I opposed Plaintiffs' request on the grounds that the issues in the *Rhodes* case were very different from the command and control issues relevant to the pending summary judgment motions. The Court indicated during the conference call that it would be inclined to permit Plaintiffs' counsel to review the *Rhodes* production – approximately eight boxes of documents – in our offices in order to identify any documents that Plaintiffs contended were relevant to the summary judgment issues, with the Court to resolve relevance issues that might arise with respect to particular documents.

7.      Based on the Court's statement of its view of the matter, I wrote to Plaintiffs' counsel and advised that we would make the *Rhodes* production available for review in our offices on reasonable notice. Plaintiffs' counsel did not come to our offices to begin this review

until January 11, 2007. At that time, three of Plaintiffs' counsel (Ms. Burke and Messrs. Pyle and Foret) began a review of the *Rhodes* production. When the document review began, we asked Plaintiffs' counsel to either tab the documents that they contended were relevant or to provide us a list of Bates numbers, whichever method they found more convenient. At the end of the first day's review, however, we learned that Plaintiffs' counsel did not tab any documents and were not willing to provide a list of Bates numbers for documents they had identified as supposedly relevant to the summary judgment motions. It was reported to me by one of my colleagues that Ms. Burke stated, in refusing to identify the documents they had identified as supposedly relevant during their first day of review that they would be requesting "most" of the production and that Plaintiffs would have to go back to Court to get the documents that they wanted anyway. Plaintiffs' counsel also left without proposing dates for a return visit. I asked Ms. Burke several times to propose a date for a second day of document review, but she declined to do so until eleven days after the first document review, when she proposed a return visit on February 1, 2007. I also asked Ms. Burke several times to provide a list of the documents from Plaintiffs' counsel's first day of document review that Plaintiffs intended to seek production of so that the parties could begin the meet and confer process. Ms. Burke refused, and even refused to identify the boxes that they had finished reviewing during their first visit.

       8.      Based on all of these interactions, I formed my own conclusion that Plaintiffs were not proceeding in good faith. I formed the belief that Plaintiffs were intentionally delaying completion of their review of the *Rhodes* production in order to delay the date on which their ninety-day window for taking summary judgment depositions would close. I also came to the conclusion that Plaintiffs were not going to make a good-faith effort to identify the documents that they believed were actually relevant to the summary judgment motions, but instead were going to go back to the Court and make a claim that they needed *all* of the *Rhodes* production.

Based on Plaintiffs' counsel's conduct to date, and the likelihood that continued wrangling over the *Rhodes* production would lead to wasteful additional litigation and would delay resolution of the summary judgment motions, the CACI Defendants and their counsel decided in late January 2007 to simply produce all of the *Rhodes* production to Plaintiffs' counsel, which would move the summary judgment motions along. Therefore, we transmitted copies of the *Rhodes* production in its entirety to Plaintiffs' counsel on or about January 24, 2007, accompanied by a letter (attached hereto as Exhibit A) that detailed the parties' machinations that led to the CACI Defendants' decision to produce the entire *Rhodes* production.

9. Central to the CACI Defendants' decision to produce the entire *Rhodes* production was the fact that there was an existing protective order in place that would restrict Plaintiffs' counsel's use and dissemination of the materials produced. Therefore, even though we believed that virtually all of the *Rhodes* production was irrelevant to the summary judgment issues, any prejudice to the CACI Defendants would be minimized (and perhaps eliminated) by the restrictions the protective order imposed on Plaintiffs' counsel's use and dissemination of the *Rhodes* production. Without a protective order that so restricted Plaintiffs' counsel's right to use and disseminate confidential documents, we never would have decided to produce the entirety of the *Rhodes* production. Instead, we would have insisted that Plaintiffs' counsel provide a list of documents they wanted produced and litigated before the Court as to the relevance of such documents to the summary judgment issues where appropriate.

10. Exhibit B hereto is a true copy of a collection of email communications between Plaintiffs' counsel and Defendants' counsel concerning Plaintiffs' request that Defendants consent to Plaintiffs' motion to amend the protective order applicable to these cases. On Friday, August 3, 2007, at our request, Ms. Burke provided a copy of Plaintiffs' draft motion and proposed order, but continued to refuse to identify the "government officials" Plaintiffs intended

to provide with the CACI Defendants' confidential materials, taking the position that the order Plaintiffs sought would permit dissemination to any and all government officials so Defendants did not need to know the identity of particular intended recipients.

11.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed at Washington, D.C., this 3rd day of August, 2007.

/s/ John F. O'Connor
John F. O'Connor

# EXHIBIT A

# STEPTOE & JOHNSON LLP
### ATTORNEYS AT LAW

John F. O'Connor
202.429.8095
joconnor@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

January 24, 2007

Susan L. Burke, Esq. (by overnight delivery)
Burke Pyle LLC
4112 Station Street
Philadelphia, Pennsylvania 19127

L. Palmer Foret, Esq. (by messenger)
The Law Firm of L. Palmer Foret, P.C.
1735 20th Street, N.W.
Washington, D.C. 20009

    Re: *Saleh, et al. v. Titan Corp., et al.*
          No. 05-1165 (D.C.)

          *Ibrahim, et al. v. Titan Corp., et al.,*
          No. 04-1248 (D.D.C.)

Dear Susan and Palmer:

    Enclosed please find the entirety of the CACI Defendants' production of documents in the *Rhodes* action. With this production, the CACI Defendants have completed their production of documents for the summary judgment stage of these actions. Plaintiffs' window for taking depositions for their summary judgment opposition now commences.

    In producing the entirety of the CACI Defendants' production from the *Rhodes* case, we believe it appropriate to make a few observations. The hearing on the *Saleh* Plaintiffs' Rule 56(f) affidavit took place on November 20, 2006, more than two months ago. At that hearing, the Court ruled on a few matters in dispute and the parties agreed to confer to apply the Court's rulings to issues that had not been addressed expressly by the Court. Although we agreed to have a conference call for this purpose on November 21, 2006, Susan canceled that call due to scheduling difficulties. Since then, Plaintiffs have acted in a manner consistent only with a desire to delay summary judgment discovery as long as possible.

    The foot dragging began when we attempted to reschedule the conference call that we had set for November 21, 2006. You needed, so you said, to obtain a transcript of the November 20, 2006 hearing before we could proceed. So we waited for that, had our conference call with you, and then – unsurprisingly – needed to schedule a call with the court. By the time that could occur, a month had passed.

STEPTOE & JOHNSON LLP

Susan L. Burke, Esq.
L. Palmer Foret, Esq.
January 24, 2007
Page 2

On December 18, 2006, the Court resolved the single discovery dispute remaining between the parties – production of documents produced by the CACI Defendants in the *Rhodes* action – by stating that the CACI Defendants should allow Plaintiffs to review that production and identify documents that they believed were necessary for their summary judgment opposition. On December 21, 2006, I wrote to you to advise that the production was available for your review on reasonable notice. Nevertheless, you chose not to begin any review of these documents for three weeks, until January 11, 2007. Susan then opened that session, without having reviewed a single *Rhodes* document, with a statement to our associate that the parties were going to wind up in court regarding the *Rhodes* documents.

At that time, we asked you to identify documents from the production that you believed were relevant to the pending summary judgment motion by either tabbing the documents or by providing us with a list of Bates numbers. At the conclusion of that day's review of the documents (comprising eight boxes), we learned that you did not tab documents that you want us to produce, and you failed to provide us with a Bates number list of such documents. You advised that you were going to need to come back for further review, but would not even identify the boxes that you had finished reviewing.

Notably, you left after the first day of document review without providing us with proposed dates for a return visit. Indeed, when Bill Koegel contacted you the next day to inquire when you would return, Ms. Burke responded by stating that Plaintiffs' counsel "would be back in touch on dates" and declining (once again) to provide a list of the documents reviewed thus far that you believe are relevant to the summary judgment motions. When pressed, Ms. Burke advised that you would not even get back to counsel for the CACI Defendants with a proposed date for further review of the documents until later in the week or next. Ms. Burke also refused additional requests to provide a list of documents sought by Plaintiffs from their review thus far so that we could determine if there were any objection, with Ms. Burke merely stating that she anticipated Plaintiffs seeking production of most of the eight boxes of documents.

You then waited until this week to even propose a time for further review, and then suggested two more days in early February.

Suffice it to say, we do not believe that you have conducted the *Rhodes* document review in good faith. Judge Robertson envisioned Plaintiffs identifying the documents that they actually believed are needed for their summary judgment opposition and then affording the CACI Defendants an opportunity to determine whether they objected to the production of the requested documents. That three attorneys were here on January 11, 2007 reviewing documents (with Mr. Pyle taking notes on the documents' contents on a laptop) and Plaintiffs *still* have refused to provide a list of documents sought demonstrates that Plaintiffs never intended to engage in a

STEPTOE & JOHNSON LLP

Susan L. Burke, Esq.
L. Palmer Foret, Esq.
January 24, 2007
Page 3

good-faith discussion with respect to the documents for which you claim a need. From our perspective, your plan is to continue a strategy of delaying the conclusion of document discovery and to throw everything back to Judge Robertson with an overbroad and unparticularized claim to need most of the *Rhodes* production.

To be clear, the CACI Defendants believe that little to nothing within the *Rhodes* production has any bearing on the pending summary judgment motions. Nevertheless, to put an end to your delaying tactics, to get on with the summary judgment process, and to avoid the expense associated with a manufactured discovery dispute, the CACI Defendants have elected to provide you with the entire *Rhodes* production. These documents are designated as confidential under the applicable protective orders in these cases.

This production ends all pending document discovery disputes, completes our document production, and starts the period permitted for deposition discovery.

Very truly yours,

John O'Connor /FHG
John F. O'Connor

/lpc

# EXHIBIT B

## O'Connor, John

**From:** Susan Burke [sburke@burkeoneilllc.com]
**Sent:** Thursday, August 02, 2007 10:16 PM
**To:** 'Zymelman, Ari'; O'Connor, John; Koegel, William; 'Bowman, F. Greg'
**Cc:** khawkins@burkeoneilllc.com; woneil@burkeoneilllc.com
**Subject:** RE: motion for partial lift seal

We are seeking to be able to share the information with all government officials. We would expect anyone receiving the information to abide by the protective order. What difference does it make who we want to share it with? We are not seeking a limited order that would cover only a particular person. Rather, we are seeking an order that permits the information to be shared with any government official. Thus, we are seeking defendants consent to an order that permits the sharing of information with the government. Please advise as to your position. If it is impossible for you to formulate a position, we will simply make a note to that effect in the motion.

Susan L. Burke
Burke O'Neil LLC
4112 Station Street
Philadelphia, PA 19127
215.487.6596
215.971.5058 (cell)
215.482.0874 (fax)

This message may contain privileged and confidential information. If you are not the intended recipient, please alert me and delete the message. Thank you.

---

**From:** Zymelman, Ari [mailto:AZymelman@wc.com]
**Sent:** Thursday, August 02, 2007 10:06 PM
**To:** Susan Burke; O'Connor, John; Koegel, William; Bowman, F. Greg
**Cc:** khawkins@burkeoneilllc.com; woneil@burkeoneilllc.com
**Subject:** RE: motion for partial lift seal
**Importance:** High

Susan,

It is ridiculous for you to write at 5:45 pm asking for our position "tonight." That does not conform with your meet and confer requirements, especially for something so "unemergency" as your desire to share unidentified materials with unidentified government officials.

Your refusal to identify what you want to share, and with whom, and whether they will abide by the terms of the protective order is similarly in default of your meet and confer obligations. You will certainly have to identify this information in any motion you file. Your failure to give us the information in advance to let us consider in consultation with our client whether we will consent makes a mockery of the meet and confer process.

Under these circumstances, Titan is unable to consent.

Ari S. Zymelman
Williams & Connolly LLP
725 12th Street, NW
Washington, DC. 20005
(202) 434-5446 (tel)
(202) 434-5029 (fax)
azymelman@wc.com

---

**From:** Susan Burke [mailto:sburke@burkeoneilllc.com]
**Sent:** Thursday, August 02, 2007 8:47 PM
**To:** 'O'Connor, John'; 'Koegel, William'; Bowman, F. Greg; Zymelman, Ari
**Cc:** khawkins@burkeoneilllc.com; woneil@burkeoneilllc.com
**Subject:** RE: motion for partial lift seal

Yes.

Susan L. Burke
Burke O'Neil LLC
4112 Station Street
Philadelphia, PA 19127
215.487.6596
215.971.5058 (cell)
215.482.0874 (fax)

This message may contain privileged and confidential information. If you are not the intended recipient, please alert me and delete the message. Thank you.

---

**From:** O'Connor, John [mailto:joconnor@steptoe.com]
**Sent:** Thursday, August 02, 2007 6:47 PM
**To:** sburke@burkeoneilllc.com; Koegel, William; FBowman@wc.com; AZymelman@wc.com
**Cc:** khawkins@burkeoneilllc.com; woneil@burkeoneilllc.com
**Subject:** Re: motion for partial lift seal


"United States government officials" is sort of a broad answer. Should I assume from your response that you're not going to tell us who would get them and what documents they want?

----- Original Message -----
From: Susan Burke <sburke@burkeoneilllc.com>
To: O'Connor, John; Koegel, William; FBowman@wc.com <FBowman@wc.com>; AZymelman@wc.com <AZymelman@wc.com>
Cc: khawkins@burkeoneilllc.com <khawkins@burkeoneilllc.com>; woneil@burkeoneilllc.com <woneil@burkeoneilllc.com>
Sent: Thu Aug 02 18:29:20 2007
Subject: RE: motion for partial lift seal

By government, we mean United States government officials. We have been asked for certain materials and want to be able to share them.

Susan L. Burke
Burke O'Neil LLC
4112 Station Street

Philadelphia, PA 19127
215.487.6596

215.971.5058 (cell)
215.482.0874 (fax)

This message may contain privileged and confidential information. If you are not the intended recipient, please alert me and delete the message. Thank you.

---

From: O'Connor, John [mailto:joconnor@steptoe.com]
Sent: Thursday, August 02, 2007 5:57 PM
To: sburke@burkeoneilllc.com; Koegel, William; FBowman@wc.com; AZymelman@wc.com
Cc: khawkins@burkeoneilllc.com; woneil@burkeoneilllc.com
Subject: Re: motion for partial lift seal


Oh, and to get my questions all in at once, who do you mean by "government" and is there a reason you want/need to give them to whoever you mean by "government"?

----- Original Message -----
From: Susan Burke <sburke@burkeoneilllc.com>
To: Koegel, William; O'Connor, John; 'Bowman, F. Greg' <FBowman@wc.com>; 'Zymelman, Ari' <AZymelman@wc.com>
Cc: khawkins@burkeoneilllc.com <khawkins@burkeoneilllc.com>; woneil@burkeoneilllc.com <woneil@burkeoneilllc.com>
Sent: Thu Aug 02 17:44:24 2007
Subject: motion for partial lift seal

Gentlemen,

  We are filing a motion for a partial lift of the seal, which will permit us to provide the government with all of the papers filed under seal and under the protective order. Please let us know tonight if you are willing to consent to this motion.


  We are also submitting the annotated versions of the Karpinski and Lagouranis Declarations, which you already have in hand.


Susan L. Burke
Burke O'Neil LLC
4112 Station Street
Philadelphia, PA 19127
215.487.6596

215.971.5058 (cell)
215.482.0874 (fax)

This message may contain privileged and confidential information. If you are not the intended recipient, please alert me and delete the message. Thank you.

-------------------------------------------------------------------------
NOTICE:

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply or by telephone (call us collect at (202) 434-5000) and immediately delete this message and all its attachments.

==============================================================================

8/10/2007