IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IBRAHIM, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 04-CV-1248 (JR) |
| v. | ) ) ) | |
| TITAN CORP., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| SALEH, *et al.*, | ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 05-CV-1165 (JR) |
| v. | ) ) ) | |
| TITAN CORP., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**POST-HEARING MEMORANDUM OF CACI INTERNATIONAL INC AND CACI PREMIER TECHNOLOGY, INC., IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

J. William Koegel, Jr. (Bar No. 323402)
John F. O'Connor (Bar No. 460688)
Frank H. Griffin, IV (Bar No. 481446)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:   (202) 429-3000
Facsimile:   (202) 429-3902

*Counsel for Defendants CACI International Inc and CACI Premier Technology, Inc.*

# TABLE OF CONTENTS

I. THE PREEMPTION STANDARD FOR CONTRACTORS' COMBATANT ACTIVITIES ...................................................................................................... 1

II. THE STANDARD FOR SUMMARY JUDGMENT ON THE AFFIRMATIVE DEFENSE ........................................................................................................... 4

III. ARMY REGULATION 715-9 DOES NOT TRUMP THE MATERIAL FACTS ............. 5

IV. DANIEL PORVAZNIK DID NOT EXERCISE OPERATIONAL CONTROL ................ 6

V. A TRIAL OF THIS ACTION IS INFEASIBLE AND WOULD NOT COMPORT WITH DUE PROCESS ........................................................................................ 8

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..............9, 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............4, 5

*Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486 (C.D. Cal. 1993)..............3, 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..............4

*Diamond v. Atwood*, 43 F.3d 1538 (D.C. Cir. 1995)..............4

*Doe v. Exxon Mobil Corp.*, 473 F.3d 345 (D.C. Cir. 2007)..............8

*Drs. Groover, Christie & Merritt, P.C. v. Burke*, 917 A.2d 1110 (D.C. 2007)..............8

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007), *cert. denied*, ___ U.S. ___, 2007 WL 1646914 (Oct. 9, 2007)..............10

*Gammill v. United States*, 727 F.2d 950 (10th Cir. 1984)..............5

*Greene v. Dalton*, 164 F.3d 671 (D.C. Cir. 1999)..............4

*Hamdi v. Rumsfeld*, 124 S. Ct. 2633 (2004)..............2

*Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329 (11th Cir. 2003)..............3

*Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10 (D.D.C. 2005)..............3, 5, 6, 7, 8

*Johnson v. United States*, 170 F.2d 767 (9th Cir. 1948)..............2, 3, 6

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)..............8

*Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992)..............1, 2, 3, 6

*In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171 (D.C. Cir. 1987)..............8

*McGhee v. ARAMCO*, 871 F.2d 1412 (9th Cir. 1989)..............8

*McMahon v. Presidential Airways, Inc.*, 460 F. Supp. 1315 (M.D. Fla. 2006)..............3

*McMahon v. Presidential Airways, Inc.*, __ F.3d __, 2007 WL 2891086 (11th Cir. 2007)..............3

*Orloff v. Willoughby*, 345 U.S. 83 (1953)..............3

*People ex rel. Village of Broadview v. Village of N. Riverside, Ill.*, No. 05-C-4737, 2006
    WL 1156549 (N.D. Ill. Apr. 26, 2006) ............................................................................5

*Ex parte Quirin*, 317 U.S. 1 (1942) ..........................................................................................2

*Rostker v. Goldberg*, 453 U.S. 57 (1981) .................................................................................3

*United States v. Kisala*, 64 M.J. 50 (C.A.A.F. 2006) ..............................................................7

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ...........................................................................8

## STATUTES

28 U.S.C. § 2680(j) .....................................................................................................................1

I.  **THE PREEMPTION STANDARD FOR CONTRACTORS' COMBATANT ACTIVITIES**

At the summary judgment hearing, the Court invited the parties' input on refining the standard for evaluating "combatant activities" preemption with respect to government contractors. 10/3/07 Tr. at 4-5. The starting point for analysis is the combatant activities exception as applied to the United States.

Determining whether the United States can utilize the exception is straightforward. It is the nature of the activity and not the manner of performance that counts for purposes of the combatant activities exception. It is irrelevant whether duties were discharged properly or improperly. The *only* question is whether the challenged action constituted "combatant activity" for the United States to invoke the exception for claims arising out of the "combatant activities of the military. . . during time of war." 28 U.S.C. § 2680(j). *See Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992).

To determine whether claims against a civilian contractor arise out of "combatant activities of the military" may require further inquiry. When a government contractor invokes the combatant activities exception, the Court should assess the nature of the contractor's challenged activities and the degree of control exercised by the military over those activities. Examining the nature and circumstances of the activity is probative of whether it is *combatant* activity. Concomitantly, the military's supervision, direction or control speaks to whether the activity is the combat action "of the military," as the military conducts combatant activities through both soldiers and contractors. Where, as here, a contractor and the military are engaged in the very same activity in connection with actual hostilities, and the contractor is performing that work pursuant to military directive and subject to military control, then that activity constitutes "combatant activities of the military." Indeed, a contrary conclusion would interfere

with the military's prerogative to determine how best to conduct wartime operations, *e.g.,* whether to utilize a civilian contractor to perform a task. Subjecting that contractor to state law liability would also impose the very result that Congress sought to avoid – subjecting the United States' prosecution of a war to tort claims by enemy forces.

The nature of the activities challenged here, *i.e.,* interrogation in a war zone, is inherently combatant. For purposes of the FTCA, combatant activities "include not only physical violence, but activities both necessary to and in direct connection with actual hostilities." *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948). For that reason, "[a]iding others to swing the sword of battle is certainly a 'combatant activity.'" *Id.* The CACI PT interrogators were interrogating persons detained by the military in a combat zone detention facility, under regular mortar attack and threat of ground attack. Such battlefield intelligence efforts are in direct support of combat operations and constitute "combatant activities." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2640 (2004) (arrest and detention activities "by 'universal agreement and practice,' are 'important incident[s] of war'" (citing *Ex parte Quirin*, 317 U.S. 1 (1942))).

The Army's undisputed role in assigning interrogation tasks, approving interrogation plans, and dictating interrogation rules compels a finding of preemption here, as every purpose underlying the combatant activities exception would be frustrated if state tort laws could apply in these circumstances. Allowing tort claims would create state-imposed duties of care on federal combat operations when the combatant activities exception is founded on the notion that no such duties of care should exist. *Koohi*, 976 F.2d at 1337. It would allow states and judges, through the application of state tort law, to dictate the standards used by the Government in waging war whenever the United States, in its exercise of discretion, decides to use contractors for some part of the combat mission. In such a case, the United States would have to deploy contractors

knowing that their conduct is subject to state-law restrictions under which soldiers performing the same tasks do not operate, or the Government would be forced to eschew the use of contractors to eliminate state intrusion into the uniquely federal process of waging war.

The cases addressing the purpose of the combatant activities exception uniformly recognize that Congress determined that no state-law duty of care should be imposed on the battlefield, and that battlefield commanders should be unfettered by tort suits asserted by the very people upon whom military force is directed. *Koohi*, 976 F.2d at 1337; *Johnson*, 170 F.2d at 769; *Ibrahim*, 391 F. Supp. 2d at 18; *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486, 1493 (C.D. Cal. 1993).[1] The preemption applied in *Koohi* and *Bentzlin*, and recognized by this Court, is designed to leave the conduct of war in federal hands, rather than having states and judges dictate the conduct of war through a pronouncement that the Government may use contractors only if it submits the war effort to state tort law. *See Rostker v. Goldberg*, 453 U.S. 57, 66 (1981) ("The operation of a healthy deference to legislative and executive judgments in the area of military affairs is evident in several recent decisions of this court."); *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953) ("[J]udges are not given the task of running the Army."). Given the Army's

---

[1] Plaintiffs identified *McMahon v. Presidential Airways, Inc.*, 460 F. Supp. 1315 (M.D. Fla. 2006), as a recent case that should cause the Court to reconsider its conclusion that combatant activities preemption is available in this case. Pl. Opp. at 23. In *McMahon*, the court denied a Rule 12(b)(6) motion to dismiss based on the combatant activities exception on the grounds that *Boyle* preemption is unavailable for a service contract. *McMahon*, 460 F. Supp. 2d at 1330. On October 5, 2007, the Eleventh Circuit affirmed the district court's denial of the defendants' motion to dismiss on *Feres* immunity and political question grounds. *McMahon v. Presidential Airways, Inc.*, __F.3d __, 2007 WL 2891086 (11th Cir. 2007). In so holding, the Court acknowledged that some form of immunity might apply to the private contractor, but declined to determine the requirements of such immunity because the contractor had argued solely *Feres* immunity. *Id.* at *19-20. Even more important for present purposes, the Eleventh Circuit declined to address the district court's preemption ruling, finding that defendant lacked a right of interlocutory appeal, but the court expressly noted that the district court's conclusion that *Boyle* preemption cannot apply to service contracts was contrary to binding circuit precedent. *Id.* at *2 & n.5 (citing *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329 (11th Cir. 2003). Thus, while declining to reach the preemption issue, the Eleventh Circuit essentially eliminated the basis for the district court's preemption decision.

indisputable operational control of the intelligence collection effort by both soldiers and CACI PT interrogators, the purposes of the combatant activities exception compel the preemption of state tort claims against CACI PT just as such claims are barred as against the United States for interrogation activities conducted by soldiers.

## II. THE STANDARD FOR SUMMARY JUDGMENT ON THE AFFIRMATIVE DEFENSE

It is necessary to identify the contours of the combatant activities exception as applied to government contractors because the combatant activities exception is an affirmative defense. A party moving for summary judgment on an affirmative defense cannot carry the burden merely by pointing to the absence of evidence supporting the non-moving party's claim, but must demonstrate that there are no genuine issues of material fact concerning the elements of the affirmative defense. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C. Cir. 1995). When the movant has made this *prima* facie showing, the non-moving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999). If the non-movant's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). To determine which facts are "material," the court must look to the substantive law on which a claim rests. *Id.* at 248.

The only *material* facts with respect to preemption are those bearing on the extent to which the interrogation activities of CACI PT personnel were part of the Army's war effort and the structures of operational supervision and control. There is no genuine disputes on these issues. Plaintiffs' attempt to change the subject by focusing on CACI PT's (admitted) administrative oversight of its employees in Iraq cannot defeat summary judgment when the undisputed facts on the ground demonstrate the Army's total operational control of the

intelligence-gathering effort in connection with war zone operations.

## III. ARMY REGULATION 715-9 DOES NOT TRUMP THE MATERIAL FACTS

Plaintiffs seek to avoid the material facts by arguing that Army Regulation 715-9 should trump the facts on the ground. Plaintiffs' argument is but a backdoor attempt to challenge the validity of CACI PT's contract, a challenge for which they have no standing. Moreover, there is no good reason to disregard the ground truth of the military's operational control.

As a threshold matter, it is absurd that the very persons against whom the military determined to exercise military force would have standing to come into the courts of this country and seek to regulate the manner in which their captors exercise command and control. As this Court noted in *Ibrahim*, "[i]t would be difficult to devise a more effective fettering of a field commander than to allow the very enemies he is ordered to reduce to submission to call him to account in his own civil courts and divert his efforts and attention from the military offensive abroad to the legal defensive at home." *Id.* at 18 (quoting *Johnson v. Eisentrager*, 339 U.S. 763, 778 (1950)). Moreover, in the height of irony, Plaintiffs are trying to enforce their view of an Army regulation to require the Army to exercise *less* operational control over civilian interrogators than it actually did. Plaintiffs have no standing to pursue such a claim. *See, e.g., Gammill v. United States*, 727 F.2d 950, 953 n.4 (10th Cir. 1984) (no private right of action to challenge Army regulation); *People ex rel. Village of Broadview v. Village of N. Riverside, Ill.*, No. 05-C-4737, 2006 WL 1156549, at *5 (N.D. Ill. Apr. 26, 2006) (private party lacked standing to challenge Army regulation). Quite simply, a group of Abu Ghraib detainees cannot seek in this action – to which the United States is not a party – a determination that the Army violated Reg. 715-9 by exercising operational control over CACI PT interrogators. Even if the Army's absolute operational control over CACI interrogators did not comport with Reg. 715-9, that is of

no consequence here. The Army's decision to engage and control civilian contractors in performing interrogations was an essential component of the United States' combatant activities and therefore beyond the Plaintiffs' reach.

Second, courts assessing application of the combatant activities exception have always grounded their decisions on the facts as they occurred, and not the parties' dueling contentions as to how military operations *should have been conducted*. See *Koohi*, 976 F.2d at 1336-37; *Johnson*, 170 F.2d at 770; *Bentzlin*, 833 F. Supp. at 1494. Plaintiffs' request that the Court disregard the facts in favor of Plaintiffs' construction of an Army regulation would place this Court in the untenable position of deciding what the Army should do in a combat situation when faced with an exigent need for civilian interrogators. Indeed, this Court's decision in *Ibrahim* correctly observed that the salient facts concern the *actual* manner of operational supervision and not the supervision that exists on paper. *Ibrahim*, 391 F. Supp. 2d at 19.

## IV. DANIEL PORVAZNIK DID NOT EXERCISE OPERATIONAL CONTROL

At oral argument, the Court asked about "the role of [CACI PT employee] Daniel Porvaznik in this case." Mr. Porvaznik deployed to Iraq as a CACI PT interrogator. He also had the collateral position of CACI PT site lead at Abu Ghraib. A site lead provided *administrative supervision only*, "anything from insurance, pay issues, mail, living quarters." Porvaznik Dep. at 104. Mr. Porvaznik testified that he had no role in operational supervision, that "in the sense of the interrogation business, [the CACI PT personnel] worked along with, for, and again under command, control, and direction of the U.S. military." *Id.* at 317-18.

Mr. Porvaznik's testimony is fully supported by the documentary record and by all of the other witnesses on the ground. Exhibit 1 to the Griffin Declaration is an Army memorandum distributed at Abu Ghraib prison that explicitly notes that "[t]wo chains of command will be in effect – the operational and the administrative," and goes on to explain that the operational

- 6 -

chain of command includes the military section heads, noncommissioned officer in charge, and the officer in charge. The administrative chain of command did not run through the JIDC organization chart, but instead ran through either the civilian site lead or the higher headquarters first sergeant/commander, depending on whether the interrogator was a soldier or civilian. *Id.* But a single operational chain of command within the JIDC existed for both soldiers and civilian contractors. Indeed, the Army set out the operational chain of command at Abu Ghraib prison in an organizational chart attached as Exhibit 2 to the Griffin Declaration. Notably, all Tiger Teams, whether they had a military or civilian interrogator, reported to a military section leader and then to the JIDC NCOIC and OIC. *Id.* Consistent with CACI PT's lack of a role in operational control, neither Mr. Porvaznik nor any other CACI PT interrogator is reflected in a leadership position in that organizational chart.

Moreover, Plaintiffs' assertion that Mr. Porvaznik exercised operational control because he, on occasion, reviewed draft interrogation plans and, hypothetically speaking, would have advised a CACI PT interrogator to disobey an illegal order from the military, is a *non-sequitur*. As an experienced interrogator, it is unremarkable that less experienced interrogators might have sought Mr. Porvaznik's counsel from time to time on interrogation approaches. Regardless, however, the record is undisputed that Mr. Porvaznik was not an approval point for interrogation plans; that power rested solely in the hands of the military leadership. Porvaznik Dep. at 161-62, 325-26. As an experienced interrogator, Mr. Porvaznik could provide peer advice, but he could neither approve nor disapprove interrogation plans, nor did he assign the work to CACI PT interrogators. *Id.* at 132-33. Moreover, the fact that CACI PT interrogators would have been expected to disobey illegal orders from the military does not distinguish them from military interrogators, as soldiers have an identical duty not to obey an unlawful order. *United States v.*

*Kisala*, 64 M.J. 50, 52 (C.A.A.F. 2006); Rule for Court-Martial 916(d). Thus, Plaintiffs cannot contort Mr. Porvaznik's testimony to challenge the indisputable fact that the Army exercised operational control over CACI PT interrogators.

## V. A TRIAL OF THIS ACTION IS INFEASIBLE AND WOULD NOT COMPORT WITH DUE PROCESS

The choice of law question here leads to immunity and/or an insurmountable due process issue. The *Ibrahim* case would use District of Columbia choice of law rules to determine the governing law for Plaintiffs' tort claims. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 490 (1941). For tort claims, D.C. courts consider the interest of the various jurisdictions, paying particular attention to the place of injury, the place of the allegedly tortious conduct, the parties' domiciles, and the place where the relationship is centered. *Drs. Groover, Christie & Merritt, P.C. v. Burke*, 917 A.2d 1110, 1117 (D.C. 2007). These factors, not surprisingly, point overwhelmingly toward the application of Iraq law. CACI PT, however, is not subject to Iraqi laws in matters relating to its contract to provide interrogation services. *See* Coalition Provisional Authority Order No. 17. That immunity is itself sufficient to preclude trial, as immunity grants defendants the right to be free from trial. *See, e.g., Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 350 (D.C. Cir. 2007).

The only way that the case could proceed to trial would be if the Court, contrary to D.C.'s choice of law rules, applied the law of a State or D.C. That, however, would violate due process; it would be arbitrary and capricious to subject the CACI Defendants to state law for claims by Iraqis that they were abused in Iraq by contractors and soldiers deployed in a combat zone there.[2]

---

[2] The choice of law for the *Saleh* case is more complicated. The case originated in federal court in California. In diversity cases, state law claims are governed by the choice of law principles of the state in which the transferor court sits. *Van Dusen v. Barrack*, 376 U.S. 612,

- 8 -

Aside from the immunity and due process issues, the inherent difficulties in litigating wartime claims illustrate how a trial would present a host of extraordinary issues. Plaintiffs' ability to enter the United States to litigate this action is uncertain at best.[3] There is no doubt that the ranks of Abu Ghraib detainees included terrorists, jihadists and criminals – all ineligible to enter the United States. In addition, because Plaintiffs' credibility would be a paramount issue at any trial, having Plaintiffs, few of whom speak English, testify from a remote location would be grossly unfair to Defendants.

The testimony of countless DoD and military personnel would be necessary, given Plaintiffs' vast 'torture-for-profit' conspiracy theory. Similarly, Defendants would want access to Iraqis with information relevant to a Plaintiff's claims, but lack the ability to locate such witnesses and depose them in the war zone of Iraq. Plaintiffs' claims also are highly individualized, making this case wholly inappropriate for class certification. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624-25 (1997). Indeed, the individualized nature of Plaintiffs' claims demonstrates the inherent problems in trying a case such as this. To assess a Plaintiff's claim, the Defendants and fact finder will need access to the information that the United States has in its possession concerning the Plaintiff. Defendants will need to know whether the Plaintiff was actually detained, whether they were interrogated, if so, what the interrogation

---

639 (1964). But as the D.C. Circuit has observed, this rule is grounded in the principles underlying the *Erie* doctrine, and does not necessarily apply to non-diversity cases. *In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1173-74 (D.C. Cir. 1987). Here, there was no diversity jurisdiction until Plaintiffs dismissed CACI, N.V. *Ibrahim,* 391 F. Supp. 2d at 20. Therefore, District of Columbia choice of law rules may well govern the *Saleh* case as well. This may, however, be a distinction without a difference, as California choice of law rules likely point to Iraq law. *See, e.g., McGhee v. ARAMCO,* 871 F.2d 1412 (9th Cir. 1989).

[3] The website for the U.S. Embassy in Iraq states that it only accepts applications for three types of nonimmigrant visas (Diplomatic and Government officials, Representatives of International Organizations, and USG-funded exchange visitors.) All other visa applications must be filed at another U.S. Embassy outside of Iraq. http/iraq.usembassy.gov/iraq/consular.html. After submission of an application outside of Iraq, applicants are subjected to interviews, fingerprinting and examination of family histories. That information is then checked against military, FBI, State and Homeland Security databases.

revealed about the Plaintiff, whether Defendants' employees were involved in the interrogation, and whether the interrogation provides any evidence to support an allegation of abuse.

Plaintiff Saleh's administrative claim demonstrates why such evidence is necessary. Plaintiff Saleh made claims of severe abuse during his purported interrogations at Abu Ghraib, and also made the remarkable claim that the U.S. Army seized $79,000 in cash he was carrying when arrested. Griffin Decl., Ex. 3. The Army, with access to Saleh's records, determined that Saleh's claims were unsupported by any evidence. For example, Army records showed that Saleh was never interrogated, was never located at the Abu Ghraib site where abuse allegedly occurred, and that he was carrying about $28 when he was arrested. The Army's investigation concluded that Saleh had produced no evidence of abuse. *Id.*, Ex. 5 at 7-11. The fact is, claimants lie, and extensive discovery of United States records and personnel would be required to test the veracity of Plaintiffs' claims. Virtually all of the evidence relating to these Plaintiffs is in Government hands, and is likely to be classified, including the interrogation reports that are housed on a classified Army database. It is, of course, exclusively the province of the United States to assert the state secrets privilege. *See, e.g., El-Masri v. United States*, 479 F.3d 296, 303 (4th Cir. 2007), *cert. denied*, ___ U.S. ___, 2007 WL 1646914 (Oct. 9, 2007).

                                                    Respectfully submitted,

                                                    */s/ John F. O'Connor*
                                                    J. William Koegel, Jr. (Bar No. 323402)
                                                    John F. O'Connor (Bar No. 460688)
                                                    Frank H. Griffin, IV. (Bar. No. 481446)
                                                    STEPTOE & JOHNSON LLP
                                                    1330 Connecticut Avenue, N.W.
                                                    Washington, D.C. 20036
                                                    (202) 429-3000
                                                    *Counsel for Defendants CACI International*
                                                    *Inc and CACI Premier Technology, Inc.*

October 15, 2007