# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ILHAM NASSIR IBRAHIM, *et al.*,<br>     Plaintiffs,<br><br>     v.<br><br>THE TITAN CORPORATION, *et al.*,<br>     Defendants. | )<br>)<br>)<br>)  Civil Action No. 04-01248 (JR)<br>)<br>)<br>)<br>)<br>) |
| SALEH *et al.*,<br>     Plaintiffs,<br><br>     v.<br><br>THE TITAN CORPORATION *et al.*,<br>     Defendants. | )<br>)<br>)<br>)  Civil Action No. 05-1165 (JR)<br>)<br>)<br>)<br>)<br>) |

### *PLAINTIFFS' CONSOLIDATED SUBMISSION OPPOSING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT*

Pursuant to the Court's invitation during the October 3, 2007, oral argument, the *Saleh* and *Ibrahim* plaintiffs submit the following points for the Court's consideration.[1]

## ARGUMENT

In order to invoke the government contractor defense, defendants must prove that "a significant conflict exists between an identifiable federal policy or interest and the [operation] of state law, or the application of state law would frustrate specific objectives of federal legislation." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507 (1988) (internal quotation marks and cites omitted). Defendants have not come close to meeting this burden. The

---

[1] Because this submission is on behalf of both *Ibrahim* and *Saleh* plaintiffs, it slightly exceeds the ten pages allotted to individual parties.

combatant activities exception to the Federal Tort Claims Act's waiver of sovereign immunity has "never been extended to bar suits alleging active negligence by contractors in the provision of services," and should not be so extended by this Court. *McMahon v. Presidential Airways*, 460 F. Supp.2d 1315, 1331 (M.D. Fla. 2006); *see also Carmichael v. Kellogg, Brown & Root Svcs.*, 450 F.Supp.2d 1373, 1380 (N.D. Ga. 2006).[2]

## I.    HOLDING DEFENDANTS LIABLE WILL NOT INTERFERE WITH FIELD COMMANDERS' AUTHORITY TO COMMAND OR ABILITY TO CONTROL TROOPS IN BATTLE

Defense counsel claimed repeatedly at oral argument that holding the defendants accountable would harm the United States by interfering with the military's allegedly "absolute operational control" over CACI interrogators and Titan translators. *Oral Argument Tr. 6, 9, 13, 26, 57.* This is not accurate. *First*, it contradicts binding military regulations and Army doctrine. *Second*, the record demonstrates that the military had neither the legal authority to command nor the actual ability to control the defendants' employees on the ground in Iraq.

U.S. Army Regulation 715-9 states that military contractors must "perform the necessary supervisory and management functions of their employees," because "[c]ontractor employees are not under the direct supervision of military personnel in the chain of command." *U.S. Army Regulation 715-9, Contractors Accompanying the Force (Oct. 29, 1999) ("AR 715-9") § 3-2(f).* Similarly, the U.S. Army Field Manual on the use of contractors states that

> Maintaining discipline of contractor employees is the responsibility of the contractor's management structure, not the military chain of command. The contractor, through company policies, has the most immediate influence in dealing with infractions involving its employees. **It is the contractor who must**

---

[2] In response to plaintiffs' discussion of *McMahon* and *Carmichael* at oral arguments, Titan defense counsel asserted that it was "inappropriate" to cite them without prior notice. In fact, the plaintiffs had previously cited both cases on pages 22-23 of their Opposition to CACI's Motion for Summary Judgment on the Government Contractor Defense.

> **take direct responsibility and action for his employee's conduct**.

*U.S. Army Field Manual 3-100.21*, *Contractors on the Battlefield (Jan. 2003) ("FM 3-100.21")*

*§ 4-45* (emphasis added). Defense counsel's claims at oral arguments that these documents were

"not binding," and "aspirational in nature," *Oral Argument Tr. 15*, ██████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

The defendants' alternative argument, that the Court should disregard AR 715-9 because

it was "180 degrees from the facts on the ground in Iraq," *Oral Argument Tr. 15*, and "the facts

on the ground trump the regulations," *id. at 27*, is unsupported by the record. As the moving

parties, and the parties bearing the burden of proof at trial, the defendants must produce evidence

so compelling that no reasonable jury could find in favor of the plaintiffs on the question of

whether the military commanded and controlled CACI interrogators and Titan translators. But

the defendants have not produced a single affidavit from a single U.S. soldier attesting that he or

she personally exercised "absolute operational control"[3] over CACI interrogators or Titan

translators on the ground in Iraq.

---

[3] The defendants have also never precisely or consistently defined the distinction they draw
between "operational control" and "administrative control". The defendants note that military

CACI provided declarations from two military witnesses, Colonel William Brady and

Lieutenant Colonel Eugene Daniels. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

█████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

personnel in Iraq also answer to both an "operational chain of command" and an "administrative
chain of command," *Oral Argument Tr. 10*, but both military chains of command had the
authority to issue legally binding orders to soldiers, while no soldier could issue legally binding
orders to civilian contractors.  Titan's and CACI's Statements of Work both refer to contractors'
duty to provide supervision to their employees, making no distinction between "administrative"
and "operational" supervision. *Delivery Order 54 SOW (Consolidated Appendix C-1 in
Opposition to Titan's Motion for Summary Judgment) ("Titan Opp. Appendix  C-1") §§ C-1.1,
C-1.4.1.1; SOW for Delivery Order 35 ¶ 5 (CACI Opp. Appendix C-1).* ████████████
█████████████████████████████████████████████████████████
████████████████  Titan has described site managers as having a duty to "provide
operational direction to Titan linguists," *Titan Opp. Appendix C-28,* ████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████

4

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████

      Although the defendants have the burden of proof, it is the plaintiffs who have produced evidence from soldiers with firsthand knowledge of Titan translators' and CACI interrogators' performance in Iraq. Those soldiers have testified repeatedly that the military's lack of authority to command or discipline contractor personnel undermined their practical ability to control Titan and CACI employees. █████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████; *Sworn Statement of Staff Sergeant Neal (CACI Opp. Appendix C-28)* (when Sergeant Neal, the Tiger Team leader for CACI interrogator Timothy Dugan, instructed Dugan not to abuse prisoners, Dugan replied that "I have been doing this for 20 years and I do not need a 20 year old telling me how to do my job."); *Declaration of General Janis Karpinski (Titan Opp. Appendix A-1) ¶ 11,* ███████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████[4];

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[4] ██████████████████████████████████████████████████████████████
█████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████; *Sworn Statement of Sergeant Adams*

*(CACI Opp. Appendix C-27)* (describing difficulties with contract interrogator who "didn't view

the chain of command as something he needed to follow"); *Statement of Samuel Provance (CACI*

*Opp. Appendix C-32)* (contract interrogators behaved like supervisors of military interrogators).

This is consistent with the testimony of former Titan and CACI employees that

contractors were not subject to military orders, military discipline, or a military chain of

command.  *See Declaration of Thomas Crowley (Titan Opp. Appendix A-1); Declaration of*

*Marwan Mawiri (Titan. Opp. Appendix A-5)  ¶¶ 9, 10, 12, 14; Declaration of Torin Nelson*

*(CACI Opp. Appendix A-3) ¶ 5.  See also Statement of John Israel To MG Antonio Taguba 3-4*

*(Titan Opp.  Appendix C-36)* (Titan translator John Israel identifies CACI civilian interrogator

Steven Stefanowicz as his "immediate military supervisor", and cannot name the military

personnel to whom Stefanowicz reports).

The record is wholly devoid of any evidence that the military excluded or prevented

CACI and Titan from supervising their employees.  Instead, the record shows the opposite:  As

to be expected given the regulatory structure, the military relied on CACI and Titan to supervise

and discipline their own employees.  *See, e.g., Sworn Statement of Captain Carolyn Wood (CACI*

*Opp. Appendix C-26)* ("I relied heavily on [CACI site manager Daniel Porvaznik] to manage the

CACI personnel."); ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████.  CACI's and Titan's breach of those duties gravely undermined and disrupted the military's efforts.

To give but one of many possible examples ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ No military official testified that such misconduct was acceptable and benefited the United States.

Far from contradicting AR 715-9 and FM 3-100.21, the military's inability to discipline, command, or control contractor personnel on the ground in Iraq vividly illustrates why the Army insists that "[i]t is the contractor who must take direct responsibility and action for his employee's conduct." *FM 3-100.21 § 4-45*.  Holding CACI and Titan accountable will benefit, not harm, the U.S. military.

II.   **DEFENDANTS' BREACHES OF THEIR COMMON LAW DUTIES TO PLAINTIFFS WERE ALSO BREACHES OF THEIR DUTIES TO THE UNITED STATES OF AMERICA**

In *Koohi v. United States*, 976 F.2d 1328, 1336-37 (9th Cir. 1992), the Ninth

Circuit held that a defense contractor whose weapons system the military had been used to shoot

down a civilian passenger jet was eligible for the government contractor defense, on grounds that

> one purpose of the combatant activities exception is to recognize
> that during wartime encounters no duty of reasonable care is owed
> to those against whom force is directed as a result of authorized
> military action….The imposition of such liability on the
> manufacturers of the Aegis would create a duty of care where the
> combatant activities exception is intended to ensure that none
> exists.

*Id.*

But while combatants (*i.e.* soldiers) and those who manufacture weaponry for combatants

owe no duty of care to the enemy during actual combat, they assuredly do owe a legal duty to

prisoners of war, civilian detainees, and all "[p]ersons... placed *hors de combat* by…detention."

*Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2757 (2006) (quoting Common Article 3 of the 1949

Geneva Conventions).  As stated in U.S. Army Field Manual 34-52, the military's interrogation

manual in effect in Iraq in 2003-2004,[5] the Geneva Conventions, the Uniform Code of Military

Justice and U.S. policy forbid all "acts of violence or intimidation" against prisoners.  *U.S. Army*

*Field Manual 34-52, Intelligence Interrogation (Sept. 1992), § 1-7.*  The Field Manual

specifically forbids interrogators from subjecting prisoners to physical abuse: electric shocks,

any form of beatings, infliction of pain through…bondage (other than legitimate use of restraints

to prevent escape), forcing an individual to stand, sit, or kneel in abnormal positions for

---

[5] In 2006, Field Manual 34-52 was replaced with an updated interrogation manual, *Field Manual 2-22.3, Human Intelligence Collector Operations (Sept. 2006) ("FM 2-22.3"), available at* http://www.fas.org/irp/doddir/army/fm2-22-3.pdf, which contains similar prohibitions on physical torture, mental torture and cruel treatment.  *See FM 2-22.3, §§ 5-74 - 5-77.*

prolonged periods of time, food deprivation, mock executions, and abnormal sleep deprivation, and threatening or implying physical or mental torture to the subject [or] his family. *Id.  See also U.S. Army Regulation 190-8, Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees (Oct. 1 1997) ("AR 190-8") § 1-5 (a)-(c).*  These are the very actions at issue in this case.

At oral arguments, the Court considered whether lawful military interrogation techniques could conflict with plaintiffs' common law tort claims for the intentional infliction of emotional distress ("I.I.E.D.")  *See Oral Argument Tr. 33*  (Court notes that "an interrogator, as I understand it, was in a position at times when the intentional infliction of emotional distress was exactly what he was supposed to be doing"); *id. at 64* (Court discusses "the problem of what intentional infliction of emotional distress means to an interrogator who I think we've all learned in this struggle in Iraq have been systematically engaged in the intentional infliction of emotional distress if it's something that occurred in Washington, D.C. in peacetime.").

If state tort law made *any* infliction of emotional distress actionable, without regard to its justification or context, there would be a potential conflict between a contract interrogator's duties to the military and common law duties to prisoners.  But under District of Columbia law, a plaintiff cannot recover for intentional infliction of emotional distress unless he offers proof of "extreme or outrageous conduct" by the defendant.  *Pitt v. District of Columbia,* 491 F.3d 494, 505-506 (D.C. Cir. 2007), *quoting Joyner v. Sibley Mem. Hosp.,* 826 A.2d 362, 373 (D.C. 2003). In order to meet this burden, the plaintiff must demonstrate that the defendant's actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id. at 506.*

Whether conduct qualifies as "outrageous" depends on "the specific context in which the conduct took place, for '[i]n determining whether conduct is extreme or outrageous, it should not be considered in a sterile setting, detached from the surroundings in which it occurred.'" *King v. Kidd,* 640 A.2d 656, 668 (D.C. 1993), *quoting Harris v. Jones*, 80 A.2d 611, 615 (Md. 1977); *see also Webb v. Hyman*, 861 F. Supp. 1094, 1102 (D.D.C. 1994) (one of the "two primary components" in determining whether conduct was extreme and outrageous is "the specific context in which the conduct took place").   The relevant context includes "the particular environment in which the conduct took place, *King,* 640 A.2d at 668.  Here, the jury will be asked to judge conduct that occurred in a military environment in Iraq, not peacetime Washington, D.C.

The lawful detention and interrogation of a prisoner in a war zone clearly might cause emotional distress, but such lawful acts will not be the subject of the trial.  Rather, the *Saleh* and *Ibrahim* plaintiffs will ask that the jury decide if defendants' participation in unlawful acts such as subjecting prisoners to rape, beatings, electric shocks, and the like go "beyond all possible bounds of decency," or is "utterly intolerable in a civilized community."  Defendants clearly will retain the ability to argue that the context excuses all of the conduct.  Thus, if a jury were to conclude that defendants acted unlawfully and violated the United States military's parameters on what may be done to prisoners, the jury verdict would be wholly consistent with United States policy and the U.S. government's interests.   The United States obviously concluded as much, as it is well aware of this action, but has not sought to intervene to protect the defense contractors.

## III.    CACI AND TITAN ARE NOT ENTITLED TO DERIVATIVE SOVEREIGN IMMUNITY.

At oral arguments, Defendant Titan argued that the defendants were eligible for derivative sovereign immunity pursuant to *Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir.

1985).  The Court rejected this argument in its ruling on the defendants' motions to dismiss, and

the defendants have not produced any evidence that justifies revisiting it.[6]  *See Ibrahim v. Titan*

*Corp.*, 391 F. Supp. 2d 10, 17-18 (declining to extend government immunity to contractors, and

holding that "preemption under the government contractor defense is an affirmative defense,

with the burden of proof on the defendants.")

### A. Titan's and CACI's Employees Were Not Government Agents

In order to prove that they are eligible for derivative sovereign immunity, the defendants

must first prove that they are government employees or agents.  *McMahon v. Presidential*

*Airways*, 460 F. Supp.2d 1315, 1330 (M.D.Fla. 2006) ("Unless they qualify as employees or

agents of the Government, private contractors may not bootstrap the Government's sovereign

immunity");  *Foster v. Day & Zimmermann, Inc.,* 502 F.2d 867, 874 (8th Cir.1974).  Under

District of Columbia agency law, "[t]here is a presumption that an actor remains in his general

employment" and is not a loaned employee or borrowed servant "so long as, by the service

rendered another, he is performing the business entrusted to him by the general employer."

*Dellums v. Powell*, 566 F.2d 216, 221 (D.C. Cir. 1977).  Titan linguists and CACI interrogators

would not qualify as "borrowed servants" and government agents unless the authority to direct

and control their performance vested in the United States of America *to the exclusion* of Titan

and CACI.  *Id. at 222* (the "borrowed servant doctrine…conceives of authoritative direction and

control vesting in one master to the exclusion of the other").

As set forth in detail in the Plaintiffs' Consolidated Statements of Disputed Facts in

Response to Titan and CACI's Motions for Summary Judgment (hereinafter "Statement of

---

[6] Further, holding that defendants are entitled to derivative sovereign immunity would be
inconsistent with this Court's previous dismissal of plaintiffs' Alien Tort Statute (ATS) claims
on the basis that abuses by private corporations are not actionable under the ATS.

Disputed Facts--Titan" and "Statement of Disputed Facts--CACI," respectively), CACI

interrogators and Titan translators were corporate employees and corporate profit centers, not

government agents.  The government paid Titan and CACI millions of dollars to provide trained

and qualified employees, and to supervise and discipline those employees. ████████████

████████████████████████████████████████████████████████████████

Interrogators and translators received their paychecks from CACI and Titan, not the government,

and only Titan and CACI could hire them, fire them, promote them, raise their pay, dock their

pay, or discipline them. ███████████████████████████████████████████

████████████████████████████████

        The soldiers who worked with contractor personnel on a daily basis had no disciplinary

authority over them.  *See Delivery Order 54 SOW § 1-4.2.4 (Titan Opp. Appendix C-1)*

(requiring that contract employees' "limit direct coordination with customers" in their assigned

units to "daily schedule coordination, and that the Contracting Officer's Representative ("COR")

handle all requests to transfer or fire Titan employees); ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████. Military

contracting officials could require contractors to remove employees from the contract, but they

were not in the same physical location or in regular contact with contractor employees, and they

rarely exercised this authority. █████████████████████████████

████████████████████████████████████████████████

██████████████████ *Declaration of Marwan Mawiri ¶¶12-13 (Titan Opp. Appendix A-5)* (Titan

translators were rarely removed or fired); *Declaration of Thomas Crowley ¶ 12 (Titan Opp.*

*Appendix A-1)* (Titan translators were rarely removed or fired)*;* ████████████

████████████████████████████████████████

████████████████████████████████████████

Both Titan and CACI sent management personnel to Iraq to supervise their employees.

████████████████████████████████████████

████████████ Titan and CACI instructed their employees to report any problems they had in

Iraq, including problems with military personnel, to corporate management, not the military.

*Declaration of Thomas Crowley ¶ 5 (Titan Opp. Appendix A-1)* (Titan site manager instructed

employees to report problems to him); ████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Both Titan and CACI had the authority to -- and did -- override instructions from military

personnel to their employees.  *Declaration of Marwan Mawiri ¶ 3 (Titan Opp. Appendix A-5)*

(Titan told its employees that they could be fired if they represented themselves as U.S. soldiers,

whether or not they were acting on instructions from military personnel);  ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

**B.  The United States Government Did Not Authorize or Order Defendants to Harm Plaintiffs**

Even if Titan and CACI's employees had functioned as government agents or employees,

they would remain ineligible for derivative sovereign immunity.  Private contractors are entitled

to immunity only "in the narrow circumstances where the public interest in efficient government

outweighs the costs of granting such immunity."  *Mangold v. Analytic Services, Inc.*, 77 F.3d

1442, 1447 (4th Cir. 1996).  A private contractor acting as a government agent is not entitled to

governmental immunity if  "(1) its action was beyond the authority delegated to it; (2) the

authority was invalidly conferred; or (3) the harm was caused by the private party's own tortious

conduct."  *City of Worcester v. HCA Mgmt Co.*, 753 F. Supp. 31, 38 (D. Mass.1990).  *See also*

*Brady v. Roosevelt Steamship Co.* 317 U.S. 575, 583-584 (1943) (contractor could not "escape liability for a negligent exercise" of authority delegated by the government); *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 21 (1940) (agent of the government may be liable for his conduct if court finds that "he exceeded his authority or that it was not validly conferred.").

In short, government agents or contractors cannot invoke sovereign immunity unless they were following official governmental orders or instructions when they harmed the plaintiffs. Here, the record is wholly devoid of any evidence that defendants' employees were ordered to engage in torture and abuse of prisoners. Defendants have made no effort to establish military direction. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

In *Sanchez-Espinoza v. Reagan*, the Court of Appeals held that government employees were entitled to derivative sovereign immunity only because their alleged wrongful actions were "*concededly and as a jurisdictional necessity, official actions of the United States*…. authorized by the sovereign as opposed to private wrongdoing." *Sanchez-Espinoza*, 770 F.2d at 207 (emphasis in original). The outcome would have been different if the defendants' actions were "unauthorized because contrary to statutory or constitutional prescription." *Id.* In *Butters v. Vance International*, the Fourth Circuit held that a security contractor was entitled to derivative sovereign immunity in an anti-discrimination suit by a female employee, because the contractor "was following Saudi Arabia's *orders*" not to promote her. *Butters v. Vance Int'l*, 225 F.3d 462, 466 (4th Cir. 2000) (emphasis supplied). The court stated that if Vance International or its employees had made the decision to deny the plaintiff promotion, the company "would not be

entitled to derivative immunity." *Id.*   Similarly, in *Alicog v. Kingdom of Saudi Arabia*, a Texas district court held that an American employee of a Saudi prince was entitled to derivative immunity, because he had "merely repeated" orders from the prince to a contract security guard. 860 F.Supp. 379, 385 (S.D.Tex.1994), *aff'd,* 79 F.3d 1145 (5th Cir.1996).  Neither Saudi Arabia nor its agents would have been immune "if the consular officers committed serious physical abuse" or other "serious criminal acts." *Id. at 384.*

The situation here is drastically different from those cases.  The United States government did not order, and could not have lawfully authorized, CACI and Titan employees to assault and torture prisoners.  The government has not adopted or ratified the acts of torture at issue in this case; rather, the soldiers who conspired with CACI and Titan to torture prisoners have been court-martialed, convicted, and imprisoned for their actions.  As this Court has already made clear, the fact that certain soldiers illegally conspired with the defendants to torture prisoners is not a basis for derivative sovereign immunity.  *Saleh v. Titan Corp.*, 436 F.Supp. 2d 55, 58 (D.D.C. 2006) ("It is certainly true…that participation in a conspiracy with government actors does not confer government immunities.").  *See also Dennis v. Sparks*, 449 U.S. 24 (1980); *Toussie v. Powell*, 323 F.3d 178, 182-84 (2d Cir. 2003); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005); *Uwalaka v. New Jersey*, No. Civ. 04-2973, 2005 WL 3077685 (D.N.J. Nov. 15, 2005).

The United States government also did not authorize, and could not have validly authorized, the defendants' negligent failure to supervise their employees and ensure that they did not abuse prisoners.  Both CACI and Titan were contractually required to supervise their employees, and ensure their compliance with the law. ██████████████████████ ███████████████████████████████ The defendants have presented absolutely

no evidence that the military prevented defendants in any way from exercising control over their employees. Instead, the record shows that the military exercised only that limited and cumbersome oversight available to it through the contracting process, and relied on the defendants to live up to their clear-cut contractual obligations to supervise their own employees.

|  |  |
|---|---|
| __/s/_ L. Palmer Foret_____ | _____ /s/ Susan L. Burke_____ |
| L. Palmer Foret (D.C. Bar No. 260356) | Susan L. Burke (D.C. Bar No. 414939) |
| THE LAW FIRM OF L. PALMER FORET, P.C. | William T. O'Neil (D.C. Bar No. 426107) |
| 1735 20th Street, N.W. | Katherine R. Hawkins (admitted *pro hac vice*) |
| Washington, D.C 20009 | BURKE O'NEIL LLC |
| Telephone: (202) 232-2404 | Telephone: (215) 487-6590 |
| Facsimile: (202) 332-2808 | Facsimile: (215) 482-0874 |
| lpforet@foretlaw.com | sburke@burkeoneilllc.com |
| www.foretlaw.com |  |
|  |  |
| Craig T. Jones (GA Bar No. 399476) | Shereef Hadi Akeel (admitted *pro hac vice*) |
| EDMOND & JONES, LLP | AKEEL & VALENTINE, P.C. |
| 127 Peachtree Street, NE | 401 South Old Woodward Avenue |
| Suite 410 | Suite 430 |
| Atlanta, GA 30303 | Birmingham, MI 48009 |
| Telephone: (404) 525-1080 | Telephone: (248) 594-9595 |
| Facsimile: (404) 525-1073 | Facsimile: (248) 594-4477 |
| cjones@edmondfirm.com | shereef@akeelvalentine.com |
|  |  |
| *Counsel for Ibrahim Plaintiffs* | Jennifer Green |
|  | CENTER FOR CONSTITUTIONAL RIGHTS |
|  | 666 Broadway |
|  | 7th Floor |
|  | New York, NY 10012 |
|  | Telephone: (212) 614-6439 |
|  | Facsimile: (212) 614-6499 |
|  | jgreen@ccr-ny.org |
|  |  |
|  | *Counsel for Saleh Plaintiffs* |

## CERTIFICATE OF SERVICE

I, Susan L. Burke, do hereby certify that on the 15th day of October, 2007, I caused true and correct copies of the foregoing document to be served via First Class and electronic mail on the following:

Greg Bowman                          John F. O'Connor
Williams and Connolly                Steptoe & Johnson LLP
725 12th Street, NW                  1330 Connecticut Avenue, NW
Washington, D.C.  20005              Washington, D.C.  20036
FBowman@wc.com                       joconnor@steptoe.com
*Counsel for Defendant L-3 Titan Corp.*   *Counsel for CACI Defendants*


_____/s/ Susan L. Burke_____