**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ILHAM NASSIR IBRAHIM, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 04-01248 (JR) |
| | ) |
| v. | ) |
| | ) |
| THE TITAN CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

| | |
|---|---|
| SALEH *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 05-1165 (JR) |
| | ) |
| v. | ) |
| | ) |
| THE TITAN CORPORATION *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

*PLAINTIFFS' OPPOSITION TO CACI'S MOTION FOR RECONSIDERATION OF*
*THE COURT'S NOVEMBER 6, 2007 SUMMARY JUDGMENT DECISION*

CACI repeatedly urged this Court in pleadings and during oral arguments to

ignore the extensive federal regulatory scheme requiring defense contractors to supervise

and control their own employees, and to look instead to "realities on the ground" to

determine whether the military exercised exclusive operational control over CACI

employees.  Now, after the Court's November 6, 2007, Memorandum Order adopted

CACI's analytical approach, and granted Titan summary judgment as a result, CACI files

a motion for reconsideration alleging that the Court's ruling as to CACI should be

reversed because the Court did not give effect to a federal regulation and because CACI

did not have an opportunity to brief this "newly-minted" standard.  CACI's cynical

about-face reversals, even if given consideration, do not support granting CACI summary

judgment.  Rather, as explained below, these CACI arguments, if persuasive to the Court,

would result in the Court reversing the grant of summary judgment to Titan on the

grounds that preemption is not needed to protect the military chain of command.

This  Opposition responds first to CACI's argument that the Court improperly

adopted and applied the "exclusive military control" standard (Sections I and II).   Next,

the Opposition responds to CACI's argument that a regulation transforms CACI's Code

of Conduct into military control (Sections III and IV).  Finally, this Opposition responds

to CACI's argument that summary judgment should be granted because CACI Site

Manager Dan Porvaznik did not actually prevent CACI employees from torturing

prisoners (Section V).

> **I.    CACI HAD AMPLE OPPORTUNITY TO BRIEF THE "EXCLUSIVE OPERATIONAL CONTROL" TEST BECAUSE CACI WAS THE PARTY WHO FORMULATED AND ADVOCATED FOR THAT STANDARD.**

Motions for reconsideration are disfavored, and rarely granted.  "[W]here litigants

have once battled for the court's decision, they should neither be required, nor without

good reason permitted, to battle for it again." *Cobell v. Norton*, 224 F.R.D. 266, 276

(D.D.C. 2004), *quoting Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d

944, 953 (2d Cir.1964).  Revision is justified only when the Court has "patently

misunderstood a party, has made a decision outside the adversarial issues presented to the

Court by the parties, has made an error not of reasoning but of apprehension, or where a

controlling or significant change in the law or facts [has occurred] since the submission

of the issue to the Court."  *Singh v. George Washington University*, 383 F.Supp.2d 99,

101 (D.D.C. 2005).  As this Court has noted before in this case, "arguments made on second thought" are not a basis for reconsideration under Rule 54(b).  *Mem. Order Denying Plaintiffs' Mot. for Reconsideration* (Jan. 12, 2007) *at 2.*

CACI argues that justice requires reconsideration because the Court's Memorandum Order "for the first time injects a requirement of 'exclusive operational control' into the test for combatant activities pre-emption," which "the CACI Defendants have not had an opportunity to brief."  *CACI Mem. in Support of Mot. to Reconsider ("CACI Mem.") at 2.*  What CACI cynically fails to acknowledge is that it was CACI itself who proposed that the Court adopt the "exclusive operational control" standard.

CACI sought to persuade the Court to use the "exclusive operational control" standard at every stage of summary judgment briefing.  CACI moved for summary judgment based on Declarations asserting that the military exercised exclusive operational control over CACI interrogators. *See Porvaznik Declaration at ¶ 19* (CACI "managers did ***not*** exercise ***any operational control*** over CACI or military interrogators"); *Mudd Declaration at ¶ 11* (CACI "managers did ***not*** exercise ***any operational control*** over CACI or military interrogators"); *Northrop Declaration at ¶ 5* ("I did ***not*** exercise ***any operational control*** over CACI or military interrogators…Rather, CACI personnel were at all times under the operational supervision, control, and direction of U.S. military personnel").

CACI repeated its factual assertions in its reply memorandum.  *CACI Reply Mem. In Support of Summ. Judg. ("CACI Sum. Judg. Reply") at 5* ("CACI PT Personnel Were Under the ***Complete Operational Control*** of the United States Army**.**"); *id. at 6* ("witness after witness referenced the ***total operational control*** exercised by the military"); *id. at*

*11* ("at all times, **operational supervision** was vested **exclusively** in the United States Army"). *See also CACI's Response to Plaintiffs' Statement of Disputed Facts at ¶¶ 16, 26, 30, 34, 35, 37, 38, 39, 80, 81.*

CACI argued during the October 3 oral argument that it was entitled to summary judgment because "the hard facts… reflect **absolute operational control** by the United States Army over all facets of interrogation activity by CACI interrogators." *Oral Argument Tr. at 7* (emphasis added). CACI repeatedly asserted during the October 3 hearing that the court should grant summary judgment on grounds that the military exercised **exclusive operational control** over CACI employees. *Oral Argument Tr. at 6* (CACI was "under the **complete and total operational control** of the United States Army in performing interrogations…. every step of the way is evidenced by **complete operational control**"); *id. at 9* ("there's simply no reasonable dispute over the **absolute operational control** exercised by the United States Army" over CACI interrogators); *id. at 13* ("activities of CACI PT reflect **absolute operational control** by the military"); *id. at 57* ("**absolute operational control** by the United States Army" over CACI interrogators); *id. at 63* (military had "**total operational control**" over CACI interrogators).

CACI repeated the factual assertions of exclusive military operational control again in a memorandum filed after oral arguments. *CACI's Post-Hearing Mem. at 4* (arguing that CACI is eligible for summary judgment because "the undisputed facts on the ground demonstrates the Army's **total operational control**," and all other evidence was immaterial); *id. at 5* (referring to Army's "**absolute operational control**" over CACI interrogators).

At no point in any of this briefing and argument did CACI advance the point that the "exclusive operational control" standard was ambiguous or unfair, or needed to be cabined in by a military doctrinal definition.  CACI was neither surprised nor prejudiced by the Court's decision to adopt the same "exclusive operational control" test that the defendants advocated throughout summary judgment briefing and argument. That the evidence did not support CACI's blanket statements about absolute military control does not permit CACI to walk away from its past advocacy, and concoct a whole new standard at this late date.

## II.    CACI PROPOSES A WHOLLY NEW AND NONSENSICAL STANDARD THAT TURNS ON WHETHER CACI CAN ISSUE BINDING MILITARY ORDERS.

Even setting aside the fact that CACI should not be permitted to claim the very standard it repeatedly proposed is ambiguous, CACI's new proposed standard should be rejected.  CACI, relying on a Department of Defense dictionary, makes a convoluted argument in its Memorandum that the "exclusive operational control" standard developed during the months of litigation should now be revised to eliminate consideration of "all matters of discipline, organization, or training."   CACI suggests instead that the Court look only to whether CACI had the power to issue binding military orders.  *CACI Mem. at 9-14*.

CACI argues this military doctrine means that CACI could have not exercised "operational control" because CACI executives could not fully control the military mission.  *CACI Mem. at 10.*[1]  Stated differently, CACI now proposes a circular standard

---

[1] It is impossible to square CACI's proposed use of the military doctrinal definition with the undisputed fact that CACI interrogators were civilians hired at-will, who did not share soldiers' legal obligations to obey military commands from superior officers.  *See*

that defines operational control to be the control exercised by the military. Although clearly such a circular and nonsensical standard would benefit CACI, it is not the standard that CACI advocated throughout the litigation. Even had it advocated this standard at the outset, the Court's decision to permit discovery would have made it clear that such a circular standard was not going to be adopted.

Indeed, the torture victims, not CACI, actually provided the Court a copy of the military definition in Consolidated Appendix C-20 to their opposition to CACI's motion. The torture victims provided this definition because they opposed the "exclusive operational control" test focusing on the realities on the ground, The torture victims argued that the Court should instead looks to the reams of military doctrinal materials (including not only the dictionary definition but also federal regulations and army manuals) that consistently portrayed the military as having no duties to supervise contractor employees, and squarely placed the duty to supervise on the shoulders of the defense contractors. *See Plaintiffs' Statement of Disputed Facts in Opposition to CACI's Mot. for Summ. Judg.* ¶¶ *19, 23*; *Plaintiffs' Mem. in Opposition to CACI's Mot. for Summ. Judg. 9-11.*

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

---

*Plaintiffs' Statement of Disputed Facts in Opposition to CACI's Mot. for Summ. Judg.,* ¶¶ *89-94.* CACI conceded this fact in its Reply Brief, ***and argued that it was not material or relevant to the command and control of CACI personnel.*** *See CACI Reply to Plaintiffs' Statement of Disputed Facts*, ¶¶ *89-94.* Similarly, during oral arguments, CACI acknowledged that its employees were "not subject to the same obligation to follow the order of a superior officer that a soldier faces." *Oral Argument Tr. at 14.*

███████████████████████████ that the military did not intend to, and did not, supervise corporate employees as weighty evidence that necessarily created material factual disputes about whether the military exercised exclusive operational control over either Titan or CACI.

The Court, however, was persuaded to the contrary by defendants. The Court held that tort suits against military contractors may be pre-empted under the combatant activities exemption if the military in fact exercised exclusive operational control on the ground (in contradiction to the regulations and manuals), and consequently effectively prohibited defense contractors from supervising their employees. *Summ Judg. Order at 8.* The Court adopted this approach by reasoning that "[i]t is the military chain of command that the FTCA's combatant activities exception serves to safeguard," *Id.* The Court, in determining who exercised "operational control" in Iraq, looked to who gave "the orders that determined how linguists [and interrogators] performed their duties." *Summ. Judg. Order at 21.*

The Court also necessarily held, that in those instances "[w]hen the military allows private contractors to retain authority to oversee and manage their employees' job performance on the battlefield," exclusive operational control has not been established. In such instances, the preemption is not available because "no federal interest supports relieving those contractors of their state law obligations to select, train, and supervise their employees properly. *Summ. Judg. Order at 8-9.*

Having adopted CACI's proposed standard, the Court turned to the evidence. The Court granted Titan summary judgment, but denied CACI summary judgment. The Court reasoned that there was evidence on record that created a dispute about whether the

military prohibited CACI from overseeing and managing their employees.  *See Summ. Judg. Order at 17* (noting CACI Site Manager Daniel Porvaznik's testimony that "he 'absolutely' would have stopped any interrogation which involved physical abuse," and that "all CACI employees had a duty to report any abuse they saw…to him as the CACI representative"); *id. at 18* (Porvaznik had the "authority to prohibit an interrogation plan he felt was not consistent with the CACI Code of Ethics," and "[i]f a contract interrogator ignored a direct order from Porvaznik, termination was among the potential consequences"); *id. at 22* (holding that "unlike military interrogators, CACI interrogators had a requirement to report abuse not only up the military chain of command but also to CACI", and that CACI Site Manager Daniel Porvaznik "had the authority to direct CACI interrogators not to carry out an interrogation plan that was inconsistent with company policy.").  The Court held that these evidentiary disputes about the relative roles of CACI and the military should be resolved by a jury.

CACI thus remains free to assert the affirmative government contractor defense at the trial.  But CACI should not try to set aside a judgment reached by the Court under the flimsy guise that the Court failed to permit CACI to brief the standard, and erroneously failed to use the military dictionary definition.  Given that it was CACI itself who repeatedly advocated for the "exclusive operational control" standard without ever submitting the dictionary definition, such arguments lack weight and integrity.

### III.    THE FEDERAL REGULATION CITED BY CACI ESTABLISHES THAT PREEMPTION IS NOT NEEDED TO PROTECT THE MILITARY CHAIN OF COMMAND.

As noted above, among other evidence, the Court cited testimony from the CACI Site Manger that he had the authority to stop any CACI employee from engaging in

conduct contrary to CACI's Code of Conduct. *Summ. Judg. Order at 18*. CACI, seizing

on the witnesses' reference to the CACI Code of Conduct, tries to rely on a federal

procurement regulation (subpart 203.7000- .7001) to transform the CACI Site Manager's

on the ground control over CACI employees into an example of military control over

CACI. *CACI Mem. at 8*. CACI argues that this procurement regulation demonstrates

that "[t]he existence of CACI's code of ethics and a means of reporting observed

misconduct to the CACI Defendants were but another way that the *military* exercised

control over the CACI PT interrogators." *CACI Mot. for Reconsideration at 2.* .

        In so arguing, CACI reverses its prior litigation position regarding the impact of

federal regulations. During summary judgment briefing, the torture victims argued that

the Court should look to the federal regulations and army manuals (which required

contractors to supervise their own employees), and the testimony by all the military

officials that they followed this guidance, as weighty evidence that necessarily creates a

factual dispute about whether the military exercised *exclusive* operational control over

either Titan or CACI. CACI opposed this argument, claiming that military regulations

were "not binding" and were "aspirational in nature." *Oral Argument Tr. at 15*. When

pressed further by the Court, CACI argued that the Court should disregard the regulations

because they did not "trump the ground truth of activities in Iraq." *Id. at 16*. *See also*

*CACI Summ. Judg. Reply at 21* (arguing that "binding statutes and regulations are not

incorporated into a government contract unless a review of the contract's terms

demonstrates express or implied incorporation"). Having persuaded the Court that "the

facts on the ground" in Iraq control regardless of the regulatory distribution of

responsibilities between the military and defense contractors *(Summ. Judg. Order at 22)*,

it is odd to say the least that CACI now argues that the Court should reconsider the impact of federal regulation.

If the Court takes up CACI's invitation to reconsider the impact of federal regulations, the outcome is not reversal of the Court's ruling on CACI, but rather reversal of the Court's ruling on Titan.  The regulation cited by CACI expressly puts CACI and Titan on notice that they, not the military, are obliged to create a system of management controls to ensure their employees conduct themselves properly.  This regulation requires CACI and Titan to audit their own employees' conduct, and take responsibility for disciplining their employees and instituting corrective measures when misconduct is found.  This federal regulation, along with the many other regulations previously cited in the briefing, further supports the torture victims' analytical premise that the regulations should be viewed as establishing beyond factual dispute that the military chain of command *never* prohibited CACI and other defense contractors from supervising and controlling their own employees.

The Court found preemption in Titan's case because the Court was persuaded that the military ignored the regulations and instead exercised exclusive operational control over the translators.  *See Summ. Judg. Order 19*-20.  If the regulations are given full force and effect as CACI now argues, and the military chain of command is presumed to have intended for defense contractors to create systems of management controls and to supervise their own employees (regardless of any contradictory action by the military on the ground), then the "combatant activities" preemption is not necessary to protect the military chain of command.  *See Plaintiffs' Mem. in Opposition to CACI's Mot. for Summ. Judg. at 10-11; Plaintiffs' Statement of Disputed Facts in Opposition to CACI's*

*Mot. for Summ. Judg. at ¶¶ 23, 24, 61, 111, 120; Plaintiffs' Post-Hearing Mem. at 6-7.*

If the regulations are to be given full force and effect, there is no conflict between state

law and federal interest because *both* federal regulations and state tort law not only allow

but *require* CACI and Titan to oversee and manage their employees' job performance.

When state tort law and federal law impose the very same duties, there is neither occasion

nor need to consider preemption. *See Boyle v. United Technologies Corp.*, 487 U.S. 500,

508-509 (1988)*; Shurr v. A.R. Siegler, Inc.*, 70 F. Supp. 2d 900, 927 (E.D. Wis. 1999);

*Barron v. Martin-Marietta Corp.*, 868 F. Supp. 1203 (N.D. Cal. 1994).

## IV.    CACI IGNORED MILTARY DIRECTIVES IN THE ADOPTION AND IMPLEMENTATION OF THE CACI CODE OF CONDUCT.

In addition to the analytical inconsistency of relying on a federal regulation that

places the operational control on the defense contractors' shoulders, CACI's argument

also founders insofar as CACI fails to establish that it followed the code of conduct

regulation.  In fact, the record evidence compiled to date establishes that CACI ignored

the military regulation both in the adoption and implementation of the CACI Code of

Conduct.

*First*, CACI failed to maintain a Code of Conduct as required by the regulation.

As alleged in the *Saleh* Complaint and confirmed by discovery,  CACI amended its Code

of Conduct to eliminate the mandatory reporting of misconduct to the military during the

very same time period CACI began sending employees to Iraq.  The earlier 2002 version

of the CACI Code of Conduct advised CACI employees that if they engaged in ethical

violations involving transactions with the government, "a record of any involvement and

disciplinary action taken *will* be made available to the U.S. government." *Third Amended

Complaint*, ¶ 88.  The 2003 version of the CACI Code of Conduct, however, informed

employees that "if they are a party to any *demonstrably illegal activity*, the Company *in its discretion may* make a record of any involvement and disciplinary action taken available to the appropriate law enforcement officials." *Id.* CACI's Code thus does not conform to the procurement regulation's non-discretionary requirement that CACI report "any *suspected or possible* violation of law" (emphasis added).

      *Second*, CACI failed to report to the military suspected or possible violations of law committed or witnessed by its employees as required by the regulation ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

In short, the facts "on the ground" establish that the regulation did not result in the military controlling CACI. Instead, CACI simply ignored the regulatory duties imposed by the military.

### V.    THAT CACI MANAGEMENT DID NOT STOP CACI EMPLOYEES FROM TORTURING PRISONERS DOES NOT PROVE THAT THEY COULD NOT STOP THE TORTURE.

The Court, in determining who exercised "operational control" in Iraq, looked to who gave "the orders that determined how linguists [and interrogators] performed their duties." *Summ. Judg. Order at 21.* The Court considered the record evidence suggesting that CACI had the authority to instruct interrogators that it was illegal to torture prisoners, order them not to use unlawful interrogation techniques, order them to report abuse to CACI management, and terminate or otherwise discipline them for engaging in abuse or otherwise disobeying a direct order from CACI management. *Summ. Judgment Order at 17-18, 21-22.*

CACI, citing no new facts or law, simply re-argues the significance of the disputed evidence, claiming that the military exercised exclusive operational control. CACI cites the same indicia of control cited in its previous briefing. *CACI Mem. at 11.* CACI then tries to claim entitlement to summary judgment because CACI Site Manager Daniel Porvaznik did not actually stop any torture from occurring. *CACI Mem. at 13-14.*

This is again a circular and nonsensical argument. The issue is not whether CACI Site Manager actually stopped the torture by CACI employees. If he had, there would not be the need for litigation. The facts on record establish that Porvaznik failed to stop CACI employees Stefanowicz, Duggan, and Johnson from conspiring with Charles Graner, Ivan Frederick, and other guards in Tier 1A and torturing prisoners. *See*

*Plaintiffs' Statement of Disputed Facts in Opposition to CACI's Mot. for Summ. Judg. ¶¶ 127-128, 133-143.*

Rather, the issue is whether Porvaznik and other CACI executives had the ability and authority to stop these and other CACI employees from torturing prisoners. The Court found that Porvaznik's own admissions that he had the ability and authority to stop the torture clearly raise genuine issues of material fact. *Summ. Judg. Order at 17-18, 21-22.* Other CACI witnesses testified to similar effect. *Plaintiffs' Statement of Disputed Facts in Opposition to CACI's Mot. for Summ. Judg. ¶¶ 127-128, 133-143.* Given these facts, the Court was quite correct to conclude that a reasonable jury could find that "no federal interest requires that CACI be relieved of state law liability." *Summ. Judg. Order at 22.* CACI has not presented any legal or factual basis for the Court to reconsider its denial of summary judgment.

## CONCLUSION

For the foregoing reasons, the Court should deny CACI's Motion for Reconsideration.

Respectfully submitted,

_____    _____/s/ Susan L. Burke_____
L. Palmer Foret (D.C. Bar No. 260356)      Susan L. Burke (D.C. Bar No. 414939)
THE LAW FIRM OF L. PALMER FORET, P.C.     William T. O'Neil (D.C. Bar No. 426107)
1735 20th Street, N.W.                     Katherine R. Hawkins (admitted *pro hac vice*)
Washington, D.C 20009                      BURKE O'NEIL LLC
Telephone: (202) 232-2404                  Telephone: (215) 487-6590
Facsimile: (202) 332-2808                  Facsimile: (215) 482-0874
lpforet@foretlaw.com                       sburke@burkeoneilllc.com
www.foretlaw.com

Craig T. Jones (GA Bar No. 399476)         Shereef Hadi Akeel (admitted *pro hac vice*)
EDMOND & JONES, LLP                        AKEEL & VALENTINE, P.C.
127 Peachtree Street, NE                    401 South Old Woodward Avenue

Suite 410
Atlanta, GA 30303
Telephone:  (404) 525-1080
Facsimile:  (404) 525-1073
cjones@edmondfirm.com

*Counsel for Ibrahim Plaintiffs*

Suite 430
Birmingham, MI 48009
Telephone:  (248) 594-9595
Facsimile:  (248) 594-4477
shereef@akeelvalentine.com

Jennifer Green
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
 New York, NY 10012
Telephone:  (212) 614-6439
Facsimile:  (212) 614-6499

*Counsel for Saleh Plaintiffs*