**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SALEH et al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) Case No. 05-cv-1165 (JR) |
| v. | ) |
| | ) |
| CACI et al., | ) |
| Defendants. | ) |
| | ) |

*MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF PARTIAL
CLASS CERTIFICATION AND SCHEDULING ORDER*

This is a complex tort action involving hundreds of victims who were tortured at several different facilities in Iraq. In order to try efficiently these claims, the torture victims propose that this Court enter an Order (proposed form attached) partially certifying the action as a class action for the limited purpose of establishing conspiracy liability. (The proposed order is hereinafter referred to as "Torture Victims' Proposal" or "Proposal"). The Torture Victims' Proposal conserves judicial resources by eliminating the prospect of multiple lengthy trials in which each torture victim has to call numerous witnesses and introduce a substantial volume of documentary evidence to establish CACI's participation in a conspiracy to torture. The Proposal is fair to CACI because it does not award any damages to a victim without an individualized showing of injury.

The Proposal moves the entire dispute to resolution as promptly as possible by moving forward with trial on the events at the Abu Ghraib prison in June 2008, even as merits discovery regarding the other locations continues.[1] This reflects the reality that the military and to some

---

[1] The torture victims propose the following schedule: Rule 26 productions due –
December 21, 2007; Expert reports due from plaintiffs – March 21, 2008; Expert reports

degree CACI have already compiled (for military courts martial and other criminal investigations) and has ready for production documents relating to Abu Ghraib, but likely will need more time to compile and produce the documents relating to the torture at other locations.

As set forth in more detail below, such a partial class certification order certifying an "issues class" to determine conspiracy liability is permissible under Federal Rules of Civil Procedure 23(a), (b)(3) and (c)(4) and (5), and the relevant controlling decisional law.

## ARGUMENT

As the Supreme Court pointed out in *Amchem Products v. Windsor*, 521 U.S. 591 (1997), Rule 23 was designed to ensure vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id*. at 617.   Here, where there are hundreds of victims alleging misconduct by CACI and its co-conspirators, partial class certification is an appropriate tool to ensure the prompt and just resolution of the entire dispute.

## I.    RULE 23 AND CONTROLLING AUTHORITY PERMITS THIS COURT TO CERTIFY AN ISSUES CLASS TO PRESERVE JUDICIAL RESOURCES.

Certifying an issues class to determine conspiracy liability is permissible under the F.R.Civ.Pro.23(c)(4)and controlling decisional law in this Circuit**.**  Fed.R.Civ. Pro. 23(c)(4) expressly provides for partial class certification.  The Rule states "[w]hen appropriate an action may be brought or maintained as a class action with respect to particular issues." *See also Manual for Complex Litigation at Section 21.24* (explaining that this provision of the Rule enables "a court to achieve the economies of class action

---

due from defendants – April 4, 2008; Merits discovery relating to Abu Ghraib closes – May 26, 2008; Expert discovery closes – June 2, 2008; Pre-trial – submission of all motions in limine, witness lists, and exhibits lists – June 9, 2008; Trial – June 23, 2008 (estimate 10-12 weeks).

treatment for a portion of the case, the rest of which may not qualify under Rule 23(a) or

may be unmanageable as a class action.").

   The torture victims rely on this Rule to seek certification on a particular legal issue –

namely, conspiracy liability.  It is relatively common for district courts to certify a partial class

for the limited purpose of establishing conspiracy liability.  *See, e.g.*, *Simon v. Philip Morris*, 200

F.R.D. 21, 30 (E.D.N.Y. 2001); *In Re Plastic Cutlery Antitrust Litig.,* 1998 WL 1355703 (E.D.

Pa. 1998); *In Re Workers' Compensation Ins. Litig.*, 130 F.R.D. 99, 109 (D. Minn. 1990); *In Re*

*Plywood Antitrust Litig.,* 76 F.R.D. 750, 584 (E.D. La. 1976); *In Re Potash Antitrust Litig*., 159

F.R.D. 682, 694 (D. Minn. 1995).  *See also In Re Catfish Antitrust Litig.,* 826 F.Supp.1019,1039

(N.D. Miss. 1993) ("[e]vidence of a national conspiracy… would revolve around what the

defendants did, and said, if anything, in pursuit of a price fixing scheme").

   The torture victims rely on Rule 23(c)(5) to seek certification of several subclasses based

on the physical location of the torture.  Namely, the Court would certify (1) an Abu Ghraib

subclass, (2) a Camp Cropper/Baghdad Airport subclass, and (3) an Other Facilities Class, which

shall include Forward Operating Bases, Temporary Detention Facilities and Logistics Support

Areas subclass.   The subclasses would be defined as follows:

>          The "Abu Ghraib Conspiracy Class" shall be defined as all persons
>          detained in the Abu Ghraib prison who allege physical or mental injuries
>          were caused by American prison guards or interrogators.
>
>          The "Camp Cropper/Baghdad Airport Conspiracy Class" shall be defined
>          as all persons detained in the Camp Cropper or other facilities located
>          adjacent to the Baghdad Airport who allege physical or mental injuries
>          were caused by American prison guards or interrogators.
>
>          The "Other Facilities Class" shall be defined as all persons detained in
>          those Forward Operating Bases, Temporary Detention Facilities, and
>          Logistics Support Areas in Iraq who allege physical or mental injuries
>          were caused by American prison guards or interrogators.

Although this action, seeking recovery for personal injuries, may initially appear to be ill-suited to class certification, the Court of Appeals for the D.C. Circuit has held that district courts should consider case-management devices such as bifurcation[2] and partial certification before denying a motion to certify a class:

> [The] mere fact that damage awards will ultimately require individualized fact determinations is insufficient, by itself, to preclude class certification. A district court should, of course, ordinarily consider such well-established methods as bifurcating the trial into liability and damages phases before denying certification.

*McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984) (citations omitted). *See also*, *Bynum v. District of Columbia*, 214 F.R.D. 27, 39 (D.D.C. 2003); *Chang v. U.S.*, 217 F.R.D. 262, 272 (D.D.C. 2003); *Lewis v. National Football League*, 146 F.R.D. 5, 11 (D.D.C.1992) ("[t]he need for individualized damages determinations does not preclude a finding that common issues predominate"); *Cohen v. District of Columbia Nat. Bank*, 59 F.R.D. 84, 90 (D.D.C.1972) ("[i]t is fairly well settled that the need for determining the damages due each member of the plaintiff class after liability has been found should not impair the maintainability of a suit as a class action").

Here, the Torture Victims' Proposal contemplates that each victim shall establish damages through an individualized adjudication. The Proposal contemplates that twenty-five victims shall put on their damages evidence at the initial Abu Ghraib conspiracy trial; thereafter, the parties shall agree on (or failing agreement, ask the Court to determine), the most efficient manner to adjudicate the additional victims' individual damages. This approach is somewhat akin to the procedure that district courts have used to try employment discrimination cases on a

---

[2] F.R.Civ.P. 42(b) provides that "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," a court may order a separate trial of any claim in a suit.

theory of disparate treatment.  The first trial determines whether the employer had a regular

policy and procedure of discriminating; the second trial determines whether the plaintiffs were

the victims of that policy.  *Taylor v. District of Columbia Water & Sewer Authority*, 205 F.R.D.

43, 51-52 (D.D.C. 2002) (*quoting EEOC. v. McDonnell Douglas Corp.,* 960 F.Supp. 203, 205

(E.D.Mo.1996)).[3]

       The Torture Victims' Proposal, if adopted, would conserve judicial resources without

sacrificing any fairness towards any party.  That is, in the absence of class certification, this

Court would need to preside over much lengthier trials, as each torture victim would be entitled

to relitigate CACI's participation in a conspiracy.   As set forth in the Proposal, the torture

victims have one opportunity to establish a conspiracy at each torture location.  If they fail to do

so, no other torture victims are entitled to retry that issue.  Although the Proposal does not

eliminate the need for multiple trials on individual damages, it does substantially streamline

those trials.  Hopefully, after the conduct of the conspiracy trial for each location, the parties will

be able to agree to an even more streamlined process for damages adjudication, such as bench

trials before a magistrate or the like.

## II.    THE PROPOSED CLASS SATISFIES ALL THE PROCEDURAL REQUIREMENTS OF RULE 23(A)

---

[3] As the court noted in *Taylor*, the fact that at times similar factual evidence may be heard during
both phases, possibly by different juries, is not a violation of Rule 42(b)'s requirement that any
bifurcation must "always preserv[e] inviolate the right of trial by jury as declared by the Seventh
Amendment."  F.R.C.P. 42(b).  The Seventh Amendment's Re-Examination Clause, which
provides that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United
States, than according to the rules of the common law" does not forbid "two juries from
reviewing the same evidence, but only from deciding the same factual issues."  *Taylor*, 205
F.R.D. at 51.  *See also EEOC v. Dial Corp.,* 156 F.Supp.2d 926, 957 (N.D.Ill.2001); *EEOC. v.
McDonnell Douglas Corp.,* 960 F.Supp. 203, 205 (E.D.Mo.1996).  In this case, as in *Taylor*,
"[w]hile evidence regarding individual adverse actions may enter at both stages, it is used to
prove different issues in each stage: in the liability stage, it serves to illustrate a general
policy…in the damages phase, it demonstrates causation and harm with regards to a specific
individual. " *Taylor*, 205 F.R.D. at 52.

To proceed as a class action, an action must meet the four procedural requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable, (2) there must be questions of law or fact common to the class, (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class, and (4) the representative parties must be able to fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *McReynolds v. Sodexho Marriott Servs.*, 208 F.R.D. 428, 438 (D.D.C. 2002). The proposed "issues" subclasses meets each of these criteria.

### A.   Members of the Proposed Class Are So Numerous that Joinder is Impracticable

The numerosity requirement is satisfied. At present, approximately 200 torture victims have retained undersigned counsel. Each victim has told undersigned counsel about one or more additional victims who are too frightened to seek legal assistance. Thus, the present estimate is that the class of those tortured in prisons and facilities where CACI employees worked is approximately 500-600 persons.

Each subclass is likely to have approximately 150-200 class members. Such numbers, particularly when combined with the fact that all the victims are in Iraq or neighboring countries, satisfies the requirement that joinder of all class members would be impractical.  *See e.g. EEOC v. Printing Indus. of Metro. Washington D.C., Inc.*, 92 F.R.D. 51, 53-54 (D.D.C. 1981) (noting that as few as 25-30 class members raise a presumption of impracticable joinder); *Vargas v. Meese*, 119 F.R.D. 291, 293 (D.D.C. 1987) (numbers of class members from 200 to 400 have sustained the numerosity requirement).

### B.  There are Questions of Law or Fact Common to the Class

The commonality requirement is satisfied. The requirement is satisfied even if there are some individual factual issues, as long as "a single aspect or feature of the claim is common to

all proposed class members." *Bynum v. District of Columbia*, 217 F.R.D. 43, 46 (D.D.C. 2003).

The requirement has been held to be satisfied when there exist "shared legal issues with

divergent factual predicates" or there is "a common core of salient facts coupled with disparate

legal remedies within the class." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th. Cir.

1998); .  Commonality "does not require that the representative plaintiff have endured precisely

the same injuries that have been sustained by the class members, only that the harm complained

of be common to the class, and that the named plaintiff demonstrate a personal interest or threat

of injury that is real and immediate, not conjectural or hypothetical." *Bynum,* 217 F.R.D. at 46-7.

Here, the torture victims allege a common core of salient facts – namely, that CACI formed a

conspiracy with military and other corporate employees to torture and abuse detainees.  Although

the torture victims endured different variations of the torture, none of these differences controls

or impacts in any way the jury determination of the existence of a conspiracy to torture.

### C.  The Claims of the Representatives Are Typical of the Claims of the Class.

The typicality requirement is satisfied.  In this jurisdiction, a claim is held to be typical if

it "arises from the same event or practice or course of conduct that gives rise to a claim of

another class member's where his or her claims are based on the same legal theory." *Bynum,*

217 F.R.D. at 46-7 (quoting *Stewart v. Rubin, 948 F.Supp. 1077, 1088 (D.D.C.1996).  See also

Johns v. Rozet*, 141 F.R.D. 211, 216 (D.D.C. 1992*EEOC v. Printing Indus. of Metro. Washington

D.C., Inc*., 92 F.R.D. 51, 54 (D.D.C. 1981);   *Vargas v. Meese*, 119 F.R.D. 291, 295 (D.D.C.

1987).  Typicality depends on the nature of the claim or defense of the class representative, not

on the specific facts giving rise to the relief.  *See Kas v. Fin. Gen. Bankshares, Inc*., 105 F.R.D.

453, 461 (D.D.C. 1985).  Differences in degree or factual circumstance between the injuries of

class members and the injuries of named plaintiffs do not defeat typicality.  *See  Wagner v.*

*Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987) (typicality is not destroyed by "factual variations");

*Bynum v. District of Columbia*, 214 F.R.D. 27, 35 (D.D.C. 2003) ("demonstrating typicality does

not mean showing that there are no factual variations between the claims of plaintiffs").

      In *Doe v. Karadzic*, which also involved claims for torture in wartime, the court found

Rule 23(a)(3) to be satisfied despite factual differences regarding the abuse plaintiffs suffered,

because the "claims arise out of the same alleged course of conduct (the ethnic cleansing

campaign), and implicate . . . common questions of law and fact . . . ." *Doe v. Karadzic*, 176

F.R.D. 458, 462 (S.D.N.Y. 1997). The same is true in this case. Like other class members, each

of the representative torture victims was tortured and mistreated by CACI and its co-

conspirators.

### D.  The Class Representatives Will Fairly and Adequately Protect the Interests of the Class.

      The representative torture victims and undersigned counsel satisfy the Rule 23(a)(4)

requirement that they should "fairly and adequately protect the interests of the class." Fed. R.

Civ. P. 23(a)(4). The Court of Appeals for the District of Columbia and this Court have held that

two criteria determine the adequacy of representation: (1) the named representative must not

have antagonistic or conflicting interests with the unnamed members of the class, and (2) the

representative must appear able to vigorously prosecute the interests of the class through

qualified counsel. *Nat'l Assoc. of Reg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 344-45

(D.C. Cir. 1977); *Johns v. Rozet*, 141 F.R.D. 211, 216-17 (D.D.C. 1992). Under these standards,

the representative torture victims and their counsel are adequate representatives of the class.

      The representative torture victims and other class members share the same interest: they

all seek a finding that CACI was part of a conspiracy to torture prisoners in Iraq. The

representative victims are members of the class and have no conflicts of interest with other class

members.  *See Phillips v. Klassen*, 502 F.2d 362, 364 (D.C. Cir. 1974) (adequacy of representation found to be satisfied where "the relief sought by the particular plaintiffs who bring the suit can be thought to be what would be desired by the other members of the class"). A finding that the defendants are liable on a theory of conspiracy would aid each individual class member in recovering for the injuries they suffered.  Though each representative torture victim has a unique story of torture, they all were victims of a conspiracy to torture.  As in *Doe v. Karadzic*, Rule 23(a)(4) is satisfied because all class members "share an interest in establishing defendant's liability for the systemic human rights violations for which [the defendants] allegedly [are] responsible," because "all members of the proposed class seek the same conclusions to the common questions of fact and law," and because "there exist no apparent antagonistic interests."  176 F.R.D. at 462.

Class counsel includes lawyers with an array of experience in class actions and human rights litigation.  Lead counsel Susan L. Burke of Burke O'Neil LLC has extensive experience defending and prosecuting class actions.  During her twelve years practicing with Covington & Burling in Washington, D.C., she defended major corporations against claims.  She also served as one of the lawyers representing the class of the mentally ill in a long-running class action filed against the District of Columbia for failing to provide adequate mental health services.  During her years practicing with Montgomery McCracken Walker & Rhodes in Philadelphia, she served class counsel for the plaintiffs in an action challenging the quality of transit services provided to the disabled in the Baltimore area.  She also is experienced in mass tort litigation, having served, among other things, as counsel to a Trust created to administer the proceeds of the mass-tort diet drug litigation.  Co-counsel William O'Neil has over fifteen years experience (first with Covington & Burling, then with Swidler & Berlin) litigating and negotiating settlement of

complex asbestos and insurance litigation in both state and federal courts. Co-counsel Center for

Constitutional Rights, a non-profit legal services provider, has represented victims of genocide,

torture, forced labor, arbitrary detention, and other human rights abuses in a number of important

cases. The Center has been at the forefront of the important and extensive habeas litigation on

behalf of detainees imprisoned at Guantanamo Bay. Co-counsel Shereef Akeel, a civil rights

attorney who practices in Detroit, Michigan, was named as one of Michigan's best lawyers for

his work on behalf of the many Arab-Americans who were discriminated against after the

tragedy of September 11, 2001. In sum, class counsel are qualified to represent the interests of

the class.

**IV.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(B)(3)**

In addition to meeting the criteria of Rule 23(a), the class also satisfies the criteria of

Rule 23(b)(3). Under this subsection, certification is appropriate if "the court finds that the

questions of law or fact common to the members of the class predominate over any questions

affecting only individual members, and that a class action is superior to other available methods

for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This

requirement is met here.

**A.  Common Questions of Law and Fact Predominate.**

The Court of Appeals for the District of Columbia Circuit has not ruled on how Rule

23(b)(3)'s predominance requirement applies in the context of motions for partial certification

under Rule 23(c)(4). The Courts of Appeals in the Second and Ninth Circuits read the Rules

together as authorizing district courts "to isolate the common issues under Rule 23(c)(4)(A)

[amended to become Rule 23(c)(4)] and proceed with class treatment of these particular issues,"

even when these issues do not overshadow individual questions with regard to the litigation as a

whole. *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996); *see also In Re Nassau County Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006) (Rule 23's plain language and structure establish that "a court must first identify the issues potentially appropriate for certification 'and ... then' apply the other provisions of the rule, *i.e.,* subsection (b)(3) and its predominance analysis."). Under this analysis, it is clear that the Court has the power to certify a partial class on the conspiracy issue.

The Courts of Appeals for the Fifth and Eleventh Circuits have taken a more restrictive approach. They hold that the "issue" must be predominant in order to be subject to partial certification. *Castano v. American. Tobacco Co*., 84 F.3d 734, 745 n.21 (5th Cir. 1996); *see also Rutstein v. Avis Rent-A-Car Sys., Inc*., 211 F.3d 1228, 1241 (11th Cir. 2000); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997). But even under this more restrictive approach (which arguably contradicts the Rule's emphasis on a pragmatic approach), the conspiracy issue predominates the action. That is, resolving whether there is conspiracy liability would substantially advance the litigation. *See In re School Asbestos Litig*., 789 F.2d 996, 1010 (3d Cir. 1996)("There may be cases in which class resolution of one issue or a small group of them will so advance the litigation that they may fairly be said to predominate." ); s*ee also* 1 *Newberg on Class Actions*, § 4.25 at 4-82 to 4-83 (3d ed. 1992) ("[t]he very definition of the requirement of the predominance of common questions contemplates that individual issues will usually remain after the common issues are adjudicated."). If partial certification is granted, the parties can avoid costly and duplicative trials re-establishing the conspiracy, and potentially inconsistent verdicts on the issue of whether CACI conspired with members of the military and other corporate employees to torture and abuse plaintiffs and class members.

      **B.**      **The Torture Victims' Proposal Is Superior To Other Available Methods For the Fair and Efficient Adjudication of This Controversy and Satisfies All**

**Rule 23(b) Criteria.**

Rule 23(b)(3) requires findings "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The Rule directs the Court to consider the interests of members of the class in individually controlling the prosecution or defense of separate actions, the extent of other ongoing litigation, the benefits to consolidating all litigation in a particular forum and any case management difficulties. Fed. R. Civ. P. 23(b)(3).

The Torture Victims' Proposal attempts to craft an efficient method to try the hundreds of torture claims. The Proposal sets out a series of conspiracy trials, each of which is followed by the individualized adjudication for those victims were not serving as class representatives at the relevant conspiracy trial. *See Bynum v. Dist. of Columbia*, 217 F.R.D. 43, 49 (D.D.C. 2003) ("maintaining the present action as a class action must be deemed by the court to be superior to other available methods of adjudication.")

This approach has the benefit of streamlining the length and cost of the trials. Each conspiracy trial would not only adjudicate conspiracy for the class, but would also adjudicate 25 individual claims. Thereafter, the remaining individual claims could be promptly adjudicated by a truncated adjudicatory process agreed upon by the parties or, at worst, in trials much shortened by the elimination of the need to introduce conspiracy evidence.

The Torture Victims' Proposal also satisfies the other Rule 23(b)(3) requirements. It does not burden or interfere with any victims' desire to control their own litigation. The majority of the victims who have expressed a desire to litigate have signed up for the class action. *See* 2 NEWBERG ON CLASS ACTIONS 4TH ED. §4:29 (one factor to consider is expressed interest in individual control over litigation). The interest in proceeding as a class expressed by most potential class members weighs in favor of certification of the class. *See Fidelis Corp. v. Litton*

*Industries, Inc.*, 293 F. Supp. 164, 171 (S.D.N.Y. 1968). The only other lawsuit involving

potential members of the class is the ongoing *Ibrahim* action, which does not allege a conspiracy.

If the conspiracy classes are certified, those victims could either opt out of the relevant Abu

Ghraib Conspiracy Class, and not be impacted in any way by the partial certification order, or

remain in the class with their individual adjudications being handled by their own counsel.  As

such, should the *Ibrahim* victims and perhaps others choose to pursue their own claims their,

interests may be served by opting out of the present suit or by entering an appearance under Rule

23(c)(2) or by intervening.

 The Torture Victims' Proposal attempts to preserve judicial resources and to create a

structure that will efficiently manage and resolve hundreds of tort claims.[4]  Certifying a partial

class reduces some of the demands placed on the judicial system.  Although the conspiracy trials

will require substantial judicial time and attention, permitting the jury verdict from those trials to

control all persons in the class should substantially reduce the subsequent demands on the

judiciary.  This is consistent with the goal of Rule 23:  "[I]n adding the 'superiority' requirement

to Rule 23, the Advisory Committee sought to provide class certification for those cases 'in

which a class action would achieve [*inter alia*] economies of time, effort and expense."

*Amchem*, 521 U.S. at 617.

---

[4] Denial of class certification on manageability grounds is generally disfavored.  *See Klay v. Humana Inc*., 382 F.3d 1241, 1272-3 (11th. Cir. 2004) (manageability "will rarely, if ever, be in itself sufficient to prevent certification of a class.")   It should be particularly disfavored when declining to litigate torture claims as a class because of complexity would permit torturers to avoid accountability to many of their victims.  *Compare Little Caesar Enterprises*, 172 F.R.D 236, 246 (E.D. Mich. 1997)  ("If it is ultimately proven that defendants [are liable to class members] it seems unfair and ironic that the party who caused the complexity on liability and damages should benefit from such acts by disarming the plaintiffs and the Court of the most efficient and effective tool for resolving the issues.").

## CONCLUSION

The Torture Victims' Proposal establishes an efficient and fair manner to resolve the hundreds of torture claims against CACI.  The Torture Victims' Proposal includes a partial certification on the conspiracy issues, which do not vary at all based on the individual victims' circumstances.  Certifying an issues class, and location-specific subclasses, would greatly assist in resolving this complex litigation in a timely and fair manner.   The torture victims respectfully request that the Court grant the motion for partial certification and enter the proposed scheduling Order.

Respectfully submitted,

_____/s/ Susan L. Burke_____
Susan L. Burke (D.C. Bar No. 414939)
William T. O'Neil (D.C. Bar No. 426107)
Katherine R. Hawkins (admitted *pro hac vice*)
BURKE O'NEIL LLC
Telephone:  (215) 487-6590
Facsimile:  (215) 482-0874
sburke@burkeoneilllc.com

Shereef Hadi Akeel (admitted *pro hac vice*)
AKEEL & VALENTINE, P.C.
401 South Old Woodward Avenue
Suite 430
Birmingham, MI 48009
Telephone:  (248) 594-9595
Facsimile:  (248) 594-4477
shereef@akeelvalentine.com

Jennifer Green
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
 7th Floor
New York, NY 10012
Telephone:  (212) 614-6439
Facsimile:  (212) 614-6499
jgreen@ccr-ny.org

*Counsel for Saleh Plaintiffs*