**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IBRAHIM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TITAN CORP., *et al.*,<br><br>Defendants. | Civil Action No. 04-CV-1248 (JR) |
| SALEH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TITAN CORP., *et al.*,<br><br>Defendants. | Civil Action No. 05-CV-1165 (JR) |

**MOTION OF DEFENDANTS CACI INTERNATIONAL INC AND CACI PREMIER TECHNOLOGY, INC. FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b) TO APPEAL THE COURT'S NOVEMBER 6, 2007 SUMMARY JUDGMENT DECISION**

Defendants CACI International Inc and CACI Premier Technology, Inc. (collectively, the "CACI Defendants") hereby move for 28 U.S.C. § 1292(b) certification to appeal the Court's November 6, 2007 Memorandum Order (the "Memorandum Order") denying the CACI Defendants' motion for summary judgment on the issue of preemption. The Court should certify its Memorandum Order pursuant to 28 U.S.C. § 1292(b) because the Court decided a "controlling question of law as to which there is substantial ground for difference of opinion" and an interlocutory appeal will "materially advance the ultimate termination of litigation." 28

U.S.C. § 1292(b). The basis for the CACI Defendants' motion for 28 U.S.C. § 1292(b) certification is set forth in greater detail in the accompanying Memorandum.

Wherefore, the CACI Defendants respectfully request that the Court grant the CACI Defendants' motion and certify for interlocutory appeal the Memorandum Order. A proposed order is attached.

Respectfully submitted,

*/s/ John F. O'Connor*

J. William Koegel, Jr. (Bar No. 323402)
John F. O'Connor (Bar No. 460688)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

*Attorneys for Defendants CACI International Inc and CACI PT, Inc.*

December 7, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IBRAHIM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TITAN CORP., *et al.*,<br><br>Defendants. | Civil Action No. 04-CV-1248 (JR) |
| SALEH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TITAN CORP., *et al.*,<br><br>Defendants. | Civil Action No. 05-CV-1165 (JR) |

**MEMORANDUM OF DEFENDANTS CACI INTERNATIONAL INC AND CACI PREMIER TECHNOLOGY, INC. IN SUPPORT OF THEIR MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b) TO APPEAL THE COURT'S NOVEMBER 6, 2007 SUMMARY JUDGMENT DECISION**

## I. INTRODUCTION

Defendants CACI International Inc and CACI Premier Technology, Inc. (collectively, the "CACI Defendants") respectfully request that the Court certify for interlocutory appeal the Court's November 6, 2007 Memorandum Order (the "Memorandum Order") denying the CACI Defendants' motion for summary judgment on the issue of preemption. Certification pursuant to 28 U.S.C. § 1292(b) is appropriate because the Court decided a "controlling question of law as to

which there is substantial ground for difference of opinion" and an interlocutory appeal will "materially advance the ultimate termination of litigation." 28 U.S.C. § 1292(b).

## II. THE ORDER DENYING SUMMARY JUDGMENT

In denying Defendants' motions to dismiss Plaintiffs' tort claims on the basis of preemption, the Court held that Plaintiffs' tort claims could, in appropriate circumstances, be preempted by the combatant activities exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(j). *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 19 (D.D.C. 2005). In particular, the Court held that Plaintiffs' tort claims would be preempted if the CACI Defendants' employees were acting as "soldiers in all but name" in performing interrogation services at combat detention facilities in Iraq. *Id.* Because the Court concluded that it could not make this determination on a motion to dismiss, the Court invited Defendants to move for summary judgment on the preemption issue and held that Plaintiffs' discovery would be limited to those issues necessary to determining whether Plaintiffs' tort claims were preempted. *Id.* ("Full discovery is not appropriate at this stage, especially given the potential for time-consuming disputes involving state secrets.").

In denying the CACI Defendants' summary judgment motion, the Court revised its test for combatant activities preemption, and then held that the CACI Defendants did not satisfy the Court's reformulated test. The combatant activities preemption test announced by the Court in the Memorandum Order requires the CACI Defendants to make two showings in order to prevail on their preemption defense. First, the Court held that "defendants must have been engaged in 'activities both necessary to and in direct connection with actual hostilities.'" Mem. Or. at 5 (quoting *United States v. Johnson*, 170 F.2d 767, 770 (9th Cir. 1948)). Second, the Court held that the CACI Defendants' employees must have been "acting under the direct command and exclusive operational control of the military chain of command." *Id.*

The Memorandum Order is the first instance in which the Court specified that a defendant asserting a combatant activities preemption defense must establish that the military exercised *exclusive* operational control over the defendant's employees. *Id.* Indeed, the Memorandum Order acknowledges that the two-part test announced by the Court is the Court's own creation, as there is, at least in this Circuit, "no controlling authority applying the combatant activities exception to the tortuous acts or omissions of civilian contractors in the course of rendering services during 'wartime encounters.'" *Id.* at 4. Having announced this first-impression test for combatant activities preemption, the Court denied the CACI Defendants' summary judgment motion based on the Court's view that "a reasonable trier of fact could conclude that CACI retained significant authority to manage its employees." *Id.* at 23.[1]

## III. ANALYSIS

### A. The Standard for 28 U.S.C. § 1292(b) Certification

District courts have "first line discretion to allow interlocutory appeals." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995). The Court may exercise its discretion and certify a non-final order for interlocutory appeal when "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation." *APCC Services, Inc. v.*

[1] The CACI Defendants believe that the collateral order doctrine permits an immediate appeal of an order denying an assertion of combatant activities preemption. *See Will v. Hallock*, 546 U.S. 345, 349-50 (2006). That is because the CACI Defendants' assertion of combatant activities preemption is derivative of the sovereign immunity retained by the combatant activities exception to the Federal Tort Claims Act, 28 U.S.C. § 2869(j). *See Nixon v. Forsyth*, 457 U.S. 731, 742 (1982) (holding that orders rejecting nonfrivolous claims of absolute immunity are immediately appealable collateral orders); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding that orders rejecting nonfrivolous claims of qualified immunity are immediately appealable collateral orders); *Puerto Rico Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (holding that orders rejecting claims of Eleventh Amendment immunity are immediately appealable collateral orders). Nevertheless, the CACI Defendants are mindful that Plaintiffs take a contrary view, and § 1292(b) certification of an interlocutory appeal therefore would maximize the prospects for achieving immediate interlocutory appeal of the Memorandum Order.

*AT&T Corp.*, 297 F. Supp. 2d 101, 104 (D.D.C. 2003) (citing 28 U.S.C. § 1292(b) and *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1002 n.2 (D.C. Cir. 1986)). Because the Memorandum Order satisfies all three of these requirements, the Court should certify the Memorandum Order for interlocutory appeal.

**1. Controlling Question of Law**

This Court has described a controlling question of law as "one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *APCC Services*, 297 F. Supp. 2d at 105 (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002)). In this case the question of whether state law is preempted by federal law is controlling because the only claims remaining against the CACI Defendants are tort claims, and if the Court's Memorandum Order is incorrect and those claims are preempted under the combatant activities exception to the Federal Tort Claims Act, the CACI Defendants are entitled to immediate summary judgment terminating this action. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("[I]t is clear that a question of law is controlling if reversal of the district court's order would terminate the action."). There are at least three controlling questions of law embedded within the Memorandum: (1) whether combatant activities preemption is available to contractors providing services to the United States military in a combat environment; (2) if so, whether the test announced by the Court in the Memorandum Order for combatant activities preemption is the correct legal test; and (3) whether a contractor is foreclosed from prevailing on a combatant activities preemption defense when it provided some level of administrative supervision over its employees but all operational decisionmaking authority remained vested in the military chain of command.

Plaintiffs have asserted that combatant activities preemption is unavailable for contractors providing services, and that the defense is limited to procurement contracts. In both its decision on Defendants' motions to dismiss and in the Memorandum Order, the Court considered this argument and concluded that, with an appropriate showing, a government contractor can prevail on a combatant activities preemption defense for torts allegedly committed in the performance of service contracts. *Ibrahim*, 391 F. Supp. 2d at 17-18; Mem. Order at 4-5 & n.3. Numerous district courts have held that decisions involving the availability of federal preemption of state law claims are controlling questions of law under 28 U.S.C. § 1292(b).[2] Moreover, while appellate courts have discretion to accept or reject jurisdiction over an interlocutory appeal brought pursuant to 28 U.S.C. § 1292(b), many appellate courts have viewed certification of federal preemption decisions favorably and accepted jurisdiction.[3] Indeed, the threshold

[2] *See*, *e.g.*, *Drake v. Lab. Corp. of Am. Holdings*, 290 F. Supp. 2d 352, 376 (E.D.N.Y. 2003) (holding that whether federal drug testing laws and regulations preempted state common law tort claims is a controlling question of law and certifying the order for appeal); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 153 F. Supp. 2d 935, 938 (S.D. Ind. 2001) (holding that whether the Motor Vehicle Safety Act preempted a claim for state injunctive relief is a controlling question of law and *sua sponte* certifying the order for interlocutory appeal); *Trotter v. Perdue Farms, Inc.*, 168 F. Supp. 2d 277, 281 (D. Del. 2001) (holding that whether plaintiffs' state wage and hour law claims were preempted by ERISA is a controlling question of law); *Garrelts v. SmithKline Beecham Corp.*, 943 F. Supp. 1023, 1071 (N.D. Iowa 1996) (holding that whether plaintiffs' state law claims were preempted by USDA regulations is a controlling question of law and *sua sponte* certifying the order for interlocutory appeal).

[3] *See, e.g.*, *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 382 (5th Cir. 2004) (accepting interlocutory appeal after the district court certified an order holding that plaintiff's state law claims were not preempted by the Airline Deregulation Act); *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (citing *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir. 2000)) as a suitable case for interlocutory appeal because "whether federal law preempts state business-tort law in suits between air carriers over routes and rates of service. . . . [is] indeed a controlling issue [that will] head off protracted, costly litigation."); *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 61 (1st Cir. 1997) (accepting interlocutory appeal after the district court certified an order holding that plaintiff's state law claims were not preempted by the Smokeless Tobacco Act and the Federal Cigarette Labeling and Advertising Act); *Hatfield v. Burlington N. R.R. Co.*, 64 F.3d 559, 559 (10th Cir. 1995) (accepting interlocutory appeal after the district court certified an order holding that plaintiff's state law claims were preempted by the Federal Railroad Safety Act); *Stephen v. Am. Brands, Inc.*, 825 F.2d 312, 313 (11th Cir. 1987) (accepting interlocutory appeal after the district court certified an order holding that plaintiff's state law tort claims were preempted by the Cigarette Labeling and Advertising Act).

question of the availability of combatant activities preemption for torts relating to service contracts is necessarily a controlling question of law, as the Court has entered summary judgment for Titan Corporation on the basis that such a defense exists and has held that the existence of this defense might support entry of judgment for the CACI Defendants.

Determining the appropriate test for combatant activities preemption similarly is a controlling question of law, as the appropriate test is the vehicle by which the Court has, and will, determine whether the Defendants in these actions are entitled to judgment based on combatant activities preemption. If, as the CACI Defendants respectfully submit, the Court's first-impression adoption of an "exclusive operational control" requirement for combatant activities preemption is an incorrect test, and that the sole issue is whether the activities are "combatant activities," such an error would require reversal of the Memorandum Order and entry of judgment in favor of the CACI Defendants. Indeed, this point is particularly true given that the Court has already concluded that the CACI Defendants' activities qualified as "combatant activities." Mem. Order at 21. Therefore, adoption of the appropriate test for combatant activities preemption is a controlling question of law for purposes of 28 U.S.C. § 1292(b). *See APCC Services*, 297 F. Supp. 2d at 105.

Finally, even if the Court's adoption of the "exclusive operational control" requirement for combatant activities preemption is a correct statement of the law, there is a controlling legal question whether administrative supervisory activities by a contractor foreclose the preemption defense where the United States military chain of command continues to exercise decisionmaking authority for all operational issues relating to the contractor's employees. As the CACI Defendants explained in their motion for reconsideration of the Memorandum Order, all of the disputed facts identified by the Court as precluding entry of summary judgment in the CACI

Defendants' favor involved actions by CACI PT's administrative site lead in providing, in the Court's words, "advice and feedback" on issues where the military chain of command had final decisionmaking authority. Mem. Order at 22; *see also* CACI Def. Mem. in Support of Mot. for Reconsideration at 9-14 (filed 11/20/07). If the Court is incorrect in concluding that the "advice and feedback" identified in the Memorandum Order constitutes an exercise of operational control, then the Memorandum Order would be subject to reversal on appeal even if the Court's first-impression establishment of an "exclusive operational control" requirement for combatant activities preemption were correct.

**2. Substantial Ground for Difference of Opinion**

"A substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits." *APCC Services*, 297 F. Supp. 2d at 97 (citing *City Stores Co. v. Lerner Shops*, 410 F.2d 1010, 1011 (D.C. Cir. 1969)). A substantial ground for difference of opinion exists with respect to all three components of the Memorandum Order.

In the Memorandum Order, the Court acknowledged that there is "no controlling authority applying the combatant activities exception to the tortious acts or omissions of civilian contractors in the course of rendering services during wartime encounters." Mem. Order at 4. Indeed, the Court noted that there is conflicting authority over whether the government contractor defense is limited to the products liability context or whether it may also be applied to tort claims. *Id.* at 4 & n.3 (citing cases). While the CACI Defendants submit that the Court is correct in concluding that a preemption defense is available in the context of service contracts, it is nonetheless apparent that there is at least some difference of opinion among federal district courts on this issue. *Id.*

With respect to the test adopted by the Court for evaluating Defendants' preemption defenses, the Memorandum Order acknowledges that the Court was identifying the appropriate test as a matter of first impression. Mem. Order at 5. Indeed, the principal case applying combatant activities preemption prior to the Memorandum Order, *Koohi v. United States*, 976 F.2d 1328, 1336-37 (9th Cir. 1992), preempts tort claims against a defense contractor based solely on its conclusion that the activities at issue were "combatant activities," with no requirement that the contractor show the degree of government control over its employees. The Court announced in the Memorandum Order, without explanation, that while the *Koohi* test might be appropriate for products liability actions, a different test – one of first impression – would have to be created for evaluating combatant activities preemption where the contractor is providing support services. Mem. Order at 4-5. Thus, the Memorandum Order essentially rejects the only existing test for combatant activities preemption – a test that the Memorandum Order appears to conclude would require entry of judgment in the CACI Defendants' favor – and instead employs a test created by the Court that injects a requirement of exclusive operational control.

Moreover, the CACI Defendants submit that the "reasonable minds could differ" requirement for § 1292(b) certification is exemplified by the Court's apparent struggle in trying to find the correct formulation of a test for combatant activities preemption. In deciding Defendants' motions to dismiss, the Court's initial description of the appropriate test was whether Defendants' employees were "soldiers in all but name." *Ibrahim*, 391 F. Supp. 2d at 18. Toward that end, the Court identified four questions for the parties to address. After the parties had briefed summary judgment motions based on the Court's announced test, the Court announced that the "soldiers in all but name" test it had previously adopted was "a little fuzzy"

and that the Court would be revisiting the appropriate test. 10/3/07 Tr. at 4-5 ("I now think, after reading these briefs, that the essentially-acting-as-soldiers test is a little fuzzy, and it may be more than a little fuzzy, and that it would benefit from some sharpening along the lines of operational control, command and control, something of that nature."). Ultimately, the Court announced in the Memorandum Order that "[d]iscovery and briefing in this case have allowed sharper definition of the showing necessary" for combatant activities preemption. Mem. Order at 5. In the Court's current formulation, a defendant seeking combatant activities preemption must show not only that the activities at issue were combatant activities, but also that the military exercised "exclusive operational control" over the defendant's employees. Considered together, the *Koohi* precedent finding preemption appropriate if the activity at issue was a combatant activity, combined with the Court's own apparent struggles in determining the appropriate test for preemption, demonstrates that the law is hardly clear, and not at all settled, on the appropriate preemption test to be applied and that reasonable minds could conclude that the Court's formulation of the appropriate test is erroneous.

Finally, even if the Court is correct that a requirement for combatant activities preemption is that the military have exercised "exclusive operational control" over the defendant's employees, there is a substantial ground for difference of opinion as to whether the disputed facts are the type of operational control that can foreclose a preemption defense. As the CACI Defendants noted in their motion for reconsideration, none of the facts identified in the Memorandum Order appear to qualify as an exercise of "operational control" as that term is used as a matter of military doctrine. *See* CACI Def. Mem. in Support of Mot. for Reconsideration at 9-14. Moreover, to the extent that the Memorandum Order rests on CACI PT's requirement that its employees report misconduct both to the military and to CACI PT personnel, such a

requirement is neither operational in nature under the military's doctrine, nor is it an exercise of control, as the Defense Department required CACI PT to have these reporting structures in place. *Id.* at 7-9.

Thus, the CACI Defendants' positions with respect to the appropriate test for combatant activities preemption, and the proper application of that test in this case, "are not insubstantial." *APCC Services*, 297 F. Supp. 2d at 98. Under these circumstances, the Court "must analyze the strength of the[se] arguments . . . to decide whether the issue is truly one on which there is a substantial ground for dispute." *Id*. at 98. The CACI Defendants set forth strong arguments in favor of granting summary judgment, and regardless of whether the Court decided to accept those arguments at this stage in the litigation, without any controlling authority on the application of the combatant activities exception to tort claims there remains "a substantial ground for difference of opinion concerning the Court's ruling." 28 U.S.C. § 1292(b).

**3. Material Advancement of the Disposition of the Litigation**

An interlocutory appeal of the Court's Order denying summary judgment would "conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed." *APCC Services*, 297 F. Supp. 2d at 100 (citing *Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 728 (S.D. Tex. 2002)). This Court already held that full discovery is not appropriate to resolve the preemption issue. *See Ibrahim*, 391 F. Supp. 2d at 19. Indeed, the Court's order on Defendants' motions to dismiss acknowledges the efficiencies inherent in resolving Defendants' preemption defenses to the maximum extent possible before engaging in full-blown merits discovery, which will be not only expensive and burdensome, but likely to implicate state secrets and related doctrines. *Id.* ("Full discovery is not appropriate at this stage, especially given the potential for time-consuming disputes involving

state secrets.”).

The rationale for proceeding to summary judgment motions on preemption applies with full force to permitting an interlocutory appeal. Under any circumstances, it appears likely that the Court of Appeals will be called on the review the Court’s formulation of a test for combatant activities preemption, and it would be much more efficient to have the appropriate test established (or confirmed) now. That way, if the Memorandum Order is erroneous in denying summary judgment to the CACI Defendants, the case can conclude without implicating the state secrets and classified material issues that merits discovery in these cases surely will involve. On the other hand, if the Memorandum Order is correct, the parties and the Court are far better off having had the Court of Appeals establish (or confirm) the correct test for combatant activities preemption before the parties engage in full-blown discovery and, potentially, a trial of these actions. As the Court itself concluded in holding that the summary judgment procedure should precede merits discovery, “it would be far better for all concerned, including plaintiffs, to have these matters resolved now, as opposed to sometime in the distant future.” *Id*.

If the Court certifies the Memorandum Order for interlocutory appeal, as we believe it should, the CACI Defendants also request that the Court stay discovery pending resolution of the interlocutory appeal. *See Beaty v. Iraq*, No. 03-0215, 2007 WL 1169333, *2 (D.D.C. April 19, 2007) (staying proceedings after certifying an order for interlocutory appeal to “avoid wasting judicial resources – and the parties’ resources – while the D.C. Circuit resolves the [appeal]” ). Staying expensive, burdensome, and invasive discovery potentially implicating state secret issues would further the efficiencies the CACI Defendants seek in requesting § 1292(b) certification.[4]

[4] The CACI Defendants submit that the filing of a Notice of Appeal as of right, as discussed in footnote 1, *supra*, would divest the Court of jurisdiction to proceed with the merits of this case, effecting the same practical result as a stay of proceedings. *See Marrese v. A.*

## IV. CONCLUSION

For the foregoing reasons, the CACI Defendants respectfully request that the Court certify for interlocutory appeal the November 6, 2007 Memorandum Order denying the CACI Defendants' motion for summary judgment on the issue of preemption, and that the Court stay the proceedings pending resolution of the appeal.

Respectfully submitted,

*/s/ John F. O'Connor*

J. William Koegel, Jr. (Bar No. 323402)
John F. O'Connor (Bar No. 460688)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

*Attorneys for Defendants CACI International Inc and CACI PT, Inc.*

December 7, 2007

---

*Academy of Orthopaedic Surgeons*, 470 U.S. 373, 378-79 (1985); *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Princz v. Federal Republic of Germany*, 998 F.2d 1 (D.C. Cir 1993) (appeal from denial of motion to dismiss on grounds of sovereign immunity divests district court of jurisdiction over entire case). Nevertheless, because Plaintiffs are likely to contest the immediate appealability of the Memorandum Order as a collateral order, a stay of proceedings while a § 1292(b) appeal proceeds would be appropriate.