# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SALEH *et al.*, | ) |
|  | ) |
| Plaintiffs, | ) Case No. 05-cv-1165 (JR) |
| v. | ) |
|  | ) |
| CACI *et al.*, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## THE TORTURE VICTIMS' OPPOSITION TO CACI'S MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT

Susan L. Burke (D.C. Bar No. 414939)
William T. O'Neil (D.C. Bar No. 426107)
Katherine R. Hawkins (admitted *pro hac vice*)
BURKE O'NEIL LLC
Telephone: (215) 487-6590
Facsimile: (215) 482-0874
sburke@burkeoneilllc.com

Shereef Hadi Akeel (admitted *pro hac vice*)
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Suite 910
Troy, Michigan 48084
Telephone: (248) 269-9595
Facsimile: (248) 269-9119
shereef@akeelvalentine.com

Katherine Gallagher
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway,S 7th Floor
New York, NY 10012
Telephone: (212) 614-6439
*Counsel for Plaintiffs*

Date: February 1, 2008

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

ARGUMENT ..............................................................................................................1

I.      CACI MISSTATES THE FACTS ....................................................................4

II.     CACI HAS BEEN GIVEN FAIR NOTICE THAT THE TORTURE VICTIMS INTEND TO PROVE THAT CACI TORTURED THEM AND DIRECTED OTHERS TO TORTURE THEM .......................................................................7

        A. The Torture Victims Allege Facts That State a "Plausible" Grounds for Relief......................................................................................................7

        B. The Torture Victims Properly Allege a Conspiracy. .....................................9

        C. The Torture Victims Properly Allege Greed as the Motive for CACI To Participate in the Conspiracy. .................................................................11

III.    THE TORTURE VICTIMS ALLEGE FACTS SUFFICIENT TO SUPPORT RESPONDEAT SUPERIOR CLAIMS. ............................................................12

IV.     CACI IS NOT ENTITLED TO ABSOLUTE IMMUNITY FROM SUIT.........................13

        A. CACI Did Not Have the "Discretion" To Violate the Law .........................15

        B. CACI Is Not Entitled to the Immunities Enjoyed by its Co-Conspirators....................17

        C. CACI Cannot Ignore the Court's Ruling on Summary Judgment ................19

V.      CACI'S BELATED CHOICE OF LAW ARGUMENT IS LEGALLY FLAWED.............19

VI.     THIS ACTION DOES NOT RAISE A POLITICAL QUESTION......................................22

        A. The "New" Allegations Cited by CACI Are in the Prior Iterations of the Complaint...................22

        B. No State-Negotiated Reparations Agreement Exists ....................................23

        C. This Action is Judicially Manageable..........................................................24

CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Federal Cases**

*In re Air Crash Disaster near Saigon, South Vietnam on April 4, 1975,* 476 F.Supp. 521,
(D.D.C. 1979)……………………………………………………………………………20

*Arellano v. Weinberger*, 745 F.2d 1500........................................................................ 24

*Baker v. Carr*, 369 U.S. 186 (1962)............................................................................ 22

*Beebe v. WMATA*, 129 F.3d 1283 (D.C. Cir. 1997)............................................. 14, 15, 16

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) .................................................... 7

*Berkovitz v. United States*, 486 U.S. 531, 536 (1988)………………………….……16

*Briscoe v. Arlington County*, 738 F.2d. 1352 (D.C. Cir. 1984)…………………………21

*Browning v. Clinton*, 292 F.3d 235 (D.C.Cir. 2002) .......................................................... 7

*Burkhart v. WMATA*, 112 F.3d 1207 (D.C. Cir. 1997) ............................................. 16, 17

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
274 F.Supp.2d 86 (D.D.C 2003) ................................................................................. 9

*Doe v. Exxon Mobil Corp.*, 473 F.3d 345 (D.C. Cir. 2007)............................................. 18

*Doe v. Exxon Mobil Corp.*,
No. Civ.A.01-1357, 2006 WL 516744 (D.D.C. Mar. 2, 2006).................................... 21

*Eli Lilly & Co. v. Home Ins. Co.*,
764 F.2d 876 (D.C.Cir. 1985), cert. denied, 479 U.S. 1060 (1987) ........................... 20

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.*,
587 F.Supp. 180 (D.D.C. 1984)................................................................................. 21

*GEICO v. Fetisoff*, 958 F.2d 1137 (D.C. Cir. 1992)......................................................... 20

*Griggs v. WMATA*, 232 F.3d 917 (D.C. Cir. 2000) ......................................................... 15

*Ibrahim v. Titan Corp.*, 391 F.Supp.2d 10 (D.D.C. 2005)......................................... passim

*Ibrahim v. Titan Corp.*, Nos. 04-1248, 05-1165, 2007 WL 3274784 (D.D.C. Nov. 6,
2007) ................................................................................................................... 18, 19

*Kimberlin v. Quinlan*, 199 F.3d 496 (D.C. Cir. 1999) ........................................................ 2

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1942) ............................................. 20

*Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992) ................................................... 14

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271(D.C.Cir. 1994) ............................. 7

*LaShawn A. v. Barry,* 87 F.3d 1389 (D.C. Cir.1996) ........................................................ 2

*Mangold v. Analytic Services, Inc.*, 77 F.3d 1442 (4th Cir. 1996) ................................. 14

*McManus v. District of Columbia*, No. 07-252, 2007 WL 4573442 (D.D.C. Dec. 31, 2007) .................................................................................................................. 10

*Pearce v. E.F. Hutton Group, Inc. et al.*, 664 F.Supp. 1490 (D.D.C. 1987) .................. 20

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................... 22

*Rasul v. Myers*, Nos. 06-5209, 06-5222, 2008 WL 108731 (D.C. Cir. Jan. 11, 2008)..... 15

*Richardson v. United States*, 841 F.2d 993 (9th Cir.1988) ............................................... 2

*Saleh v. Titan Corp.*, 436 F.Supp.2d 55 (D.D.C. 2006) .......................................... passim

*Schneider v. Kissinger*, 310 F.Supp.2d 251 (D.D.C. 2004) ..................................... 12, 13

*United States v. Gaubert*, 499 U.S. 315 (1991) .............................................................. 16

*Westfall v. Erwin*, 484 U.S. 292 (1988) .................................................................... 14, 15

**State Cases**

*District of Columbia v. Coleman*, 667 A.2d 811 (D.C. 1995) ......................................... 20

*Estrada v. Potomac Elec. Power Co.*, 488 A.2d 1359 (D.C. 1985)................................. 20

*Herbert v. District of Columbia*, 808 A.2d 776 (D.C. 2002)........................................... 21

*Hercules & Co. v. Shama Restaurant*, 566 A.2d 31 (D.C. 1989) .................................... 20

*Johnson v. Weinberg*, 434 A.2d 404 (D.C. 1981).......................................................... 13

*Kaiser-Georgetown Community v. Stutsman*, 491 A.2d 502 (D.C. 1985) ............................................................................ 20, 21

*Weinberg v. Johnson*, 518 A.2d 985 (D.C.1986) ............................................................. 12

*Williams v. Williams*, 390 A.2d 4 (D.C. 1978) ............................................................. 20

**Federal Statutes**

28 U.S.C. §2679 (1988) ............................................................................................. 16

**Federal Rules**

Federal Rule of Civil Procedure 8(a)(2) ............................................................. 7

Federal Rule of Civil Procedure 12(e)……………………………………………..…..1

**ARGUMENT**

Athough the torture victims have yet to be permitted any merits discovery, the United States military produced to the parties voluminous and compelling court-martial and other testimony establishing that CACI conspired with military and government personnel to engage in the torture and abuse of plaintiffs and other prisoners. This body of evidence confirms the victims' initial allegations and establishes with sworn testimony from co-conspirators that CACI employees personally tortured, and directed the torture of, plaintiffs and other prisoners. *See Exhibits A-E.* Victims' counsel, having devoted substantial effort to reviewing thousands of pages of testimony, and under Court Order to file an amended complaint, filed the Fourth Amended Complaint ("Complaint"). This Complaint incorporated the details learned from the testimony, and put CACI on notice of the growing body of detailed evidence establishing their liability.[1]

CACI, in an emotion-laden paper, tries to turn the victims' diligence in updating the Complaint into a lack of integrity: "Thus far, Plaintiffs have shown a noteworthy flexibility in their allegations of fact, changing their allegations and conspiracy theories to fit what they believe the Court will allow to proceed, with little to no apparent concern to whether their allegations are supported by the facts or even good faith." *CACI Memorandum in Support of its Motion To Dismiss ("CACI Motion To Dismiss") at 2.* "Plaintiffs' claims continue to be a quite fantastic story conjured by Plaintiffs out of whole cloth, and these outrageous and unprincipled claims cannot withstand a motion to

---

[1] The Complaint also identifies the names of the 256 individual torture victims who were tortured by CACI and their co-conspirators. CACI rails about the cryptic nature of the individual allegations (*CACI Motion To Dismiss at 30-31*), but does not move for a more definite statement pursuant to Fed. R. Civ Pro. 12(e), which is the only appropriate remedy if CACI thinks it is entitled to more information at this initial notice pleading stage.

dismiss." *CACI Motion To Dismiss at 5-6* (citations and internal quotation marks omitted).

But CACI offers no evidence or facts to support these strong (but meritless) accusations against the torture victims and their counsel. Nor does CACI offer any legally compelling reason to dismiss the torture victims' claims before any merits discovery. Instead, wholly ignoring the law-of-the case doctrine, CACI resurrects the same arguments this Court soundly rejected after extensive briefing in 2005 and 2006: immunity, political question, vicarious liability and preemption. *See Saleh v. Titan Corp.*, 436 F.Supp.2d 55 (D.D.C. 2006); *Ibrahim v. Titan Corp.*, 391 F.Supp.2d 10 (D.D.C. 2005). The law of the case doctrine clearly prohibits making such repetitive motions seeking already-denied relief. That doctrine precludes a court "from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. United States,* 841 F.2d 993, 996 (9th Cir. 1988). The doctrine "rests on a simple premise: 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.'" *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) (quoting *LaShawn A. v. Barry,* 87 F.3d 1389, 1393 (D.C. Cir.1996)). A court may revisit the law of the case "only if there is an intervening change in the law or if the previous decision was 'clearly erroneous and would work a manifest injustice.'" *Id.*

CACI failed to seek an interlocutory appeal of the Court's past rulings on political question, immunity and vicarious liability, and fails to cite any intervening change in the law.[2] It is impossible to view CACI's meritless and untimely motion as anything other

---

[2] CACI did seek an interlocutory appeal on the preemption issue after this Court refused to reconsider its denial of summary judgment. Yet CACI nonetheless raises the preemption issue yet again in its latest lengthy motion papers.

than a scorched-earth litigation approach that imposes unnecessary briefing burdens on the torture victims.[3]  Nonetheless, in an excess of caution, this Opposition briefly explains – yet again – why CACI's arguments are wholly deficient.[4]

Section I (responding to CACI's Motion To Dismiss at pp. 1- 6) responds to CACI's meritless speculations about issues of fact.

Section II (responding to CACI's Motion To Dismiss at pp. 29-35) and Section III (responding to CACI's Motion To Dismiss at pp. 35-41) explain, respectively, why CACI has received fair and full notice of the nature of the torture victims' claims, and why the Complaint alleges facts sufficient to support liability under the doctrine of respondeat superior.

Section IV (responding to CACI's Motion To Dismiss at pp. 7-13) rebuts CACI's efforts to re-argue its past claims of absolute immunity.

Section V (responding to CACI's Motion To Dismiss at pp. 13-18) rebuts CACI's novel but ridiculous argument that the action should be dismissed because CACI suddenly realized (after almost four full years of litigation) that the Court may consider Iraqi law as a potential source of law.

Section VI (responding to CACI's Motion To Dismiss at pp. 19-29) rebuts CACI's attempt to persuade the Court to overrule its prior decision and hold the action raises a political question not subject to the judicial review.

---

[3] After having filed a lengthy brief accusing the torture victims' counsel of lying, CACI called three days before the opposition was due and proposed that the victims agree to suspend the briefing without any filing any opposition.  The torture victims refused to do so, given that the burden had already been shouldered by that late date and the accusations are so egregious that they should not stand unrebutted.

[4] The torture victims also hereby incorporate by reference their Oppositions to Defendants' Motions To Dismiss filed on May 8, 2006 in this Court and on October 22, 2004 in the Southern District of California.

This Court should deny CACI's Motion, and require CACI to file the long-overdue answer to the Complaint.

## I.    CACI MISSTATES THE FACTS.

CACI wholly ignores known evidence in its Motion and accuses torture victims' counsel of serious professional misconduct.

*First*, CACI speculates that the torture victims added paragraph 44 to the Complaint (which alleges participation in the conspiracy by Iraqis) as a result of concerns about Mr. Saleh's claims.  CACI states, "[p]erhaps most egregiously, Plaintiffs have added a new twist to their ever-changing conspiracy allegations. . . . . No doubt, Plaintiffs have added this wrinkle to the complaint to address the problems brought to the fore by the administrative claim Plaintiff Saleh filed with the United States."  *CACI Motion To Dismiss at 4.*  Based wholly on this speculation, CACI proceeds to impugn counsel's integrity:  "Plaintiffs simply change their conspiracy allegations . . .  One can almost see the drafters of the Fourth Amended Complaint sitting at a word processor and, when facing factual holes in Plaintiffs' claims, simply shrugging and saying "eh, just add it to the conspiracy."  *CACI Motion To Dismiss at 5*.   CACI later states the torture victims engaged in the "unprincipled step of revamping the conspiracy" to include Iraqi nationals.  *CACI Motion To Dismiss at 31*.

This is incorrect.  The victims added this allegation to the Complaint because they learned from testimony by co-conspirators that CACI employee Daniel Johnson (known as "DJ") involved Iraqis in the torture conspiracy.  DJ was torturing a victim so severely that Sgt. Ivan Frederick withdrew from continued participation in that particular torture session.  (Sgt. Frederick was court-martialed, convicted, and sentenced to 8 years in

prison for his participation in the torture conspiracy.)  DJ did not stop torturing the victim

when Sgt. Frederick withdrew.  Instead, he sought and obtained help from several Iraqis,

who were willing to assist DJ in beating the soles of the victim's feet.  Thus, at DJ's

behest, these Iraqis joined, or at the very least aided and abetted, the ongoing conspiracy.

This incident is described at Exhibit A at pages 236-239, Exhibit B at pages 54-56,

Exhibit C at pages 352-354, and Exhibit D at page 997.  It would have been beneficial for

CACI counsel to read the court martial transcripts and other evidence (which the U.S.

military produced to both plaintiffs and defendants) before accusing victims' counsel of a

complete lack of integrity.

     ***Second***, as it has done so many times in past pleadings, CACI again trots out a

RICO statement filed by the victims in 2004, which names Secretary of Defense

Rumsfeld and other high-level military officials as co-conspirators.  *CACI Motion To*

*Dismiss at 3*.  This Court, well aware of this allegation, already ruled that it does not

transform the action into one that raises a political question.  *See Titan's Motion to*

*Dismiss the Third Amended Comp.* (Apr. 7, 2006) *at 6 & Exhibit A* (quoting from RICO

statement and attaching as exhibit); *Saleh v. Titan Corp.*, 436 F. Supp.2d 55, 57 (D.D.C.

2006) (denying Defendants' Motions to Dismiss).  Moreover, the torture victims are not

walking away from any of their past allegations about complicity by certain high-ranking

members of the military, all of which are incorporated into the Complaint via paragraph

116.  Thus, it is unclear why CACI makes constant reference to the superseded RICO

statement.  But given CACI's focus, it is worth noting that CACI's own Exhibit E, a

December 18, 2007 report from General Barry McCaffrey, U.S. Army (retired), raises

serious and substantial questions about Rumsfeld's conduct.  General McCaffrey states

that Rumsfeld's tenure was characterized by "***illegal DOD orders on the abuse of***

***human rights,*** *. . .* massive self-denial on wartime intelligence; and an ***internal civilian-***

***imposed integrity problem*** in the Armed Forces – ***that punished candor***. . ." (Emphasis

added.) General McCaffrey further describes Rumsfeld as someone "who operated with

personal arrogance, intimidation and disrespect for the military, lack of forthright candor,

avoidance of personal responsibility, and fundamental bad judgment." *Id.* In short,

CACI's own exhibit contradicts its characterization of the Complaint allegations as

"fantastic" and lacking any credibility.

     ***Third***, CACI theatrically asserts the Complaint is "deafening for what it does not

say" because the victims cannot identify by name the specific CACI employees who

tortured them. *CACI Motion To Dismiss at 1.* But as explained by co-conspirator

Charles Graner, the torturers deliberately kept their identities secret from prisoners. *See*

*Exhibit A at 245-248.* Graner himself did not know that Steven Stefanowicz (whom he

called "Big Steve") and Daniel Johnson were employed by CACI. *Id. at 246-247* ("I just

assumed, you know, Big Steve at first was OGA. I didn't know, you know, another

government agency. I didn't know who CACCI [sic] was.").[5] It would be more

surprising if the Arabic-speaking torture victims, who were often kept hooded or

blindfolded, could identify their American torturers by name and institutional affiliation

without the benefit of merits discovery. The torture victims know they were severely and

repeatedly tortured by Americans because they lived through the torture in prison, and

continue to suffer from the after-effects of having been tortured. At present, the torture

victims are able to identify Steven Stefanowicz, Daniel Johnson, and Timothy Dugan as

---

[5] CACI also misleads the Court by stating that the Complaint alleges no direct contact
between the victims and CACI. *But see Complaint at ¶¶ 60, 61, 63, 64, 69.*

among their torturers because the United States military investigated and prosecuted some of the co-conspirators.[6]

## II.    CACI HAS BEEN GIVEN FAIR NOTICE THAT THE TORTURE VICTIMS INTEND TO PROVE THAT CACI TORTURED THEM AND DIRECTED OTHERS TO TORTURE THEM.

This evidence from the military, along with allegations of other relevant misconduct by CACI, is plead in detail in the Complaint.  Yet CACI challenges the Complaint as failing to put them on notice of the substance of the torture victims' claims. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  As explained by the Supreme Court in its recent decision, Rule 8(a)(2) is designed to "give defendant fair notice of what the …claim is and the ground upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007).  The Supreme Court stated that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1964 (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004)).   And, of course, when considering a motion to dismiss made pursuant to Rule 12(b), the allegations must be accepted as true and all reasonable inferences are drawn in favor of plaintiffs. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### A.  The Torture Victims Allege Facts That State a "Plausible" Grounds For Relief.

---

[6] Although CACI tries to suggest there has been extensive discovery that should have revealed the torturers' identities, CACI well knows that it successfully sought and obtained Court Orders limiting the summary judgment discovery to the very narrow issues raised by the government contractor defense.

CACI contends that the Complaint fails to allege facts that would suggest a 'plausible grounds' for the suit.  *CACI Motion To Dismiss at 29.*  Even a cursory review of the Complaint shows this to be a ludicrous assertion.

Paragraphs 37 and 38 allege that CACI employees were provided to act as interrogators and screeners in Abu Ghraib and other prisons in Iraq beginning in October, 2003.  Paragraphs 39-40 and 48-57 allege that CACI employees were present during, and participated in, the illegal torture of prisoners; and participated in efforts to prevent discovery of the torture.

Paragraph 60 alleges that a CACI employee personally directed military personnel to give plaintiffs and other prisoners the "special treatment," which was a code among the torturers for extreme physical torture.

Paragraphs 60-67 allege that CACI employees personally participated in and directed extreme torture; including, forcing naked prisoners to crawl back and forth over rough concrete until they were bloodied and unable to move; instructing military personnel to deprive plaintiffs and other prisoners of sleep, stripping  them naked, humiliating them by dressing them in women's underwear, chaining them to the cell bars or bedframes in painful positions and deny them pain medication; attacking them with unmuzzled dogs; beating harshly the soles of a prisoners feet and forcing him to walk with excruciating pain; directing military personnel to inflict extreme physical pain on a prisoner by forcing him into a stress position on a chair and pressing on sensitive body parts; and directing military personnel to suffocate a prisoner.

Yet CACI complains that these allegations are "too vague to permit an understanding of just what [the Defendant] has been charged with, or what [it] must

defend." *CACI Motion To Dismiss* at 31, citing *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F.Supp.2d 86, 111 (D.D.C 2003). How can CACI not know that the victims are alleging CACI employees tortured them, and directed others to torture them, during their time in prison?

### B.  The Torture Victims Properly Allege a Conspiracy.

CACI further contends that "the Court *will not find* in Plaintiffs' complaint … a single allegation of fact that they had any interaction whatsoever with a CACI PT employee…." *CACI Motion To Dismiss at 30* (emphasis in original). "Because Plaintiffs' complaint lacks even a single allegation of contact between Plaintiffs and a CACI PT interrogator, it becomes clear that Plaintiffs' complaint is entirely dependent on imposing co-conspirator liability on the CACI Defendants." *CACI Motion To Dismiss at 31*.[7] This argument falls short for two reasons:

First, and importantly, CACI is simply wrong about the Complaint failing to allege contact between the victims and CACI employees. The Complaint alleges some victims were directly and personally subjected to hands-on abuse by CACI employees. As but one example, Paragraph 69 alleges that:

> DJ and Big Steve were not the only CACI interrogators who tortured, and directed others to torture, plaintiffs and other prisoners. CACI interrogator Timothy Dugan also tortured plaintiffs and other prisoners. For example, he physically dragged handcuffed plaintiffs and other prisoners along the ground to inflict pain on them. He

---

[7] CACI further speculates – with no factual foundation and in direct contradiction to the allegations – that many of the victims were unlikely to have been interrogated. *Id.*  As was already alleged in the past Complaints (incorporated in full by paragraph 116, the victims (including Saleh) were **all** interrogated during their time in prison.  None of the victims was guarded by Iraqi nationals.  None of the victims was held as common criminals.  Rather, all of the victims were detained by the United States military, and subsequently released without being charged with any crime.

> struck and beat plaintiffs and other prisoners. He bragged to
> a non-conspirator about scaring a prisoner with threats to
> such a degree that the prisoner vomited.  When a young
> non-conspirator directed him to cease the torture and
> comply with Army Field Manual 34-52, Dugan scoffed at
> his youth and refused to follow the direction.

Second, even if the Complaint *only* alleged a conspiracy (which is not the case), that is not reason for dismissal.  A complaint does not have to allege anything other than a conspiracy.  *See McManus v. District of Columbia*, No. 07-252, 2007 WL 4573442, at *18 (D.D.C. Dec. 31, 2007).

Paragraph 56 of the Complaint alleges that CACI conveyed its intent to join in the conspiracy by engaging in a series of criminal acts of torture alongside and in conjunction with several co-conspirators.

Paragraph 58 alleges that two CACI interrogators (Big Steve and DJ) began to engage in and direct such aggressive torture of prisoners that they quickly became viewed by co-conspirators as amongst the most aggressive actors in the conspiracy to torture prisoners.

Paragraphs 60 through 69 allege that CACI employees acted together with military personnel to torture plaintiffs and other prisoners.  The Complaint describes specific torture sessions.

Paragraph 73 alleges the conspirators acted together to discredit information being compiled by the Red Cross and the human rights community.

Paragraphs 73 and 75 allege the conspirators acted together to hide prisoners from visiting human rights groups by failing to record prisoners as detained, and by physically hiding plaintiffs and other prisoners who showed visible signs of torture.

Paragraphs 79 and 80 allege that DJ threatened to harm a CACI employee who tried to report the abuse to authorities.

These are not conclusory or purely speculative assertions; they are not assertions of merely parallel conduct by CACI. Rather, these are detailed and specific factual allegations that CACI employees acted in concert with others to commit torture and conceal their crimes from others.

### C.  The Torture Victims Properly Allege Greed as the Motive for CACI To Participate in the Conspiracy.

As CACI admits, the torture victims allege CACI joined the ongoing torture conspiracy in order to make money. *See CACI Motion To Dismiss at 34* (citing paragraphs 50 and 51 of the Complaint). CACI speculates that CACI would have been better off financially if it had reported the ongoing torture conspiracy. *Id.*  Although it is not clear that CACI would have made as much money if it had acted in a legal and ethical fashion, it clearly would have been much better for the victims if CACI had done so.

But as CACI's own corporate records reveal, CACI management located in the United States was on notice of the torture conspiracy and – in complete contravention of its contractual obligations – opted not to alert any law-abiding members of the military establishment. *Plaintiffs' Opposition to CACI's Motion for Summary Judgment*.  Instead, CACI, judging that there was more money to be made by being on the non-law-abiding "team" willing to give prisoners "the special treatment," joined the ongoing conspiracy.[8] *Id*.; *see generally Exhibits A - E*.

---

[8] CACI wrongly characterizes the torture victims as having stripped their Complaint of any allegations of wrongdoing by high-ranking military or governmental officials. *CACI Motion to Dismiss at* .  It is unclear how CACI has formed that view, given that the Complaint incorporates all the past Complaints in full by reference (paragraph 116), and

**III.    THE TORTURE VICTIMS ALLEGE FACTS SUFFICIENT TO SUPPORT RESPONDEAT SUPERIOR CLAIMS.**

CACI asserts that the torture victims' Complaint should be dismissed because it does not include allegations to support any claims under a respondeat superior doctrine. As the Court knows, respondeat superior is a doctrine of vicarious liability under which employers may be held liable for the torts committed by employees within the scope of their employment. *Weinberg v. Johnson*, 518 A.2d 985, 988 (D.C.1986).  Conduct is within the scope of employment if it is "of the same general nature as that authorized" or "incidental to the conduct authorized." *Schneider v. Kissinger,* 310 F.Supp.2d 251, 265 (D.D.C. 2004) (*quoting* Restatement (Second) of Agency § 229 (1958)), *aff'd* 412 F.3d 190 (D.C. Cir. 2005).  The Restatement also states that the conduct is within the scope of the employment if it is of the kind the employee is employed to perform, occurs substantially within the authorized time and space limits, it is actuated, at least in part, by a purpose to serve the master, and if force is intentionally used by the servant against another, the use of force is foreseeable by the master.  *Id.*

In *Weinberg*, the Court considered whether an employer operating Laundromats could be found liable when one of its employees shot a customer in the face because the customer accused the Laundromat of losing his shirts. The Court of Appeals found that "because the assault arose out of the transaction which initially brought the customer to the premises….and was triggered by a dispute over the conduct of the employer's

---

also continues to recite that certain named and unnamed military and governmental officials participated in the torture conspiracy (paragraphs 1, 51).  The sad reality remains that some number of military and governmental officials, including high-level officials, were willing to engage in criminal conduct and willing to conspire with CACI to torture prisoners.  That fact did not compel the Court to dismiss the action in 2006.  That fact does not compel dismissal now.

business" a reasonable jury could find the shooting incidental to the employment. *Johnson v. Weinberg*, 434 A.2d 404, 409 (D.C. 1981). Similarly, in *Schneider v. Kissinger*, the Court found that Dr. Kissinger was acting within the scope of his employment as National Security Advisor to the President when he allegedly conspired to kidnap General Schneider of Argentina. 310 F.Supp.2d 251, 265 (D.D.C. 2004), *aff'd* 412 F.3d 190 (D.C. Cir. 2005).

Here, the Complaint includes allegations sufficient to establish CACI's liability under this doctrine, as well as allegations sufficient to establish direct liability by CACI. The Complaint alleges that employees tortured prisoners during interrogations. *Complaint at ¶ 58*. The Complaint alleges that CACI made millions of dollars due to the actions of its employees acting as interrogators in Iraq. *Complaint at ¶ 57*. The Complaint alleges that CACI had reason to know of the torture and acted to cover it up. *Complaint at ¶¶ 39-41, 71*. Taken as true, the allegations in the Complaint clearly support a claim of respondeat superior against CACI.

## IV.     CACI IS NOT ENTITLED TO ABSOLUTE IMMUNITY FROM SUIT.

CACI, making another run at an argument that failed in the past, seeks absolute immunity from suit. *See CACI Motion To Dismiss at 7-13*. But the Court specifically considered and rejected the argument that CACI enjoys absolute immunity. On August 12, 2005, this Court denied the defendants' motion to dismiss the *Ibrahim* torture victims' complaint. *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10 (D.D.C. 2005). The Court expressly considered and rejected CACI's argument that they were entitled to the same immunities as the federal government. *Id.* at 17.

Almost one year later, in June 2006, the Court explicitly adopted and applied this reasoning in denying CACI's motion to dismiss the Third Amended Complaint in this action. *Saleh v. Titan Corp.*, 436 F.Supp.2d 55, 57 (D.D.C. 2005). The Court rejected CACI's arguments that the Third Amended Complaint's conspiracy allegations required dismissal. The Court expressly held that "participation in a conspiracy with government actors does not confer government immunities." *Id.* at 58.

CACI, wholly ignoring the Court's prior rulings and the controlling law-of-the-case doctrine, argues yet again that CACI should enjoy absolute immunity. CACI cites *Westfall v. Erwin*, 484 U.S. 292 (1988), *Beebe v. WMATA*, 129 F.3d 1283, 1289 (D.C. Cir. 1997), *Mangold v. Analytic Services, Inc.*, 77 F.3d 1442 (4th Cir. 1996) and *Koohi v. United States*, 976 F.2d 1328, 1332 (9th Cir. 1992). This is not new decisional law.

CACI now injects the *Westfall* common law doctrine into its past arguments to try to erect a legal structure in which all roads lead to immunity. The claim is wholly deficient as CACI employees are not government employees, and no governmental entity has claimed that CACI employees were acting at its behest when they tortured prisoners. Nonetheless, CACI asserts:

> if Plaintiffs allegations are that the CACI PT interrogators were permitted to exercise discretion in performing interrogation services, *Westfall* absolute immunity requires dismissal of Plaintiffs' complaint. If Plaintiffs' complaint could be construed as alleging that the CACI PT interrogators were to perform solely a ministerial function, then combatant activities preemption requires dismissal of Plaintiffs' complaint. There is no middle ground.

*CACI Motion to Dismiss at 11.*

But what CACI ignores is that the torture victims have **never** alleged that the military gave CACI discretion to assault and torture prisoners of war. The torture

victims' position has been clear and consistent since the beginning of this litigation: the United States government (including the military), by statute, treaty, contract, and regulation, legally forbade CACI from torturing prisoners, *and CACI violated those laws*. The fact that the lawful interrogation of prisoners involves some degree of discretion does not entitle CACI to immunity for conduct that "crossed the line from official duty into illicit brutality." *Griggs v. WMATA,* 232 F.3d 917, 921 (D.C. Cir. 2000) (affirming district court's holding that a transit police officer who ordered a police dog to attack a suspect was not entitled to absolute immunity).[9]

### A. CACI Did Not Have the "Discretion" To Violate the Law.

Under the common-law *Westfall* test, government officials (or under certain circumstances those certified by the government to be acting in their stead) are absolutely immune from suit only in those instances when the alleged misconduct is both within the scope of their official duties and within their discretion. *Westfall*, 484 U.S. at 296. *See also Beebe*, 129 F.3d at 1285 (officials are immune from tort liability when "exercising discretionary functions and acting within the scope of their official duties"). But if there are laws and regulations that prohibit the misconduct at issue in the civil action, then the misconduct cannot qualify as discretionary. Or as stated by the Supreme Court, the "discretionary" requirement "is not satisfied if a 'federal statute, regulation, or policy

---

[9] The District of Columbia Court of Appeals recently held that government officials who participated in adopting policies that led to the torture of prisoners held in Guantanamo Bay were immune from civil suit by torture victims. *Rasul v. Myers*, Nos. 06-5209, 06-5222, 2008 WL 108731 (D.C. Cir. Jan. 11, 2008). But that case was decided under the Westfall Act, 28 U.S.C. §2679 (1988), which is inapposite for two reasons. First, unlike the common law *Westfall* test argued by CACI, the Act does not require that conduct be discretionary in order to be a basis for immunity. *Id*. Second, the Westfall Act immunities are not available to contractors, as CACI acknowledges. *CACI Motion To Dismiss at 8.*

specifically prescribes a course of action for an employee to follow,' because 'the

employee has no rightful option but to adhere to the directive.'" *United States v.*

*Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531,

536 (1988)).

Applying this definition, the District of Columbia Court of Appeals has

formulated a two-part test to determine whether a governmental function is

"discretionary":

> First, a court must determine whether a " 'federal statute,
> regulation, or policy specifically prescribes a course of
> action for an employee to follow.'" If so, *sovereign
> immunity does not bar suits based on an employee's failure
> to follow the prescribed course of conduct.* If, however, the
> governing statutes leave room for "choice," an exercise of
> such choice is exempt from suit under the FTCA if the
> decision is " 'susceptible to policy judgment' and
> involve[d] an exercise of 'political, social, [or] economic
> judgment.' "

*Burkhart v. WMATA*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (emphasis added) (internal

citations omitted) (quoting *Gaubert,* 499 U.S. at 322, 325; *Cope v. Scott*, 45 F.3d 445,

448 (D.C. Cir. 1995)). *See also Beebe*, 129 F. 3d at 1287 ("To determine whether a

function is discretionary, and thus shielded by sovereign immunity, we ask whether any

statute, regulation, or policy specifically prescribes a course of action for an employee to

follow.") (internal citations omitted).

Here, of course, in addition to the important facts that CACI employees are not

government employees and have not been certified by any governmental entity to be

acting pursuant to government direction, this Court has already held that the torture

victims allege "actions of a type that both violate clear United States policy… and have

led to recent high profile court martial proceedings against United States soldiers."

*Ibrahim*, 391 F.Supp.2d at 16.   This suit exists precisely because of CACI's "failure to follow the prescribed course of conduct" set forth in the statutes, treaties, regulations, and federal policies regulating the treatment of prisoners of war and the activities of military contractors.  *Burkhart*, 112 F.3d at 1217.

As alleged, CACI's torture of prisoners violated both United States and international law, including the Uniform Code of Military Justice; the Third and Fourth Geneva Conventions; Army Regulation 190-8; and U.S. policy as set forth in Army Field Manual 34-52, the military's interrogation manual in effect in Iraq in 2003-2004.  *See Complaint at ¶ 31.*[10]   CACI also violated the statutes and regulations that required CACI to prevent its employees from abusing prisoners, and to ensure its employees reported any observed abuse.[11]  Thus, CACI cannot properly characterize the Complaint allegations as challenging "discretionary" conduct.   The Complaint allegations challenge unlawful and criminal conduct by CACI.

**B.  CACI Is Not Entitled to the Immunities Enjoyed by its Co-Conspirators.**

---

[10] As stated in Field Manual 34-52, the Geneva Conventions, the Uniform Code of Military Justice and U.S. policy forbid all "acts of violence or intimidation" against prisoners. *U.S. Army Field Manual 34-52, Intelligence Interrogation (Sept. 1992), § 1-7. See also U.S. Army Regulation 190-8, Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees (Oct. 1 1997) ("AR 190-8") § 1-5 (a)-(c).*
[11] *See U.S. Army Regulation 715-9, Contractors Accompanying the Force (Oct. 29, 1999) ("AR 715-9") § 3-2(f)* ("commercial firm(s) providing the battlefield support services will perform the necessary supervisory and management functions of their employees,"); *U.S. Army Field Manual 3-100.21, Contractors on the Battlefield (Jan. 2003) ("FM 3-100.21") § 4-45* ("Maintaining discipline of contractor employees is the responsibility of the contractor's management structure, not the military chain of command....It is the contractor who must take direct responsibility and action for his employee's conduct."); Defense Federal Acquisition Regulation Supplement ("DFARS") subpart 203.7000 to 203.7001 (requiring contractors to report "to appropriate Government officials...any suspected or possible violation of law in connection with Government contracts.")

CACI concocts another losing immunity argument by deliberately misstating the Court's prior rulings. CACI reasons that the conspiracy claims must be dismissed because the Court held that "any conduct in which military personnel and Titan employees may have engaged in Iraq was not a tort." *CACI Motion To Dismiss at 37*. No such ruling appears in the Court's published decisions. Rather, the Court found that Titan had established beyond dispute that the military exclusively controlled Titan employees. *Ibrahim v. Titan Corp.*, Nos. 04-1248, 05-1165, 2007 WL 3274784 (D.D.C. Nov. 6, 2007) (hereinafter *Ibrahim II*) at *8. The Court therefore held that Titan was entitled to summary judgment to ensure that contractor employees under exclusive military control "need not weigh the consequences of obeying military orders against the possibility of exposure to state law liability." *Id.* at *3. (The Court has never been asked to, and has not ruled on, the justiciability of claims against individual military conspirators.)

A jurisdictional or prudential bar to the adjudication of claims against certain defendants is not equivalent to finding that no harm has been done and that redress cannot be sought from other defendants. *See, e.g., Doe v. Exxon Mobil Corp.,* 473 F.3d 345, 355 (D.C. Cir. 2007). Applying the prudential bar of the government contractor defense to prevent adjudication of claims against Titan is not equivalent to a finding that Titan did not engage in tortious conduct.

As this Court held, "the 'scope of displacement' of state law must be tailored to the scope of the federal interest being protected." *Ibrahim II,* 2007 WL 3274784 at *2. The fact that Titan was dismissed does not save CACI from scrutiny. Rather, CACI tried and failed to prove facts that would entitle it to the prudential bar of the government

contractor defense.  CACI is merely rearguing its summary judgment papers when it

advocates extending the defense from Titan to CACI.  The Court has found that the

combatant activities exception does not apply to CACI, and there is no need to revisit that

conclusion.

### C.  CACI Cannot Ignore the Court's Ruling on Summary Judgment.

CACI's "no middle ground" argument simply ignores the fact that the Court has

already considered and rejected CACI's claim that it is necessarily entitled to immunity

under the combatant activities exception.  To avoid spilling additional ink on a subject

already extensively briefed, the torture victims instead incorporate by reference the past

briefing, which led to the Court's denial of summary judgment.

## V.    CACI'S BELATED CHOICE OF LAW ARGUMENT IS LEGALLY FLAWED.

After almost four full years of litigation, CACI for the first time claims choice of

law principles compel dismissal of the torture victims' lawsuit.  This absurd contention

lacks any legal support.  At the outset, CACI affirmatively misleads the Court by

suggesting that Coalition Provisional Authority Order 17 ("CPA Order 17") prevents this

Court from applying Iraqi law.  The Order does not.  Rather, the Order states that

contractors "shall be immune from Iraqi legal process."[12]  CPA Order 17 §4(3) (2004).

Nothing in the Order bars a United States federal court from applying the substantive law

of Iraq.  Indeed, the Order imposes an obligation on CACI to "respect Iraqi law."  *Id.* at

§ 4(4).

---

[12] The definition of "Iraqi legal process" is "any arrest, detention or legal proceedings in Iraqi courts or other Iraqi bodies, whether criminal, civil, or administrative."  Id. at § 1(10).

Moreoever, even if the Order actually precluded a federal court from looking to Iraqi law for principles of decision, such an Order would not compel the dismissal of the action. Rather, this Court, applying choice-of-law doctrine controlling in the District of Columbia as required by *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1942), would need to "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review." *Kaiser-Georgetown Community v. Stutsman*, 491 A.2d 502, 509 (D.C. 1985), *quoting Williams v. Williams*, 390 A.2d 4, 5-6 (D.C. 1978). *See also Estrada v. Potomac Elec. Power Co*., 488 A.2d 1359 (D.C. 1985); *Hercules & Co. v. Shama Restaurant*, 566 A.2d 31 (D.C. 1989); *District of Columbia v. Coleman*, 667 A.2d 811 (D.C. 1995).

Under this approach, the "first step is to determine whether a "true conflict" exists—that is, whether more than one jurisdiction has a potential interest in having its law applied and, if so, whether the law of the competing jurisdictions is different." *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992). If no true conflict exists, the court applies the law of the forum by default. *Id.; see also Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 882 (D.C.Cir. 1985), *cert. denied*, 479 U.S. 1060 (1987); *Stutsman,* 491 A.2d at 509; *In re Air Crash Disaster near Saigon, South Vietnam on April 4, 1975,* 476 F.Supp. 521, 526 (D.D.C. 1979).

Here, there is no true conflict, only a false conflict. A false conflict exists when the laws of the interested states are the same, *Pearce v. E.F. Hutton Group, Inc. et al.,* 664 F.Supp. 1490, 1496 (D.D.C. 1987); or when the policies of one state would be advanced by the application of its law and the policies of the state whose laws are

- 20 -

claimed to be in conflict would not be advanced by application of their law.  *Briscoe v. Arlington County*, 738 F.2d. 1352, 1360 (D.C. Cir. 1984), *cert. denied,* 469 U.S. 1159 (1985).  *See also Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002) (when "the policy of one state would be advanced by application of its law, and that of another state would not be advanced by application of its law, a false conflict appears and the law of the interested state prevails.") (*citing Briscoe*, 738 F.2d at 1360).

If, as CACI argues, the application of Iraqi law would require dismissal of this litigation, that creates a false conflict because the policies of the state of Iraq will not be advanced by application of Iraqi law and dismissal.  Clearly, foreign states "have no interest in applying their law to damages issues if it would result in less protection to their nationals in a suit against a United States corporation."  *Doe v. Exxon Mobil Corp.*, No. Civ.A.01-1357, 2006 WL 516744 at *2 (D.D.C. Mar. 2, 2006) (*quoting Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 587 F.Supp. 180, 191 (D.D.C. 1984)).

The Iraqi government has publicly stated that contractors who commit human rights abuses should be held to account in *some* court, whether in Iraq or the United States.  An official spokesman for Iraqi government has stated that contractors involved in human rights abuses "should be kept accountable. This is what Iraqi government needs….they should be kept to justice whether in Baghdad or United States." *See* Press Briefing By White House Press Secretary Dana Perino & Dr. Ali Al-Dabbagh, Spokesman for the Government of Iraq, Oct. 18, 2007, attached as Exhibit F. Accordingly, if CACI's proposed interpretation of CPA Order 17 is correct (which it is

not), there is no true conflict, only a false conflict.  In those circumstances, this Court

would apply the law of the forum.[13]

## VI.     THIS ACTION DOES NOT RAISE A POLITICAL QUESTION.

This Court twice considered and rejected CACI's argument that the torture

victims' claims raise non-justiciable political questions.  *Saleh*, 436 F.Supp.2d at 57;

*Ibrahim,* 391 F. Supp at 15.   CACI fails to explain how the Complaint now raises a

political question when the three previous iterations did not.  CACI's arguments are

nothing more than a reformulation of their old arguments, which this Court already has

rejected. This Court has heeded the warning in *Baker v. Carr* that "it is error to suppose

that every case or controversy which touches foreign relations lies beyond judicial

cognizance," *Baker v. Carr*, 369 U.S. 186, 211 (1962).  CACI advances no cogent

reasons to disregard that warning now.

### A.   The "New" Allegations Cited by CACI Are in the Prior Iterations of the Complaint.

CACI asks the Court to assume facts not in evidence as the basis for its political

question argument.  The Complaint alleges in paragraphs 41 and 75-77 that CACI and

their military co-conspirators failed to report the capture of certain detainees, decided to

hide detainees, failed to report the abuses to the Red Cross, issued false death certificates,

and misled law-abiding government and military officials.  CACI asserts – without any

factual support – that such activities necessarily involved "high-level determinations" that

---

[13] CACI cannot prove that the application of the forum's laws, or any other state law,
violates due process unless it demonstrates the existence of a true conflict, which it has
not done.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) ("There can be
no injury in applying [forum] law if it is not in conflict with that of any other jurisdiction
connected to this suit.").

transform this action into one that raises non-justiciable political questions. *CACI's Motion To Dismiss at 22*.

But none of these allegations is new. The prior iterations of the Complaint made the same allegations. *See Third Amended Complaint, ¶¶ 163-168*. CACI proffers no reason – and none exists – why these same allegations should somehow cause the Court to depart from the controlling law of the case.

### B.  No State-Negotiated Reparations Agreement Exists.

CACI also raises yet again the tired argument that the torture victims must seek government reparations rather than sue them in federal court. But CACI does not – and cannot – point to "any state-negotiated reparations agreement competing for legitimacy with this court's ruling." *Ibrahim*, 391 F. Supp. 2d at 16.  Now, two and a half-years later, no such agreement exists. Accordingly, adjudication of this case would not infringe upon or contradict any prior executive or congressional policy.

Instead, CACI simply points to an administrative proceeding in which the military denied a single torture victim's claim.[14]  But as the military has stated in writings previously filed in this case, the torture victims are wholly free to pursue their claims against CACI for their role in the torture without having to exhaust any administrative proceedings against military co-conspirators. *See* Plaintiffs' Brief in Opposition to

---

[14] Although obviously factual disputes cannot be resolved on a Rule 12(b)(6) motion, CACI is misguided in its portrayal of the Saleh administrative proceeding. Counsel for the torture victims are able to establish with admissible evidence that the military's criminal investigative division was wholly unaware of the administrative proceeding. The military simply failed to conduct the necessary investigation into the circumstances surrounding Saleh's detention in Iraq before reaching its conclusions. The "findings" so heavily relied upon by CACI do not withstand scrutiny.

CACI's Motion to Dismiss Second Amended Complaint, Exhibit H, *Saleh v. Titan,* No. 04-1143 (S.D.Cal. Oct. 22, 2004)

### C. This Action Is Judicially Manageable.

CACI again speculates about the need for confidential documents, and relies on the wartime chaos in Iraq as reason for dismissal.  But this Court has rejected such "[m]anageability problems" as premature.  *Ibrahim*, 391 F.Supp.2d at 16; *see also Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1513 ("It is premature to conclude that essential evidence is undiscoverable merely on the basis of the complaint and related declarations"). Unfounded speculation about potential litigation complexities does not suffice as reason to permit CACI to avoid accountability for torturing prisoners.

## CONCLUSION

For all of the foregoing reasons, this Court should summarily reject CACI's

motion without hearing oral argument.  CACI's motion is nothing more than a

resurrection of arguments already considered and rejected by this Court.  Litigants simply

are not free to impose burdens on their adversaries by repeatedly moving for relief that

has already been denied.

Respectfully submitted,


_____/s/_Susan L. Burke_____
Susan L. Burke (D.C. Bar No. 414939)
William T. O'Neil (D.C. Bar No. 426107)
Katherine R. Hawkins (admitted *pro hac vice*)
BURKE O'NEIL LLC
Telephone:  (215) 487-6590
Facsimile:  (215) 482-0874
sburke@burkeoneilllc.com

Shereef Hadi Akeel (admitted *pro hac vice*)
AKEEL & VALENTINE, P.C.
888 West Big Beaver Road
Suite 910
Troy, Michigan 48084
Telephone:  (248) 269-9595
Facsimile:  (248) 269-9119
shereef@akeelvalentine.com

Katherine Gallagher
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway,S 7th Floor
New York, NY 10012
Telephone:  (212) 614-6439

*Counsel for Plaintiffs*

Date: February 1, 2008